The Honorable John C. Coughenour

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

ABDIQAFAR WAGAFE, *et al.*,

                    Plaintiffs,

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.*,

                  Defendants.[1]

No. 2:17-cv-00094-JCC

DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT FOR
LACK OF JURISDICTION, IN PART,
AND FAILURE TO STATE A CLAIM,
IN PART

ORAL ARGUMENT REQUESTED

NOTE ON MOTION CALENDAR:
May 12, 2017

---

[1] Ms. Lori Scialabba, named as a defendant in her official capacity as Acting Director, United States Citizenship and Immigration Services, has been replaced as USCIS Acting Director by Mr. James McCament, who is automatically substituted for Ms. Scialabba as a defendant in this action by operation of Fed. R. Civ. P. 25(d).

DEFENDANTS' MOTION TO DISMISS
(2:17-cv-00094-JCC)

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

# Table of Contents

Table of Contents .................................................................................................................. i

Table of Authorities ........................................................................................................... iii

I.    INTRODUCTION ............................................................................................... 1

II.   LEGAL STANDARDS ....................................................................................... 2

      A.  Rule 12(b)(1) Standard ....................................................................... 2

      B.  Rule 12(b)(6) Standard ....................................................................... 3

III.  BACKGROUND .................................................................................................. 4

      A.  Immigration Processes ...................................................................... 4

          1.  Naturalization Process .......................................................... 4

          2.  Adjustment of Status Process .............................................. 5

      B.  CARRP ................................................................................................... 6

      C.  Executive Orders ................................................................................ 7

      D.  Factual Allegations ........................................................................... 8

IV.   ARGUMENT ........................................................................................................ 9

      A.  Because Plaintiffs Admit They Have No Interest In Adjudication of Their
          Applications, No Real Case or Controversy Exists ....................................... 9

      B.  Plaintiffs' First, Second, Third, Fifth, Sixth, and Tenth Claims for Relief
          Must Be Dismissed Because Plaintiffs Lack Standing ................................. 10

          1.  Because Adjudication of Plaintiffs' Benefit Applications Has Not Been Suspended
              Pursuant to E.O. 13780, Plaintiff Have Not Suffered Injury-in-Fact ........................... 11

          2.  Plaintiffs Lack Standing To Complain About a Violation of the Constitution's
              Uniform Rule of Naturalization Clause ..................................... 12

      C.  Plaintiffs' Claims Concerning "Extreme Vetting" Under E.O. 13780 Must Be
          Dismissed Because They Fail To Allege Sufficient Facts To Give Rise To
          Plausible Claims For Relief ................................................................ 13

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

    D.   Plaintiffs' Fourth Claim for Relief Fails to Allege a Procedural Due Process Violation and Must Be Dismissed Because Plaintiffs Have Not Been Deprived of a Protected Liberty or Property Interest ................................................................... 14

    E.   Plaintiffs' Seventh Claim for Relief Must Be Dismissed Because the Immigration and Nationality Act Does Not Create A Private Right of Action ................................................................................................................. 17

    F.   Plaintiffs' Eighth Claim for Relief Fails to State a Claim Under the APA Because It Does Not Relate To a Final Agency Action ............................................... 20

    G.   Plaintiffs' Ninth Claim for Relief Must Be Dismissed For Failure To State a Claim as the Allegations in the Complaint Establish CARRP Is Not a "Substantive" or "Legislative" Rule .................................................................... 21

V.     CONCLUSION ...................................................................................................... 24

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

# Table of Authorities

## CASES

*Ahmadi v. Chertoff,*
No. 07-cv-03455, 2007 WL 3022573 (N.D. Cal. Oct. 15, 2007)..............................16, 24

*Alcaraz v. Block,*
746 F.2d 593 (9th Cir. 1984) .......................................................................................23

*Aldarwich v. Hazuda,*
593 F. App'x 654 (9th Cir. 2015) ..................................................................................9

*Alexander v. Sandoval,*
532 U.S. 275 (2001)......................................................................................................17

*Allen v. Wright,*
468 U.S. 737 (1984)......................................................................................................10

*American Mining Congress v. Mine Safety & Health Administration,*
995 F.2d 1106 (D.C. Cir. 1993) ..............................................................................20, 23

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..........................................................................................3, 12, 13

*Bell Atl. Corp. v. Twombly,*
550 U.S. (2007)........................................................................................2, 3, 12, 13

*Bennett v. Spear,*
520 U.S. 154 (1997)......................................................................................................20

*Board. of Regents of State Colleges v. Roth,*
408 U.S. 564 (1972)......................................................................................................15

*Brock v. Pierce Cty.,*
476 U.S. 253 (1986)......................................................................................................16

*California v. Sierra Club,*
451 U.S. 287 (1981)......................................................................................................18

*Cannon v. University of Chicago,*
441 U.S. 677 (1979)......................................................................................................17

*Cazarez-Gutierrez v. Ashcroft,*
382 F.3d 905 (9th Cir. 2004) .......................................................................................12

*Chavez v. United States,*
683 F.3d 1102 (9th Cir. 2012) ........................................................................................3

*Cook v. Reinke,*
484 F. App'x 110 (9th Cir. 2012) ..................................................................................9

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

*Cort v. Ash,*
    422 U.S. 66 (1975)..............................................................................................18

D.C. Circuit in *American Mining Congress v. Mine Safety & Health Administration,*
    995 F.2d 1106, 1109 (D.C. Cir. 1993).............................................................22

*Erringer v. Thompson,*
    371 F.3d 625 (9th Cir. 2014)................................................................21, 22, 23

*Ezell v. United States,*
    778 F.3d 762 (9th Cir. 2015).............................................................................16

*Fedorenko v. United States,*
    449 U.S 490 (1981)............................................................................................15

*Flores v. City of Baldwin Park,*
    No. 14-cv-9290, 2015 WL 756877 (C.D. Cal. Feb. 23, 2015)..........................12

*French v. Edwards,*
    80 U.S. (13 Wall.) 506 (1872) ..........................................................................16

*Gibbons v. Ogden,*
    22 U.S. (9 Wheat.) 1 (1824)..............................................................................12

*Gospel Missions of America v. City of Los Angeles,*
    328 F.3d 548 (9th Cir. 2003) ..............................................................................9

*Hamdan v. Gonzales,*
    425 F.3d 1051 (7th Cir. 2005) ...........................................................................15

*Hani v. Gonzales,*
    No. 3:07-cv-517-S, 2008 WL 2026092 (W.D. Ky. May 8, 2008)......................24

*Hemp Indus. Ass'n v. DEA,*
    333 F.3d 1082 (9th Cir. 2003) ...........................................................20, 21, 22, 23

*Hollingsworth v. Perry,*
    133 S. Ct. 2652 (2013)......................................................................................10

*In re Siggers,*
    132 F.3d 333 (6th Cir. 1997) .............................................................................16

*In re Stac Electronics Securities Litigation,*
    89 F.3d 1399 (9th Cir. 1996) ...............................................................................6

*Jain v. Immigration & Naturalization Serv.,*
    612 F.2d 683, 686 (2d Cir. 1979)………………………………………………...5

*Jarecha v. INS,*
    417 F.2d 220 (5th Cir. 2009) .............................................................................14

*Kleindienst v. Mandel,*
    408 U.S. 753, 770 (1972)...................................................................................12

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

*Korab v. Fink,*
   797 F.3d 572 (9th Cir. 1967) .................................................................................12

*L.A. Closeout, Inc. v. DHS,*
   513 F.3d 940 (9th Cir. 2008) .................................................................................23

*Lance v. Coffman,*
   549 U.S. 437 (2007) ..............................................................................................10

*Levine v. City of Alameda,*
   525 F.3d 903 (9th Cir. 2008) .................................................................................15

*Lexmart Int'l v. Static Control Components, Inc.,*
   134 S. Ct. 1377 (2014) ..........................................................................................10

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .........................................................................................10, 12

*Matter of Blas,*
   151 & N Dec. 626, 630 (BIA 1974) ........................................................................6

*McCreath v. Holder,*
   573 F.3d 38 (1st Cir. 2009) ....................................................................................15

*Mendez-Garcia v. Lynch,*
   840 F.3d 655 (9th Cir. 2016) .................................................................................15

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
   521 F.3d 1097 (9th Cir. 2008) .................................................................................3

*Mora-Meraz v. Thomas,*
   601 F.3d 933 (9th Cir. 2010) ...........................................................................20, 23

*Morgovsky v. DHS,*
   517 F. Supp. 2d. 581 (D. Mass. 2007) ..................................................................15

