1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15
16
17
18
19

| | |
|---|---|
| ABDIQAFAR WAGAFE, MEHDI OSTADHASSAN, HANIN OMAR BENGEZI, MUSHTAQ ABED JIHAD, and SAJEEL MANZOOR, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, President of the United States; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,<br><br>Defendants. | CASE NO. C17-0094-RAJ<br><br>ORDER |

20
21
22
23
24
25
26

   This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 56) and Plaintiffs' amended motion for class certification (Dkt. No. 49). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss and GRANTS Plaintiffs' motion for class certification for the reasons explained herein.

# I. BACKGROUND

This section summarizes the facts as set forth in Plaintiffs' second amended complaint, as is appropriate on a motion to dismiss.

## A. The CARRP Policy

This lawsuit is brought by immigration applicants to challenge an allegedly secret and unlawful government program, the Controlled Application Review and Resolution Program (CARRP). (Dkt. No. 47 at ¶¶ 1, 9.) The premise of Plaintiffs' suit is that because the Constitution expressly assigns the authority to establish uniform rules of naturalization to Congress—which Congress has done in the Immigration and Nationality Act (INA)—the United States Citizenship and Immigration Service (USCIS), as part of the executive branch, has created an extra-statutory, unlawful, and unconstitutional program in CARRP. (*Id.* at ¶¶ 1, 8, 9.)

Plaintiffs allege that USCIS created CARRP in 2008 "as an agency-wide policy to identify, process, and adjudicate certain immigration applications that allegedly raise 'national security concerns.'" (*Id.* at ¶ 55.) They allege that CARRP implements "an internal vetting policy that has not been authorized by Congress, nor codified, subjected to public notice and comment, or voluntarily made public in any way." (*Id.* at ¶ 10.) In fact, CARRP was unknown to the public until it was discovered in litigation challenging a denial of naturalization in *Hamdi v. USCIS*, 2012 WL 632397 (C.D. Cal. Feb. 25, 2012). The only information about CARRP that USCIS made public was in response to Freedom of Information Act (FOIA) requests and the litigation necessary to compel those responses. *See ACLU of S. Cal. v. USCIS*, No. 13-cv-0861 (D.D.C., filed June 7, 2013).

The policy imposes criteria to determine when an individual should be labeled a "national security concern" that Plaintiffs claim "are vague and overbroad, and often turn on discriminatory factors such as religion and national origin." (Dkt. No. 47 at ¶¶ 62–76.) The criteria also include many lawful activities such as donating to Muslim charities or

travelling to Muslim-majority countries. (*Id.* at ¶¶ 35–51, 62–76.) Plaintiffs maintain these criteria are "untethered from the specific statutory criteria Congress has authorized to determine when a person is eligible for immigration benefits." (*Id.*)

Even if an applicant meets all the statutory requirements for citizenship or adjustment of status under the INA, USCIS officers are instructed that an application in CARRP cannot be approved. (*Id.* at ¶ 77.) If an applicant meets one of CARRP's national security concern criteria, officers are guided to deny the application or delay it as long as possible. (*Id.* at ¶¶ 77, 78–97.) The applicant is neither informed that her application has been submitted to CARRP, nor able to challenge her classification as a national security concern. (*Id.* at ¶¶ 61, 96.) Ultimately, Plaintiffs allege that CARRP creates a substantive regime for immigration application processing and imposes "eligibility criteria that indefinitely delay adjudications and unlawfully deny immigration benefits to noncitizens who are statutorily eligible and entitled by law." (*Id.* at ¶ 95.)

**B. The President's Executive Orders**

Although recent court decisions across the country[1] may make Defendant President Trump's (hereinafter "the president") recent Executive Orders a non-issue, the Court will briefly address their impact on this case.

Plaintiffs initiated this lawsuit on January 23, 2017, challenging only the CARRP program. (Dkt. No. 1.) On January 27, 2017, the president issued Executive Order (E.O.) 13769, entitled "Protecting the Nation from Foreign Terrorist Entry into the United States." 82 Fed. Reg. 8977. Section 3(c) of the E.O. suspended entry into the United States of citizens or nationals of Syria, Iraq, Iran, Yemen, Somalia, Sudan, and Libya. *Id.*

---

[1] *See, e.g.*, *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017) (upholding a temporary restraining order which enjoined potions of Executive Order 13769); *Int'l Refugee Assistance Project v. Trump*, 2017 WL 2273306 (4th Cir. May 25, 2017) (upholding preliminary injunction enjoining portions of Executive Order 13780); *Hawai'i v. Trump*, 2017 WL 2529640 (9th Cir. June 12, 2017) (upholding preliminary injunction enjoining portions of Executive Order 13780).

at 8978. USCIS initially determined that E.O. 13769 required it to suspend taking action on all pending applications—except those for naturalization—of nationals from those seven countries. (*See* Dkt. No. 47 at ¶ 15; Dkt. No. 56 at 20; Dkt. No. 17 at ¶ 3.) Section 4 of E.O. 13769 called for the Secretaries of State and Homeland Security and the Directors of National Intelligence and the FBI to "implement a program, as part of the adjudication process for immigration benefits, to identify individuals seeking to enter the United States on a fraudulent basis with the intent to cause harm, or who are at risk of causing harm subsequent to their admission." 82 Fed. Reg. at 8978.

In response to E.O. 13769, Plaintiffs amended their complaint to challenge sections 3(c) and 4 of the order. (Dkt. No. 17.) Plaintiffs alleged that USCIS relied on section 3 to suspend processing immigrant visas and other immigration benefits. (*Id.* at ¶ 54.) Plaintiffs also alleged that Section 4 of the E.O. "directs federal agencies to create and implement a policy of extreme vetting of all immigration benefits applications" and that "[a]ny such 'extreme vetting' policy" would expand CARRP. *Id.* at 8978–79; Dkt. No. 17 at ¶ 4. The day after Plaintiffs filed their amended complaint, USCIS Acting Director Lori Scialabba sent a memo to all USCIS employees stating that section 3(c) did not affect the immigration applications of individuals based on the country of their nationality. (Dkt. No. 22 at 2–3.) In their notice of related cases, Plaintiffs stated that if USCIS adhered to the position expressed by Acting Director Scialabba, "it would appear that the Section 3(c) claims in this action may become moot." (*Id.* at 3.)

