HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDIQAFAR WAGAFE, *et al.*, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

DONALD TRUMP, President of the United States, *et al.*,

Defendants.

CASE NO. C17-94 RAJ

ORDER

This matter comes before the Court on Plaintiffs' Motion to Compel Production of Documents. Dkt. # 91. The Government opposes the Motion. Dkt. # 94. For the following reasons, the Court GRANTS in part and DENIES in part the Motion.

**I.     BACKGROUND**

On June 21, 2017, the Court granted Plaintiffs' motion to certify two classes: a Naturalization Class and an Adjustment Class. Dkt. # 69. The parties have since been engaged in discovery. The parties have attempted to resolve their discovery disputes without court intervention but have reached an impasse. Plaintiffs now move the Court to compel the Government to produce certain documents.

## II. LEGAL STANDARD

The Court has broad discretion to control discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011), *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988). That discretion is guided by several principles. Most importantly, the scope of discovery is broad. A party must respond to any discovery request that is not privileged and that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

If a party refuses to respond to discovery, the requesting party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997).

## III. DISCUSSION

Plaintiffs seek, and the Government refuses to provide, discovery in four discrete areas: (1) information to allow Plaintiffs to identify potential class members and why Named Plaintiffs were subjected to CARRP; (2) responsive documents despite their classified status, or a privilege log in lieu of the documents; (3) documents related to two Executive Orders; and (4) documents outside the scope of "national applicability." Dkt. # 91.

A. <u>Identifying Class Members</u>

As to the first matter, the Government argues that the class members' specific identities are neither relevant nor required for Plaintiffs to pursue this class action. Dkt. # 94 at 4-5. Many of the Government's arguments in opposition to this request are mere

conclusions, and therefore are not sufficient to avoid disclosure. *See id*. at 4-6. However, the Government advances two arguments that are supported by more than mere conclusions: (1) identifying class members is unreasonably burdensome, and (2) the identities of class members are privileged. *Id.* at 6-7.

In asserting that that task of identifying class members is too burdensome, the Government concedes that it already compiles potential class members into searchable databases. Dkt. # 94-6 at ¶¶ 13-21. It claims, however, that conducting detailed, quality assurance on these searches will cost up to $1.17 million. *Id.* at ¶ 26. This does not diminish the fact that the Government is capable of at least providing Plaintiffs with spreadsheets of the potential class members—information that already exists and is readily accessible. *See id.* at ¶ 23 (based on the data it has, the Government estimates that roughly 3,000 CARRP cases exist). This information is relevant and the Government can produce it without incurring such a high expense.

That Government further argues that, even if producing the records were not burdensome, the requested discovery is protected by the law enforcement privilege. Dkt. ## 94 at 7-8, 94-5 at ¶ 7. To claim this privilege, the Government must satisfy three requirements: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege. *In re Sealed Case*, 856 F.2d at 271. This privilege is qualified: "[t]he public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." *Id*. at 272.

The Government contends, broadly, that releasing the identities of potential class members could lead individuals to potentially alter their behavior, conceal evidence of wrongdoing, or attempt to influence others in a way that could affect national security interests. Dkt. # 94-5 at ¶ 18. Such a vague, brief explanation that consists of mere

conclusions, and therefore are not sufficient to avoid disclosure. *See id*. at 4-6. However, the Government advances two arguments that are supported by more than mere conclusions: (1) identifying class members is unreasonably burdensome, and (2) the identities of class members are privileged. *Id.* at 6-7.

In asserting that that task of identifying class members is too burdensome, the Government concedes that it already compiles potential class members into searchable databases. Dkt. # 94-6 at ¶¶ 13-21. It claims, however, that conducting detailed, quality assurance on these searches will cost up to $1.17 million. *Id.* at ¶ 26. This does not diminish the fact that the Government is capable of at least providing Plaintiffs with spreadsheets of the potential class members—information that already exists and is readily accessible. *See id.* at ¶ 23 (based on the data it has, the Government estimates that roughly 3,000 CARRP cases exist). This information is relevant and the Government can produce it without incurring such a high expense.

That Government further argues that, even if producing the records were not burdensome, the requested discovery is protected by the law enforcement privilege. Dkt. ## 94 at 7-8, 94-5 at ¶ 7. To claim this privilege, the Government must satisfy three requirements: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege. *In re Sealed Case*, 856 F.2d at 271. This privilege is qualified: "[t]he public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." *Id*. at 272.

