The Honorable Richard A. Jones

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11

ABDIQAFAR WAGAFE, *et al.*,

No. 2:17-cv-00094-RAJ

Plaintiffs,

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

v.

DONALD TRUMP, President of the United States, *et al.*,

Defendants.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

I. **INTRODUCTION**

Despite devoting the bulk of their brief to challenging the pace of discovery—an issue the Court already has under consideration—Plaintiffs' actual request sanctions is based on three alleged violations of Court orders. In none of those instances, however, have Defendants violated the Court's orders. Even assuming Defendants misunderstood the Court's intent on an issue, there are numerous special circumstances that make award of attorneys' fees at this juncture unjust—including the potential availability of attorneys' fees under the Equal Access to Justice Act ("EAJA") at the conclusion of the case. Importantly, Plaintiffs have alleged no prejudice, and Defendants recently stipulated to vacate deadlines related to expert discovery until outstanding discovery issues are resolved. Finally, even if the Court were inclined to impose sanctions, the vast majority of the attorney-time claimed by Plaintiffs cannot be awarded because it preceded the alleged violations, and thus could not have been "caused by the failure" of Defendants to abide by the relevant orders. The motion is meritless and should be denied.

II. **BACKGROUND**

A. **Court's October 19, 2017 Order ("Why" Documents and Class List)**

In Plaintiffs' First Requests for Production to Defendants ("First RFPs"), Plaintiffs requested documents about why each named Plaintiff's immigration benefit application was subjected to the Controlled Application Review and Resolution Program ("CARRP") (RFPs No. 13, 15, 17, 19, 21) (hereinafter "'why' documents"), Dkt. 92, Ex. A, and documents sufficient to identify each class member (RFPs No. 34, 35) (hereinafter "class list"), *id*. Defendants objected to producing both the "why" documents and the class list on the ground that Defendants had a law enforcement privilege to "neither confirm nor deny" whether any particular individual's immigration benefit application was subjected to the CARRP.[1] *See id*. Defendants also noted in their objections that any particular "why" document, if such existed, might also be privileged.

---

[1] With respect to the particular requests for "why" documents related to the named Plaintiffs, Defendants objected, *inter alia*, that they could "neither confirm nor deny that [the named plaintiff's] naturalization application was subject to CARRP as this information is privileged." *Id*.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

1    Dissatisfied, Plaintiffs moved to compel. Dkt. 91. Plaintiffs acknowledged that

2   Defendants had not yet made a claim of privilege over the contents of the "why" documents:

3        Because Defendants assert that privilege prevents disclosure of whether Named
4        Plaintiffs are subject to CARRP, they do not address what privilege, if any, they
         believe applies to documents disclosing why Named Plaintiffs are subject to
5        CARRP, as requested in RFP Nos. 13, 15, 17, 19 and 21.

6    Dkt. 91 at 4 n.4. In response, Defendants argued only about the privilege claim concerning the

7   *identity* of the class members, to include named Plaintiffs. Dkt. 94 at 7 ("disclosure of whether a

8   particular individual application is subject to CARRP could cause substantial harm to law

9   enforcement investigations and intelligence activities."). In reply, Plaintiffs again acknowledged

10  that Defendants had not, at that point, claimed privilege over the "why" information:

11       Defendants also ignore—and thus appear to concede as proper—Plaintiffs'
12       requests for documents related to the reasons why the five named Plaintiffs have
         been subject to CARRP. *See* Perez Decl. Ex. A at RFP Nos. 13, 15, 17, 19, 21; *id.*
13       Ex. B (raising the issue); Mot. at 3 (arguing Defendants cannot categorically
         claim privilege over this information). To the extent Defendants maintain their
14       position that these documents, too, are categorically subject to the law
         enforcement privilege, Plaintiffs' above arguments apply equally here.
15

16  Dkt. 95 at 4 n.2. The only question before the Court in the motion to compel was whether

17  Defendants had a law enforcement privilege to "neither confirm nor deny" whether any

18  particular individual's immigration benefit application was subjected to the CARRP; Defendants

19  had not asserted privilege over any particular piece of "why" information, or even identified

20  whether such information existed. Indeed, asserting privileges over reasons why a named

21  plaintiff was in CARRP would have required Defendants to admit the individual was in CARRP,

22  thereby waiving the threshold claim of privilege then being litigated. On the question before the

23  Court, the Court said:

24       [s]uch a vague, brief explanation that consists of mere speculation and a
25       hypothetical result is not sufficient to claim privilege over basic spreadsheets
         identifying who is subject to CARRP . . . .

26       [f]inally, Plaintiffs request to know why the Named Plaintiffs were subjected to
27       CARRP. *For the same reasons stated above*, the Court finds that this information
         is relevant to the claims and Plaintiffs' needs outweigh the Government's reasons
28       for withholding.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

Dkt. 98 at 3, 4 (emphasis added). The Court acknowledged the importance of protecting information identifying applications subjected to CARRP and specific information relating to individuals: "The Court notes that there is a protective order in place, Dkt. 86, and Plaintiffs' attorneys could supplement the protective order . . . to assuage any remaining concerns on the part of the Government." Dkt. 98 at 4. And, in denying Defendants' motion for reconsideration, the Court invited the parties to agree to an additional protective order. Dkt. 102, at 3.

Ultimately, in a February 2018 Joint Status Report, the parties informed the Court that Defendants would produce copies of the named Plaintiffs' alien files ("A Files") by February 28, 2018, and the class list by March 5, 2018. Dkt. 114, at 4. Plaintiffs asserted the A Files should be produced un-redacted, while Defendants stated they would produce non-privileged A File documents, consistent with their understanding that the Court's October 19, 2017 order left open the possibility of asserting privilege over particular items of information in the A Files. Defendants also stated that they reserved the right to seek relief from the Court, as necessary, concerning production of the class members list. *Id.*

On February 14, 2018, the Court acknowledged that Defendants intended to claim privilege over information in the A Files, which includes "why" documents. *See* Dkt. 140, Ex. L, at 26:7-13.[2] The Court also acknowledged that Defendants intended to seek further relief related to production of the class list. *See id.,* at 27:17-28:2.[3]

On February 28, 2018, Defendants produced the A Files, withholding certain information under the attorney-client, deliberative process, and law enforcement privileges,[4] Declaration of

---

[2] "MR. WHITE: And our intention would be, as we said earlier, to only redact that which we believe to be privileged that needs to be redacted, and provide a privilege log that identifies the privilege being claimed and the basis for it.
THE COURT: Okay. All right. Enough said on Item No. 6." Dkt. 140, Ex. L, at 26:7-13.

[3] "MR. WHITE: But what we wanted to be candid with the court about, which is the purpose of the subordinate clause [in the status report], was what we're doing now is consulting with third agencies who -- that might suffer any risk or harm from the disclosure of the names on the list. And depending on how those consultations develop -- and we're actually working those -- we may potentially come back to the court prior to the production deadline to seek further relief. But absent that, our intention is to comply with Your Honor's orders.
THE COURT: All right." Dkt. 140, Ex. L., at 27:17-28:2.

[4] Plaintiffs assume, incorrectly, that all redactions from the A Files necessarily concern "why" information, and that all "why" information, to the extent it exists, is in the A Files. Neither assumption is correct. The A

---

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 4
(2:17-cv-00094-RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

Joseph F. Carilli Jr. (Carilli Decl.) Ex. 5, and, on March 16, 2018, produced the corresponding privilege logs. Dkt. 140, Ex. Q. On March 1, 2018, in accordance with the Court's suggestion to further supplement the protective order, Defendants moved the court "to supplement the existing protective order to limit disclosure of the names, A numbers, and application filing dates of the certified class members solely to Plaintiffs' attorneys of record, any experts retained by Plaintiffs, and the Court and court personnel." Dkt. 126 at 2. On March 5, 2018, Defendants produced the class list, but withheld the information at issue in the motion for a supplemental protective order pending the Court's ruling on the motion. Carilli Decl., Ex. 6.

**B.  Court's February 14, 2018 Order ("PETT List")**

On February 14, 2018, the Court ordered Defendants to identify to Plaintiffs who among the named Custodians had served on the President-Elect Transition Team ("PETT"). Dkt. 140, Ex. L, at 21:5-8. On March 9, 2018, Defendants disclosed to Plaintiffs who among the 41 Custodians thus far identified had served on the President-Elect Transition Team, with the single exception of Secretary John F. Kelly. *See* Dkt. 140, Ex. R. Defendants explained that:

> Given Gen. Kelly's current position as the President's Chief of Staff and the limits on discovery from the President and his close advisors, *see Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367 (2004), [Defendants] have not inquired directly with Gen. Kelly whether he was on the President-Elect Transition Team, and do not believe it is appropriate or necessary to do so.

*Id*.

**C.  Production Timeline**

Defendants agreed to a discovery plan, Dkt. 78, based on certain assumptions about the scope of the issues in this case. In hindsight, that plan may have been optimistic. Further, over time, the scope of discovery and the number of documents that need to be collected and reviewed has considerably expanded. *See, e.g.,* Dkts. 104, 114, 117, 124. In September 2017, at the parties' first meet-and-confer about the First RFPs, Defendants proposed a modification to the

---

Files contain privileged information that does not have any relationship to the CARRP policy. Emrich Decl., ¶ 11. There can be no argument that redacting non-"why" information does not violate the Court's October 19, 2017 order (and the Court should not, therefore, order production of fully *un*redacted A Files). If the Plaintiffs were subject to the CARRP policy, some number of "why" documents would not necessarily be in the Plaintiffs' A Files. Those documents, to the extent they exist, will be reviewed for privilege; the non-privileged portions will be produced once review is complete.

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 5
(2:17-cv-00094-RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

pre-trial schedule to permit Defendants adequate time to produce the requested discovery and Plaintiffs adequate time for follow-on discovery. *See* Dkt. 140, Ex. E at 2. Plaintiffs rejected the proposal. *See* Dkt. 140, Ex. D, at 2; *see also id.,* Ex. F at 2.

In response to the First RFPs, in September 2017, Defendants disclosed to Plaintiffs eight custodians and ten non-custodial sources in their ESI disclosures pursuant to Agreement Regarding Discovery of Electronically Stored Information and Order, Dkt. 88. *See* Carilli Decl., Ex. 1. Subsequently, at Plaintiffs' request, Defendants added two custodians. *See* Carilli Decl., Ex. 2. For the search of the custodians' electronic mail, Defendants identified 12 search terms. *See* Carilli Decl., Ex. 3.

On November 14, 2017, Defendants informed Plaintiffs that, given the volume of documents collected to that point—750,000 in response to the First Requests for Production of Documents ("First RFPs"), not including RFP Nos. 23 and 24—Defendants would use technology assisted review ("TAR") to identify responsive documents. *See* Dkt. 140, Ex. I at 2. Subsequently, Defendants twice provided Plaintiffs with more detailed explanations of the TAR process and its impact on the production process, and sent Plaintiffs the TAR protocol. Dkt. 140, Ex. G, H. In addition, at Plaintiffs' request, in December 2017, Defendants added another 20 search terms to be applied to the named custodians. Carilli Decl., Ex. 4.

On November 17, 2017, Plaintiffs served their Second RFPs. *See* Dkt. 112, Ex. A ("Second RFPs"). At Plaintiffs' request, on January 31, 2018, Defendants provided Plaintiffs a proposed production schedule, contingent on the number of documents collected in the search for documents potentially responsive to RFP No. 24 and the Second RFPs, and followed up with a written case schedule proposal that same day. Hennessey Decl., Dkt. 140, Ex. K ("This proposal is contingent on the number of documents collected during the search for documents *responsive* to RFP No. 24 and Plaintiffs Second Request for Production to Defendants ('Second RFPs').").

On January 19 and 26, 2018, Defendants updated Plaintiffs on the progress of the TAR process. Carilli Decl., ¶ 4. On February 8, 2018, during the hearing, Defendants provided another update to Plaintiffs on the TAR process. Carilli Decl., ¶ 5. On February 16, 2018, Defendants provided Plaintiffs and the Court with their best estimate of the time it would take to complete

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

production for all the documents identified as potentially responsive to the First and Second RFPs. Dkt. 117 ("To complete the review and production of all currently outstanding discovery will, Defendants expect, take at least 6 months from present.").  A portion of the TAR process is complete and has identified more than 82,000 documents.  Dkt. 130, ¶ 1.

## II.    ARGUMENT

### A.  Standard for Imposing Sanctions Under Rule 37(b)(2)(C)

A party commits civil contempt if the party disobeys "a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). Contempt "need not be willful; however, a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *Id.* (internal citations and quotation marks omitted). Substantial compliance is also a defense to civil contempt—"[i]f a violating party has taken all reasonable steps to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) (internal citation omitted). Thus, the party alleging civil contempt must demonstrate by clear and convincing evidence that: (1) the alleged contemnor violated a court order; (2) noncompliance was more than technical or *de minimis*; and (3) the alleged contemnor's conduct was not in good faith or reasonable interpretation of the order at issue. *See Inst. of Cetacean Res. v. Sea Shepherd Conservation Society*, 774 F.3d 935, 945 (9th Cir. 2014); *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010).

The Court has two sources of sanctions authority. First, the Court has "inherent power" to sanction litigants for a "'full range of litigation abuses.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)). Second, Federal Rule of Civil Procedure 37 authorizes district courts to impose sanctions for, *inter alia*, failing to obey a discovery order. Here, Plaintiffs seek sanctions only under Rule 37(b)(2)(C). *See* Dkt. 137 at 13-16.

Rule 37(b) provides that, if a party fails to obey an order to provide or permit discovery, "the court must order the disobedient party . . . to pay the reasonable expenses, including

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). No sanctions are appropriate here, and certainly not under Rule 37(b). First, Defendants have not violated the Court's orders. Second, even if Defendants misconstrued the Court's intent and inadvertently violated an order, special circumstances exist as to each category of information at issue that substantially justify Defendants' conduct and would make an award manifestly unjust. Third, with respect to the amount of attorneys' fees sought, Plaintiffs have wholly disregarded the causation element of Rule 37. *See* Fed. R. Civ. P. 37(b)(2)(C) ("caused by the failure"). The Ninth Circuit has repeatedly held that an award of attorneys' fees under this provision is limited to fees directly attributable to, *i.e.*, "caused" by, the failure to obey the order. A sanctions motion cannot be used to shift the cost of litigating discovery matters other than the cost of remedying the violation of a court order. Here, even assuming any fees could be properly assessed against Defendants, no attorney time prior to February 28, 2018—when the first of the three alleged violations took place—is compensable.

## B. Defendants Have Not Violated Any Court Order

Although Plaintiffs spend the bulk of their brief challenging the pace of discovery, their request for sanctions is limited to three items:[5] (1) production of the list of class members with identifying information redacted pending the Court's ruling on Defendants' motion for a supplemental protective order; (2) production of redacted A Files for the named plaintiffs; and

---

[5] Although Plaintiffs do not ask for an order relating to the production of documents responsive to RFP Nos. 23 and 24, they argue Defendants violated the Court's order to produce those materials on a specific timeline. Dkt. 137 at 7, 8. In its January 10, 2018 order, the Court directed the parties to meet and confer about search terms and custodians, and directed Defendants to search for and produce responsive documents within set timeframes. Following three meet-and-confer sessions (January 26, 29, and 31), the parties were at an impasse over search terms and custodians, and Plaintiffs sought the Court's intervention, leading to the February 8, 2018 hearing. At that time, Plaintiffs raised the overall discovery schedule, as well as the search terms and custodians issue, and the Court took the matter of the overall case discovery schedule under advisement. Defendants, who had been planning to prioritize production of the non-privileged materials responsive to RFP Nos. 23 and 24 (using their proposed search terms and custodians pending judicial resolution of Plaintiffs' objections) on the court-ordered schedule, then understood the production deadlines in the January 10, 2018 order concerning RFP Nos. 23 and 24 to be subsumed in the larger issue of the overall case discovery schedule that the Court had under active consideration. If Defendants were mistaken, that mistake was made in good faith.

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

(3) Defendants' statement that it would be inappropriate to ask the former Secretary of Homeland Security and current White House Chief of Staff whether he served on the PETT.

### 1. The Class List

On February 14, 2018, at a telephonic hearing, the Court acknowledged that Defendants intended to seek further relief related to production of the class list. *See* note 4, *supra*; Dkt. 140, Ex. L, at 27:17-28:2. Then, on March 1, 2018, in accordance with the Court's prior suggestions, *see* Dkts. 98 at 4, and 102 at 3, Defendants moved for a limited protective order relating to access, disclosure, and transmittal of sensitive information on the class list. Dkt. 126. On March 5, 2018, Defendants produced the class list, but withheld the names, A numbers, and application filing dates, pending a ruling on their motion. Carilli Decl., Ex. 6 (Mar. 5, 2018 e-mail). That motion was pending when Plaintiffs filed their sanctions motion. Defendants await the Court's ruling on their motion, and will take appropriate steps once the Court rules. Sanctions are not appropriate because Defendants are not violating any Court order concerning the class list. The Court itself invited Defendants' effort to obtain tailored protection for the information at issue, and Defendants have not indicated any intent to withhold the information the Court has ordered disclosed in defiance of the Court's order; rather, Defendants are simply awaiting a ruling from the Court on the protective order motion that the Court itself twice suggested.

### 2. The Named Plaintiffs' Information

In the February 13, 2018 Joint Status Report, Defendants indicated they would produce copies of the named Plaintiffs' A Files by February 28, 2018. Dkt. 114 at 4. In that report, Plaintiffs asserted the A Files should be produced un-redacted; Defendants responded that they would produce non-privileged documents in the A Files, consistent with their understanding that the Court's October 19, 2017 order left open their ability to assert privilege over particular pieces of information in the A Files (as distinct from the earlier *categorical* claim of privilege concerning the identity of persons subjected to CARRP, which the Court rejected). At a telephonic hearing on February 14, 2018, the Court acknowledged that Defendants intended to claim privilege over documents in the A Files, including "why" documents.

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 9
(2:17-cv-00094-RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

MR. WHITE: And our intention would be, as we said earlier, to only redact that which we believe to be privileged that needs to be redacted, and provide a privilege log that identifies the privilege being claimed and the basis for it.

THE COURT: Okay. All right. Enough said on Item No. 6.

Dkt. 140, Ex. L, at 26:7-13.

On February 28, 2018, Defendants produced the A Files, protecting certain information under the attorney-client, deliberative process, and law enforcement privileges, Carilli Decl., Ex. 5 (Feb. 28, 2018 Ltr), and, on March 16, 2018, produced the corresponding privilege logs, Dkt. 140, Ex. Q. Defendants have complied with all Court orders and the production schedule agreed to by the parties (which is not a Court order). Further, Defendants and non-party government agencies have not yet fully formally asserted, explained or briefed the privileges applicable to the redactions taken from the named Plaintiffs' A files, because Plaintiffs have never filed a direct challenge to those redactions. Nevertheless, in an abundance of caution, Defendants have filed as exhibits to this opposition declarations formally asserting privileges applicable to the redacted A File information.[6] *See* Declarations of Douglas Blair, Matthew D. Emrich, Carl Ghattas, Tatum King, Corey A. Price, and John P. Wagner. Defendants are contemporaneously filing a motion for leave to submit additional declarations *ex parte* containing law enforcement sensitive information for the Court's *in camera* review. To the extent the content of any declaration does not require *ex parte*, *in camera* protection, Defendants are filing the declaration on the public docket. Nevertheless, despite the filing of these declarations, Defendants respectfully submit that the importance and sensitive nature of the information at issue requires thorough briefing before the Court rules on the claims of privilege asserted in these declarations.

---

[6] Defendants, and other government agencies, reserve the right to assert the state secrets privileged over information otherwise discoverable in this case. Consistent with judicial guidance, Defendants will invoke that privilege only as a last resort, as the privilege "is not to be lightly invoked." *United States v. Reynolds*, 345 U.S. 1, 7 (1953). Department of Justice policy also imposes strict procedures on the privilege's assertion, and we must comply with those procedures as well. *See* https://www.justice.gov/opa/pr/attorney-general-establishes-new-state-secrets-policies-and-procedures (Last visited Apr. 5, 2018). In addition, Defendants withheld certain visa related information under 8 U.S.C. § 1202(f). "Under 8 U.S.C. § 1202(f) the Secretary of State has no authority to disclose material to the public." *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741-42 (D.C. Cir. 1983) (footnotes and citations omitted). Accordingly, it is sufficient that the records "pertain[]to the issuance or refusal of visas or permits to enter the United States" in order to sustain those withholdings. 8 U.S.C. § 1202(f). Similarly Sensitive Security Information ("SSI") is protected from disclosure by statute and regulation, and the decision to withhold such information from disclosure is reviewable only in the United States Courts of Appeals, pursuant to 49 U.S.C. § 46110. 49 U.S.C. § 114; 49 C.F.R. Part 1520. *See* Declaration of Douglas Blair, ¶ 4.

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 10
(2:17-cv-00094-RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

1

      3.  <u>Secretary Kelly</u>

2        The Court has previously explained "that intruding on the Executive in this context is a

3  matter of last resort, *Cheney v. U.S. Dist. Ct. for the Dist. Of Columbia*, 542 U.S. 367 (2004)."

4  Dkt. 98 at 5. On February 14, 2018, the Court ordered Defendants to identify to Plaintiffs who

5  among the named custodians had served on the PETT. Dkt. 140, Ex. L., at 21:5-8 ("Of the

6  Custodians in this litigation, who among them were on the transition team?").

7        On March 9, 2018, Defendants identified to Plaintiffs whether 40 of the 41 named

8  Custodians had served on the President-Elect Transition Team, with the single exception of

9  Secretary Kelly. Dkt. 140, Ex. R. Defendants explained that:

10      [g]iven Gen. Kelly's current position as the President's Chief of Staff and the
        limits on discovery from the President and his close advisors, *see Cheney v. U.S.*
11      *Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367 (2004), [Defendants] have not
        inquired directly with Gen. Kelly whether he was on the President-Elect
12      Transition Team, and do not believe it is appropriate or necessary to do so.

13  *Id.*

14        Given that the Court's February 14, 2018 oral order did not directly address Secretary

15  Kelly, Defendants understood the Court's order in the context of its prior order refusing to permit

16  discovery from the President and his close advisors because of the serious concerns it would

17  raise about Executive privilege, intruding on a co-equal branch of government, and the

18  distraction it would cause to a senior government official to attend to a tangential issue in this

19  litigation. Dkt. 98 at 5; *see also In re United States*, 985 F.2d 510, 512 (11th Cir. 1993).

20  Moreover, it is unclear, what benefit further inquiry would have as Secretary Kelly has already

21  been identified as a custodian, his Department of Homeland Security emails are already

22  undergoing review for responsiveness and privilege and, under long-standing Supreme Court

23  precedent, he is protected from being deposed. *United States v. Morgan*, 313 U.S. 409, 422

24  (1941) (noting "[T]he Secretary should never have been subjected to . . . examination" and "it

25  was not the function of the court to probe the mental processes of the Secretary") (internal

26  quotation marks omitted); *see also Cheney*, 542 U.S. 367; *PBGC v. LTV Corp.*, 496 U.S. 633

27  (1990); *United States v. Nixon*, 418 U.S. 683 (1974).

28

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C. Assuming, *Arguendo*, Defendants Inadvertently Violated an Order, Defendants Were Substantially Justified and Other Circumstances Exist As to Each Category of Discovery that Would Make Sanctions Unjust**

As outlined above, Defendants have not violated any of the Court's orders. However, to the extent Defendants might have misunderstood an order, and therefore not complied with the Court's intent, Defendants' actions are substantially justified and, in any event, other circumstances would make an award unjust. *See* Fed. R. Civ. P. 37(b)(2)(C).

1. Defendants' Position Is Substantially Justified

Substantial justification "does not mean 'justified to a high degree', but is satisfied if there is a 'genuine dispute' or 'if reasonable people could differ' as to the appropriateness of the contested action." *Guam Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, Nos. 11-00014 & 11-0031, 2011 WL 4525228, *2 (D. Guam Aug. 26, 2013) (applying *Pierce v. Underwood*, 487 U.S. 552 (1988) to substantial justification under Rule 37(b)(2)). Here, Defendants' positions were all substantially justified. Defendants produced a redacted class list while awaiting the Court's decision on a motion for a limited protective order that the Court twice suggested the parties file. Defendants produced redacted A Files because privilege assertions over particular pieces of information in the A Files were not—indeed, could not have been—litigated earlier without waiving other privileges that logically had to be adjudicated first. Defendants identified all of the custodians who served on the PETT with the single exception of Secretary Kelly because of his unique position as White House Chief of Staff, the constitutional and prudential limits on discovery from close advisors to the President, and longstanding precedent limiting discovery from Cabinet Secretaries. Because a reasonable person could conclude Defendants acted in accordance with the Court's directives, sanctions under Rule 37(b)(2)(C) cannot be granted.

2. Other Circumstances Make an Award of Attorneys' Fees Unjust

In addition to Defendants' actions being substantially justified, other circumstances also make an award of attorneys' fees unjust. A number of these apply equally to all three of the asserted violations: uncertainty regarding the Court's oral directives; the need to litigate privileges one after another to avoid waiving privileges; concerns of national security and public policy; and the lack of prejudice to Plaintiffs, including the potential for attorneys' fees at the

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

conclusion of the case, all weigh against an award of attorneys' fees in the midst of discovery. Additional considerations specific to each alleged violation are also present. As a result—even if Defendants inadvertently violated an order, and even if it was not substantially justified—an award of attorneys' fees would still be improper.

### a. Circumstances that Apply to All Issues

There are a number of circumstances that apply equally to the three alleged violations. *First*, the Court's responses at the February 14, 2018 hearing to Defendants' intended actions counsel against imposition of sanctions. An oral statement may be an "order" for purposes of Rule 37, but only if it provides *unequivocal* notice that specific documents must be produced. *See Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974) (emphasis added). Here, the Court responded to Defendants' stated intentions with regard to the class list and the "why" documents in a way that appeared to indicate agreement. *See* Dkt. 140, Ex. L, at 26:7-13; 27:17-28:2. Likewise, the Court's statements concerning its reluctance to intrude on the Executive provide reasonable grounds for Defendants to have understood the February 14, 2018 order concerning the PETT issue generally as not applying in the same way to Secretary Kelly as to the other custodians. If Defendants have misinterpreted the Court's intentions, the appropriate course of action is clarification, not sanctions.

*Second*, there are layered privileges at issue that must be litigated in succession. Defendants could not have asserted, in the Fall of 2017, privileges over particular pieces of information concerning *why* the named plaintiffs were allegedly subject to CARRP without waiving their assertion of privilege over *whether* they were subject to CARRP and *who* is in the class. It would be unjust to punish Defendants for seeking to withhold privileged information over which particular claims of privilege have not been previously litigated, and that Defendants reasonably believe were not before the Court when the Court issued its October 19, 2017 order.

*Third*, "[p]ublic policy concerns must also be weighed." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 382 (9th Cir. 1988). Here, Plaintiffs are seeking thousands of names of individuals who have an articulable link to a national-security related ground of inadmissibility; the reasons why the five named Plaintiffs are allegedly within that group; and information directly

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

concerning one of the senior-most individuals in the federal government. Defendants are understandably reticent to give the Court's directives a more expansive reading than may be required. Indeed, public policy demands that national security information be protected to the fullest extent possible. Defendants would be remiss in this duty to disclose more than is required.

*Fourth*, "[a] final consideration is the existence and degree of prejudice to the wronged party." *Halaco Eng'g Co.*, 843 F.2d at 382; *see also Montano v. Solomon*, No. 07-cv-0800, 2010 WL 1947041, *1 (E.D. Cal. May 13, 2010) (finding extension to discovery deadline rendering prejudice *de minimis* constituted substantial justification for failure to comply with production deadline). Here, Plaintiffs have not identified any prejudice from any alleged violation of any specific order. Instead, Plaintiffs suggest that "delays have dramatically driven up the costs of litigation" that "make it very difficult for Plaintiffs to move forward with this case." Dkt. 137 at 14. It is not clear what this means, or how delay alone results in costs to Plaintiffs. Plaintiffs also suggest that delays "allow unconstitutional programs to persist." Dkt. 137 at 14. But this is nothing more than a conclusory assertion of what Plaintiffs allege in their Complaint. An unproven claim set in a time frame remains an unproven claim. It is not prejudice. In any event, this motion for sanctions is not Plaintiffs' only opportunity to shift the cost of the litigation onto Defendants. If Plaintiffs prevail in this case, they may seek to recover reasonable attorneys' fees under EAJA. Finally, *before* Plaintiffs filed their sanctions motion, Defendants stipulated to vacate expert discovery deadlines, to ensure discovery would be available to Plaintiffs' expert, should they decide to retain one. Dkt. 136.

### b. Circumstances Specific to Individual Issues

#### i. The Class List Is Subject to a Pending Motion

Plaintiffs' sanctions motion, with respect to the class list, is frivolous. Defendants have not refused to comply with the Court's order to produce the class list. Rather, at the Court's urging, Defendants properly and timely moved for a supplemental protective order concerning how the highly sensitive information the list contains is to be accessed and maintained, and have only retained identifying information pending the Court's ruling on their motion. Defendants will take appropriate action once the Court rules on that motion. Plaintiffs' effort to have Defendants

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

1    sanctioned *while Defendants' motion is pending before the Court* is both inappropriate and

2    disrespectful of the Court's crowded docket. This is especially true given that Defendants

3    stipulated to vacate expert discovery deadlines *before* Plaintiffs filed their sanctions motion. To

4    the extent Plaintiffs intend to use information on the class list in an expert report they remain

5    able to do so.

6              ii.    *Secretary Kelly's Involvement in This Litigation Presents Unique
                      Separation-of-Powers Issues*

7

8              Defendants answered Plaintiffs' question about which custodians worked on the PETT,

9    as ordered by the Court, for every custodian except Secretary Kelly. Secretary Kelly's situation,

10   however, presents a unique situation. He cannot be deposed with respect to his time as Secretary

11   under the *Morgan* doctrine (though Defendants have collected documents (including emails)

12   responsive to the RFPs from Secretary Kelly's time as Secretary of Homeland Security). Carilli

13   Dec., ¶ 6.  Nor can he be deposed with respect to his time as White House Chief of Staff, because

14   he is shielded by Executive Privilege. Further, given the publicly available facts concerning

15   Secretary Kelly's pre-inauguration activities and his current position as Chief of Staff to the

16   President, it would be an unnecessary and unjustified intrusion into the functioning of the White

17   House to involve Secretary Kelly in discovery in this case, as this Court previously recognized.

18   *See* Dkt. 98 at 5 ("Court does not find that the record before it justifies [] an intrusion [on the

19   Executive]"). Defendants, therefore, in light of the language concerning Executive Privilege and

20   White House discovery in the Court's October 19, 2017 order, understand the Court's February

21   14, 2018 oral order, concerning the PETT, not to require Defendants to inquire with Secretary

22   Kelly concerning whether he previously worked for the PETT. Consequently, Defendants

23   maintain they have not violated the Court's February 14, 2018 order; if they misunderstood the

24   Court's command, the misunderstanding was in good faith. Further, Plaintiffs utterly fail to

25   identify any prejudice from Defendants not having directly asked Secretary Kelly whether he

26   worked for the PETT.

27         **D.  Plaintiffs Are Not Entitled to Attorneys' Fees**

28         Plaintiffs are not entitled to attorneys' fees, first and foremost, because Defendants have

     not violated any Court order. Further, even if the Court concludes some aspect of Defendants'

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

conduct is not what the Court intended with respect to a particular order, any such conduct was not intended to violate a Court order, and a variety of special circumstances make a fee award unjust. Finally, even assuming, *arguendo*, that some fees could properly be assessed, Plaintiffs are not entitled to payment for the vast majority of their claimed time because the expenditure of that time was not "caused by the failure" to obey an order. *See* Fed. R. Civ. P. 37(b)(2)(C). Additionally, the claims themselves are excessive and improperly documented.

### a. Rule 37(b)(2)(C) Only Authorizes Award of Fees "Caused by the Failure" to Obey an Order

Citing Federal Rule of Civil Procedure 37(b)(2)(C), Plaintiffs request the Court award them attorneys' fees "starting with the September Motion to Compel." Dkt. 137 at 13-14. Ninth Circuit precedent, however, clearly establishes that the fees Plaintiffs seek are orders of magnitude greater than what that rule authorizes. Rule 37(b)(2) "provides for the award of reasonable expenses and attorney's fees 'caused by the failure' to obey a court order to provide or permit discovery. Expenses incurred outside of this particular context are not provided for in Rule 37(b)(2)." *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1385-86 (1988); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th. Cir. 1992) ("Rule 37(b)(2) has never been read to authorize sanctions for more general discovery abuse."). In addition, Rule 37(b)(2) "'must be distinguished from Rule 37(a), which provides for the award of expenses resulting from efforts to secure an order compelling discovery.'" *Toth*, 862 F.2d at 1386 n.2 (quoting *Liew v. Breen*, 640 F.2d 1046, 1051 (9th Cir. 1981)). "Thus, 'attorney-time before and during' a hearing in which a court order is imposed is 'not attorney-time incurred *on account of* failure to obey an order.'" *Id.* (quoting *Liew*, 640 F.2d at 1051) (emphasis added); *United States v. Nat'l Medical Enters. Inc.*, 792 F.2d 906, 910 (9th Cir. 1986) (quoting *Shuffer v. Heritage Bank,* 720 F.2d 1141, 1148 (9th Cir. 1983) ("a compensatory award is limited to the 'actual losses sustained as a result of the contumacy.'"); *see also Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 104 F.R.D. 119, 121-22 n.1 (C.D. Cal. 1985) (no entitlement to expenses for motion to compel where no relief pursuant to Rule 37(a) was sought).

Here, although Plaintiffs seek fees starting with their September 2017 motion to compel, Defendants' first alleged failure to obey a discovery order did not occur (even allegedly) before

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

February 28, 2018, the date on which Defendants produced redacted A Files, allegedly violating the Court's October 19, 2017 order. Consequently, the earliest possible date on which Plaintiffs can reasonably contend Defendants failed to obey any order of this Court is February 28, 2018, and all the time they have claimed prior to that date cannot possibly have been *caused by* Defendants' alleged violation of a court order. The award of attorneys' fees for time spent by Plaintiffs' counsel working on this case prior to February 28, 2018, would require the Court to disregard binding Ninth Circuit precedent that the dollar amount of fees sought as a sanction must be specifically tailored to the disobedient conduct that is challenged. *See Toth*, 862 F.2d at 1386 (remanding for adjustment of sanctions award "[b]ecause the costs and fees awarded were not properly segregated to those expenses caused by the failure to obey court orders, as circumscribed by [Rule] 37(b)(2)."). Any fees Plaintiffs seek for work performed before February 28, 2018, are not compensable because it is impossible that any such expenses were "caused by the failure to obey court orders."

### b. The Claimed Amounts Are Improper

Of the ten attorneys for whose work Plaintiffs seek fees, only six performed work on the case on or after February 28, 2018.[7] Dkt. 139-45. Assuming *arguendo* that all post-February 28, 2018, work of the those six attorneys was *specifically related to the allegedly disobedient conduct*, the maximum possible amount this Court could award Plaintiffs based on those records would be $14,532.00, rather than the $219,974.02 that Plaintiffs claim.[8]

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Sanctions should be denied.

---

[7] Attorneys Pasquarella, Realmuto, Schneider, and Tolchin do not claim fees for work performed on or after February 28, 2018. Dkt. 139 at 5; 142 at 8-27; 143 at 7-9; 144 at 6; 145 at 6. Attorneys Adams, Ahmed, Gellert, Handeyside, Hennessey, and Perez claim fees for work occurring on or after February 28, 2018. Dkt. 141 at 6; Dkt. 142 at 26-27; Dkt. 143 at 12.

[8] Defendants respectfully request the opportunity to provide the Court both a line-item analysis and an evaluation of the hourly rates claimed by Plaintiffs' counsel, should the Court conclude Plaintiffs are entitled to fees for work prior to February 28, 2018. Similarly, Defendants reserve the right to challenge any fees the records for which were not appended to the motion for sanctions.

RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS - 17
(2:17-cv-00094-RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

Dated:  April 9, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

EDWARD S. WHITE
Senior Litigation Counsel,
National Security & Affirmative
   Litigation Unit

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

/s/ *Aaron R. Petty*_____
AARON R. PETTY
JOSEPH F. CARILLI, JR.
CHRISTOPHER C. HOLLIS

TIMOTHY M. BELSAN
Deputy Chief, National Security
   & Affirmative Litigation Unit

Trial Attorneys, National Security
   & Affirmative Litigation Unit
District Court Section
Office of Immigration Litigation
U.S. Department of Justice
219 S. Dearborn St.
Chicago, IL 60604
Tel: (202) 532-4542
Fax: (202) 305-7000
Email: aaron.r.petty@usdoj.gov

*Counsel for Defendants*

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 9, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Harry H. Schneider, Jr., Esq.
Nicholas P. Gellert, Esq.
David A. Perez, Esq.
Laura Hennessey, Esq.
**Perkins Coie L.L.P.**
1201 Third Ave., Ste. 4800
Seattle, WA 98101-3099
PH: 359-8000
FX: 359-9000
Email: HSchneider@perkinscoie.com
Email: NGellert@perkinscoie.com
Email: DPerez@perkinscoie.com
Email: LHennessey@perkinscoie.com

Matt Adams, Esq.
Glenda M. Aldana Madrid, Esq.
**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA 98104
PH: 957-8611
FX: 587-4025
E-mail: matt@nwirp.org
E-mail: glenda@nwirp.org

Emily Chiang, Esq.
**ACLU of Washington Foundation**
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Telephone: (206) 624-2184
E-mail: Echiang@aclu-wa.org

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542

Jennifer Pasquarella, Esq.
Sameer Ahmed, Esq.
**ACLU Foundation of Southern California**
1313 W. 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5211
Facsimile: (213) 997-5297
E-mail: jpasquarella@aclusocal.org
E-mail: sahmed@aclusocal.org

Stacy Tolchin, Esq.
**Law Offices of Stacy Tolchin**
634 S. Spring St. Suite 500A
Los Angeles, CA 90014
Telephone: (213) 622-7450
Facsimile: (213) 622-7233
E-mail: Stacy@tolchinimmigration.com

Trina Realmuto, Esq.
Kristin Macleod-Ball, Esq.
**American Immigration Council**
100 Summer St., 23rd Fl.
Boston, MA 02110
Tel: (857) 305-3600
Email: trealmuto@immcouncil.org
Email: kmacleod-ball@immcouncil.org

Lee Gelernt, Esq.
Hugh Handeyside, Esq.
Hina Shamsi, Esq.
**American Civil Liberties Union Foundation**
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2616
Facsimile: (212) 549-2654
E-mail: lgelernt@aclu.org
E-mail: hhandeyside@aclu.org
E-mail: hshamsi@aclu.org

/s/ *Aaron R. Petty*
AARON R. PETTY
Trial Attorney, National Security
    & Affirmative Litigation Unit

UNITED STATES DEPARTMENT OF JUSTICE
Civil Division, Office of Immigration Litigation
District Court Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
(202) 532-4542