HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDIQAFAR WAGAFE, *et al.*, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, President of the United States, *et al.*,<br><br>Defendants. | CASE NO. C17-94 RAJ<br><br>ORDER |

This matter comes before the Court on Plaintiffs' Motion for Sanctions. Dkt. # 137. Defendants oppose the Motion. Dkt. # 146. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Sanctions. **BACKGROUND**

The procedural and factual history of this case is exhaustive, and the Court will not endeavor to recount every fact in this saga. However, a discussion of the events serving as the basis for Plaintiffs' present Motion for Sanctions is necessary to understand the full context of Plaintiffs' request.

On June 21, 2017, the Court granted Plaintiffs' motion to certify two classes: a Naturalization Class and an Adjustment Class.  Dkt. # 69.  Sometime in 2017, Plaintiffs propounded discovery on Defendants.  As part of their Requests for Production, Plaintiffs sought information regarding why Named Plaintiffs' applications were subjected to CARRP.  Dkt. # 140 at 138-45.  Defendants responded to these Requests by objecting "insofar as [they] assume[] that" the Named Plaintiffs' applications were subjected to CARRP.  *Id.*  Defendants neither confirmed nor denied that Named Plaintiffs' applications were subjected to CARRP and stated that "USCIS intends to withhold such Documents, as disclosure of the fact that such documents exist would negate the privilege, and any such documents are, themselves, likely to be privileged."  *See, e.g.*, *id.* at 138.

Plaintiffs were not satisfied with Defendants' response and moved to compel, among other items, the production of documents indicating whether the Named Plaintiffs were subjected to CARRP, and if so, the reasons why.  Dkt. # 91 at 8.  Defendants did not address this issue in their Response to Plaintiffs' Motion to Compel, and Plaintiffs argued in reply that this lack of opposition was a concession.  Dkt. ## 94, 95.  The Court found merit in Plaintiffs' Motion to Compel and granted it in part, requiring Defendants to disclose information explaining why the Named Plaintiffs' applications were subjected to CARRP.  Dkt. # 98.  Defendants sought reconsideration of this Order with regard to the section addressing the class list, but did not raise any issue with the Court's order to produce information regarding why the Named Plaintiffs' applications were subjected to CARRP.  Dkt. # 99.  The Court denied Defendants' motion for reconsideration.  Dkt. # 102.

In December 2017, Defendants represented that they would produce documents "referring or relating to the reasons why each named Plaintiffs' immigration benefit application was subjected to the CARRP."  Dkt. # 140 at 246.  No party addressed what kinds of documents contained this information.  At some point, Defendants apparently

indicated to Plaintiffs that the "why" information was contained in the Named Plaintiffs'
A Files.  Dkt. # 137 at 15 ("According to Defendants, the relevant information regarding
why Named Plaintiffs were subjected to CARRP is in their Alien Files."); *see also* Dkt. #
146 at 9 (explaining that "the Court acknowledged that Defendants intended to claim
privilege over documents in the A Files, including 'why' documents").  To be sure, the
Court has no independent record that Defendants have confirmed that the "why"
documents are synonymous with the A Files.  *See, e.g.*, Dkt. # 140 at 246 (delineating
between "why" documents and A Files).

     In February 2018, Defendants agreed to produce non-privileged documents
contained in the A Files, stating that they would produce these documents by February
28, 2018.  Dkt. # 114.  Defendants subsequently produced redacted A Files, though
Plaintiffs allege that none of them contained information related to why the Named
Plaintiffs' applications were subjected to CARRP.  Dkt. # 132 at 6.  At this point,
Defendants apparently did not produce documents—whether in the form of unredacted A
Files or otherwise—related to why Named Plaintiffs' applications were subjected to
CARRP.

     In the instant motion, Defendants assert that "[a]t the time of Plaintiffs' September
2017 motion to compel, the issue in dispute was whether Defendants had to acknowledge
that named Plaintiffs were subjected to CARRP, not whether any particular piece of
information in their A files was privileged."  Dkt. # 169 at 2 n.1.  It is true that the
Motion to Compel did not directly address whether certain documents within the A Files
were privileged, or even whether these A Files contained the "why" information that
Plaintiffs sought.  However, the Motion to Compel directly sought both the "whether"
and the "why" information, and Defendants raised no objection; Defendants did not argue
that either the "whether" or "why" information was privileged, nor did Defendants argue
that merely addressing the "whether" issue was privileged.  Defendants remained silent
on the matter even though they raised these threshold objections in response to the initial

1    Requests for Production.  Dkt. # 140 at 138, 140, 142, 143, 144, 145.  Therefore, the

2    issue before the Court at the time of the Motion to Compel was whether Defendants

3    needed to produce documents regarding why the Named Plaintiffs' applications were

4    subjected to CARRP, and the Court found affirmatively.

5          On March 29, 2018, Plaintiffs filed the present Motion for Sanctions against

6    Defendants based on their discovery conduct and refusal to abide by the Court's orders.

7    Plaintiffs argued, in part, that Defendants are violating the Court's order compelling

8    production of information about why Named Plaintiffs' applications were subjected to

9    CARRP.  Plaintiffs' argument is based on Defendants' refusal to produce unredacted A

10   Files, and requested relief in the form of these unredacted A Files and attorneys' fees

11   incurred in litigating these discovery abuses.  Dkt. # 137 at 17-20.  In response to the

12   Motion for Sanctions, Defendants requested leave to submit two documents *ex parte* and

13   *in camera* that would contain "sensitive nonpublic explanations of the harms and risks

14   that can be expected to result if information Defendants have withheld from production

15   were disclosed outside the U.S. government."  Dkt. # 147 at 2.  Defendants' motion

16   argued that the parties have not had the opportunity to brief the privilege issues

17   associated with unredacting the A Files.  *Id.*  As such, Defendants proposed submitting

18   documents *ex parte* and *in camera* to explain to the Court why Defendants were unable to

19   produce unredacted A Files.  *Id.*  On May 4, 2018, in light of the national security claims

20   and new privilege issues raised, this Court granted Defendants' request to file two such

21   documents *ex parte* and *in camera*.  Dkt. # 181.  The Court then reviewed the documents

22   Defendants submitted.

23         On December 18, 2018, this Court held a telephonic conference with the parties to

24   discuss, among other issues, the status of Plaintiff's Motion for Sanctions.  Dkt. # 211.

25   In this conference, Plaintiffs explained that they no longer sought sanctions relief for

26   Defendants' failure to produce the class list or identify custodians on the President-

27   Elect's transition team.  Plaintiffs stated, however, that they still sought sanctions for

Defendants' refusal to comply with previous Court orders concerning the production schedule and compelling information for why the named Plaintiffs were subject to CARRP in the form of unredacted A Files.  Defendants responded that the Court's May 4, 2018 Order essentially acted as a reconsideration of its directive ordering Defendants to produce the "why" information, and that this information would be addressed in the parties' upcoming discovery briefing.

This case was stayed due to a lapse of appropriations from January 14, 2019 to January 29, 2019.  Now that the stay is lifted, the Court considers Plaintiff's Motion for Sanctions.  Dkt. # 137.

## II.    LEGAL STANDARD

The Court has broad discretion to control discovery.  *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011), *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988).  That discretion is guided by several principles.  Most importantly, the scope of discovery is broad.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

Under the Federal Rules of Civil procedure, if requested discovery is withheld inappropriately or not answered, the requesting party may move for an order compelling such discovery.  Fed. R. Civ. P. 37(a)(1).  "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc*., 175 F.R.D. 646, 650 (C.D. Cal. 1997).  If a party fails to comply with a discovery order, the Court may also sanction that party accordingly.  Fed. R. Civ. P. 37(b)(2).  The Court has broad discretion to decide whether to compel disclosure of discovery and whether to award sanctions.  Fed. R. Civ. P. 37(a)(5); *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).  Sanctions

1   under Rule 37(b) are likewise left to the Court's discretion. *David v. Hooker, Ltd.*, 560

2   F.2d 412, 418 (9th Cir. 1977).  Rule 37 sanctions also apply to government actors and

3   agencies.  *United States v. Nat'l Med. Enterprises, Inc.*, 792 F.2d 906, 911 (9th Cir.

4   1986); *Chilcutt v. United States*, 4 F.3d 1313, 1326 (5th Cir. 1993); *see also Hernandez v.*

5   *Sessions*, EDCV16620JGBKKX, 2018 WL 276687, at *3 (C.D. Cal. Jan. 3, 2018)

6   (ordering governmental defendants to pay $22,820.00 as reasonable attorney's fees and

7   costs pursuant to Fed. R. Civ. P. 37(a)(5)(A)).

8        Moreover, Courts are vested with inherent powers that are "governed not by rule

9   or statute but by the control necessarily vested in courts to manage their own affairs so as

10  to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*,

11  501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-631

12  (1962)).  The Ninth Circuit "has recognized as part of a district court's inherent powers

13  the broad discretion to make discovery and evidentiary rulings conducive to the conduct

14  of a fair and orderly trial." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982

15  F.2d 363, 368 (9th Cir. 1992).  Additionally, a district court "has the inherent authority to

16  impose sanctions for bad faith, which includes a broad range of willful improper

17  conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

18       Sanctions issued under a court's inherent power "are available if the court

19  specifically finds bad faith or conduct tantamount to bad faith." *B.K.B. v. Maui Police*

20  *Dep't*, 276 F.3d 1091, 1107-08 (9th Cir. 2002) (quoting *Fink*, 239 F.3d at 994).  The

21  court may therefore issue sanctions "for a variety of types of willful actions, including

22  recklessness when combined with an additional factor such as frivolousness, harassment,

23  or an improper purpose."  *Id.* (quoting *Fink*, 239 F.3d at 994).  For example, a finding of

24  bad faith is warranted where an attorney "knowingly or recklessly raises a frivolous

25  argument, or argues a meritorious claim for the purpose of harassing an opponent."

26  *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997).  A party also

27  demonstrates bad faith by "delaying or disrupting the litigation or hampering

1  enforcement of a court order." *Id.* (quoting *Hutto v. Finney,* 437 U.S. 678, 689 n.14
2  (1978)).

3  **III.    DISCUSSION**

4  Defendants are correct in that the world now is very different than the one that
5  existed when Plaintiff's Motion for Sanctions was first filed.  Both parties acknowledge
6  that the communication between the parties had improved dramatically as compared to
7  the early stages of this case.  The Court appreciates the parties' transition to a more civil
8  mode of discourse.  However, with Plaintiff's Motion for Sanctions still outstanding, the
9  Court must look back in time to determine if sanctions would be appropriate in light of
10 Defendants' previous conduct.

11 Following the December 18, 2018 conference between the parties, the Court
12 understands that Plaintiffs' Motion for Sanctions now only seeks relief on two of the
13 original grounds they identified: (1) production of unredacted A Files; and (2) attorneys'
14 fees incurred with Plaintiffs' discovery efforts.  Dkt. ## 137, 211.  As for the other
15 grounds of relief identified in Plaintiffs' Motion for Sanctions, Plaintiffs' Motion is
16 **DENIED**.  The Court will consider Plaintiffs' remaining grounds in turn.

17 A. <u>Production of Unredacted A-Files</u>

18 As stated above, Plaintiffs' Motion for Sanctions seeks disclosure of the Named
19 Plaintiffs' unredacted A Files, which Plaintiffs argue were subject to disclosure via this
20 Court 's October 19, 2017 Order.  Dkt. # 137 at 20.  Defendants had produced the A Files
21 for the Named Plaintiffs, but in redacted form.  In their Response to Plaintiff's Motion for
22 Sanctions, Defendants filed another motion arguing that the parties had not previously
23 had the opportunity to brief the privilege issues associated with producing unredacted A
24 Files.  After supplemental briefing from the parties, the Court permitted Defendants to
25 file two classified documents attesting to the national security risks of disclosure *ex parte*
26 and *in camera*, though it also expressed skepticism that Defendants could not have
27 brought these issues to light sooner.  Dkt. # 181.

The Court has reviewed the documents Defendants' furnished and finds that Defendants' motion (Dkt. # 141) raised facially credible national security arguments. Although the Court believes Defendants could have, and should have, asserted its privilege claims much sooner, after reviewing the documents submitted to the Court, the Court does not believe that Defendants' ultimate position in not producing the unredacted A Files was "substantially unjustified" to the point of deserving sanctions from this Court for noncompliance.  While the Court does not rule on the ultimate viability of these privilege claims in this Order, it will not compel the production of the unredacted A Files as a sanction for noncompliance under Fed. R. Civ. P.  37(b)(2)(C).

Accordingly, on this point, the Court will **DENY** Plaintiffs' Motion for Sanctions. At this time, the Court will not direct Defendants to produce unredacted A Files.

B. Attorneys' Fees

Plaintiffs' other remaining request for sanctions relief centers on Defendants' resistance to Plaintiffs' discovery request and Plaintiffs' need to file motions to compel Defendants' compliance.  Dkt. # 137 at 17-19.  Pursuant to Federal Rule of Civil Procedure 37, if a court grants in part and denies in part a motion for an order compelling disclosure or discovery, as was the case with Plaintiffs' Motion to Compel (Dkt. # 91), the court may "apportion reasonable expenses" after giving the parties "an opportunity to be heard." *See* Fed. R. Civ. P. 37(a)(5)(C).  Moreover, as stated above, if a party fails to comply with a discovery order, as Plaintiffs allege in the present Motion for Sanctions, the Court may also sanction that party accordingly.  Fed. R. Civ. P. 37(b)(2).  The Court also has inherent authority to impose sanctions for discovery conduct undertaken in bad faith. *Primus*, 115 F.3d at 649.

As stated above, the ultimate justification for withholding unredacted A Files based on did not rise to the level of being "substantially unjustified."  Defendants eventually put forth credible arguments for why certain information in these A Files should not be disclosed without additional protections for national security reasons.

Defendants' delays in bringing these privilege assertions before the Court are of a more dubious nature.  As indicated above and in a previous order (Dkt. # 181), the Court finds that these explanations and justifications should have been asserted much sooner in the case.  It took multiple motions, including Plaintiff's Motion to Compel (Dkt. # 91) and this Motion for Sanctions, to yield a response from Defendants that passed muster, despite the presence of orders from this Court directing disclosure of this information.

For nearly a year, Defendants' positions in refusing to allow any discovery, or greatly limited discovery, delayed this case schedule and increased the cost of this litigation significantly.  Defendants resisted, without providing adequate support, most of Plaintiffs' attempts to obtain relevant documentation in any form.  The Court issued multiple orders against Defendants directing them to produce the discovery sought by Plaintiffs, which Defendants met with pushback and delayed production schedules.  It was not until Defendants' Response to this Motion for Sanctions that a credible basis for their privilege assertions as to the unredacted A Files was first articulated.

The Court finds that Defendants' conduct early in this case in resisting Plaintiff's discovery efforts was undertaken in bad faith.  Defendants' conduct delayed resolution in this case and greatly hampered enforcement of this Court's early discovery-related orders.  In the months that followed the briefing of this Motion for Sanctions, Defendants' behavior improved, and there are plenty of indications that the parties eventually reached a higher level of courtesy and cooperation regarding outstanding discovery issues.  *See, e.g.,* Dkt. # 205.  The Court applauds this improvement in decorum and civility.  However, the Court expects this to be the starting point for discovery negotiations, not the end result of nearly a year of discovery battles.  Plaintiffs expended a large amount of time and resources in litigating against Defendants' discovery abuses early in this litigation, and there is no question Defendants' behavior greatly delayed resolution of this case.

1   Accordingly, the Court will **GRANT IN PART** Plaintiffs' Motion for Sanctions

2   on this point.  In doing so, the Court will **ORDER** Defendants to pay Plaintiffs'

3   reasonable attorney fees incurred in bringing the September 2017 Motion to Compel

4   (Dkt. # 91) and this Motion for Sanctions (Dkt. # 137).  The question then turns as to the

5   proper amount of the fee award.  District courts have broad discretion to determine the

6   reasonableness of fees.  *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).  To

7   make this determination, courts determine the "lodestar amount," which is calculated by

8   multiplying the number of hours reasonably expended by a reasonable hourly rate.

9   *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  The lodestar figure

10  is presumptively a reasonable fee award.  *Id*. at 977.  The moving party has the burden to

11  produce evidence that the rates and hours worked are reasonable.  *See Intel Corp. v.*

12  *Terabyte Int'l*, 6 F.3d 614, 623 (9th Cir. 1983).

13        To assist the Court in calculating the lodestar, the fee applicant must submit

14  "satisfactory evidence . . . that the requested rates are in line with those prevailing in the

15  community for similar services by lawyers of reasonably comparable skill, experience,

16  and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984).  The relevant

17  community is that in which the district court sits.  *See Schwarz v. Sec'y of Health &*

18  *Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995).  As for the fees incurred in in bringing

19  the September 2017 Motion to Compel (Dkt. # 91), Plaintiffs have submitted a number of

20  declarations attached to this Motion for Sanctions that detail the experience, hourly rate,

21  hours, and work performed by Plaintiffs' attorneys. Dkt. ## 138-45.  Defendants do not

22  address the reasonableness of Plaintiffs' attorneys' rates in their Response, with the

23  exception of a footnote where Defendants "request the opportunity to provide the Court

24  both a line-item analysis and an evaluation of the hourly rates claimed by Plaintiffs'

25  counsel."  Dkt. # 146 at p. 17, n.8.  The Court rejects this request.  Defendants had such

26  an opportunity to contest the rates and hours worked by Plaintiffs' attorneys' in their

27  Response, but chose instead to include only a footnote and a short argument that the

1  award should be limited to the hours spent after February 28, 2018. *Id*. at 17.   This

2  approach ignores the fact that the Court has the power to award attorneys' fees under

3  either Rule 37(a), Rule 37(b), or this Court's inherent authority to award sanctions for

4  bad faith discovery abuses, all of which permit the Court to award fees before February

5  2018.

6      The Court has reviewed the rates claimed for Plaintiffs' attorneys and finds them

7  reasonable.  In reaching that determination, the Court relies on declarations that the rates

8  identified are the normal hourly rates, the experience of Plaintiffs' attorneys, the

9  Declaration of Carol Sobel (Dkt. # 138) to the extent it addresses the rates of attorneys

10 outside of this District, Defendant' lack of stated opposition to the reasonableness of the

11 rates, and on its familiarity with legal fees in the Western District of Washington at the

12 relevant time period.

13      As for the number of hours worked, in determining the reasonableness of hours

14 spent preparing a motion, the Court may exclude any hours that are excessive, redundant,

15 or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).  The

16 Court believes that the award should be limited to the time incurred litigating the Motion

17 to Compel, not the resulting discovery communications or time spent litigating

18 Defendants' Motion for Reconsideration. Fed. R. Civ. P. 37(a)(5).  Fortunately, the

19 declarations of Matt Adams, Sameer Ahmed, Nicholas P. Gellert, Hugh Handeyside,

20 Trina Realmuto, and Stacy Tolchin submitted by Plaintiffs delineate the hours and fees

21 incurred in bringing that Motion to Compel.

22      Here, the Court finds the amount of time Plaintiffs' counsel spent litigating the

23 Motion to Compel, i.e. 125.76 hours, to be reasonable in light of the complicated and

24 difficult nature of the case, the number of attorney timekeepers, the lack of opposition

25 from Defendants, and Defendants' resistance and delayed responses to Plaintiff's

26 discovery efforts.  The Court also believes that because Plaintiffs were not fully

27 successful on their Motion to Compel (Dkt. ## 91, 98), a 75% reduction of the total fees

claimed is warranted.  This apportionment is approximately in line with the percentage of arguments Plaintiffs prevailed on in their Motion to Compel.  Dkt. # 98.  The Court calculates the total amount of attorneys' fees to be awarded in connection with the Motion to Compel as $50,507.92.  This amount represents 75% of the sum of the hours and fees claimed in the declarations as follows:

| Timekeeper | Hourly Rate | Hours Worked | Total |
|---|---|---|---|
| Hugh Handeyside | $646.64 | 1.6 | $1,034.62 |
| Matt Adams | $779.74 | 6.3 | $4,912.36 |
| Harry H. Schneider, Jr. | $895 | 5.1 | $4,564.50 |
| Nicholas P. Gellert | $600 | 5.7 | $3,420.00 |
| David Perez | $510 | 9.5 | $4,845.00 |
| Laura Hennessey | $440 | 56.8 | $24,992.00 |
| Sameer Ahmed | $573.95 | 9.05 | $5,194.25 |
| Jennifer Pasquarella | $646.64 | 7.51 | $4,856.27 |
| Stacy Tolchin | $646.64 | 5.4 | $3,491.86 |
| Trina Realmuto | $779.74 | 6.7 | $5,224.26 |
| Kristin Macleod-Ball | $397.42 | 12.1 | $4,808.78 |

As for the Motion for Sanctions, the Court agrees that fees incurred in bringing this additional motion seeking to compel compliance with this Court's Orders and the Civil Rules may be recoverable.  However, Plaintiffs did not submit any declarations setting forth the time incurred in drafting the Motion for Sanctions, but requested leave to do so.  Dkt. # 137 at 18-19.  Defendants do not appear to respond to this request, other than to "reserve the right to challenge any fees the records for which were not appended to the motion for sanctions" in the aforementioned footnote.  Dkt. # 146 at p. 17, n.8.

1    Accordingly, the Court will require supplemental briefing from the parties on this

2  issue.  **Within fourteen (14) days of this Order, Plaintiffs are directed to file**

3  **supplemental briefing detailing the reasonable attorneys' fees incurred in preparing**

4  **and filing its Motion for Sanctions, in a filing not to exceed ten (10) pages.  Within**

5  **fourteen (14) days of Plaintiffs' filing, Defendants may file an opposition not to**

6  **exceed ten (10) pages**.

7    **IV.    CONCLUSION**

8    For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part

9  Plaintiffs' Motion for Sanctions.  Dkt. # 137.  Defendants are hereby **ORDERED** to pay

10 Plaintiff's attorneys' fees incurred in litigating Plaintiffs' Motion to Compel (Dkt. # 91)

11 in the amount of $50,507.92.  Within fourteen (14) days of this Order, Plaintiffs are

12 directed to file supplemental briefing detailing the reasonable attorneys' fees incurred in

13 preparing and filing its Motion for Sanctions (Dkt. # 137), in a filing not to exceed ten

14 (10) pages.  Within fourteen (14) days of Plaintiffs' filing, Defendants may file an

15 opposition not to exceed ten (10) pages.

16

17   Dated this 27th day of February, 2019.

18

19

20   _____

21   The Honorable Richard A. Jones
     United States District Judge

22

23

24

25

26

27

ORDER- 13