<pre>
 1                  UNITED STATES DISTRICT COURT

 2            WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3    _____
                                  )
 4    ABDIQAFAR WAGAFE, et al., on )  C17-00094-RAJ
      behalf of themselves and     )
 5    others similarly situated,    )  SEATTLE, WASHINGTON
                                    )
 6                    Plaintiffs,   )  October 24, 2019 -
                                    )  10:00 a.m.
 7    v.                            )
                                    )
 8    DONALD TRUMP, President of the)  Telephone Conference
      United States, et al.,        )
 9                                  )
                      Defendants.   )
10                                  )
      _____

11
                VERBATIM REPORT OF PROCEEDINGS
12          BEFORE THE HONORABLE RICHARD A. JONES
                UNITED STATES DISTRICT JUDGE
13    _____

14

15    APPEARANCES:

16     For the Plaintiffs:       David A. Perez
                                 Heath L. Hyatt
17                               Perkins Coie
                                 1201 3rd Avenue
18                               Suite 4900
                                 Seattle, WA  98101
19

20     For the Defendants:       Brian C. Kipnis
                                 U.S. Attorney's Office
21                               700 Stewart Street
                                 Suite 5220
22                               Seattle, WA  98101

23                               Jesse Busen
                                 Lindsay M. Murphy
24                               U.S. Department of Justice
                                 P.O. Box 878
25                               Ben Franklin Station
                                 Washington, DC 20044
</pre>

Proceedings stenographically reported and transcript produced with computer-aided technology



 1                          Ethan B. Kanter
                            U.S. Department of Justice
 2                          Office of Immigration Litigation
                            Liberty Square Bldg.
 3                          450 5th Street N.W.
                            Washington, DC 20001
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        THE COURT:  Good morning.  This is Judge Jones in the

2   matter of Wagafe v. Trump, Cause No. C17-94-RAJ.

3      Will the parties please identify themselves, beginning first

4   with the plaintiffs?

5        MR. PEREZ:  Thank you, Your Honor.  David Perez and

6   Heath Hyatt, Perkins Coie, for the plaintiffs.

7        THE COURT:  Thank you.

8      Will you be the only --

9        MR. KIPNIS:  Good morning, Your Honor -- sorry.

10        THE COURT:  And, counsel, who will be the speaking agent

11   for plaintiffs?

12        MR. PEREZ:  Both David Perez, myself, and Heath Hyatt,

13   depending on the subjects the Court decides to cover.

14        THE COURT:  All right.  Thank you.

15      Counsel for the defendants?

16        MR. KIPNIS:  Good morning, Your Honor.  Brian Kipnis,

17   Assistant United States Attorney, for defendants.

18        THE COURT:  Are you the only one for the defense?

19        MR. KIPNIS:  No, Your Honor.

20        THE COURT:  All right.

21        MR. BUSEN:  This is Jesse Busen, from the Department of

22   Justice, speaking for the defendants.

23        MS. MURPHY:  Lindsay Murphy for the Department of

24   Justice as well.

25        MR. KANTER:  Ethan Kanter, DOJ as well.  Thanks.

1      THE COURT:  And who will be the speaking agents on

2  behalf of the defendants?

3      MR. KIPNIS:  Your Honor, Brian Kipnis will be taking the

4  lead on the extension issue.  On the issues concerning the motion

5  to compel, Jesse Busen will be taking the lead.

6      THE COURT:  All right.  Well, counsel, let's get

7  started.  First of all, the Court is gravely disappointed by the

8  fact that the parties have come to the Court with an additional

9  continuation.  This would be the fifth continuance overall and

10  the third continuance that you have requested since the Court

11  granted the plaintiffs' motion to compel.  And, again, this

12  appears to the Court kicking the can, in resolving some of these

13  issues on discovery, further down the road.

14      Now, I need to put in context the situation this district is

15  in at this point in time.  Now, plaintiffs' counsel, because they

16  reside in Seattle, and Mr. Kipnis is aware of the circumstances

17  for the judges on this bench.  We have 12 judges, 11 of which

18  are -- 10, actually, which are generally available.  Ten of our

19  judges are in senior status, which means we only have two active

20  judges, myself and our chief judge.  This puts us in a situation

21  where we are all double and sometimes triple set.  We have

22  another judge who's going to fully retire after May, which means

23  we have to redistribute his entire caseload.  So the pressure and

24  demands upon court time is enormous and it's precious, and this

25  Court has low tolerance for continuing cases again and again and

1   again without resolution.  The Court wants to see progression

2   made on this case.  I don't understand why some of the

3   continuances and some of the delays have been taken.  The Court

4   has issued orders in the past.  The last motion that you filed,

5   before the pending request for a continuance, is this four

6   additional A-files which was filed.  And I'm just not seeing the

7   movement and progress on this case.

8        So let's begin with plaintiffs' counsel.  Maybe you can help

9   illuminate for the Court why this is taking so long, what the

10  delays are, what the obstacles are, and what roadblocks need to

11  be, essentially, eliminated so that you can move forward on this

12  case.

13       MR. PEREZ:  Thank you, Your Honor.  This David Perez of

14  Perkins Coie.

15       We take this case very seriously and the Court's calendar and

16  resources here.  We've communicated that to the defendants on

17  several occasions.  Each and every request to extend the case

18  schedule has been at the request of the government, and, in

19  fairness, we do believe each of their requests have been made in

20  good faith.  We want to be accommodating in large part because of

21  what the Your Honor has highlighted, which is the Court's

22  resource issues, and we don't want to get into a fight over the

23  schedule, but these extension requests have been presented to us

24  as a fate accompli:  We will not meet this deadline, Plaintiffs.

25  We need this case schedule adjusted.  So if you don't agree by

 1   tomorrow, or by the day after tomorrow, we'll file a motion.  And
 2   it's almost always in that setting, that setup, which is the
 3   deadline is upon us, we won't meet it, agree, or we will move.
 4   And we don't want to bring a fight in front of you, and so we
 5   have reluctantly accommodated these.  But in our message in this
 6   last extension, we made clear -- first, we asked for certain
 7   concessions, and the government refused to give us a single
 8   concession, and then we said, fine, this will be the last
 9   extension we agree to.  And we made that very clear.
10       At this point we don't see any alternative but to grant this,
11   to push it pursuant to this last stipulation in large part
12   because the government, despite the cutoff and despite the
13   Court-imposed deadlines, has not given us all the documents we
14   have requested, has not given us the redacted A-files.  And even
15   if you were to turn back the clock just a little bit, from your
16   order in July where you ordered our client A-files to be
17   produced, I believe it was within two weeks of that order, it
18   took them, what, six or seven weeks to produce it, and we still
19   haven't gotten the other four.  And they said it would be
20   sometime in October, and we don't know when that "sometime" will
21   be, but we're at the end of October.
22       The problem is, without these documents, it's difficult to
23   impossible for us to depose their witnesses, identify the
24   witnesses, prepare -- identify, much less prepare, an expert, and
25   then prepare an expert report.

1        We're hoping, based on representations made to us, that the

2    documents will be given to us, you know, early next month, mid

3    next month, which means we should be able to schedule some

4    depositions, get an expert report, and have no further extensions

5    whatsoever.  That's our position.

6        There are a couple lingering issues we did want to flag for

7    the Court that are nonscheduled related, but we can circle back

8    to that if the Court has time at the end of the hearing.

9            THE COURT:  All right.  Thank you, counsel.

10    I will hear from counsel for the defendants.

11            MR. KIPNIS:  Thank you, Your Honor.

12        Since this is a status conference, I don't want to engage in

13    an exercise of finger-pointing, despite the fact that the finger

14    was just pointed at us.

15        The fact of the matter in this case, Your Honor, is this is a

16    very one-sided discovery situation in which everything is being

17    asked of from the government, and plaintiffs are not only not

18    asked to give anything, but when they are asked, they haven't

19    given us anything.

20        But I don't want to go down that road, Your Honor.  I'm going

21    to tell you exactly what we have been doing, which is

22    considerable, monumental in my mind, in terms of what's been

23    asked of us and what we have done.  And I will tell you, Your

24    Honor, also why this additional two-month extension is necessary.

25    But I will say, before I go into detail, these extension

 1    requests, the dialogue between plaintiffs and defendants is far

 2    different than what Mr. Perez portrayed.  They have been, on the

 3    large, cooperative discussions, working through problems with

 4    counsel.  Plaintiffs have needed these extensions as much as we

 5    have, and they have cooperated in asking the Court for these

 6    extensions.  And, frankly, if there was a complaint about the

 7    reasonableness of our requests, the necessity for our requests,

 8    the obligation to bring that up was in some kind of motion or

 9    resistance to these stipulations that they all joined in

10    voluntarily and enjoy the benefit of as much as we do.

11         Your Honor, we have in this case collected over 700,000

12    documents.  We have conducted linear review of 300,000 documents.

13    We have produced to date to plaintiffs on the order of 40,000

14    documents, including privilege declarations and privilege logs.

15    This has been a considerable effort that we have thrown resources

16    at in no case like I have ever experienced.  At one time we had

17    100 government attorneys reviewing documents on this case.  We

18    pulled in people from different agencies from all through the

19    Department of Justice.  It has been a remarkable cooperative

20    effort to get this done.

21         The reason this has been necessary is not because of some

22    failing on our part.  The reason is because plaintiffs have

23    asked us for a ton of documents in a case involving one of the

24    most sensitive government programs, and that has presented a

25    document-production problem that is, in my experience,

1   unparalleled.  Now, there may be other cases in which these kind

2   of document problems arise, but this is the first in my

3   experience like this.  And, frankly, I have been quite proud of

4   the effort that this team has put in to getting us where we are.

5   And we are, Your Honor -- you should know -- we are almost at the

6   finish line.  The finish line is in sight.  We are 99 percent

7   there in the effort that we have put in here.

8       But what has occurred that has caused this last extension

9   request is it stems from the Court's last order of July 9th.  The

10  Court suggested to us -- and we took that suggestion very

11  seriously -- that we consider producing to plaintiffs an

12  additional one to five A-files.  And we have been telling

13  plaintiffs all along --  We have put in declarations to the Court

14  to show what an arduous process it is to produce those A-files.

15  And plaintiffs' request was an additional 100 A-files originally.

16  The Court denied that but suggested that we produce an additional

17  one to five.  And we took that suggestion very seriously, Your

18  Honor, and we agreed with plaintiffs that we would give them four

19  additional A-files.

20      We have been clear with plaintiffs, and I think we have been

21  very clear with the Court, that that's a process that is highly

22  complex because of the third-party agency equities that are

23  involved in those files.  And as Your Honor knows from his

24  experience, I think, when you have different government agencies

25  trying to work through problems like these, it creates

1   complications.  And the Justice Department stands to work through

2   those complications, and we have been doing that, but it takes

3   time and it takes effort, it takes line-by-line review of these

4   cases, and then dialogue between the agencies to get everybody on

5   the same page and to get these files produced.

6       And so what we have asked here for, Your Honor, essentially,

7   is another two months to get that done.  And we are on track to

8   do that.  We expect to produce an A-file to plaintiffs next week.

9   And we are very hopeful that we can get the rest of these

10  documents produced in time.  But because of the involvement of

11  third-party agencies in these very sensitive issues, it

12  introduces an element of unpredictability that makes it very

13  difficult for us to come out with concrete deadlines and dates

14  that we can meet.  And we are working very hard to get our

15  agencies to meet those.  They're working hard, we're working

16  hard, but it's not an easy process, Your Honor.  But we take

17  these deadlines as seriously as anybody.

18      This decision to ask for this extension with plaintiffs was

19  not an easy one, it was not made lightly, and it is certainly not

20  made frivolously or because we aren't working hard and our

21  clients aren't working hard.  We're working very hard to get this

22  done, and we are almost there.

23      So, Your Honor, I think this request is very well justified

24  under the circumstances.  And, Your Honor, I'm very mindful of

25  the stress that's put on this Court, and I regret that and I

1   regret the situation that we're in, and I wish there was

2   something I could do about it, but there's not.  But we are

3   mindful of the Court's problems, and we are taking them

4   seriously.

5       We have been working very hard to get this done, and I think

6   we're there, Your Honor, I think we're almost there.  We just

7   need this additional time to pull us over the finish line, and

8   that's all we're asking for here.

9           THE COURT:  Now, if we're talking about a finish line,

10  that means there are specific things that need to be done to get

11  to the finish line.  Can you itemize --

12          MR. KIPNIS:  Correct.

13          THE COURT:  -- or categorize for the Court exactly what

14  you anticipate to be done between now and whatever this proposed

15  date is in November?

16          MR. KIPNIS:  I can, Your Honor.

17      So as I've indicated, we have four A-files to produce to

18  plaintiffs.  The other A-files, by the way, are done.  So we have

19  these four left.  We have one that we're giving to plaintiff --

20  producing to plaintiffs next week, and then we have the other

21  three to get done.  We have approximately 500 pages -- or, sorry,

22  500 other documents that have various issues that we are working

23  through.  These are issues that have some serious issues

24  concerning national security hits, and we are working through

25  with the agencies to get those reviewed and get those off to

1 | plaintiff.  And our expectation is that we will have those

2 | reviewed, redacted, the privilege logs done, and any necessary

3 | supporting declarations done by the date that we have requested.

4 | Do you want more detail about those documents, Your Honor?

5 | THE COURT:  Well, not at this time.

6 | One concern I have, counsel, from what I have seen, in terms

7 | of some of the redactions, it's wholesale redactions, and the

8 | Court's belief or perception of what redaction is supposed to be

9 | is that it's supposed to be pinpoint redactions as opposed to

10 | pages or large sections and gaps.

11 | Has that been taken into consideration in your submissions to

12 | the Court and to opposing counsel?

13 | MR. KIPNIS:  Yes, Your Honor.  And I think to the extent

14 | that that's an issue regarding the motion to compel that the

15 | Court is considering today, I think we can speak to that more

16 | specifically through Jesse Busen.  And I think we can also, if

17 | the Court is concerned that we are taking wholesale redactions on

18 | an unjustified basis, we stand ready to provide unredacted copies

19 | of those documents to the Court ex parte, in camera, if it would

20 | like to ensure itself that we are taking those redactions

21 | providently.

22 | THE COURT:  And that's for the, what is it, 30 files

23 | now, or 25?

24 | MR. KIPNIS:  I think it's --

25 | THE COURT:  Twenty-five.

```
 1            MR. KIPNIS:  I think it's 25.

 2            THE COURT:  Now, the 25 --

 3            MR. KIPNIS:  Yes.

 4            THE COURT:  -- is that 25 plus the additional four that

 5    you've agreed, or is that complete, when we talk about the number

 6    25?

 7            MR. KIPNIS:  Let me defer to Mr. Busen on that.

 8        Can you answer the Court's question, please, just to make

 9    sure we're giving them an accurate answer?

10            MR. BUSEN:  With respect to -- excuse me.  This is Jesse

11    Busen.

12        Your Honor, with respect to the motion to compel, that

13    specifically has to do with 25 documents that the government

14    previously produced.

15            THE COURT:  25 documents, or 25 files?

16            MR. BUSEN:  Twenty-five -- yes, 25 files.

17            THE COURT:  Okay.

18            MR. BUSEN:  Which comprise a few hundred pages of

19    information.  We had previously produced those documents.

20    Plaintiffs came to us asking us to provide fewer redactions on 38

21    documents.  We eventually negotiated it down to 25.  There were

22    fewer redactions on some of those.  Others we had to draw a line

23    and say, you know, we have to assert the privilege on these

24    documents.  So what is in the motion to compel that's currently

25    pending are challenges to privilege assertions with respect to a
```

 1  specific set of 25 documents.

 2          THE COURT:  All right.

 3      And, Mr. Kipnis, you were going through your checklist of

 4  what remains to be done to get to this magic finish line.  What

 5  else is on your checklist?

 6          MR. KIPNIS:  Yes.  It's the -- after next week, it will

 7  be the three A-files and approximately 500 other documents that

 8  have various issues with classified information that we are

 9  trying to work through, in at least -- certainly in one case, or

10  one group of classified documents.

11      I can itemize those for you if you would like, Your Honor,

12  what those are.

13          THE COURT:  Why don't we go ahead and do that, counsel,

14  just so that we have --  By the way, this is a matter of record.

15  I have a court reporter here.  I did the courtesy of not

16  requiring counsel to travel from back East and make it easier for

17  all parties, but I do have this on record.  So if there's any

18  question or need for a transcript, that's always available for

19  the parties.  So I wanted to make that disclosure on the record.

20      So please continue, counsel.

21          MR. KIPNIS:  Okay.  Thank you, Your Honor.

22      Of the 500 documents, there are approximately 300 CARRP, what

23  are called CARRP case-tracking spreadsheets, some of which are

24  several hundred to a thousand pages in length.  There's about a

25  dozen of those of that length.  There are PowerPoints involved.

1   They appear to use real-life examples, including names, dates of

2   birth, and the third-party agencies involved.  These are

3   individuals who have been subject to national security

4   investigations.  So those are being reviewed by third-party

5   agencies with equities, and that's why those are being delayed.

6        We have, as a second category, approximately 35 -- sorry, 30

7   classified documents related to the named plaintiffs that were

8   logged in the protologues provided to plaintiffs last spring.  So

9   plaintiffs have asked for further information about these

10  approximately 30 documents which relate just to the named

11  plaintiffs, and those are under review by USCIS and DOJ.  We

12  expect to be able to produce those by November 29th.  That is the

13  date that I'm being given for that.

14       We have approximately 150 documents related to the named

15  plaintiffs which were collected from FDNS, an agency within

16  USCIS, that are under review for classified information.  We

17  believe that many of these documents are duplicates of documents

18  in the named plaintiffs' A-files, but some are not.  So those are

19  under review by USCIS and DOJ, and we expect those to be produced

20  by November 29th.

21       THE COURT:  In your production -- counsel, excuse me --

22  in your production, are you cross-referencing or cross-indexing

23  so that there's not duplication?

24       MR. KIPNIS:  Can you repeat the question, Your Honor?

25  I'm sorry.

 1          THE COURT:  I'm just trying to make sure that if you are

 2    producing --  Because you've used the words "they may have

 3    already been produced," I'm just trying to minimize the volume by

 4    asking you, are your folks indexing the documents so that you

 5    know that they have already been produced so that there's not --

 6          MR. KIPNIS:  Yes.

 7          THE COURT:  -- a double set of documents coming to the

 8    Court or to the parties?

 9          MR. KIPNIS:  Yes.  That's one of the things we're trying

10    to verify.

11          THE COURT:  Okay.

12       All right.  Please continue.

13          MR. KIPNIS:  That's my list, essentially.

14          THE COURT:  All right.  Well, I don't know if your other

15    counsel have anything else on their list to get to this deadline.

16          MR. KIPNIS:  Let me ask if anybody -- Lindsay, do you

17    want to join in?  Is there anything you wanted to add to what I

18    just said?

19          MS. MURPHY:  Yes, Brian.  Thanks.

20       Your Honor, this is Lindsay Murphy for DOJ.  I just wanted to

21    make one correction to what Brian had provided.  His list is

22    accurate except for with regard to about 300 CARRP case-tracking

23    spreadsheets.  Brian noted that there were only about a dozen or

24    so that are several hundred to a thousand pages in length.

25    There's actually about 200 or so that are several hundred to a

 1  thousand pages in length, and there are about one dozen CARRP

 2  training PowerPoints.  So there's a significant volume of

 3  documents in a spreadsheet that we have been going through.

 4          THE COURT:  Okay.

 5          MS. MURPHY:  That's all I have to add.

 6          THE COURT:  Anything other counsel for the defense have

 7  any other information to supplement?

 8          MR. BUSEN:  No, Your Honor.

 9          MR. KANTER:  No, Your Honor.

10          THE COURT:  All right.  Now, as far as the third-party

11  agency review, are they aware and have you made them aware of the

12  deadlines and the urgency that this Court is imposing on the

13  parties to get this discovery completed?

14          MR. KIPNIS:  Yes, Your Honor.  I would say that that is

15  very true.  We're having ongoing meetings with the agencies, and

16  we are emphasizing constantly the importance of meeting the

17  Court's deadlines and getting this job done, and that is

18  something we are working very hard with them on.  It's the

19  difficulty of the task and the amount of time that it takes to

20  conduct these line-by-line reviews and get these issues as they

21  arise coordinated that's taking the time.  It's not the lack of

22  seriousness of any of our -- either our client agencies or the

23  third-party agencies that are involved in this effort.

24          THE COURT:  All right.  Any further representation to be

25  made by the defense?

1          MR. KIPNIS:  No, Your Honor.

2          THE COURT:  All right.  Counsel for the plaintiffs, any

3    response?

4          MR. PEREZ:  Just a few things.

5      First, I don't think any of us on our end have thought or

6    have accused the government of bad faith in the discovery.  I

7    just wanted to point that out.

8      Second, it's our experience, and I imagine it's also the

9    Court's experience at times, the documents that are produced last

10   tend to be the most important and valuable, and so we're going to

11   need time to review, I believe, the three categories:  500 files,

12   the 30 files relating to our named plaintiffs, and the

13   spreadsheets that they're referring to will be incredibly

14   important for our experts.  And so we are eagerly -- we hope to

15   receive them by the end of this next month, pursuant to the

16   government's representations, and then I believe the parties will

17   be able to work together on internal deadlines in a manner that

18   would not require the trial schedule to slip any further.  Even

19   if it is, we need to be flexible on deadlines before the trial

20   schedule, before the trial.  If we can get these documents in

21   time, we should be able to stick to this last stipulation.

22     As for the redactions concerning this current motion to

23   compel, we do have some thoughts on that motion, if the Court was

24   planning on having some argument on that.

25          THE COURT:  Well, I wasn't expecting it, counsel, and I

 1   don't believe it's fully ripe, in terms of all the briefing to

 2   come in at this point.  Correct?

 3            MR. PEREZ:  Understood.

 4            THE COURT:  Is that correct?

 5            MR. PEREZ:  We've just received the unredacted

 6   documents.  We obviously have not seen those.

 7            THE COURT:  Right.

 8            MR. PEREZ:  If the Court wishes for further briefing,

 9   we're happy to do so.

10            THE COURT:  All right.  We are just checking that.  I

11   think that -- I don't believe there's any outstanding -- I don't

12   need any additional briefing, other than what you've already

13   provided.  That's adequate.  I believe that the briefs that the

14   parties needed to file have been filed at this point in time.

15       The next question, counsel, is, how realistic are the balance

16   of the dates that you've proposed if the Court grants this

17   request?  Assuming that the government can meet the deadline on

18   November 29 for a final completion of full production, again,

19   subject to the motion to compel, how realistic are the balance of

20   these dates?  Because some of these dates are pretty tight by way

21   of turnaround.  For example, expert witness disclosure reports

22   are due January 31, 2020, and the deadline for depositions of the

23   experts is February 14th.

24       It sounds like there's a tremendous amount of work.  I'm not

25   trying to force you to stretch this out anymore, but I just want

1    to make sure that the parties have taken a realistic approach to

2    what you are going to need to do in light of the volume of

3    discovery.  Counsel has just made representations about the

4    thousands and maybe the 200,000 and 300,000 documents that have

5    been recovered or reviewed.  And I just want to make sure that,

6    again, you are not going to come to this Court, after some of

7    these deadlines have been met with discovery, asking for

8    postponements for what you need to do to get this case fully

9    prepared for trial.

10           MR. PEREZ:  For plaintiff, this is David Perez.

11       You know, if we get the documents by November 29, whatever

12   trial date the Court sets, either today or sometime after today,

13   our intention would be for that to be the stake in the ground and

14   to not move that.  And if the parties need to work together on

15   some flexibility -- for instance, right now, you know, deadlines

16   for depositions would be February 14th -- the parties can always

17   just informally agree that you have got until February 28th, or

18   something along those lines.  But we should keep -- whatever

19   trial date we set now should be set, and then our intention would

20   be it's realistic, and to the extent we need to have flexibility

21   on other dates, we could informally work that out as parties

22   routinely do.

23           THE COURT:  All right.

24           MR. KIPNIS:  Your Honor, this is Brian Kipnis again.

25   And I think in terms of what Mr. Perez just said, we would

1    absolutely agree that given -- particularly given what the Court

2    has told us today, we will be committed to keeping that trial

3    date and working within that framework to try and bring this case

4    to its conclusion by that trial date.  So we also would agree

5    that we'll be honoring the trial date that we're requesting.

6         THE COURT:  Now, one of the things that came up in the

7    communications by the parties, at least from the government's

8    perspective, is to submit for the Court's in camera review an

9    inspection.  I think that's appropriate, counsel, so I'm going to

10   require that you do do that, because I can't make a determination

11   one way or the other without that type of review.  This is what I

12   have done in the past, and I don't see any reason to vary from

13   that in this particular case as well.

14      And so, counsel, when do you believe that that will be

15   produced to the Court?

16        MR. KIPNIS:  I believe we can -- let me defer to

17   Mr. Busen on that, but I think we can do that relatively quickly,

18   Your Honor.

19      Mr. Busen, can you address that?

20        MR. BUSEN:  In reference to the 25 documents that are at

21   issue in this motion to compel, Lindsay, you know more about

22   producing these than I do.  But, yeah, I think we can turn that

23   around fairly quickly.

24        THE COURT:  Now, what's "fairly quickly" mean?

25        MS. MURPHY:  This is Lindsay Murphy for DOJ.

1       Your Honor, I think we could try to aim to do that within the

2   week.

3               THE COURT:  All right.  Then I'm going to require that

4   that be produced to this Court, and I will give you until next

5   Friday.

6               MS. MURPHY:  Thank you, Your Honor.

7               THE COURT:  That's November 1st.

8               MR. KIPNIS:  We will do that, Your Honor.

9               THE COURT:  Now, Mr. Perez, I belive you said if the

10  Court had time that there's some lingering issues.

11              MR. PEREZ:  The only two lingering issues was the motion

12  to compel, which the Court just asked for the unredacted copies,

13  so the Court will address that later, and the only other

14  lingering issue was the sanctions motion that the Court granted

15  in part and granted fees on.

16      The government and the plaintiffs agreed that we would hold

17  off on requiring the government to pay the fees until the Court

18  made a final decision on that amount, and that amount, I believe,

19  was Docket 231, and we just hadn't gotten an order on that.

20  Because we made an agreement with defendants that we'd await for

21  any payment until the final amount, we had just wanted to flag

22  that for the Court to see if we can put a bind on that.

23              THE COURT:  Okay.  I will take that under advisement.

24      All right.  Anything further, counsel, since I have you all

25  on the phone?

1      MR. KIPNIS:  Nothing from defendants, Your Honor.

2      THE COURT:  Plaintiffs?

3      MR. PEREZ:  Nothing from plaintiffs, Your Honor.

4      THE COURT:  All right, counsel.

5   Counsel, again, I don't want you to think the Court is just

6   unnecessarily coming down on either one of the parties.  It's

7   just that we're in a bind here in this jurisdiction, and I'm

8   trying to manage my calendar, manage my docket, and make the

9   lawyers do the work that they need to do to get this case moving

10  in an expeditious fashion, to the extent that we can.

11     So if there's nothing further, we will be in recess.  Thank

12  you.

13     MR. KIPNIS:  Thank you, Your Honor.

14     MR. PEREZ:  Thank you.

15                    (Adjourned.)

16

17              C E R T I F I C A T E

18     I, Nickoline M. Drury, RMR, CRR, Court Reporter for the

19  United States District Court in the Western District of

20  Washington at Seattle, do certify that the foregoing is a correct

21  transcript, to the best of my ability, from the record of

22  proceedings in the above-entitled matter.

23

24              /s/ Nickoline Drury

25              Nickoline Drury