THE HONORABLE RICHARD A. JONES

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDIQAFAR WAGAFE, *et al., on behalf of himself and other similarly situated*,<br><br>                    Plaintiffs,<br><br>     v.<br><br>DONALD TRUMP, President of the United States, *et al.*,<br><br>                    Defendants. | CASE NO.  2:17-cv-00094-RAJ<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO INTERVIEW PERSONS WHO RESPONDED TO PLAINTIFFS' CLASS NOTICE** |

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-7035

# INTRODUCTION

On May 10, 2018, after multiple rounds of litigation, the Court entered a protective order which prohibited Plaintiffs' counsel from (1) disclosing whether any particular individual is an unnamed class member, and (2) contacting any unnamed class members for any purpose absent prior order of the Court. Dkt. No. 183 at 3.[1]  On January 9, 2020, Plaintiffs moved to modify the protective order to allow them to interview an unspecified number of "potential class members" who responded to Plaintiffs' class notice in order to determine whether those individuals could provide evidence in support of Plaintiffs' case. Dkt. No. 309.  Defendants hereby oppose the motion.

First, Plaintiffs' proposed modification would cause the harm that the protective order was specifically designed to prevent.  The class members in this case, by definition, include only individuals whose applications are being processed pursuant to the CARRP policy due to a potential or confirmed national security concern.  Dkt. 94-5 at 6.  Defendants have repeatedly explained the risks of disclosing whether any particular individual's immigration benefit application is being (or has been) processed pursuant to the CARRP policy, supported by affidavits from high-ranking officials at USCIS, ICE, and FBI.  Dkt. Nos. 94, 126, 156.  By reaching out to individuals who responded to Plaintiffs' class notice (and potentially calling them as witnesses), Plaintiffs' counsel would implicitly confirm that each individual's immigration benefit application is being (or has been) subjected to the CARRP policy.  Indeed, if the individuals' applications were not subjected to the CARRP policy, Plaintiffs' counsel would have no reason to contact them or call them as witnesses in this case.  Thus, each individual who is contacted by Plaintiffs' counsel will inevitably surmise that some arm of the Government has obtained derogatory information about them, which could compromise ongoing law enforcement investigations and intelligence-gathering activities.

Second, Plaintiffs have not identified any legitimate need to modify the existing protective order in order to gather evidence from unnamed class members.  Plaintiffs styled this case as a nationwide class action challenging a USCIS policy, and in doing so, alleged that their complaint was "not focused on how CARRP was specifically applied to any given individual seeking

---

[1] All page numbers referenced in this response correspond to page numbers assigned by CM/ECF.

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 1
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035

immigration benefits." Dkt. No. 49 at 20.  Despite these allegations, and after Defendants have produced voluminous documents explaining the CARRP policy, Plaintiffs now claim they need to present evidence from unnamed class members.  Such evidence is not relevant; and if it were relevant, class decertification would be appropriate, and the named plaintiffs would not be adequate representatives of the class.  In any event, Defendants have produced extensive evidence about the two certified classes in this case, including their countries of birth and citizenship, the average time it has taken for their applications to be adjudicated, and the average rates at which their applications have been approved.  This should be more than enough evidence for Plaintiffs to present their case when combined with the many thousands of documents Defendants produced both generally and more specifically explaining the CARRP policy.  Weighing the law enforcement interests at stake against Plaintiffs' claimed need to present evidence from individual unnamed class members, the Court has already struck the right balance and should deny Plaintiffs' motion to modify the protective order.

## BACKGROUND

On September 28, 2017, Plaintiffs moved to compel production of a list of class members in this case. Dkt. No. 91 at 8-11.  Defendants opposed the motion based on relevance, burden, and law-enforcement-privilege grounds.  Dkt. No. 94 at 4-9.  On October 19, 2017, the Court granted the motion; however, noting the sensitivity of the information, the Court suggested that the parties "could supplement the [stipulated] protective order . . . to assuage any remaining concerns" by the Government.  Dkt. No. 98 at 2-4.

On March 1, 2018, Defendants moved for an "attorney eyes only" protective order over the class list. Dkt. No. 126.  On April 11, 2018, the Court ruled that the Defendants had not adequately supported their argument that the class list must be subject to an "attorney eyes only" provision, noting that there was "no evidence that any individuals on the class list are or were subjects of investigations or are, generally, 'bad actors.'" Dkt. No. 128 at 9.  On April 20, 2018, Defendants filed an emergency motion to stay the Court's April 11 order pending appellate review, or in the alternative, a motion to reconsider.  Dkt. No. 156.  On April 24, 2018, the Court reconsidered its

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 2
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035

April 11 order by affording the Government an opportunity to submit a random sample of fifty individuals on the class list along with "explanations why their names may not be produced to Plaintiffs" under the stipulated protective order. Dkt. No. 162. Defendants submitted the random sample of fifty class members, along with summaries of the derogatory information about each individual, *in camera* and *ex parte* as requested. Dkt. No. 176.

On May 10, 2018, after reviewing the Government's *ex parte* submission, the Court granted Defendants' motion "for a limited protective order to produce the class list under an attorney eyes only provision." Dkt. 183 at 2. The Court further stated that "Plaintiffs' counsel, and any person acting on their behalf, are prohibited from either disclosing to any individual who contacts them whether that individual is an unnamed member of either the Naturalization Class or Adjustment-of-Status class, or contacting the unnamed plaintiff members of the Naturalization Class and Adjustment-of-Status class for any purpose absent prior order of this Court." *Id.* at 3. The Court further noted that "Defendants agree to meet and confer with Plaintiffs' counsel over ways in which Defendants might be able to provide Plaintiffs' counsel with information about particular unnamed class members to develop evidence for use in their case . . . while keeping in mind their obligation to protect against dangers to important governmental interests." *Id.* Following the Court's order, Defendants produced a class list to Plaintiffs' counsel under attorney eyes only protection, and Defendants have produced updates to the class list on a quarterly basis. Defendants also produced extensive evidence about the two certified classes in this case, including their countries of birth and citizenship, the average time it has taken for their applications to be adjudicated, and the average rates at which their applications have been approved. Dkt. No. 226-2 at 7-9.

On February 21, 2019, Plaintiffs filed a motion for permission to post a public notice in order to obtain information from potential class members. Dkt. No. 221 at 18-20. Defendants opposed the motion. Dkt. No. 226-1 at 10-13. On July 9, 2019, the Court granted the motion. Dkt. No. 274 at 6-7. The Court reasoned that posting the class notice "appears to comply with this Court's previous Orders, as it does not disclose whether or not any particular individual was ever, or is, subject to CARRP." *Id.* at 6. The Court further noted that there was "little indication that Plaintiffs' attorneys

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 3
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035

will not abide by the applicable Orders in this case sharply limiting such communication with potential class members." *Id.*

## ARGUMENT

### A. Legal standard

The Court may issue a protective order for good cause. *See* Fed. R. Civ. P. 26(c). "It is well established that protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States, compromise an ongoing investigation, or infringe on the privacy of uncharged third parties and others associated with a case." *United States v. Concord Mgmt. & Consulting LLC*, 404 F. Supp. 3d 67, 75 (D.D.C. 2019). Whether to lift or modify a protective order is a decision committed to the sound discretion of the trial court. *See Alexander v. F.B.I.*, 186 F.R.D. 99, 100 (D.D.C. 1998).

### B. Plaintiffs' proposed modification to the protective order may cause substantial harm to the law enforcement and intelligence-gathering interests of federal and state agencies.

The class members in this case, by definition, include only individuals whose applications are being processed pursuant to the CARRP policy due to a potential or confirmed national security concern. Dkt. 94-5 at 6. Throughout this litigation, several high-ranking officials employed by Defendants and other non-party law enforcement agencies have repeatedly outlined the risks of disclosing to an individual that his or her immigration benefit application is being (or has been) processed pursuant to the CARRP policy. According to one senior USCIS official:

> [D]isclosure of whether any particular application is subject to CARRP may cause substantial harm to the law enforcement investigative and intelligence gathering interests of federal and state agencies. Public confirmation that a particular application is subject to CARRP would necessarily alert an individual that he/she may be the subject of an investigation, or at least that the government possesses information that creates an articulable link to a national security ground of inadmissibility. . . . The individual could then, for example, alter his or her behavior, conceal evidence of wrongdoing, or attempt to influence witnesses or adjust his or her means of communication . . . to avoid detection of the very behavior that the law enforcement and intelligence community have determined may be indicative of a national security threat.

Dkt. No. 94-5 at 8. According to another senior USCIS official:

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 4
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035

> Informing those individuals that they are class members is likely to disrupt proper adjudication of the benefit they are seeking, and may make it difficult or impossible for USCIS to collect all relevant evidence related to eligibility for a benefit. . . . Once aware, the individual may change his or her behavior, coordinate with others to prevent USCIS from collecting statements from other relevant persons . . . or intentionally provide misleading information.  In addition, revealing that an individual is subject to the CARRP policy may disrupt a criminal investigation related to terrorism or other national security issues.  For example, if an unnamed class member is a bad actor, notification that he or she has been subject to the CARRP policy would certainly lead the individual to suspect that their bad acts are being investigated.

Dkt. No. 126-1 at 7-8. A senior FBI official likewise stated that the class list "should not be publicly disclosed or disclosed to individual Plaintiffs because disclosure could allow individuals to infer that they may be subject to scrutiny by law enforcement.  Such disclosure could suggest to subjects that USCIS may have received derogatory information from the FBI during the name check process." Dkt. No. 126-2 at 11; *see also* Declaration of Jay Tabb (submitted *in camera* and *ex parte* with Dkt. No. 228) at 27.  Finally, a senior official at ICE explained the following:

> Disclosure of the names of individuals in USCIS' CARRP program may reveal to those individuals that they are the subject of government inquiry and investigations. . . . It is a critical investigative technique not to reveal to persons that they are the subjects of law enforcement investigations.  Subjects who are told of ongoing investigations may alter their habits and/or appearances, may alert their compatriots and co-conspirators, may go into hiding, may destroy evidence, or may anticipate the activities of federal agents and thereby put the agents, their investigations, or members of the public at risk.  Even if the individuals who were the subjects of the investigation were law-abiding themselves, disclosing that they were of investigative interest could alert their business associates who are involved in illegal activities that federal agencies may have investigated the individuals with whom they (the business associates) have had contact.

Dkt. No. 126-3 at 4.

Plaintiffs' proposed modification to the protective order could easily result in the harms outlined above.  As an initial matter, it is public knowledge that Plaintiffs' counsel possess a list of class members in this case.  Dkt. No. 309 at 5.  By contacting and interviewing particular individuals in connection with this case, Plaintiffs' counsel would implicitly confirm that those individuals' names are on the class list.  Otherwise, there would be no reason for Plaintiffs' counsel to contact

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 5
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035

them in the first place.  Furthermore, the risk of disclosure is amplified by Plaintiffs' plan to use evidence provided by unnamed class members in this case.  If the Plaintiffs ultimately identify any particular unnamed class members as having evidence that they will use to support their claims, Defendants will be put in the catch-22 of deposing such individuals (thereby again implicitly confirming that they are class members) or foregoing their depositions and risking surprise at trial. Finally, if Plaintiffs ultimately offer evidence about (or testimony from) a particular unnamed class member, and the Court admits such evidence, there would be no question that the individual's application was processed pursuant to the CARRP policy.  *See Ellsberg v. Mitchell,* 709 F.2d 51, 65 (D.C. Cir. 1983) ("In an attempt to make out a *prima facie* case during an actual trial, the plaintiff and its lawyers would have every incentive to probe as close to the core secrets as the trial judge would permit.  Such probing in open court would inevitably be revealing.").  Thus, Plaintiffs' proposal to modify the protective order would almost inevitably culminate in public disclosure of whether the Government has identified particular individuals as national security concerns.  For the reasons articulated by various agency officials, the Court should not allow information identifying particular individuals whose applications have been subject to CARRP to spill into public view, particularly to the very individuals who have been identified as national security concerns.

        Plaintiffs' counsel assure the Court that they will not explicitly confirm whether or not any individual whom they interview "are class members even if asked or pressed."  Dkt. No. 309 at 6. Even accepting their sincerity, they miss the point.  It is public knowledge that Plaintiffs' counsel have access to a list of class members in this case.  Dkt. No. 309 at 5.  Thus, if Plaintiffs' counsel contact an individual in connection with this case, the individual would invariably surmise that his or her application was subjected to the CARRP policy.

        Plaintiffs argue that the individuals who responded to the class notice "already suspect that they have been subject to CARRP."  Dkt. 309 at 9.  Therefore, in Plaintiffs' view, the proposed modification to the protective order "will do nothing to alter these potential class members['] preexisting suspicions and . . . poses little if any risk to Defendants' purported law enforcement and security concerns."  *Id.*  This argument is flawed in two ways.  First, an individual might have

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 6
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035

responded to the class notice for entirely nefarious reasons. For example, a class member who is planning terrorist activities might want to know if the Government was aware of his or her activities. One potential way to find out would be to contact Plaintiffs' counsel, and if Plaintiffs' counsel respond, then the individual would have confirmed that the Government was aware of his or her activities. Second, there is a difference between an individual suspecting that his or her application has been subjected to the CARRP policy and an individual knowing that his or her application has been subjected to the CARRP policy. Bad actors and their associates could alter their behavior upon confirming (rather than merely suspecting) that the Government has identified them as national security concerns. *See Ameziane v. Obama*, 699 F.3d 488, 492 (D.C. Cir. 2012) (declining to modify a protective order in order to permit the release of a fact *believed* to be true because "official acknowledgement" of that fact "might well be new information that could cause damage to the national security").

Finally, Plaintiffs' counsel argue that in a "typical" class action, Plaintiffs' counsel can freely communicate with unnamed class members. Dkt. No. 309 at 8. However, there is nothing "typical" about this class action. The class members in this case, by definition, include only individuals whom USCIS officers have determined present a potential or confirmed national security concern, and USCIS may identify individuals as national security concerns based on derogatory information shared by law enforcement and intelligence agencies. Dkt. No. 126-1 at 7-8; Dkt. No. 126-2 at 11. The class also includes individuals identified as "known or suspected terrorists." Dkt. No. 126-1 at 4. Thus, the Court acted well within its discretion when it issued the existing protective order given the significant law enforcement interests at stake. *See Concord Mgmt.*, 404 F. Supp. at 75 (protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States or compromise an ongoing investigation). Indeed, some courts have gone so far as to decline class certification altogether when class certification would inevitably lead to discovery into individuals about matters implicating national security. *See Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144, 163 (D.D.C. 1976) ("If a class were to be certified, plaintiffs would be permitted to inquire into the past and present scope of military intelligence gathering

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 7
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035

activities in Europe to determine if any of the practices alleged in the complaint have been inflicted on others.  Identification of persons surveilled, the time period during which they were being surveilled, the type of surveillance methods, etc., would necessarily be disclosed.  While Rule 26(c) provides protective procedures to the courts which would keep much of the information confidential, it can fairly be anticipated that discovery of these matters would become enmeshed in complex procedural motions resulting in *in camera* inspections by the Court and subsequent delay.").

**C. Plaintiffs have not demonstrated a compelling need to contact unnamed class members.**

Plaintiffs' request to interview unnamed class members for purposes of developing evidence to present at trial is flatly inconsistent with Plaintiffs' own class-wide claims.  Plaintiffs have styled this case as a nationwide class action challenging the CARRP *policy*, not its application through individual adjudications.  Dkt. No. 47.  In their motion for class certification, Plaintiffs alleged that Defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Dkt. No. 49 at 17-18.  Indeed, they specifically argued that "the gravamen of Plaintiffs' Second Amended Complaint is *not focused on how CARRP was specifically applied to any given individual seeking immigration benefits*."  *Id.* at 20.  Similarly, Plaintiffs asserted that the named Plaintiffs' claims are "typical" of the certified classes "because they proceed under the same legal theories, seek the same relief, and *have suffered the same injuries*."  *Id.* at 21.  The Court agreed, reasoning that "[t]he common question here is whether CARRP is lawful.  The answer is 'yes' or 'no.'  The answer to this question *will not change based on facts particular to each class member*, because each class member's application was (or will be) subjected to CARRP."  Dkt. No. 69 at 25.

Given how Plaintiffs have styled their case, it is entirely unclear how evidence about individual class members would be relevant.  If individual class members are relevant witnesses because they can speak to their own experiences, then the class should be decertified, because injunctive relief would not be appropriate to the class as a whole.  Plaintiffs cannot have it both ways.  If, as Plaintiffs allege, Defendants acted on grounds equally applicable to all class members,

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 8
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035

then evidence about specific individuals is irrelevant. And if, as Plaintiffs allege, the named Plaintiffs are "typical" of the class, then the named Plaintiffs should be able to speak for the class.

Furthermore, even assuming that information about unnamed class members is somehow relevant, Defendants have produced a substantial amount of information about unnamed class members. For example, Defendants have produced class lists on a quarterly basis for nearly two years. These lists include the class members' names, the type of application they filed, their age, gender, country of birth, country of citizenship, ethnicity (where available), race (where available), and the date their application was filed.

In addition, Defendants have produced statistics revealing a wealth of information about the classes. The statistics are particularly relevant to Plaintiffs' claims that CARRP discriminates against individuals from Muslim-majority countries and results in unlawful delays and denials of immigration benefit applications. The statistics date back several years, and each statistic is shown in the aggregate, as well as broken down by the applicant's country of birth and citizenship. One set of statistics shows the number of adjustment of status and naturalization applications that have been received by USCIS, as compared to the number of those applications that have been processed pursuant to the CARRP policy. Another set of statistics shows the average length of time it has taken USCIS to adjudicate adjustment of status and naturalization applications generally, as compared to the average length of time it has taken USCIS to adjudicate adjustment of status and naturalization that have been processed pursuant to the CARRP policy. Yet another set of statistics reveal the average rate at which USCIS has approved adjustment of status and naturalization applications generally, as compared to the average rate at which USCIS has approved adjustment of status and naturalization that have been processed pursuant to the CARRP policy. Further statistics have been provided concerning the classes' inclusion of "known and suspected terrorists" (KSTs) and non-KSTs. These statistics are far more relevant to Plaintiffs' claims than the testimony of a handful of unnamed class members about how long their applications took to process and whether their applications were approved or denied. Dkt. No. 309 at 6 (stating that Plaintiffs' counsel would

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 9
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035

like to ask "potential class members" when they filed their applications, whether they have received a decision, and if so, whether the application was approved or denied).

Likewise, Defendants have produced the A-files of four randomly-selected unnamed class members. Dkt. No. 274 at 7. The information contained in these A-files should provide additional context about individual cases, and presumably, these four *randomly*-selected individuals are a more representative sample of the unnamed classes than the cherry-picked individuals that Plaintiffs' counsel have selected as potential witnesses.

Finally, Defendants have produced tens of thousands of documents detailing how applications are processed pursuant to the CARRP policy and thus how class members' applications have been handled. Defendants have also produced a Certified Administrative Record, consisting of thousands of pages of key CARRP-related documents. This extensive Administrative Record includes the central documents on CARRP policy for vetting and adjudicating cases with national security concerns. Dkt. No. 226-2 (noting that the documents in the record are the best source for understanding "how applications are processed under the CARRP policy"). Collectively, these documents provide far more extensive, representative, and reliable information about how applications are processed pursuant to the CARRP policy than Plaintiffs could possibly divine by interviewing a handful of unnamed class members.

Yet, despite all of Defendants' efforts to provide information that will allow Plaintiffs to present their case, Plaintiffs *still* claim that they need to contact unnamed class members in order to develop evidence for use in their case. Enough is enough. The risk in granting Plaintiffs' motion is clearly not worth the return.

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 10
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035

## **CONCLUSION**

For these reasons, the Court should deny the Plaintiffs' motion to modify the protective order.

DATED this 21st day of January 2020.

Respectfully submitted,

| | |
|---|---|
| JOSEPH H. HUNT<br>Assistant Attorney General<br>Civil Division<br>U.S. Department of Justice | */s/ Andrew C. Brinkman*<br>ANDREW C. BRINKMAN<br>Senior Counsel for National Security<br>National Security Unit<br>Office of Immigration Litigation |
| AUGUST FLENTJE<br>Special Counsel<br>Civil Division | JESSE BUSEN<br>Counsel for National Security<br>National Security Unit<br>Office of Immigration Litigation |
| ETHAN B. KANTER<br>Chief National Security Unit<br>Office of Immigration Litigation<br>Civil Division | BRENDAN T. MOORE<br>Trial Attorney<br>Office of Immigration Litigation |
| BRIAN T. MORAN<br>United States Attorney | LEON B. TARANTO<br>Trial Attorney<br>Torts Branch |
| BRIAN C. KIPNIS<br>Assistant United States Attorney<br>Western District of Washington | VICTORIA M. BRAGA<br>Trial Attorney<br>Office of Immigration Litigation |
| LINDSAY M. MURPHY<br>Senior Counsel for National Security<br>National Security Unit<br>Office of Immigration Litigation | *Counsel for Defendants* |
| MICHELLE R. SLACK<br>Trial Attorney<br>Office of Immigration Litigation | |

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 11
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Andrew C. Brinkman*
ANDREW C. BRINKMAN
Senior Counsel for National Security
National Security Unit
Office of Immigration Litigation
U.S. Dept. of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 305-7035

Defendants' Opposition to Plaintiffs' Motion to Interview
Persons Who Responded to Plaintiffs' Class Notice - 11
(Case No. 2:17-cv-00094-RAJ)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL
P.O. BOX 878 BEN STATION
WASHINGTON, DC 20044
TELEPHONE FRANKLIN: (202) 305-7035