*Nativi-Gomez v. Ashcroft,*
   344 F.3d 805 (8th Cir. 2003) .................................................................................15

*Novak v. United States,*
   795 F.3d 1012 (9th Cir. 2015) ...............................................................................10

*Office of Pers. Mgmt. v. Richmond,*
   496 U.S. 414 (1990) ..............................................................................................16

*Olim v. Wakinekona,*
   461 U.S. 238 (1983) ..............................................................................................17

*Oregon Natural Desert Ass'n v. United States Forest Service,*
   465 F.3d 977 (9th Cir. 2006) .................................................................................20

*Orkin v. Taylor,*
   487 F.3d 734 (9th Cir. 2007) .................................................................................15

DEFENDANTS' MOTION TO DISMISS - v
(2:17-cv-00094-JCC)

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

*Pinkus v. U.S. Bd. of Parole,*

   507 F.2d 1107 (D.C. Cir. 1974) ........................................................................23

*Rodriguez v. Superintendent, Bay State Corr. Ctr.,*

   139 F.3d 270 (1st Cir. 1998) ............................................................................16

*Safe Air for Everyone v. Meyer,*

   373 F.3d 1035 (9th Cir. 2004) ...........................................................................3

*Sandoval-Luna v. Mukasey,*

   526 F.3d 1243 (9th Cir. 2008) .........................................................................15

*Santos v. INS,*

   375 F.2d 262 (9th Cir. 1967) .............................................................................6

*Sawan v. Chertoff,*

   589 F. Supp. 2d 817 (S.D. Tex. 2008) .............................................................24

*So. Cal. Edison Co. v. FERC,*

   770 F.2d 779 (9th Cir. 1985) ...........................................................................23

*Spreewell v. Golden State Warriors,*

   266 F.3d 979 (9th Cir. 2001) .............................................................................3

*St. Regis Mohawk Tribe, N.Y. v. Brock,*

   769 F.2d 37 (2d Cir. 1985) ..............................................................................16

*Suter v. Artist M.,*

   503 U.S. 347 (1992) .........................................................................................17

*Touche Ross & Co. v. Redington,*

   442 U.S. 560 (1979) ...........................................................................16, 17, 18

*Transamerica Mortgage Advisors, Inc. v. Lewis,*

   444 U.S. 11 (1979) ...........................................................................................17

*United States v. Ginsberg,*

   243 U.S. 472 (1917) .........................................................................................15

*United States v. James Daniel Good Real Prop.,*

   510 U.S. 43 (1993) ...........................................................................................16

*United States v. Ritchie,*

   342 F.3d 903 (9th Cir. 2003) .............................................................................6

*Universities Research Ass'n v. Coutu,*

   450 U.S. 754 (1981) .........................................................................................18

*L.A. Closeout, Inc. v. DHS,*

   513 F.3d 940 (9th Cir. 2008) ...........................................................................22

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*

   454 U.S. 464, 485-86 (1982) ...........................................................................12

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

*Washington v. Trump*,

    No. 17-35105, 2017 WL 526497 (9th Cir. 2017) ........................................................11

*White v. Lee*,

    227 F.3d 1214 (9th Cir. 2000) .......................................................................................2

*Whitman v. Am. Trucking Ass'n*,

    531 U.S. 457 (2001)......................................................................................................20

*Wilson v. Bank of America, N.A.*,

    No. 12-cv-1532, 2013 WL 275018 (W.D. Wash. Jan. 24, 2013).................................9

*Wilson v. Lynch*,

    835 F.3d 1083 (9th Cir. 2016) .....................................................................................21

*Wolfe v. Strankman*,

    392 F.3d 358 (9th Cir. 2004) .........................................................................................3

## STATUTES

5 U.S.C. § 551(4)...................................................................................................................20

5 U.S.C. § 553(b)(3)(A).................................................................................................20, 22

5 U.S.C. § 704.......................................................................................................................20

8 U.S.C. § 1101(f)(6).............................................................................................................4

8 U.S.C. § 1154(b)..................................................................................................................5

8 U.S.C. § 1159(b)................................................................................................................21

8 U.S.C. § 1182......................................................................................................................6

8 U.S.C. § 1182(a)(3)..............................................................................................................6

8 U.S.C. § 1182(a)(6)(C)(i).....................................................................................................4

8 U.S.C. § 1227(a)(4)..............................................................................................................6

8 U.S.C. § 1252(a)(2)(B)(ii)...................................................................................................9

8 U.S.C. § 1255...............................................................................................................passim

8 U.S.C. § 1255(a)..........................................................................................................passim

8 U.S.C. § 1255(a)(2).......................................................................................................4, 20

8 U.S.C. § 1255(i)(2)(a)..........................................................................................................5

8 U.S.C. § 1357(b)................................................................................................................21

8 U.S.C. § 1421(a)..................................................................................................................4

8 U.S.C. § 1421(c).......................................................................................................5, 9, 19

8 U.S.C. § 1423.....................................................................................................................22

8 U.S.C. § 1427...............................................................................................................passim

8 U.S.C. § 1427(a)............................................................................................................4, 22

8 U.S.C. § 1427(d)..................................................................................................................4

8 U.S.C. § 1427(e)..................................................................................................................4

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

8 U.S.C. § 1429 ...................................................................................................4, 6, 22

8 U.S.C. § 1445(a) ......................................................................................................19

8 U.S.C. § 1446(a) ................................................................................................passim

8 U.S.C. § 1446(b) ........................................................................................................5

8 U.S.C. § 1446(c) ........................................................................................................4

8 U.S.C. § 1447(a) ........................................................................................................4

8 U.S.C. § 1447(b) ...................................................................................5, 16, 18, 19

8 U.S.C. § 1571(b) ......................................................................................................15

# REGULATIONS

8 C.F.R. § 103.2(b)(1) ..................................................................................................5

8 C.F.R. § 204.1(a)(1) ..................................................................................................5

8 C.F.R. § 209.1 ..........................................................................................................21

8 C.F.R. § 245.1 ............................................................................................................5

8 C.F.R. § 245.2(b)-(c) ...............................................................................................23

8 C.F.R. § 316.10(a)(2) ................................................................................................4

8 C.F.R. § 316.2 .....................................................................................................21, 22

8 C.F.R. § 335.1 ......................................................................................................5, 19

8 C.F.R. § 335.2(b) ................................................................................................18, 19

8 C.F.R. § 336.2(b) .......................................................................................................4

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

# I.    INTRODUCTION

On January 23, 2017, Plaintiffs filed a Complaint alleging U.S. Citizenship and Immigration Services ("USCIS") unlawfully delayed adjudication of Plaintiffs' applications for immigration benefits under a policy known as the Controlled Application Review and Resolution Program ("CARRP"). Complaint, ECF No. 1, at ¶¶ 1-2. On January 27, 2017, the President issued Executive Order ("E.O.") 13769, which temporarily suspended entry of visa holders from seven designated countries. 82 Fed. Reg. 8977 (Feb. 1, 2017). On February 1, 2017, Plaintiffs filed a First Amended Complaint, adding several causes of action related to E.O. 13769, including allegations that section 3(c) unlawfully suspended adjudication of Plaintiffs' benefit applications. ECF No. 17, at ¶¶ 54, 58-60, 154-158, 159-164, 165-166, 171-172, 173-178.

On February 2, 2017, the USCIS Acting Director clarified that E.O. 13769 did not affect the processing of benefit applications of individuals in the United States. Exhibit A (hereinafter "Scialabba Memo"). Then, on February 7, 2017, Plaintiffs filed a Notice of Related Cases, ECF No. 22, in which they acknowledged that, in light of the Scialabba Memo, "if Defendants adhere to the position stated in the [Scialabba Memo], it would appear that the section 3(c) claims in this action may become moot."[2] The "section 3(c) claims" to which Plaintiffs referred were Claims for Relief 1-3, 5, and 6, which were all based on the allegation USCIS had suspended adjudication of immigration benefit applications from people from the seven countries designated by the Executive Order.

On March 6, 2017, the President issued E.O. 13780, which revoked E.O. 13769 effective March 16, 2017. E.O. 13780, § 13, 82 Fed. Reg. 13209, 13218 (Mar. 9, 2017). On April 4, 2017, Plaintiffs filed a Second Amended Complaint ("SAC"). ECF No. 47. Despite their earlier acknowledgement to the contrary, Plaintiffs again alleged Defendants had suspended adjudication of benefit applications from Plaintiffs. SAC, ECF No. 47, at ¶¶ 249-61, 265-72.

As Plaintiffs correctly said in their Notice of Related Cases, ECF No. 22, these claims are moot. Specifically, their First, Second, Third, Fifth, and Sixth Claims present no live case or

---

[2] Plaintiffs also declined to pursue this theory in their motion for class certification. *See* Motion for Class Certification, ECF No. 26, at 3 n.1.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

controversy because (1) E.O. 13769 has been entirely rescinded, (2) even if it were still in force, binding guidance from the USCIS Acting Director confirms USCIS is processing benefit applications for individuals present in the United States regardless of country of origin, and (3) nothing in E.O. 13780 directs USCIS to suspend adjudication of benefit applications of applicants present in the United States. This is illustrated by the recent approval of Mr. Wagafe's naturalization application,[3] and the issuance of a notice of intent to deny Mr. Ostadhassan's adjustment-of-status application. *See* SAC ¶154; Exhibit B (Declaration of Leslie Tritten).

Further, insofar as Plaintiffs challenge the so-called "extreme vetting" under E.O. 13780, those claims fail to state claims upon which relief can be granted as the complaint does not allege sufficient facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007).

Plaintiffs' Fourth Claim fails to state a claim for relief as a matter of law, as they lack a constitutionally protected liberty or property interest in either the immigration benefits sought or the pace of adjudication. The remaining allegations—Claims for Relief Seven, Eight, Nine, and Ten—must be dismissed because they also fail to state claims upon which relief can be granted. Even accepting Plaintiffs' descriptions of CARRP as accurate for purposes of this motion, Plaintiffs fail to demonstrate CARRP is a final agency action under the Administrative Procedure Act ("APA"), or a "legislative rule" for purposes of APA notice-and-comment rulemaking. Further, Plaintiffs do not have a private right of action under either the Immigration and Nationality Act ("INA") or the Constitution's Uniform Rule of Naturalization clause. Accordingly, the Court should dismiss the Second Amended Complaint in its entirety—in part, for lack of jurisdiction, and, in part, for failure to state claims upon which relief can be granted.

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(1) Standard

Because mootness and standing both pertain to a federal court's subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss. *White v. Lee*, 227 F.3d

---

[3] As Mr. Wagafe's application has been granted, his individual-capacity claims are now moot and he should be dismissed from the action.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

1214, 1242 (9th Cir. 2000). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In reviewing a facial challenge, which contests the sufficiency of the pleadings, the court considers only the allegations of the complaint, accepting such allegations as true and drawing reasonable inferences in favor of the plaintiff. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In resolving a factual attack, however, "the district court may review evidence beyond the complaint" and "need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039.

## B. Rule 12(b)(6) Standard

Under Rule 12(b)(6), dismissal is appropriate when the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Rather, the complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Under Rule 12(b)(6), as with a facial challenge under Rule 12(b)(1), allegations of fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Spreewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Allegations of law framed as factual statements, however, need not be taken as true. *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) ("We do not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations"). Likewise, merely conclusory statements and formulaic recitations of the elements of a cause of action are not entitled to the presumption of truth. *Chavez v. United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012).

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

**A. Immigration Processes**

    **1. Naturalization Process**

      The Secretary of Homeland Security has "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a).[4] Under the Secretary's authority, USCIS adjudicates naturalization applications, to include investigating applicants, conducting examinations, and determining whether to grant applications. 8 U.S.C. §§ 1446(a), (c). If USCIS denies an application, the applicant may request a hearing before an immigration officer. 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2(b).

      The statutory requirements for naturalization are described in 8 U.S.C. §§ 1427 and 1429. The alien must show, *inter alia*, that he or she was lawfully admitted for permanent residence in the United States in accordance with all applicable provisions of the INA, resided continuously and was physically present within the United States for specified periods of time, was and still is a person of good moral character, and is attached to the principles of the Constitution. 8 U.S.C. §§ 1427(a), (d), 1429. To have been lawfully admitted for permanent residence, the alien must have been admissible at the time of adjusting to permanent resident status. 8 U.S.C. § 1255(a)(2). An alien who has sought any immigration benefit by fraud or willfully misrepresenting a material fact is inadmissible. 8 U.S.C. § 1182(a)(6)(C)(i). Certain behavior, including giving false testimony to obtain an immigration benefit, disqualifies an applicant from demonstrating good moral character. *See, e.g.*, 8 U.S.C. § 1101(f)(6). Similarly, membership in or financial contributions to a terrorist organization may make the applicant inadmissible, and may adversely reflect on an applicant's good moral character. 8 U.S.C. § 1427(e); 8 C.F.R. § 316.10(a)(2).

      As is generally the case with all benefit applications, USCIS conducts security checks of naturalization applicants to enhance national security, public safety, and ensure the integrity of the immigration process. USCIS is required by statute and regulation to complete a full

---

[4] The transfer of the former Immigration and Naturalization Service's ("INS") naturalization functions to the Department of Homeland Security included the transfer of the authority to naturalize from the Attorney General to the Secretary of Homeland Security.  *See* Homeland Security Act of 2002, Pub. L. No.107-296, § 1512(d), 116 Stat. 2135, 2310 (Nov. 25, 2002).

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

background investigation of naturalization applicants. Indeed, Congress has mandated that USCIS "receiv[e] confirmation from the Federal Bureau of Investigation ("FBI") that a full criminal background check has been completed, except for those excepted by regulation as of January 1, 1997," before adjudicating a naturalization application. Pub. L. No. 105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997).

USCIS must, therefore, thoroughly investigate the background of every naturalization applicant to determine whether the applicant is eligible to naturalize. *See* 8 U.S.C. § 1446(a), (b); 8 C.F.R. § 335.1 ("The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application.").

If USCIS does not decide an application within 120 days following the applicant's examination, the applicant may sue in district court to obtain a determination of the application. 8 U.S.C. § 1447(b). A naturalization applicant may file a Form N-336 with USCIS to appeal a denial of naturalization, and if that is denied, then seek *de novo* review in district court. 8 U.S.C. § 1421(c).

## 2. Adjustment of Status Process

In the past, a non-immigrant alien who sought to obtain permanent residence in the United States had to leave the country and seek an immigrant visa at a U.S. consulate abroad. To alleviate that burden, Congress created the adjustment-of-status process, subject to the ultimate discretion of, originally, the Attorney General, and now, the Secretary of Homeland Security. 8 U.S.C. § 1255; *Jain v. Immigration & Naturalization Serv.*, 612 F.2d 683, 686 (2d Cir. 1979).

An alien becomes eligible to adjust to lawful permanent resident ("LPR") in several circumstances, including through marriage to a U.S. citizen. *See*, *e.g.*, 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1. For an alien married to a U.S. citizen and residing within the United States, the process has two-steps. First, the citizen spouse files a Petition for Alien Relative ("Form I-130") on behalf of the alien spouse, to establish the existence of the marital relationship. 8 U.S.C. §1154(b); 8 C.F.R. § 204.1(a)(1). Second, the alien spouse may file an adjustment-of-status

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

application. 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1.

The alien spouse must: (1) be eligible to receive an immigrant visa; (2) be admissible to the United States; and (3) have a visa immediately available to him or her at the time the application is filed. 8 U.S.C. § 1255(a). The alien has the burden to demonstrate eligibility for the benefit, including admissibility. 8 U.S.C. § 1255(i)(2)(a); 8 C.F.R. § 103.2(b)(1). An alien is inadmissible if any of the factual circumstances described in the law exist. For example, an alien may be inadmissible on grounds related to health, criminality, national security, and misrepresentations. 8 U.S.C. § 1182. An alien has no right to adjustment to LPR status, even if the alien meets the objective eligibility requirements for adjustment of status; the grant of LPR status is solely within the discretion of the Secretary of Homeland Security. 8 U.S.C. § 1255(a); *Diric v. INS*, 400 F.2d 658, 660-61 (9th Cir. 1968), *cert. denied*, 394 U.S. 1015 (1969); *Santos v. INS*, 375 F.2d 262, 264 (9th Cir. 1967); *Jarecha v. INS*, 417 F.2d 220, 223 (5th Cir. 1969); *Matter of Blas*, 15 I & N Dec. 626, 630 (BIA 1974).

## B. CARRP

Plaintiffs allege CARRP is a process by which applications that raise national security concerns are handled. SAC ¶ 55. This policy ensures that benefit requests with national security concerns are consistently and uniformly adjudicated across USCIS. SAC ¶ 61; ECF 27-1 at 7.[5] A national security concern arises when an individual or organization is determined to have an articulable link to prior, current, or planned involvement in, or association with, an activity, individual, or organization described in INA sections 212(a)(3)(A), (B), or (F), or 237(a)(4)(A) or (B). SAC ¶ 62. Those INA sections make inadmissible or removable any individual who, *inter alia*, "has engaged in terrorist activity" or is a member of a "terrorist organization." 8 U.S.C. §§ 1182(a)(3), 1227(a)(4). CARRP directs officers to identify applications for immigration benefits

---

[5] In a motion to dismiss under Rule 12, the Court can consider materials including documents attached to the complaint, incorporated by reference in the complaint, or matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *In re Stac Electronics Securities Litigation,* 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in motion to dismiss.). In this case, Plaintiffs have incorporated by reference in the complaint information about CARRP obtained via the Freedom of Information Act, *see* SAC ¶ 59, and have provided that information to the Court in in support of their motion for class certification. ECF No. 27-1.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

(including naturalization and adjustment of status) that raise national security concerns and thoroughly investigate the applicant's background, in consultation with supervisors and other agencies, to determine whether the applicant is statutorily eligible to naturalize or adjust status. SAC ¶¶ 61, 83, 85-88. Nevertheless, the handling of an application pursuant to CARRP does not render the applicant statutorily ineligible for the benefit sought. SAC ¶ 93. *See* 8 U.S.C. §§ 1255(a), 1427, 1429. Instead, CARRP provides a process to resolve issues that surface during background checks on benefit applications. ECF 27-1, 4-5. Resolution often requires communication with law enforcement or intelligence agencies to determine whether information is relevant to an applicant and, if so, whether the information has an impact on eligibility for the benefit. *Id*. at 6.

Once vetting is completed, if an applicant is ineligible for the benefit sought, the application is denied, and if the applicant is eligible for the benefit sought, then it is approved. *Id*. at 7. As a safeguard to ensure reasoned adjudication, supervisory review and concurrence is required for denial or approval of such applications. *Id*.; SAC ¶ 92.

**C. Executive Orders**

On January 27, 2017, the President issued E.O. 13769. Section 3(c) temporarily suspended entry of certain visa holders from seven countries. 82 Fed. Reg. at 8978. On February 2, 2017, the USCIS Acting Director clarified that section 3(c) did not affect USCIS's processing of benefit applications for individuals in the United States. *See* Scialabba Memo. Section 4 of E.O. 13769 directed the Secretaries of State and Homeland Security and the Directors of National Intelligence and the FBI to "implement a program, as part of the adjudication process for immigration benefits, to identify individuals seeking to enter the United States on a fraudulent basis with the intent to cause harm, or who are at risk of causing harm subsequent to their admission." *Id*. The Executive Order directed this program to include "a process to evaluate the applicant's likelihood of becoming a positively contributing member of society and the applicant's ability to make contributions to the national interest." *Id*. at 8979.

On March 6, 2017, the President issued E.O. 13780. 82 Fed. Reg. 13209, 13218 (Mar. 6, 2017). Section 13 of E.O. 13780 rescinded E.O. 13769 in its entirety, effective March 16, 2017.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

*Id.* at 13218. Nothing in E.O. 13780 directs USCIS to suspend adjudication of immigration benefit applications by people within the United States, although the Executive Order does (in section 5), like its predecessor, direct Executive Branch officials to "implement a program, as part of the process for adjudications, to identify individuals who seek to enter the United States on a fraudulent basis, who support terrorism, violent extremism, acts of violence toward any group or class of people within the United States, or who present a risk of causing harm subsequent to their entry. This program shall include the development of a uniform baseline for screening and vetting standards and procedures." *Id*. at 13215.

### D. Factual Allegations

Mr. Abdiqafar Wagafe was a Somali national and lawful permanent resident of the United States. SAC ¶¶ 142, 149. On July 3, 2012, Mr. Wagafe applied to naturalize as a U.S. citizen. *Id.* ¶ 150. USCIS interviewed him on October 29, 2012, but he lacked sufficient command of English to understand and respond to the immigration officer's questions. *Id.* USCIS re-interviewed Mr. Wagafe on January 3, 2013, but he failed the English language portions of the naturalization test. *Id.* Accordingly, USCIS denied his naturalization application on January 9, 2013. *Id.* On November 8, 2013, Mr. Wagafe submitted a second naturalization application. *Id.* ¶ 152. USCIS interviewed him in connection with this application on February 22, 2017, and approved his application. *Id*. at ¶ 154. Plaintiff Wagafe naturalized on March 2, 2017. *Id.*

Mr. Mehdi Ostadhassan is an Iranian national. *Id.* ¶¶ 162, 165. He was originally admitted to the United States on a student visa in 2009. *Id.* ¶ 163. He married Ms. Baily Bubach, a U.S. citizen, on January 25, 2014, and on February 11, 2014, Ms. Bubach, submitted a Form I-130, Petition for Alien Relative, to have Mr. Ostadhassan recognized as her immediate relative. *Id.* ¶ 164. Contemporaneously, Mr. Ostadhassan applied to adjust status LPR. *Id.* ¶ 165. USCIS interviewed Mr. Ostadhassan and his wife on the petition and application on September 24, 2015. *Id.* ¶ 168. On March 24, 2017, USCIS granted Ms. Bubach's I-130 Petition, and on April 5, 2017, USCIS sent Mr. Ostadhassan a Notice of Intent to Deny ("NOID") his adjustment-of-

DEFENDANTS' MOTION TO DISMISS - 8
(2:17-cv-00094-JCC)

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

status application. The NOID gives Mr. Ostadhassan thirty-three (33) days to respond to the issues raised in the NOID, as the document was served by mail.

Ms. Hanin Omar Bengezi is a Libyan national and Canadian citizen who applied to adjust status in February 2015. SAC ¶¶ 176, 187. She came to the United States in December 2014 on a fiancée visa, and married a U.S. citizen in January 2015. SAC ¶ 186. Mr. Mushtaq Abed Jihad is an Iraqi national, who originally came to the United States as a refugee in August 2008. SAC ¶¶ 199, 204. He became an LPR upon arrival in the United States as a refugee. He applied to naturalize in July 2013. SAC ¶¶ 205-06. Mr. Sajeel Manzoor is a Pakistani national. SAC ¶ 220. He originally came to the United States on a student visa, SAC ¶ 221, and later obtained an H-1B employment visa in October 2007. SAC ¶ 222. In September 2010, Mr. Manzoor obtained LPR status, SAC ¶ 227, and in November 2015, he applied to naturalize, SAC ¶ 228.

## IV.  ARGUMENT[6]

### A.  Because Plaintiffs Admit They Have No Interest In Adjudication of Their Applications, No Real Case or Controversy Exists

In their Motion for Class Certification, Plaintiffs disclaimed any interest in obtaining a court order directing Defendants to adjudicate their individual applications for immigration benefits. ECF No. 26 at 9. Instead, Plaintiffs want only a determination that CARRP is unlawful, and an injunction preventing Defendants from applying it to the proposed class members (or, at a minimum, notice and an opportunity to challenge a decision to process a particular application in accordance with CARRP). *Id*. The Court has discretion to treat this statement as a judicial admission. *See Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003) (courts have discretion to consider statements in briefs judicial admissions); *Cook v. Reinke*, 484 F. App'x 110, 112 (9th Cir. 2012) (court could construe statement in motion as judicial

---

[6] Although not directly stated in any Claim for Relief, Plaintiffs make repeated references to CARRP directing USCIS officials to make "unwarranted denials" on "pretextual grounds." *See* SAC at ¶¶ 84, 91, 94, 97, 278, 282, 288, 293. Plaintiffs lack standing to challenge an allegedly unlawful denial because no Plaintiff's application has been denied, nor do Plaintiffs' proposed class definitions seek to represent applicants whose applications have already been adjudicated. *See* Motion for Class Certification, ECF No. 26 at 8. As well, the Court would lack jurisdiction to review discretionary denials of adjustment of status applications under 8 U.S.C. §1252(a)(2)(B)(ii); *Aldarwich v. Hazuda*, 593 F. App'x 654, 655 (9th Cir. 2015), and anyone denied naturalization has an adequate alternate remedy at law pursuant to 8 U.S.C. § 1421(c).

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

admission); *Wilson v. Bank of America, N.A.*, No. 12-cv-1532, 2013 WL 275018, at *6 (W.D. Wash. Jan. 24, 2013) (construing admission in response memorandum as judicial admission).

If Plaintiffs lack any interest in adjudication of their applications, they lack standing to bring this action. They cannot manufacture standing by identifying a policy they claim is causing their applications to be delayed, and simultaneously disclaim any interest in a judicial resolution of the specific delays they claim to have suffered. That is no case or controversy. "[F]or a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013). Having disclaimed any interest in adjudication of their individual applications, Plaintiffs seek judicial determination only of the "abstract" harm allegedly caused by the policy. The Supreme Court and the Ninth Circuit have repeatedly held that abstract disputes—even those alleging the government has acted unlawfully—are insufficient to establish jurisdiction. *Lance v. Coffman*, 549 U.S. 437, 441-42 (2007) (*per curiam*) ("The only injury [they] allege is that the law . . . has not been followed"); *Allen v. Wright*, 468 U.S. 737, 754 (1984) ("This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court"), *abrogated on other grounds by Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); *Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015). In light of Plaintiffs' admission that they have no personal interest in this matter, the Court should dismiss the action in its entirety for lack of jurisdiction.

**B. Plaintiffs' First, Second, Third, Fifth, Sixth, and Tenth Claims for Relief Must Be Dismissed Because Plaintiffs Lack Standing**

It is axiomatic that Article III of the Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). One of the prerequisites for the existence of a case or controversy under Article III is that the plaintiff have standing. *Id.* at 560. To have standing, (1) the plaintiff must have suffered an injury in fact, i.e. an invasion of a legally protected interest, which is (a) concrete and particularized and (b) actual or imminent; (2) there must be a causal connection between the injury and the conduct

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. *Id.* at 560-61. Plaintiffs do not meet this test, as adjudication of their benefit applications has not been suspended and they are not be injured by any violation of the Uniform Rule Clause.

### 1. Because Adjudication of Plaintiffs' Benefit Applications Has Not Been Suspended Pursuant to E.O. 13780, Plaintiff Have Not Suffered Injury-in-Fact

In Claims One, Two, Three, Five, and Six, Plaintiffs make various claims based on the alleged suspension, pursuant to E.O. 13780, of the adjudication of their benefit applications. Plaintiffs lack standing to bring these claims, because E.O. 13780 does not suspend the adjudication of immigrant benefit applications by persons within the United States, and USCIS has not suspended the adjudication of Plaintiffs' benefit applications pursuant to E.O. 13780.

As Plaintiffs acknowledged, *see* Plaintiffs' Notice of Related Cases, ECF No. 22, at 2-3, despite some initial guidance from subordinate USCIS officials interpreting E.O. 13780's predecessor, E.O. 13769, to preclude adjudication of benefit applications from citizens of Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen, the USCIS Acting Director confirmed USCIS would continue to process benefit applications from nationals of those countries present in the United States. *See* Scialabba Memo ("Section 3(c) of the [E.O. 13769] does not affect USCIS adjudication of applications and petitions filed for or on behalf of individuals in the United States regardless of their country of nationality.").[7]

While the President subsequently rescinded E.O. 13769, and issued E.O. 13780 in its stead, E.O. 13780, 82 Fed. Reg. 13209, 13218, nothing in E.O. 13780 suspends the adjudication of immigration benefit applications made by persons present in the United States. *Id.* Indeed, the Order explicitly limits application of its entry suspension provision in section 2 (which is distinct

---

[7] In *Washington v. Trump*, No. 17-35105, 2017 WL 526497 (9th Cir. 2017), the Ninth Circuit concluded that it could not rely on the White House Counsel's guidance that Section 3(c) of the Executive Order did not apply to lawful permanent residents because the Executive Order prima facie applied, and the White House Counsel was not "empowered to issue an amended order superseding the Executive Order" nor was he "known to be in the chain of command for any of the Executive Departments." *Id.*, slip copy at 21-22. Here, in contrast, the Scialabba Memo was issued by the Acting Director who is clearly in the chain of command, and her interpretation is consonant with section 3(c) of E.O. 13769, which, on its face, applies only to entry and not to benefit applications submitted by or on behalf of individuals already present in the United States.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

from adjudication of immigrant benefit applications) to persons who "are outside the United States on the effective date of this order." *Id.* at § 3(a)(i), 82 Fed. Reg. at 13213.

That USCIS has not suspended processing or adjudication of Plaintiffs' benefit applications pursuant to either of the executive orders is demonstrated by the recent approval of Mr. Wagafe's naturalization application and issuance of a NOID to Mr. Ostadhassan.

Clearly, Plaintiffs have not suffered any injury-in-fact from a suspension of adjudication of their benefit applications as alleged in Claims One, Two, Three,[8] Five, and Six. Consequently, they lack standing to bring these claims, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992), and those claims should be dismissed.

### 2. Plaintiffs Lack Standing To Complain About a Violation of the Constitution's Uniform Rule of Naturalization Clause

Plaintiffs allege that applying CARRP to the processing of their naturalization applications (and those of the putative Naturalization Plaintiff Class members) violates the clause of the Constitution that confers on Congress the power "[t]o establish a uniform rule of naturalization . . . throughout the United States," i.e. Article I, Section 8, Clause 4. SAC ¶¶ 289-293. Plaintiffs lack standing to assert a violation of this clause.

First, there is no private right of action under Article I, Section 8, Clause 4. *Flores v. City of Baldwin Park*, No. 14-cv-9290, 2015 WL 756877, *3 (C.D. Cal. Feb. 23, 2015). The Clause is an affirmative grant of authority to Congress, and does not confer any rights on private individuals. *See Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 912 (9th Cir. 2004) (*citing* THE FEDERALIST No. 32 (Alexander Hamilton)). As the Ninth Circuit recently explained, "[t]he uniformity requirement was a response to tensions that arose from the intersection of the Articles of Confederations Comity Clause and the states' divergent naturalization laws, which allowed an alien ineligible for citizenship in one state to move to another state, obtain citizenship, and return

---

[8] To the extent Plaintiffs' Third Claim for Relief was intended also to allege that the "extreme vetting" directed under section 5 of E.O. 13780 violates the Establishment Clause of the Constitution (which is not at all clear from the language of the Second Amended Complaint), the allegation provides no basis to find it justiciable, *see Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485-86 (1982), and fails to state a plausible claim to relief. *See Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972); *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

to the original state as a citizen entitled to all of its privileges and immunities." *Korab v. Fink*, 797 F.3d 572, 580-81 (9th Cir. 2015) (citing *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 (1824)).

Second, because the Clause is an affirmative grant of authority to Congress, even assuming *arguendo* that CARRP violates the clause, the entity suffering any invasion of a legally protected interest as a result of a violation would be Congress, not Plaintiffs.[9] Consequently, Plaintiffs have not suffered an injury-in-fact, i.e., an invasion of a legally protected interest. Because Plaintiffs cannot have suffered a legally cognizable injury from a violation of the Clause, and because the Clause does not create a private right of action, Plaintiffs lack standing to pursue a claim based on its alleged violation.

### C. Plaintiffs' Claims Concerning "Extreme Vetting" Under E.O. 13780 Must Be Dismissed Because They Fail To Allege Sufficient Facts To Give Rise To Plausible Claims For Relief

Plaintiffs' obligation to allege the grounds of their entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Courts are not bound to accept as true legal conclusions couched as factual allegations, and factual allegations must be sufficient to raise the right to relief above the speculative level. *Id*. In other words, the complaint must contain sufficient *factual* allegations to state a claim that is "plausible." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citations and quotations omitted).

As alleged in the Second Amended Complaint, section 5 of E.O. 13780 requires Defendants to "implement a program, as part of the process for adjudications, to identify individuals . . . who present a risk of causing harm," and develop a "*uniform baseline* for

---

[9] Further, it is doubtful the Executive can violate the Uniform Rule of Naturalization Clause, which concerns the division of authority over naturalization as between Congress and state governments. If the Executive has exceeded its statutory authority by applying CARRP—which, according to Plaintiffs' allegations, USCIS is applying uniformly throughout the entire country—the problem is not that USCIS is violating the Uniform Rule clause, but rather that its actions are *ultra vires* under the INA. We address that claim, which Plaintiffs assert in their Fourth Claim for Relief, in section IV.E. below.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

1  screening and vetting standards and procedures, including a mechanism to assess whether

2  applicants may commit, aid, or support any kind of violent, criminal, or terrorist acts after

3  entering the United States, and any other appropriate means for ensuring . . . a rigorous

4  evaluation of all grounds . . . for denial of…immigration benefits." SAC ¶ 138 (internal

5  quotations omitted) (emphasis added). Further, they allege section 4 of the Order "specifies that

6  applications for a visa, admission, or other immigration benefit made by Iraqi nationals must still

7  be subjected to thorough review to determine whether the applicant has any connections to ISIS

8  or any other terrorist organization or may be a terrorist or national security threat." *Id*. ¶ 139

9  (internal quotations omitted). Plaintiffs also allege that, in the Presidential Memorandum issued

10  March 6, 2017, the President "instruct[ed] the Secretary of State and the Secretary of Homeland

11  Security, in conjunction with the Attorney General, to implement protocols and procedures as

12  soon as practicable that *in their judgment* will enhance the screening and vetting of applications

13  for visas and all other immigration benefits," and "rigorously enforce all existing grounds of

14  inadmissibility and to ensure subsequent compliance with related laws after admission." *Id*. at ¶

15  139 (internal quotations omitted) (emphasis added).

16       Apart from conclusory and formulaic allegations that the development and

17  implementation of a baseline for screening and vetting benefit applicants "will dramatically

18  expand CARRP," SAC ¶ 140, Plaintiffs allege no actual facts that plausibly establish

19  Defendants, in carrying out the directives of sections 4 and 5 of E.O. 13780, or the Presidential

20  Memorandum of March 6, 2017, have adopted, or will adopt, measures that would expand

21  CARRP, violate the law, or require notice and an opportunity to respond. Because Plaintiffs have

22  failed to allege sufficient facts to establish they have suffered any injury from the provisions of

23  sections 4 and 5 of E.O. 13780 or the Presidential Memorandum of March 6, 2017, they have

24  failed to state a claim upon which relief can be granted.

25      **D. Plaintiffs' Fourth Claim for Relief Fails to Allege a Procedural Due Process**
       **Violation and Must Be Dismissed Because Plaintiffs Have Not Been Deprived of**
26         **a Protected Liberty or Property Interest**

27       In their Fourth Claim for Relief, Plaintiffs allege "Defendants' failure to give Plaintiffs

28  and members of the Extreme Vetting Naturalization and Extreme Vetting Adjustment-of-Status

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

Classes notice of their classification under CARRP (or successor "extreme vetting" program), a meaningful explanation of the reason for such classification, and any process by which Plaintiffs can challenge their classification, violates the Due Process Clause of the Fifth Amendment to the United States Constitution." SAC ¶¶ 263. "To establish a due process violation, a plaintiff must show that he has a protected property interest under the Due Process Clause and that he was deprived of the property without receiving the process that he was constitutionally due." *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008). *See also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972). Here, Plaintiffs have failed to state a viable claim for relief because they are not being deprived of any liberty or property interest.

To begin, there is no protected liberty or property interest in discretionary benefits, such as adjustment of status. *See* 8 U.S.C. § 1255(a) ("The status of an alien . . . may be adjusted by the Attorney General, in his discretion . . ."); *Sandoval-Luna v. Mukasey*, 526 F.3d 1243, 1247 (9th Cir. 2008). *See also McCreath v. Holder*, 573 F.3d 38, 41 (1st Cir. 2009); *Hamdan v. Gonzales*, 425 F.3d 1051, 1060 (7th Cir. 2005); *Nativi-Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003). And because, as a constitutional matter, "no alien has the slightest right to naturalization," *Fedorenko v. United States*, 449 U.S 490, 506 (1981) (internal quotation omitted), there is no "protected liberty interest in naturalization beyond that which Congress has provided by statute." *Morgovsky v. DHS*, 517 F. Supp. 2d. 581, 585 (D. Mass. 2007) (citing *United States v. Ginsberg*, 243 U.S. 472, 474 (1917)).

Nor do Plaintiffs (and the class members they seek to represent) have a constitutionally protected liberty or property interest in the pace of adjudication of their benefit applications. *See Mendez-Garcia v. Lynch*, 840 F.3d 655, 666 (9th Cir. 2016) (procedural delays in adjudication "do not deprive aliens of a substantive liberty or property interest unless the aliens have a 'legitimate claim of entitlement' to have their applications adjudicated within a specified time."). Plaintiffs erroneously rely on 8 U.S.C. § 1571(b) as creating an enforceable time limit. That provision, however, under the heading "Policy," provides "the sense of the Congress that the processing of an immigration benefit should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). The Ninth Circuit has explained that "'Sense of the

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

Congress' provisions are precatory provisions, which do not in themselves create individual rights or, for that matter, any enforceable law." *Orkin v. Taylor*, 487 F.3d 734, 740 (9th Cir. 2007).

Even if section 1571(b) constituted positive law rather than a policy statement, statutory deadlines for government actions are generally interpreted as hortatory and do not limit [the government's] power or render its exercise in disregard of the requisitions ineffectual." *French v. Edwards*, 80 U.S. (13 Wall.) 506, 511 (1872). As the Supreme Court observed: "It ignores reality to expect that the Government will be able to secure perfect performance from its hundreds of thousands of employees scattered throughout the continent." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 433 (1990). Thus, statutory deadlines, when applied to the Government, are typically advisory and meant to prod the Government to expeditious action.

The Ninth Circuit has cautioned that "[a] statutory time period providing a directive to an agency or public official is not ordinarily mandatory 'unless it *both* expressly requires the agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision.'" *Ezell v. United States*, 778 F.3d 762, 765 (9th Cir. 2015) (quoting *In re Siggers*, 132 F.3d 333, 336 (6th Cir. 1997)) (emphasis in original). *See also Brock v. Pierce Cty.*, 476 U.S. 253, 259 (1986) (internal citation and quotations omitted); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993) ("If a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction."); *Rodriguez v. Superintendent, Bay State Corr. Ctr.*, 139 F.3d 270, 272 (1st Cir. 1998) ("Before operating as a mandate, a statutory time limitation addressed to a public official generally must contain both an express command that the official act within a given temporal period and a consequence attached to noncompliance."); *St. Regis Mohawk Tribe, N.Y. v. Brock*, 769 F.2d 37, 41-42 (2d Cir. 1985) (collecting authority and noting a statutory time period is not mandatory unless it both expressly requires action and provides a

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

consequence for failure to comply). Here, there is no express guarantee of decision within any particular time-frame.[10] Nor is there any consequence for failing to meet a statutory schedule.

Accordingly, there is no liberty or property interest protected by the Due Process Clause at stake. Without a liberty or property interest in either the benefits sought or the pace of adjudication, Plaintiffs cannot be due the process to which they claim entitlement. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). Plaintiffs have, therefore, failed to state a claim upon which relief may be granted.

### E. Plaintiffs' Seventh Claim for Relief Must Be Dismissed Because the Immigration and Nationality Act Does Not Create A Private Right of Action

Plaintiffs Seventh Claim for Relief asserts that CARRP violates 8 U.S.C. §§ 1427 and 1255, which establish the requirements to naturalize and the eligibility criteria for adjustment of status, respectively. SAC ¶¶ 276-77. This claim must be dismissed because neither section creates a private right of action. Consequently, Plaintiffs lack standing to bring a claim under those sections, and the court lacks jurisdiction over it.

"[P]rivate rights of action to enforce federal law must be created by Congress. *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) (the remedies available are those 'that Congress enacted into law')). "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co.*, 442 U.S. at 568 (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979)) (internal quotations omitted).

"The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander*, 532 U.S. at 286 (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). Where the statute does not reveal a congressional intent to create a private right of action, the

---

[10] Section 1447(b) of Title 8, U.S. Code, provides that if 120 days after an applicant has been examined regarding his naturalization application no determination has been made, the applicant may apply to a district court for a hearing on the matter. 8 U.S.C. § 1447(b). But even this provides only an alternative forum, not an entitlement to a decision within a particular time. *Ahmadi v. Chertoff*, No. 07-cv-03455, 2007 WL 3022573, at *10 (N.D. Cal. Oct. 15, 2007) ("There is no right to have an application adjudicated within 120 days of completion of the examination").

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

federal courts "may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id. See also Touche Ross & Co*, 442 U.S. at 568 ("our task is limited solely to determining whether Congress intended to create the private right of action asserted"). "[T]he burden is on [the plaintiff] to demonstrate that Congress intended to make a private remedy available." *Suter v. Artist M.*, 503 U.S. 347, 363 (1992).

On its face, neither section 1427 nor 1255 expressly creates a private right of action. 8 U.S.C. §§ 1255, 1427. To determine whether Congress implied a private right of action in a statute that contains no express provision, the Court must consider whether: (1) the plaintiff is of the class for whose especial benefit the statute was enacted; (2) there is any indication of legislative intent to create or exclude a private right of action; (3) it is consistent with the underlying purposes of the legislative scheme to imply a private right of action; and (4) whether the cause of action is traditionally relegated to state law. *Cort v. Ash*, 422 U.S. 66, 78 (1975). A few years after *Cort*, the Supreme Court clarified that "the focus of the inquiry is on whether Congress intended to create a remedy." *California v. Sierra Club*, 451 U.S. 287, 297 (1981).

The Supreme Court also explained that, in considering whether the plaintiff is of a class for whose "especial benefit" the statute was enacted, "[t]he question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." *Id.* at 294. The Court also said that silence on the remedy question serves to confirm that, in enacting the law, Congress was not concerned with private rights. *Id.* at 296. Additionally, the Supreme Court has held that statutory schemes that provide private rights of action in some situations but not others weigh against inferring a private right of action because "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Touche Ross & Co.*, 442 U.S. at 572; *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 773 (1981).

When sections 1255 and 1427 are examined in light of these principles, the Court must conclude Congress implied no private rights of action of which Plaintiffs might avail themselves. First, while Plaintiffs might benefit from statutes that establish requirements for naturalization or criteria for adjustment of status, these statutes were not enacted for Plaintiffs' "especial benefit."

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

Rather, the primary purpose of both these statutes is to protect the interests of the People of the United States by establishing requirements and criteria that must be met before an alien may become a permanent resident or citizen, just as criminal laws are enacted for the benefit of society, and not for the "especial benefit" of future crime victims.

Second, there is no indication Congress intended to imply any private right of action to challenge alleged violations beyond those explicitly provided in 8 U.S.C. §§ 1421(c) and 1447(b). Indeed, Congress' explicit creation of a private right of action in section 1447(b) for a naturalization applicant who has not received a decision within 120 days following examination on his application strongly suggests Congress did not intend to create a private right of action to challenge the pre-examination application of the INA.

Further, inferring a private right of action under sections 1255 and 1427 would be inconsistent with the statutory scheme of the INA. An applicant begins the process by submitting an application to USCIS. 8 U.S.C. §§ 1255, 1445(a). Next, for a naturalization applicant, USCIS must conduct an investigation of the applicant. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. As part of the investigation of the applicant, USCIS requests a full criminal background investigation on the applicant. 8 C.F.R. § 335.2(b). USCIS is prohibited by law from interviewing a naturalization applicant until USCIS receives a definitive response from the FBI that a full criminal background check of the individual has been completed. Dep't of Commerce & Related Agencies Appropriation Act, 1998, Pub. L. 105-119, title I, 111 Stat. 2440, 2448-49 (Nov. 26, 1997) (beginning with fiscal year 1998, no USCIS funds may be used to complete adjudication of an application for naturalization unless USCIS has received confirmation from the FBI that a full criminal background check has been completed); 8 C.F.R. § 335.2(b). The INA does not prescribe a time limit for the pace of the investigation, or the examination required by section 1446. Once USCIS interviews an applicant, however, the applicant may petition the district court for a *de novo* determination of his eligibility for naturalization, if the agency does not render a decision within 120 days. 8 U.S.C. § 1447(b).

Similarly, for adjustment applicants, Congress did not create a private right of action in the INA. 8 U.S.C. § 1255 (lacking any right for adjustment applicants to seek judicial review).

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

And, the Secretary is only permitted to approve individuals for LPR status after determining that the applicant is eligible for the status—which includes a finding that the alien is (1) physically present in the United States, (2) eligible to receive an immigrant visa, (3) an immigrant visa is immediately available to the alien, and (4) the alien is admissible to the United States—and warrants a favorable exercise of the Secretary's discretion. 8 U.S.C. § 1255(a).

From this statutory scheme, it is apparent Congress intended that applicants be fully and thoroughly vetted before being granted benefits under the INA, and recognized that the time it would take to adequately investigate applicants and determine eligibility would vary based on individual circumstances. Accordingly, while Congress provided a private right of action for an naturalization applicant who had not received a decision within 120 days following his examination, it omitted any similar private right of action during the pre-examination, investigation phase of the naturalization process, or during the adjudication of an adjustment-of-status application. The Court should, therefore, conclude that 8 U.S.C. §§ 1255 and 1427 do not provide Plaintiffs with private rights of action. If those sections do not provide private rights of action, then Plaintiffs lack standing, and the Court lacks jurisdiction over that claim.

### F. Plaintiffs' Eighth Claim for Relief Fails to State a Claim Under the APA Because It Does Not Relate To a Final Agency Action

Plaintiffs' Eighth Claim fails to state a claim and should therefore be dismissed. *See* SAC ¶¶ 279-82. The APA provides a right to judicial review of "final agency actions for which there is no other adequate remedy in a court." 5 U.S.C. § 704. APA review, however, is unavailable here because the CARRP handling process is not final action, and there is no legally required time within which USCIS must decide naturalization or adjustment-of-status applications.

For an action to be final, and reviewable under the APA, the action must (1) "mark the 'consummation' of the agency's decision-making process," and (2) the action "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997). The first question courts ask is whether the agency "has rendered its last word on the matter." *Oregon Natural Desert Ass'n v. United States Forest Service,* 465 F.3d 977, 984 (9th Cir. 2006) (citing *Whitman v. Am. Trucking Ass'n*, 531

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

U.S. 457 (2001)).

As alleged, CARRP is not a final agency action but rather part of the process of adjudicating an application, falling within the eligibility and background investigation process mandated by the INA, *see* 8 U.S.C. §§ 1446(a), (b); 1255(a)(2). It is a way for USCIS to investigate and verify information in certain cases, and to ensure reasoned decisions. Further, by their own definition, Plaintiffs' proposed Adjustment-of-Status and Naturalization Classes only cover cases that are "pending," not ones in which a final decision has been reached. Because CARRP itself is not a final agency action, and none of the Plaintiffs challenge a final administrative decision to deny a benefit application, this Court should dismiss Plaintiffs' Eighth Claim for Relief.

**G. Plaintiffs' Ninth Claim for Relief Must Be Dismissed For Failure To State a Claim as the Allegations in the Complaint Establish CARRP Is *Not* a "Substantive" or "Legislative" Rule**

Plaintiffs' Ninth Claim for Relief alleges CARRP is a substantive agency rule, within the meaning of 5 U.S.C. § 551(4), that was not properly promulgated through notice-and-comment rulemaking. SAC ¶¶ 285-87. Nevertheless, the facts Plaintiffs allege demonstrate CARRP does not violate the APA's notice-and-comment requirements.

The APA provides that, absent good cause, an agency may issue a "legislative rule" only by using the APA's notice-and-comment procedure. *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1087 (9th Cir. 2003). An agency need not follow notice-and-comment procedures, however, to issue "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice." 5 U.S.C. § 553(b)(3)(A); *Mora-Meraz v. Thomas*, 601 F.3d 933, 939 (9th Cir. 2010). In general, legislative rules "create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Hemp Indus.*, 333 F.3d at 1087. Interpretive rules and rules of agency organization, procedure, or practice, on the other hand, "do not add to[] the substantive law that already exists in the form of a statute or legislative rule." *Id.*

To distinguish between the two, the Ninth Circuit has adopted a framework first articulated by the D.C. Circuit in *American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106, 1109 (D.C. Cir. 1993). *Hemp Indus.*, 333 F.3d at 1087; *Wilson v.*

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

*Lynch*, 835 F.3d 1083, 1099 (9th Cir. 2016); *Erringer v. Thompson*, 371 F.3d 625 (9th Cir. 2014) (all applying the *Am. Min. Congress* framework). Under this framework, a legislative rule, *i.e.*, a rule that "has the force of law," will be found: (1) when, in the absence of the rule, there would not be an adequate legislative basis for agency action; (2) when the agency has explicitly invoked its general legislative authority; or (3) when the rule effectively amends a prior legislative rule. *Hemp Indus.*, 333 F.3d at 1087. Here, USCIS has not invoked its general legislative authority, so only the first and third prongs of the *American Mining Congress* test are at issue.

CARRP does not fill a legislative void that Congress left to USCIS to fill; rather, an adequate legislative basis for CARRP exists. With respect to naturalization, sections 1423 through 1427 and 1429 of title 8, United States Code, and 8 C.F.R. § 316.2, provide a number of criteria that an applicant must meet to demonstrate eligibility to naturalize. Section 1446(a) of title 8 mandates a "personal investigation of the person applying for naturalization." Likewise, section § 1255 provides eligibility criteria for adjustment of status, and gives the Secretary of Homeland Security discretion whether to grant the benefit. Further, section 1357(b) authorizes USCIS to take and consider evidence concerning any matter which is material or relevant to the enforcement of the INA.

These statutes and regulations constitute an adequate legislative basis for USCIS to undertake the procedural steps laid out in CARRP in the adjudication of benefit applications. Even as described by Plaintiffs in their Second Amended Complaint, CARRP is a process to ensure USCIS is considering all relevant information relating to cases with possible national security concerns. Nothing in CARRP, however, is required to enable or authorize USCIS to investigate an applicant's eligibility or to consult with supervisors or other agencies concerning whether an applicant is eligible for the benefit sought, and, in the case of an adjustment-of-status applicants, whether the applicant warrants a favorable exercise of discretion.[11]

---

[11] Plaintiffs also mention 8 U.S.C. § 1159(b) and 8 C.F.R. § 209.1, which concern the adjustment of status of refugees. Although Plaintiffs allege Mr. Wagafe previously adjusted under this provision, *see* First Amended Complaint, ECF No. 17 at ¶¶ 115-116, no plaintiff is currently seeking adjustment in this manner.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

Second, as described in Plaintiffs' Second Amended Complaint, CARRP does not effectively amend a prior legislative rule. This scenario occurs "'only if it is inconsistent with another rule having the force of law.'" *Erringer*, 371 F.3d at 632 (quoting *Hemp Indus.*, 333 F.3d at 1088). In the naturalization context, 8 U.S.C. § 1427(a) and 8 C.F.R. § 316.2 enumerate the criteria for naturalization. With respect to adjustment of status, 8 U.S.C. § 1255(a) delegates rule-making authority for adjustment of status to the Executive Branch, which has crafted several categories of "restricted" and "ineligible" aliens. *See* 8 C.F.R. § 245.2(b)-(c). CARRP neither alters these criteria, nor purports to restrict the statutory discretion conferred by section 1255(a).

Instead, CARRP is a process to vet cases with an articulable link to national security concerns and to determine the proper adjudicative action to take within statutory limits. SAC ¶¶ 55, 60, 62. *See also* ECF 27-1 at 7-8. A directive to fully vet potential national security concerns is not a substantive change in the standards for either adjustment of status or naturalization. Applying the *American Mining Congress* factors, CARRP is not a legislative or substantive rule. Rather, it is properly characterized as a "general statement[] of policy, or rule[] of agency organization, procedure or practice," and thus exempt from APA notice-and-comment rulemaking. *See Mora-Meraz*, 601 F.3d at 939 (citing 5 U.S.C. § 553(b)(3)(A)).

This conclusion is consistent with established Ninth Circuit precedent. In *L.A. Closeout, Inc. v. DHS*, 513 F.3d 940 (9th Cir. 2008), the Ninth Circuit held that an internal Department of Homeland Security memorandum that, as here, "simply provided the agency's construction of the regulation in a particular factual circumstance" was an interpretive rule. *Id.* at 942. The fact that there may be a substantive impact on Plaintiffs because a particular procedure is more time consuming than another does not transform an interpretive rule or a rule of agency practice or procedure into one with the force of law. Indeed, the Ninth Circuit "rejected the notion that procedural rules with a substantive impact are subject to notice-and-comment requirements." *So. Cal. Edison Co. v. FERC*, 770 F.2d 779, 783 (9th Cir. 1985). *See also Alcaraz v. Block*, 746 F.2d 593, 614 (9th Cir. 1984). Finally, the Ninth Circuit long ago adopted the D.C. Circuit's holding that "section 553(b)(3)(A) extends to 'technical regulation of the form of agency action and proceedings.'" *So. Cal. Edison Co.*, 770 F.2d at 783 (citing *Pinkus v. U.S. Bd. of Parole*, 507

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

F.2d 1107, 1113 (D.C. Cir. 1974)). That is precisely what Plaintiffs allege CARRP is—a technical regulation of the form of agency proceedings.

It should come as no surprise, then, that courts have consistently rejected similar challenges. In one putative class action concerning naturalization delays, the court rejected a claim that the "expanded name check" program constituted a substantive rule. *Ahmadi v. Chertoff*, No. 07-cv-03455, 2007 WL 3022573 (N.D. Cal. Oct. 15, 2007). The court explained:

> The expanded name check has created significant delays. The expanded name check did not, however, add a new requirement in the naturalization process, as plaintiffs contend. The agencies have long been required to conduct an investigation into an applicant's background before adjudicating an application. The expanded name check merely enlarged the scope of that investigation.

*Id.* at *9. Numerous other courts have reached identical conclusions in the FBI name check context. *See, e.g.*, *Sawan v. Chertoff*, 589 F. Supp. 2d 817, 833-34 (S.D. Tex. 2008) (collecting cases); *Hani v. Gonzales*, No. 3:07-cv-517-S, 2008 WL 2026092, at *5 (W.D. Ky. May 8, 2008) (collecting cases). According to Plaintiffs' allegations, CARRP likewise expands the scope of an investigation, and directs adjudicators how best to use the limited resources available to them in conducting that investigation. That is not substantive law. Because, as the facts Plaintiffs have alleged demonstrate, CARRP does not establish a substantive rule under delegated legislative authority, it does not violate the APA's notice-and-comment rulemaking mandate. Accordingly, Plaintiffs' Ninth Claim for Relief should be dismissed for failure to state a claim.

## V.   CONCLUSION

For the foregoing reasons, the Court should dismiss the Second Amended Complaint, in part, for lack of jurisdiction, and, in part, for failure to state claims upon which relief can be granted.

/

/

/

/

/

Dated: April 18, 2017                              Respectfully submitted,

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

CHAD A. READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director, District Court Section

CHRISTOPHER W. DEMPSEY
Chief, National Security
    & Affirmative Litigation Unit

EDWARD S. WHITE
Trial Attorney, National Security
    & Affirmative Litigation Unit

/s/ Aaron R. Petty
AARON R. PETTY
Trial Attorney, National Security
    & Affirmative Litigation Unit
District Court Section
Office of Immigration Litigation
U.S. Department of Justice
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
Telephone: (202) 532-4542
E-mail: Aaron.R.Petty@usdoj.gov

Attorneys for Defendants

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 18, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Harry H. Schneider, Jr., Esq.
Nicholas P. Gellert, Esq.
David A. Perez, Esq.
Kathryn Reddy, Esq.
**Perkins Coie L.L.P.**
1201 Third Ave., Ste. 4800
Seattle, WA 98101-3099
PH: 359-8000
FX: 359-9000
Email: HSchneider@perkinscoie.com
Email: NGellert@perkinscoie.com
Email: DPerez@perkinscoie.com
Email: KReddy@perkinscoie.com

Matt Adams, Esq.
Glenda M. Aldana Madrid, Esq.
**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA 98104
PH: 957-8611
FX: 587-4025
E-mail: matt@nwirp.org
E-mail: glenda@nwirp.org

Emily Chiang, Esq.
**ACLU of Washington Foundation**
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Telephone: (206) 624-2184
E-mail: Echiang@aclu-wa.org

Jennifer Pasquarella, Esq.
**ACLU Foundation of Southern California**
1313 W. 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5211
Facsimile: (213) 997-5297
E-mail: jpasquarella@aclusocal.org

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542

Stacy Tolchin, Esq.
**Law Offices of Stacy Tolchin**
634 S. Spring St. Suite 500A
Los Angeles, CA 90014
Telephone: (213) 622-7450
Facsimile: (213) 622-7233
E-mail: Stacy@tolchinimmigration.com

Trina Realmuto, Esq.
Kristin Macleod-Ball, Esq.
**National Immigration Project of the National Lawyers Guild**
14 Beacon St., Suite 602
Boston, MA 02108
Telephone: (617) 227-9727
Facsimile: (617) 227-5495
E-mail: trina@nipnlg.org
E-mail: kristin@nipnlg.org

Hugh Handeyside, Esq.
Lee Gelernt, Esq.
Hina Shamsi, Esq.
**American Civil Liberties Union Foundation**
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2616
Facsimile: (212) 549-2654
E-mail: lgelernt@aclu.org
E-mail: hhandeyside@aclu.org
E-mail: hshamsi@aclu.org

/s/ Aaron R. Petty
AARON R. PETTY
U.S. Department of Justice

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, DC 20044
(202) 532-4542