After the Ninth Circuit upheld a temporary restraining order enjoining portions of E.O. 13769 in *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017), the president promised to "go[] further" with a new executive action, and assured that "[e]xtreme vetting will be put in place," and that "it already is in place in many places." (Dkt. No. 47 at ¶ 115.) The president then issued E.O. 13780, which rescinded E.O. 13769 in its entirety. 82 Fed. Reg. 13209, 13218 (March 6, 2017). Stephen Miller, the president's

Senior Advisor stated that E.O. 13780 would have "the same basic policy outcome for the country." (Dkt. No. 47 at ¶ 117 (citation omitted)). Sean Spicer, the president's Press Secretary, stated that the goal of E.O. 13780 was "obviously to maintain the way we did it the first time." (*Id.* at ¶ 118 (citation omitted)).

Portions of the second E.O. were soon after enjoined in *Hawai'i v. Trump*, 2017 WL 10111673 (D. Haw. Mar. 15, 2017). There, the court concluded that there was "significant and unrebutted evidence of religious animus driving the promulgation of [E.O. 13780] and its related predecessor." *Id.* at *11. Based on this, "a reasonable, objective observer . . . would conclude that [E.O. 13780] was issued with a purpose to disfavor a particular religion." *Id.* at *13. The Ninth Circuit largely upheld the district court's order, finding that the plaintiffs were likely to succeed on their claims that the second E.O. "contravened the [Immigration and Nationality Act (INA)] by exceeding the president's authority under § 1182(f), discriminating on the basis of nationality, and disregarding the procedures for setting annual admissions of refugees." *Hawai'i v. Trump*, 2017 WL 2529640, at *23 (9th Cir. June 12, 2017).

Following the issuance of E.O. 13780, Plaintiffs filed a second amended complaint which added three named plaintiffs and a challenge to E.O. 13780, alleging that it "sanctions a major expansion of the existing CARRP program." (Dkt. No. 47 at ¶¶ 18, 26–28.)

**C. Named Plaintiffs**

All named Plaintiffs are foreign nationals from Muslim-majority countries, and have applied for naturalization or adjustment of status. (*Id.* at ¶¶ 24–28.)

Plaintiff Wagafe is a Somali national and former lawful permanent resident. (*Id.* at 24.) He applied for naturalization in November 2013 and, although he met the statutory criteria for naturalization, his application was submitted to CARRP. (*Id.* at ¶¶ 24, 142–161.) There his application remained, until five days after Plaintiffs moved for class

certification, at which point he was contacted by USCIS and an interview was scheduled. (*Id.* at ¶ 24) Within two weeks, he became a U.S. citizen. (*Id.*)

Plaintiff Ostadhassan is an Iranian national, and a Professor at the University of North Dakota, who meets all the statutory requirements to adjust his status to that of a lawful permanent resident. (*Id.* at ¶¶ 25, 162–175.) His application was submitted to CARRP. (*Id.* at ¶¶ 25, 170.) Prior to this lawsuit, Mr. Ostadhassan waited over three and a half years for a decision on his application. (*Id.* at 175, Dkt. No. 58 at 12.) On April 5, 2017, one day after Plaintiffs filed their second amended complaint, USCIS notified Mr. Ostadhassan of its intent to deny his application. (Dkt. No. 58 at 3; Dkt. No. 53 at 1.)

Plaintiff Bengezi is a Libyan national married to a United States citizen. (Dkt. No. 47 at ¶ 26.) In February 2015, she applied for adjustment to lawful permanent resident status. (*Id.*) Her application was submitted to CARRP. (*Id.* at ¶¶ 26, 196.) Soon after being added as a named plaintiff, USCIS notified her that her interview had been scheduled. (Dkt. No. 58 at 12.) USCIS approved her application on May 9, 2017. (Dkt. No. 60 at 10; Dkt. No. 60-2.)

Plaintiff Jihad is an Iraqi refugee who has resided in Washington since 2008. (Dkt. No. 47 at ¶¶ 27, 199–204.) His lawful permanent resident status became effective upon arrival in the United States. (*Id.* at ¶ 205.) He applied for naturalization in July of 2013 and satisfied all of the statutory criteria, yet his application was submitted to CARRP. (*Id.* at ¶¶ 26, 206–17.) Over three years passed with no action on Mr. Jihad's application. (Dkt. No. 58 at 12.) On April 4, 2017, Mr. Jihad was added as a named Plaintiff. (Dkt. No. 47.) He received an interview notification on April 13, 2017 and was interviewed on April 25, 2017. (Dkt. No. 58 at 12.) USCIS approved his application on May 9, 2017 and he took his oath of citizenship on May 30, 2017. (Dkt. No. 60 at 10; Dkt. No. 60-4.)

Plaintiff Manzoor is a Pakistani national who has lived in the United States since 2001. (Dkt. No. 47 at ¶ 28.) He came to the United States to obtain his Master of Science

in Marketing Research from the University of Texas and was later granted an H-1B work visa. (*Id.* at ¶¶ 221–22.) He applied for naturalization in 2015 and meets the statutory criteria; his application was submitted to CARRP. (*Id.* at ¶¶ 228–34.) No action was taken on his application, however on May 1, 2017, less than a month after being added as a named plaintiff, Mr. Manzoor was interviewed and his application was approved on the spot. (Dkt. No. 58 at 12.) He took his oath of citizenship the same day. (Dkt. No. 60-5.)

### D. Defendants' Motion to Dismiss (Dkt. No. 56)

In response to Plaintiffs' second amended complaint, Defendants now bring this motion to dismiss all claims for two reasons. (Dkt. No. 56.) First, Defendants maintain that under Federal Rule of Civil Procedure 12(b)(1) this Court lacks subject matter jurisdiction because (1) Plaintiffs lack standing, and (2) Plaintiffs' claims are moot. (*Id.* at 10–11.) Second, Defendants argue that under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs have failed to state a claim upon which relief may be granted for Claims Four, Seven through Nine, and any claims challenging "extreme vetting." (*Id.* at 11.)

### E. Plaintiffs' Motion for Class Certification (Dkt. No. 49)

After filing the second amended complaint, Plaintiffs filed the present amended motion for class certification. (Dkt. No. 49.) Plaintiffs argue that "[t]hrough CARRP, the government surreptitiously blacklists thousands of applicants who are seeking immigration benefits, labeling them 'national security threats.'" (*Id.* at 8.) In addition to themselves, "[t]housands of individuals . . . have had their applications for naturalization or adjustment of status halted, delayed, or denied by CARRP." (*Id.* at 9.) Accordingly, Plaintiffs maintain that class treatment is the appropriate avenue through which to "challenge CARRP and any other successor 'extreme vetting' program that the Executive branch may seek to implement pursuant to Sections 4 and 5 of the Second EO or through

other extra-statutory means."[2] (*Id.*)

Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs Wagafe, Jihad, and Manzoor move the Court to certify the following class, and appoint them as class representatives:

> A national class of all persons currently and in the future (1) who have or will have an application for naturalization pending before USCIS, (2) that is subject to CARRP or a successor "extreme vetting" program, and (3) that has not been or will not be adjudicated by USCIS within six months of having been filed.

(*Id.*) For simplicity, the Court refers to the above putative class as the "Naturalization Class." Additionally, Plaintiffs Ostadhassan and Bengezi move the Court to certify the following class and appoint them as class representatives:

> A national class of all persons currently and in the future (1) who have or will have an application for adjustment of status pending before USCIS, (2) that is subject to CARRP or a successor "extreme vetting" program, and (3) that has not been or will not be adjudicated by USCIS within six months of having been filed.

(*Id.*)[3] For simplicity, the Court refers to the second putative class as the "Adjustment Class."

---

[2] Defendants make much of the fact that Plaintiffs challenge a potential successor program. Given the apparent background of CARRP, this is understandable. As Plaintiffs explain in the second amended complaint, "USCIS did not make information about CARRP public, and the program was only discovered through fortuity during federal court litigation. To the extent the program has shifted in name, scope, or method, Plaintiffs may have no way to obtain that information. Thus, Plaintiffs' reference to 'CARRP' incorporates any similar non-statutory and sub-regulatory successor vetting policy, including pursuant to Sections 4 and 5 of [E.O. 13780]." (Dkt. No. 47 at ¶ 19, n.1.)

[3] In Plaintiffs' first amended complaint they asserted an additional "Muslim Ban Class," relating to the effect of Section 3(c) of E.O. 13769. (Dkt. No. 17.) In Plaintiffs' second amended complaint, they preserved the assertion of the "Muslim Ban Class" relating to the effect of Section 2(c) of E.O. 13780. (Dkt. No. 47.) Due to recent court orders enjoining E.O. 13780, *see* footnote 1, *supra*, Plaintiffs do not seek certification of the "Muslim Ban Class" at this time, but "reserve the right to seek certification of the additional class if circumstances change again." (Dkt. No. 49 at 9–10, n.1.)

## II.    DISCUSSION

### A.    Defendant's Motion to Dismiss (Dkt. No. 56)

Defendants move to dismiss Plaintiffs' claims in part under Federal Rule of Civil Procedure 12(b)(1) and in part under Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(1), Defendants ask the Court to dismiss all claims for lack of a case or controversy, and Claims One, Two, Three, Five, Six, and Ten for lack of standing. (Dkt. No. 56 at 10–11.) Under Rule 12(b)(6), Defendants request dismissal of Claims Four, Seven, Eight, Nine, and "extreme vetting" claims for failure to state a claim upon which relief may be granted. (*Id.* at 11.) For the following reasons, Defendants' motion to dismiss is **GRANTED** as to Claim Four for the Adjustment Class only. The remainder of Defendants' motion to dismiss is **DENIED**.

### 1.  Standard of Review

A defendant may move to dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A 12(b)(1) challenge to jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor," and then determining whether they are legally sufficient to invoke jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). A factual attack, on the other hand, challenges the facts that serve as the basis for subject matter jurisdiction. In evaluating a factual attack, a court may look beyond the complaint without converting the motion into one for summary judgment. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

A defendant may also move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and construes

them in the light most favorable to the non-moving party. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, to survive a motion to dismiss, a plaintiff must cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotations omitted). "Dismissal for failure to state a claim is appropriate only if it appears beyond doubt that the non-moving party can prove no set of facts in support of his claim which would entitle him to relief." *Vasquez*, 487 F.3d at 1249 (internal quotations omitted).

## 2. Case or Controversy

Defendants ask this Court to dismiss Plaintiffs' case in its entirety for lack of a case or controversy because Plaintiffs admit they have no interest in adjudication of their applications. (Dkt. No 56 at 18.) Defendants maintain that Plaintiffs "want only a determination that CARRP is unlawful, and an injunction preventing Defendants from applying it to the proposed class members." (Dkt. No. 56 at 18 (citing Dkt. No. 26 at 15)). Defendants ask this Court to exercise its discretion and consider Plaintiffs' statement as a judicial admission, and find that because Plaintiffs have no interest in the adjudication of their claims, there is no case or controversy, which therefore deprives this Court of jurisdiction on standing grounds. (Dkt. No. 56 at 18–19.) This argument fails for three reasons.

First, what Plaintiffs actually said in the cited brief is that they are not asking the Court to adjudicate their individual immigration applications. (Dkt. No. 26 at 9.) Therefore, what Defendants are actually asking this Court to do is consider *their interpretation* of a portion of Plaintiffs' first motion to certify class (Dkt. No. 26) and conclude it is a judicial admission. This the Court will not do.

Second, Defendants misconstrue Plaintiffs' claims. While Plaintiffs do want a determination that CARRP is unlawful, they also seek an order compelling USCIS to "adjudicate Plaintiffs' and proposed class members' petitions, applications, or requests based solely on the statutory criteria." (Dkt. No. 47 at 51.)

Third, as Plaintiffs point out, "adjudicating the named Plaintiffs' applications does not resolve the core issue in this case: whether CARRP and any successor 'extreme vetting' program is lawful." (Dkt. No. 58 at 14.) Defendants' contention that this Court does not have jurisdiction for want of case or controversy fails. Defendants' motion to dismiss on this ground is **DENIED**.

### 3. Claims One, Two, Three, Five, Six, and Ten

Defendants next move to dismiss Claims One, Two, Three, Five, Six, and Ten for lack of standing. (Dkt. No 56 at 19.) Standing consists of three elements: the plaintiff (1) must have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Once a party asserts the absence of subject matter jurisdiction, the opposing party invoking the court's jurisdiction bears the burden of proving it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

#### a. Claims One, Two, Three, Five, and Six

Defendants first argue that Plaintiffs have not suffered an injury in fact as to claims One, Two, Three, Five, and Six because Executive Order (E.O.) 13780 "does not suspend the adjudication of immigrant benefit applications by persons within the United States, and USCIS has not suspended the adjudication of Plaintiffs' benefit applications pursuant to E.O. 13780." (Dkt. No. 56 at 19.) Specifically, Defendants point to Plaintiffs' notice of related cases, (Dkt. No. 22), in which they acknowledged that these claims "may become moot." (Dkt. No. 56 at 10, 19.) In that notice, Plaintiffs were referring to

then-Acting Director of USCIS Lori Scialabba's memo regarding E.O. 13769—the predecessor to E.O. 13780—in which she stated that E.O. 13769 "does not affect USCIS adjudication of applications and petitions filed for or on behalf of individuals in the United States regardless of their country of nationality." (Dkt. No. 22 at 2–3; Dkt. No. 56-1.) Defendants argue that because adjudication of Plaintiffs' applications have not been suspended pursuant to E.O. 13780, they have not suffered an injury.

The Court makes three observations in response to Defendants' arguments. First, Plaintiffs stated only that their claims *may* be moot, and made such statements prior to the president issuing E.O. 13780. Second, Acting Director Scialabba's memo pertained to E.O. 13769, which was rescinded by E.O. 13780, and therefore no longer has relevance.

Third, Plaintiffs' claims do establish an injury in fact. Claims One and Two allege that Defendants have interpreted the first E.O. and "will interpret the Second EO to authorize the suspension" of immigration applications. (Dkt. No. 47 at ¶ 251, 257.) Claim Three, which is based on the Establishment Clause, alleges that the "Second EO is intended to target a specific religious faith—Islam," because Defendants are "not pursuing a course of neutrality with regard to different religious faiths." (Id. at ¶ 261.) Claim Five is a Due Process challenge based on Plaintiffs being "denied immigration benefits for which they are statutorily eligible, and to which they are entitled by law." (Id. at ¶ 266.) Claim Six alleges an Equal Protection violation in that Defendants' indefinite suspension of applications under CARRP and E.O. 13780 discriminates on the basis of "country of origin" and is "substantially motivated by animus toward—and has a disparate effect on—Muslims." (Id. at ¶¶ 268–69.) Furthermore, even if E.O. 13780 does not suspend the applications, Plaintiffs allege that CARRP or another "extreme vetting" program,[4] independent of E.O. 13780, suspended Plaintiffs' applications or will suspend applications of the putative class, and that such suspension was unlawful. This is

---

[4] See note 2, *supra*.

sufficient to survive a motion to dismiss.

Another consideration for the Court is that USCIS has now acted on all of the applications of the named Plaintiffs, after up to three and a half years of inactivity. (Dkt. No. 58 at 11–12.) Curiously, USCIS's actions on these applications took place almost immediately after Plaintiffs were added as proposed class representatives. To the extent that Defendants argue this fact moots Plaintiffs' claims, "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). It is the party asserting mootness that has the "heavy burden of persuading" the Court that the challenged conduct will not resume. *Id.* This standard is a "stringent" one, and even "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," a case only "might become moot." *Id.*

Here, Plaintiffs allege this unlawful practice has been ongoing since the inception of the CARRP program in 2008. Plaintiff Wagafe waited three and a half years for action on his application. That prompt action has been taken on Plaintiffs' applications subsequent to their being named class representatives does not convince the Court that Defendants have met their burden that the alleged unlawful conduct could not reasonably be expected to recur. Furthermore, acting on applications subjected to CARRP—that were highlighted by a lawsuit challenging it—is very different than voluntary cessation of the CARRP program.

### b.  Claim Ten

Defendants next argue that Plaintiffs lack standing to assert Claim Ten—a violation of the Constitution's Uniform Rule of Naturalization Clause—because (1) there is no private right of action under the clause, and (2) even if CARRP violated the clause,

Congress would be injured, not Plaintiffs. (Dkt. No. 56 at 21–22.)

As to Defendants' first argument, the cases cited do not support it. *Flores v. City of Baldwin Park* dealt with a remand issue and whether the Uniform Rule of Naturalization Clause completely preempted state law. 2015 WL 756877, *3 (C.D. Cal. Feb. 23, 2015). *Cazarez-Gutierrez v. Ashcroft* dealt with sentencing. 382 F.3d 905, 912 (9th Cir. 2004). And *Korab v. Fink* mentioned the history of the clause but nowhere in that opinion does this Court find the proposition that a private litigant does not have standing to bring suit for its violation. 797 F.3d 572, 580–81 (9th Cir. 2014). In contrast, a naturalization applicant was allowed to challenge a state law which barred naturalization on the basis of homosexuality because "the resulting inconsistencies undermine[d]" the Uniform Rule of Naturalization Clause. *Nemetz v. I.N.S.*, 647 F.2d 432, 435 (4th Cir. 1981).

Defendants' second argument—that it is Congress, and not Plaintiffs, that would be injured—also fails. Assuming Congress would be injured by CARRP's alleged addition of non-statutory and substantive requirements to naturalization, it does not follow that Plaintiffs could not also be injured. For once Congress "establishes such uniform rule [of naturalization], those who come within its provisions are entitled to the benefit thereof as a matter of right, not as a matter of grace." *See Schwab v. Coleman*, 145 F.2d 672, 676 (4th Cir. 1944). Defendants' motion to dismiss Claims One, Two, Three, Five, Six, and Ten on the basis of standing is **DENIED**.

### 4. Extreme Vetting Claims

Defendants argue that Plaintiffs' claims "concerning 'extreme vetting' under E.O. 13780 must be dismissed" for failure to allege sufficient facts to support them. (Dkt. No. 56 at 22.) While the Court agrees that any claims about enjoining a potential future extreme vetting program may be premature, Defendants do not direct the Court to any specific claims for relief that must be dismissed. The only claim for relief that even

mentions "extreme vetting"[5] is Claim Four. (Dkt. No. 47 at ¶ 263.) This claim alleges a Due Process violation for failure to give Plaintiffs and members of the putative classes "notice of their classification under CARRP (or successor 'extreme vetting' program), a meaningful explanation of the reason for such classification, and any process by which Plaintiffs can challenge their classification." (*Id.*) The Court cannot enjoin a program that is currently nonexistent; if the Court ultimately enjoins CARRP, and Defendants implement a successor program substantially similar to CARRP,[6] such conduct would be in violation of the Court's injunction. The main thrust of this case is the legality of CARRP. The Court will not dismiss Plaintiffs' claims because they include allegations of a possible future and unlawful program that would embody CARRP in all but name.

### 5. Claim Four

Defendants next argue that Plaintiffs' Fourth Claim for relief, which alleges a Due Process violation, should be dismissed because Plaintiffs have not been deprived of a protected liberty or property interest. (Dkt. No. 56 at 23.)

Procedural Due Process claims "hinge[] on proof of two elements: (1) a protect[ed] liberty or property interest . . . and (2) a denial of adequate procedural protections." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). Given CARRP's apparently clandestine nature, and a lack of opposition from Defendants on this point, the second element is met. Thus, the issue is whether Plaintiffs have asserted a protected liberty or property interest in having their applications adjudicated lawfully. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He

---

[5] Two of the proposed classes in the second amended complaint—but not the motion for class certification—contain "extreme vetting" in their title, but bear no relevance to the motion to dismiss.

[6] As Plaintiffs point out, due to the secretive nature of CARRP, it is plausible such a program is already in existence. (Dkt. No. 47 at ¶¶ 19 n.1, 59.)

must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

The Ninth Circuit, and other courts, have held that naturalization applicants have a property interest in seeing their applications adjudicated lawfully. *Brown v. Holder*, 763 F.3d 1141, 1147 (9th Cir. 2014); *see also Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (finding a constitutionally protected interest in nondiscretionary immigration applications); *I.N.S. v. Pangilinan*, 486 U.S. 875, 884 (1988) (noting there is no discretion to deny naturalization if an applicant is otherwise qualified); *Schwab*, 145 F.2d at 676–77 ("[T]hose who come within [the Uniform Rule of Naturalization] are entitled to the benefit thereof as a matter of right[.]"); *United States v. Shanahan*, 232 F.169, 171 (E.D. Pa. 1916) ("It is, of course, true that . . . admission to citizenship . . . is not a right, but a privilege . . . . When an applicant has met all the requirements of the law, the privilege accorded him ripens into a right . . . he is entitled to citizenship."). As the United States Supreme Court explained nearly 100 years ago:

> The opportunity to become a citizen of the United States is said to be merely a privilege, and not a right. It is true that the Constitution does not confer upon aliens the right to naturalization. But it authorizes Congress to establish a uniform rule therefor. Article 1, Sec. 8, cl. 4. The opportunity having been conferred by the Naturalization Act, there is a statutory right in the alien to submit his petition and evidence to a court, to have that tribunal pass upon them, and, if the requisite facts are established, to receive the certificate.

*Tutun v. United States*, 270 U.S. 568, 578 (1926).

Defendants counter that "no alien has the slightest right to naturalization." (Dkt. No. 56 at 24 (quoting *Fedorenko v. United States*, 449 U.S. 490, 506 (1981)). However, Defendants' citation of *Fedorenko* omits a significant portion of the quote. The complete citation reads, "'No alien has the slightest right to naturalization *unless all statutory requirements are complied with*.'" *Fedorenko*, 449 U.S. at 506 (quoting *United States v. Ginsberg*, 243 U.S. 472, 474–75 (1917)) (emphasis added). Here, Plaintiffs allege that all

the statutory requirements have been complied with, and the application of CARRP's extra-statutory requirements deprives Plaintiffs of the right to which they are entitled. This is sufficient to allege a violation of due process. Defendants' motion to dismiss Claim Four is DENIED as to the Naturalization Class.

Plaintiffs who seek adjustment of their status is a different matter. "The status of an alien . . . may be adjusted by the Attorney General, in his discretion." 8 U.S.C. § 1255(a). As numerous courts have held, discretionary relief, such as adjustment of status, is not a protected property interest. *Sandoval-Luna v. Mukasey*, 526 F.3d 1243, 1247 (9th Cir. 2008); *McCreath v. Holder*, 573 F.3d 38, 41 (1st Cir. 2009); *Hamdan v. Gonzales*, 425 F.3d 1051, 1060 (7th Cir. 2005); *Nativi-Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003). Therefore, Plaintiffs who seek an adjustment of status cannot claim a due process violation, and Claim Four is **DISMISSED WITH PREJUDICE** as to the Adjustment Class.

Finally, Defendants argue that Plaintiffs do not have a constitutionally protected interest in the pace of their adjudication. (Dkt. No. 56 at 24.) However, this misconstrues Plaintiffs' claims. Plaintiffs' case centers on their allegation that an extra-statutory policy based on discriminatory and illegal criteria is blocking the fair adjudication of immigration benefits of which they are statutorily eligible. (*See* Dkt. No. 58 at 23.) Pace of the adjudication is a byproduct of that allegation, not the allegation itself. The Court therefore will not address Defendants' argument.

### 6. Claim Seven

Defendants argue that Plaintiffs' Claim Seven—that CARRP violates the INA— must be dismissed because the INA does not create a private right of action, and therefore Plaintiffs lack standing. (Dkt. No. 56 at 26.) The Court need not decide whether Congress has implied a private right of action under the INA, because Plaintiffs are challenging agency action. Section 10(a) of the Administrative Procedure Act (APA) provides a right

of action for plaintiffs who challenge administrative action that violates a federal statute. Any "person . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702; *see also Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1176–77 (9th Cir. 2004) ("[T]he end result is the same whether the underlying statute grants standing directly or whether the APA provides the gloss that grants standing. In both cases, the plaintiff can bring suit to challenge the administrative action in question. In the first case, the substantive statute grants statutory standing directly to the plaintiff. In the second case, the substantive statute is enforced through Section 10(a) of the APA."); *Hernandez-Avalos v. I.N.S.*, 50 F.3d 842, 846 (10th Cir. 1995) ("[A] plaintiff who lacks a private right of action under the underlying statute can bring suit under the APA to enforce the statute."). The proper question for the Court, therefore, is whether Section 10(a) of the APA applies to Plaintiffs' suit.

Whether Section 10(a) applies to a given suit turns on whether a plaintiff is "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). The "'zone of interests' test is 'not meant to be especially demanding,' and a court should deny standing only 'if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Cetacean*, 386 F.3d at 1177 (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)). The "benefit of any doubt goes to the plaintiff." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012). Under this standard, it is arguable that those applying for immigration benefits fall within the zone of interests of the statute that sets forth the requirements for obtaining those benefits. Accordingly, Defendants' motion to dismiss Plaintiffs' Claim Seven is **DENIED**.

### 7. Claim Eight

Defendants move the Court to dismiss Plaintiffs' Claim Eight—that CARRP is a final agency action that is arbitrary and capricious and in violation of the INA and USCIS's statutory authority—for failure to state a claim because it does not relate to a final agency action. (Dkt. No. 56 at 29.)

Under the APA, for an agency action to be reviewable, it must be final. 5 U.S.C. § 704. An action is final if it (1) "mark[s] the 'consummation' of the agency's decision-making process," and (2) is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennet v. Spear*, 520 U.S. 154, 178 (1997) (quoting *Port of Boston Marine Terminal Ass'n. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

Defendants argue that "the CARRP handling process" and the delays caused by CARRP are not final agency actions. However, Defendants again misrepresent Plaintiffs' claim. Plaintiffs allege that CARRP—the policy itself—is a final agency action, "not any one applicant's adjudication thereunder." (Dkt. No. 58 at 30; Dkt. No. 47 at ¶ 280.) The Court therefore analyzes whether the overall CARRP policy, its inception and implementation, constitutes final agency action under the *Bennet* test.

Plaintiffs allege that USCIS initiated CARRP in 2008, and since that time, it has been responsible for delaying and denying thousands of immigration applications. (See Dkt. No. 47 at ¶¶ 55–97.) The first prong is met because CARRP is an active program implemented by the agency and represents the culmination of USCIS's decision making process. The implementation of CARRP affects the thousands of applicants whose qualified applications are allegedly indefinitely delayed or denied without explanation. The second prong is met because this results in distinct legal consequences. The Court therefore finds that CARRP is a final agency action. Defendants' motion to dismiss Claim Eight is **DENIED**.

### 8. Claim Nine

Finally, Defendants move to dismiss Plaintiffs' Claim Nine—that CARRP was not properly subjected to the notice-and-comment procedure—because it is not a substantive or legislative rule. Under the APA, an agency may issue a "legislative rule" only by using the APA's notice-and-comment procedure. 5 U.S.C. § 553 (b), (c); *Hemp Indus. Ass'n v. DEA*, 333 F.3d 1082, 1087 (9th Cir. 2003). Failure to implement the notice-and-comment procedure invalidates the resulting regulation. *See Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005). Exempt from this rule, however, are "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice." 5 U.S.C. § 553(b)(3)(A); *Mora-Meraz v. Thomas*, 601 F.3d 933, 939 (9th Cir. 2010). Defendant's motion to dismiss Claim Nine therefore turns on whether CARRP is classified as an interpretive rule or substantive rule.

"For purposes of the APA, substantive rules are rules that create law . . . imposing general, extrastatutory obligations pursuant to authority properly delegated by Congress." *S. Cal. Edison Co. v. F.E.R.C.*, 770 F.2d 779, 783 (9th Cir. 1985). On the other hand, "the critical feature of interpretive rules is that they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Perez v. Morg. Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015) (quoting *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99 (1995)). In the Ninth Circuit, a substantive or legislative rule will be found "(1) when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked its general legislative authority;[7] or (3) when the rule effectively amends a prior legislative rule." *Hemp Indus.*, 333 F.3d at 1087 (citing *Am. Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993)).

---

[7] The parties agree that the second element does not apply here and the Court will not consider it.

Defendants argue that the statutes and regulations already in place in the INA, 8 U.S.C. §§ 1255, 1357(b), 1423–1427, and 1429, "constitute an adequate legislative basis for USCIS to undertake the procedural steps laid out by CARRP in the adjudication of benefit applications." (Dkt. No. 56 at 31.) The Court finds that the sections cited of the INA do not support Defendants' argument. For example, Defendants maintain that because 8 U.S.C. § 1446(a) requires a "personal investigation of the person applying for naturalization," an adequate legislative basis for CARRP exists. (Dkt. No. 56 at 31.) However Plaintiffs' allegations suggest that CARRP goes well beyond a personal investigation and instead "creates a separate substantive regime for immigration application processing and adjudication." (Dkt. No. 58 at 28; Dkt. No. 47 at ¶ 95.) Plaintiffs allege that "[u]nder CARRP, non-statutory indicators of a national security concern include travel through or residence in areas of known terrorist activity; a large scale transfer or receipt of funds; a person's employment, training, or government affiliations . . . [;] or other suspicious activities." (Dkt. No. 47 at ¶ 74.) Those indicators alone may seem like reasonable considerations under a "personal investigation." However, the allegation that the presence of such an indicator therefore labels the application as a "national security concern" and "forbids USCIS from granting the requested benefit," (*id.* at ¶ 92) and guides "officers to deny such applications . . . or delay adjudication as long as possible," (*id.* at 77), taken as true, transports CARRP into the realm of the substantive.

Addressing the third part of the framework, Defendants argue that CARRP does not amend a prior legislative rule but rather "is a process to vet cases with an articulable link to national security concerns and to determine the proper adjudicative action to take within statutory limits." (Dkt. No. 56 at 32.) The Court disagrees. The INA already contains indicators of national security concerns for those seeking lawful permanent resident status, asylum, or a visa. 8 U.S.C. §§ 1182(a)(3)(A), (B), and (F), 1227(a)(4)(A)

and (B). Taking Plaintiffs' allegations as true, CARRP goes beyond these statutory indicators. CARRP would therefore effectively amend a prior legislative rule.

Finally, the Court notes that because CARRP only came to light through litigation and FOIA requests, (*see* Dkt. No. 47 at ¶ 59), its issuance cannot be said to be interpretive because it "advise[d] the public of" nothing. *See Perez*, 135 S. Ct. at 1204. Accordingly, the Court finds that Plaintiffs allege sufficient facts to support their claim that CARRP is a substantive rule subject to the notice-and-comment procedure of the APA. Defendants' motion to dismiss Claim Nine is **DENIED**.

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion to dismiss (Dkt. No. 56). It is granted in that Claim Four is **DISMISSED** as to the Adjustment Class only. It is **DENIED** in all other respects.

### 9. Plaintiffs' Amended Motion for Class Certification (Dkt. No. 49)

### 1. Legal Standard for Class Certification

A party seeking to litigate a claim as a class representative must affirmatively satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). In determining whether the plaintiffs have carried this burden, the Court must conduct a "rigorous analysis." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). This inquiry may "entail some overlap with the merits of the plaintiff's underlying claim[,]" though the Court considers the merits only to the extent that they overlap with the requirements of Rule 23 and allow the Court to determine the certification issue on an informed basis. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). The ultimate decision to certify a class is within the Court's discretion. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

### 2. Rule 23(a) Requirements

Rule 23(a) requires that one or more members of a class may sue as a representative plaintiff only if (1) the class is so numerous that joinder is impracticable; (2) there are common questions of law or fact to the class; (3) the claims or defenses of representative parties are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the absent class members. Fed. R. Civ. P. 23(a); *See also Mazza*, 666 F.3d at 588 (Rule 23(a) requires "numerosity, commonality, typicality and adequacy of representation"). Defendants contest certification on commonality, typicality, and adequacy grounds. (Dkt. No. 60 at 13.) Because a rigorous analysis is required regardless of a defendant's opposition, the Court addresses each requirement independently. However, the Court first addresses Defendants' more general opposition to class certification on standing grounds.

Defendants oppose class certification because "'[a] named plaintiff cannot represent a class alleging [] claims that the named plaintiff does not have standing to raise.'" (*Id.*) (quoting *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001). Defendants argue that the named Plaintiffs, and all proposed class members, lack standing to challenge (1) CARRP, because "they have disclaimed any interest in obtaining decisions on their pending applications, and (2) an "extreme vetting" program under E.O. 13780, because they have not suffered an injury. (*Id.*)

As to the first argument, the Court has already concluded the Plaintiffs have standing to challenge CARRP. *See* Section II(A)(2)(a) and (b), *supra*. Regarding any "extreme vetting" program, Defendants are correct that Plaintiffs may not have not suffered any injury because Plaintiffs are unaware if such program currently exists. However, as discussed above, Plaintiffs' allegations regarding an "extreme vetting" program safeguard against the Government doing away with CARRP and reinstituting a substantially similar program under a different name, either in an effort to moot

Plaintiffs' claims, or insulate CARRP from judicial review. *See* Section II(A)(2)(c), *supra*. As Plaintiffs correctly point out, "[t]o the extent any 'extreme vetting' policy developed pursuant to the Second EO expands or continues CARRP, it will suffer from the same legal deficiencies as CARRP itself." (Dkt. No. 49 at 13–14.) Thus, while the Court cannot preemptively enjoin an "extreme vetting" program, it could enjoin CARRP. If that happens, an "extreme vetting" program developed pursuant to E.O. 13780, which suffers from the same legal deficiencies as CARRP, would violate this Court's order.

### a. Numerosity

Rule 23(a)'s first requirement is satisfied when the proposed class is sufficiently numerous to make joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1).[8] The numerosity requirement requires the examination of the specific facts of each case, though "in general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010); *see also Troy v. Kehe Food Distribs., Inc.*, 276 F.R.D. 642, 652 (W.D. Wash. 2011) (certifying a class of 43 to 54 workers). Here, between July 1, 2013 and September 20, 2013, USCIS reported 2,644 pending applications subjected to CARRP. (Dkt. No. 27-1 at 164–169.) The putative class likely contains thousands of members. (Dkt. No. 114 at 4; Dkt. No. 51 at 25.) The Court finds that the numerosity requirement is met.

### b. Commonality

Under Rule 23(a)(2)'s commonality requirement, a plaintiff must demonstrate that the "class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Mazza*, 666 F.3d at 588 (quoting *Dukes*, 564 U.S. at 350). The key inquiry is not whether the plaintiffs have raised common questions, but whether "class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v.*

---

[8] Defendants do not dispute numerosity. (*See generally* Dkt. No. 63.)

*U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350) (emphasis in original). Every question of law or fact need not be common to the class. Rather, all Rule 23(a)(2) requires is "a single significant question of law or fact." *Id.* (quotation omitted); *see also Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1041–42 (9th Cir. 2012). The existence of "shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (amended).

Plaintiffs posit that their claims present numerous common factual and legal issues, including whether:

- CARRP violates the INA by creating additional, non-statutory, substantive criteria that must be met prior to a grant of immigration benefits;
- CARRP violates the APA as a final agency action that is arbitrary and capricious, exceeds statutory authority, and violates the Constitution;
- CARRP constitutes a substantive rule and is therefore unenforceable for failure to provide a notice-and-comment period prior to implementation;
- CARRP violates the Uniform Rule of Naturalization, Article I, Section 8, Clause 4 of the Constitution; and
- CARRP violates the Due Process Clause of the Fifth Amendment.

(Dkt. No. 49 at 19–20.)

Defendants argue that "[a]t the heart of this case is the allegation that USCIS has unreasonably delayed adjudicating" immigration applications and resolution of this allegation requires a "fact-intensive, individualized inquiry into the causes of the delay in each case." (Dkt. No. 60 at 15.) This is incorrect. Plaintiffs' claim is that CARRP is an unlawful program. A byproduct of CARRP's alleged unlawful program is unreasonable delays.

The common question here is whether CARRP is lawful. The answer is "yes" or "no." The answer to this question will not change based on facts particular to each class member, because each class member's application was (or will be) subjected to CARRP.

Therefore, "a classwide proceeding" will "generate common answers apt to drive the resolution of the litigation." *See Troy*, 276 F.R.D. at 652–53. The commonality requirement is met.

### c. Typicality

Plaintiffs must next show that their claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (internal quotation omitted). The commonality and typicality inquiries, which "tend to merge," both serve as "guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S. Ct. at 2551, n.5 (quotations and citation omitted). Ultimately, representative class claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (noting the "permissive" nature of the typicality inquiry).

Plaintiffs maintain that their claims are typical of the proposed classes because "they proceed under the same legal theories, seek the same relief, and have suffered the same injuries." (Dkt. No. 49 at 21.) Defendants counter that because the named Plaintiffs allege they are fully eligible for the benefits they seek, and the same cannot be said for every member of the class, the named Plaintiffs are atypical of the class they seek to represent. (Dkt. No. 60 at 21.) However, Rule 23(a)(3) requires that the claims of class representatives be similar to claims of the class. Plaintiffs are not seeking specific adjudication of their applications, only that USCIS adjudicate applications "based solely

on the statutory criteria," and not pursuant to CARRP. (Dkt. No. 47 at 51.) Whether any particular Plaintiff or putative class member were statutorily eligible for the benefits sought is not determinative of typicality. Further, if an applicant were statutorily ineligible under the INA, then submitting such an application to CARRP would be redundant, and grounds for denial already exist.

The relevant claim for the typicality inquiry is whether subjecting a Plaintiff's immigration application to CARRP is lawful. The class definitions include only immigration benefit applicants whose applications have been submitted to CARRP. Defendants do not claim that any of the proposed class representatives did not have their application submitted to CARRP. Accordingly, the typicality requirement is met.

### d. Adequacy

Finally, Rule 23(a)(4) requires that the named plaintiff "fairly and adequately" protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To determine whether the representative parties will adequately represent a class, the Court must examine (1) whether the named plaintiff and her counsel have any conflicts of interest with other class members; and (2) whether the named plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *Ellis*, 657 F.3d at 985 (citing *Hanlon*, 150 F.3d at 1020). As the Ninth Circuit has noted, adequate representation depends upon "an absence of antagonism between representatives and absentees[] and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985 (quotations and citation omitted).

Plaintiffs contend that the five named Plaintiffs are adequate representatives because "there is no tension between their interests and those of the absent class members they seek to represent." (Dkt. No. 63 at 11.) The class members' interests all focus on challenging CARRP and preventing it from being applied to their or other class members' immigration applications. Further, the named Plaintiffs are all willing to prosecute this action vigorously. (Dkt. Nos. 28, 29, 50, 51, and 52.)

Defendants contest adequacy on three grounds. First, Defendants argue that the named Plaintiffs are inadequate representatives because there may be many putative class members who are aware that their applications have been pending a long time, and who would prefer to let the process "run its course." (Dkt. No. 60 at 22.) This ignores the fact that this lawsuit alleges that applicants do not receive notification that their application has been submitted to CARRP, and Defendants have yet to deny such a claim. Defendants presume that there are potential plaintiffs who applied for immigration benefits but "might prefer to allow their applications to remain pending, continuing to live and work in the United States in their current status, rather than risk having USCIS determine they are inadmissible or removable and be placed in removal proceedings." (*Id.*) This argument is speculative at best, and as such, fails.

Second, Defendants repeat their argument regarding the fact that the named Plaintiffs all claim to be eligible for the benefits they seek, and this would put them at odds with putative class members who are ineligible. (*Id.* at 22–23.) The Court addressed this argument above and applies the same reasoning here. Additionally, the Court sees no basis for conflict on underlying eligibility grounds. If CARRP is an unlawful and unconstitutional program to which all putative class members' applications are submitted, then they all have a shared interest—regardless of eligibility—in putting an end to it.

Finally, Defendants argue that the named Plaintiffs are inadequate representatives because they have all had their applications adjudicated, and thus their claims are moot. (Dkt. No. 60 at 24.) However, this argument has the opposite effect and actually persuades the Court that class certification is appropriate.

Each named Plaintiff had his or her application acted on almost immediately *after* joining this lawsuit. Assuming that this was merely CARRP and the application process running its due course and that Plaintiffs' ultimate adjudications happened to coincide with being added as named Plaintiffs—even after their applications lay stagnant for up to

four years—class certification would still be appropriate. Defendants' argument supports the conclusion that Plaintiffs' claims would appear to be "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *County of Riverside v. McLaughlin*, 500 U.S. 44. 52 (1991) (internal citation omitted). The named Plaintiffs' claims are therefore "capable of repetition, yet evading review." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) (citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)). In such a case, "mooting the putative class representative's claims will not necessarily moot the class action" even if "the district court has not yet addressed the class certification issue." *Id.* at 1090.

On the other hand, if adjudication of Plaintiffs' applications is not happenstance, and Defendants are purposely and strategically adjudicating Plaintiffs' applications as they are added as named Plaintiffs, such a blatant attempt to moot Plaintiffs' claims will not gain purchase with this Court. If this is true, Defendants appear to be engaging in a strategy of picking off named Plaintiffs to insulate CARRP from meaningful judicial review.

Such a strategy is apparently not without precedent. In *Muhanna v. USCIS*, No. 14-cv-05995 (C.D. Cal. July 31, 2014), five individual plaintiffs filed suit challenging CARRP. After waiting years for adjudication, all five plaintiffs' applications were adjudicated within months of filing suit, and the lawsuit was voluntarily dismissed as moot. *Id.*, Dkt. No. 51 (entered Dec. 23, 2014). Similarly, in *Arapi v. USCIS*, No. 16-cv-00692 (E.D. Mo. 2016), 20 individuals filed suit regarding CARRP and their pending naturalization applications. Soon after, USCIS adjudicated all 20 applications, at which point 19 plaintiffs voluntarily dismissed their claims and USCIS moved to dismiss the final plaintiff's claim as moot. *Id.*, Dkt. No. 22 (filed Dec. 19, 2016).

Defendants' argument that the mooting of named Plaintiffs' claims requires a

finding that they are inadequate representatives, thus defeating class certification, does not have the desired effect. In fact, it counsels in favor of granting class certification. *See Ellsworth v. U.S. Bank, N.A.*, 30 F. Supp. 3d 886, 909 (N.D. Cal. 2014) (defendant's "calculated strategy that includes picking off named Plaintiffs" did not moot class action claims); *Ramirez v. Trans Union, LLC*, 2013 WL 3752591, at *2 (N.D. Cal. July 17, 2013) (class certification appropriate where plaintiff's claims would "evade review" if the defendant were able to "pick off" each subsequent lead plaintiff).

Furthermore, despite their applications having been adjudicated by USCIS, the Court remains confident that the named Plaintiffs will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court further finds that Plaintiffs' counsel—attorneys from the ACLU, Law Offices of Stacy Tolchin, National Immigration Project of the National Lawyers Guild, Northwest Immigrant Rights Project, and Perkins Coie—have the experience and ability to vigorously and adequately represent the class. The adequacy requirement is met.

### 3. Rule 23(b)(2) Requirement

After satisfying the Rule 23(a) prerequisites, a plaintiff must also demonstrate that the case is maintainable as a class action under one of the three Rule 23(b) prongs. Plaintiffs move for class certification under Rule 23(b)(2). (Dkt. No. 49 at 23.) In order to satisfy Rule 23(b)(2), Defendants must "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) is met where "a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

Here, Plaintiffs allege that CARRP is unlawful and ask the Court to enjoin the Government from submitting putative class members' immigration applications to CARRP. A single ruling would therefore provide relief to each member of the class.

Accordingly, Rule 23(b)(2) is satisfied.

Having satisfied the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs' motion for class certification (Dkt. No. 49) is **GRANTED**. The Court approves of the two proposed classes, appoints the five named Plaintiffs as class representatives, and appoints Plaintiffs' counsel as class counsel for both classes. Because certification of anything less than a nationwide class would run counter to the constitutional imperative of "a uniform Rule of Naturalization," U.S. CONST., art. I, § 8, cl. 4, class certification is nationwide.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 56) is **GRANTED IN PART and DENIED IN PART**, and Plaintiffs' motion for class certification (Dkt. No. 49) is **GRANTED**.

DATED this 21st day of June, 2017.

_____
The Honorable Richard A. Jones
United States District Judge