The Government contends, broadly, that releasing the identities of potential class members could lead individuals to potentially alter their behavior, conceal evidence of wrongdoing, or attempt to influence others in a way that could affect national security interests. Dkt. # 94-5 at ¶ 18. Such a vague, brief explanation that consists of mere

speculation and a hypothetical result is not sufficient to claim privilege over basic spreadsheets identifying who is subject to CARRP. *See, e.g.*, *In re Sealed Case*, 856 F.2d at 272 (explaining that the SEC "submitted a lengthy declaration detailing the effect disclosure would have on its ongoing Wall Street investigation" to support its claim for privilege). Even if it were sufficient, the privilege is not automatic; the Court must balance the need for Plaintiffs to obtain this information against the Government's reasons for withholding. In doing so, the Court finds that the balance weigh in favor of disclosure. The Court notes that there is a protective order in place, Dkt. # 86, and Plaintiffs' attorneys could supplement the protective order or obtain security clearances to assuage any remaining concerns on the part of the Government. *Latif v. Holder*, 28 F. Supp. 3d 1134, 1160 (D. Or. 2014) (citing *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 983 (9th Cir. 2012)).

Finally, Plaintiffs request to know why the Named Plaintiffs were subjected to CARRP.[1] For the same reasons stated above, the Court finds that this information is relevant to the claims and Plaintiffs' needs outweigh the Government's reasons for withholding.

B. <u>Classified Documents</u>

The Government claims that no relevant classified documents exist. Dkt. # 94 at 9. It appears that the Government only searched for classified documents that relate to CARRP on a programmatic level. *Id.*; *see also* Dkt. # 91 at 11.[2] The Government asserts that any other documentation is irrelevant. As stated above, the Court rejected the

---

[1] Importantly, Plaintiffs seek this information only on behalf of the Named Plaintiffs, not for each potential class member.

[2] Plaintiffs included this clarifying information in a footnote. The Court strongly disfavors footnoted legal citations. Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e). Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014). The Court strongly discourages the parties from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

Government's conclusory arguments as to relevance. As such, the Government must either produce the relevant documents or provide Plaintiffs with a proper privilege log.

### C. Documents Related to the Executive Orders

Plaintiffs seek documents that connect any kind of "extreme vetting" program to two Executive Orders. Dkt. # 91 at 14-15. The Government refuses to search for such documents, arguing that any such documents are subject to the deliberative-process privilege. But this argument is premature; the Government fails to show why it is exempt from providing Plaintiffs with a privilege log. The Court finds that the Government must provide a proper privilege log if it means to assert a deliberative-process privilege over certain documents.

The Government further invokes Executive privilege and argues that Plaintiffs have not made a "showing of heightened need" to demand discovery from the President. Dkt. # 94 at 10-11. Plaintiffs argue that the Government must "provide alternate custodians and non-custodial sources of information that will capture the documents Plaintiffs seek." Dkt. # 91 at 16. The Court is mindful that intruding on the Executive in this context is a matter of last resort, *Cheney v. U.S. Dist. Ct. for the Dist. Of Columbia*, 542 U.S. 367 (2004), and the Court does not find that the record before it justifies such an intrusion. However, the Court orders the parties to meet and confer within thirty (30) days from the date of this Order to discuss alternative custodians and non-custodial sources of information for any discovery over which the Government asserts this specific privilege. The Court requests a joint status report within five (5) days of the court-ordered conference detailing any resolution of this issue.

### D. Nationwide Applicability

Plaintiffs object to the Government's refusal to produce documents outside the scope of "national applicability." Dkt. # 91 at 17. The Government argues that searching for documents outside of this scope is unduly burdensome and irrelevant. Dkt. # 94 at 12-13. However, Plaintiffs clarify in their Reply that they are not seeking documents

beyond those that the Government "already agreed to search." Dkt. # 95 at 7. If this is the case, then it appears that the parties are able to resolve this dispute without Court intervention. To the extent that Plaintiffs seek documents for which the Government has already searched, the Court grants the request with the caveat that the Government may produce a privilege log in lieu of the documents if appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs' Motion to Compel Production of Documents. Dkt. # 91. **The Court orders the parties to meet and confer and submit a joint status report thereafter in accordance with this Order.**

Dated this 19th day of October, 2017.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge