1          UNITED STATES DISTRICT COURT

2      WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3   _____

                                    )
4   ABDIQAFAR WAGAFE, et al., on    ) C17-00094-RAJ
    behalf of themselves and        )
5   others similarly situated,      ) SEATTLE, WASHINGTON
                                    )
6                  Plaintiffs,      ) May 14, 2020 -
                                    ) 9:30 a.m.
7   v.                              )
                                    )
8   DONALD TRUMP, President of the  ) TELEPHONIC MOTIONS
    United States, et al.,          ) HEARING
9                                   )
                   Defendants.      )
10                                  )

11  _____

12              VERBATIM REPORT OF PROCEEDINGS
          BEFORE THE HONORABLE RICHARD A. JONES
13             UNITED STATES DISTRICT JUDGE

    _____

14

15   APPEARANCES:

16    For the Plaintiffs:      Heath L. Hyatt
                               Perkins Coie
17                             1201 3rd Avenue
                               Suite 4900
18                             Seattle, WA 98101

19    For the Defendants:      Victoria Braga
                               Michelle R. Slack
20                             U.S. Department of Justice
                               P.O. Box 878, Ben Franklin Station
21                             Washington, DC 20044

22                             Andrew C. Brinkman
                               U.S. Department of Justice
23                             Office of Immigration Litigation
                               450 5th Street NW
24                             Washington, DC 20001

25

**Proceedings stenographically reported and transcript produced with computer-aided technology**

1        Brian C. Kipnis
         U.S. Attorney's Office
2        700 Stewart Street
         Suite 5220
3        Seattle, WA 98101

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE COURT:  Good morning.  This is Judge Jones.
 2              MR. KIPNIS:  Good morning, Your Honor.
 3              THE CLERK:  Thank you, Your Honor.
 4         We are here in the --
 5              THE COURT:  Victoria?
 6              THE CLERK:  -- the matter of --  Yes.
 7              THE COURT:  Go ahead and proceed, please.
 8              THE CLERK:  Thank you.  Yes.
 9         We are here in the matter of Wagafe, et al., versus Trump, et
10    al., Cause No. C17-94, assigned to this Court.  We do have our
11    court reporter, Nickie Drury, on the line.
12         For those counsel who will be speaking today, if you could
13    please identify yourself for the record.
14              MR. HEATH:  Good morning, Your Honor.  This is Heath
15    Hyatt speaking on behalf of plaintiffs.
16              MS. BRAGA:  Good morning, Your Honor.  Victoria Braga
17    speaking on behalf of defendants.
18              MR. BRINKMAN:  Good morning, Your Honor.  Drew Brinkman
19    on behalf of defendants.
20              MR. KIPNIS:  Good morning, Your Honor.  Brian Kipnis,
21    Assistant United States Attorney, for defendants.
22              MS. SLACK:  Good morning, Your Honor.  Michelle Slack,
23    Department of Justice, on behalf of defendants.
24              THE COURT:  All right.  Thank you.
25              THE CLERK:  Your Honor, for the record, the public has
```

 1   been notified of this hearing and has been provided the bridge

 2   line and access code by way of a posting on the court's public

 3   website.  Thank you.

 4        THE COURT:  All right.  Thank you all for being present

 5   and available today.

 6        The Court has called you in to discuss four distinct motions,

 7   and I also want to cover a couple other matters as well, and

 8   that's the case schedule, which we need to talk about -- we will

 9   do that at the end of this proceeding -- and the trial date and

10   also the sanctions motion, which is still outstanding.

11        The primary reason why I have brought you here is to deal

12   with the four motions.  And to be honest with you, the practice

13   is getting to be a little bit unwieldy, and since we don't have

14   deadlines in some of the components of the case schedule, it was

15   advisable for this Court to call the parties to try and address

16   this concern.

17        I think you already know the difficulty that we all

18   experience and face being in the COVID-19 shutdown, and there

19   certainly hasn't been a slowdown in the volume of work that this

20   Court has engaged in and the challenges that we face, not just in

21   this particular case, but in high-volume criminal motions

22   practice for compassionate release, as well as a variety of other

23   civil cases, that this Court is facing at this point in time.

24        The Court has been adequately briefed by the four motions, so

25   there's no real need for extensive argument, and the Court is not

1  going to allow that to take place.  My primary concern is what

2  efforts have you engaged in and why haven't you engaged in a more

3  meaningful effort to resolve some of the conflicting motions.

4      Now, as I've indicated, I have discrete questions to ask.  My

5  impression is, then, rather than working toward resolution, the

6  parties are satisfied with debate of why you can't comply versus

7  what you can do and how to break the logjam.  Now, it's always

8  this Court's preference to have the parties have their own hand

9  in crafting resolution.  This Court is fully prepared to come to

10  a conclusion and issue an order, but it's always far better for

11  the parties jointly to have their say in what the outcome should

12  be because that's a resolution that they come to.

13      Now, I'm going to go through the motions one at a time.  I'm

14  not looking for --  While you shouldn't look for a formal

15  decision today, I may indicate from time to time which way I'm

16  leaning.  And I'm not certainly looking for additional briefing,

17  so please do not file any supplements to existing motions unless

18  you are asked by the Court to do so.

19      So we will begin first with the defendants' motion to compel.

20  I believe that's Docket No. 289.  Now, my first question goes to

21  the defendants.  It appears from the briefing that the defendants

22  have abandoned the request for the admission component of the

23  motion; is that correct?

24      And the reason I'm saying this is, the plaintiffs indicated

25  they were admitting or denying, and there is zero in the reply

 1   from the government.  So we're left with the motion regarding two

 2   specific interrogatories.  Is that a fair assumption or

 3   conclusion, counsel for the defendants?

 4         MS. BRAGA:  Yes, Your Honor, that's correct.

 5         THE COURT:  All right.  Thank you.

 6      And I will state for the defense --  Well, what steps have

 7   been undertaken since the motion was filed to narrow the scope of

 8   your requests or what can be resolved?  Now, I'm sensitive to

 9   plaintiffs' characterization of the request as fitting under,

10   using their words, "blockbuster" or blunderbuss" approach

11   because of the contention that the two interrogatories are

12   overly overbroad and/or unduly burdensome.

13      Now, I will also let you know, counsel, during years I have

14   been on the bench or in the years of my practice, any time a

15   party begins an interrogatory with "Identify all," that is going

16   to be problematic in the outcome.

17      Now, my practice is that key for the likelihood of success on

18   a motion to compel is what specific information are you looking

19   for.  It appears that the plaintiff offered a proposed compromise

20   and then this motion was filed without resolution.  Now, perhaps

21   you have had other discussions and conversations that I'm not

22   aware of, but I will give you an example.  On page 12 of

23   plaintiffs' response or opposition, they made a proposal:  We

24   will give you "principal or sample documents that support a

25   specific allegation."  Why wasn't that type of proposal accepted?

1   So I know I have made a lot of statements, so I will give you an

2   opportunity to respond to those questions.

3            MS. BRAGA:  Thank you, Your Honor.

4       We did meet and confer with defense counsel regarding --

5            THE COURT:  Counsel, please identify yourself before you

6   begin.

7            MS. BRAGA:  Oh, I apologize.  This is Victoria Braga for

8   the defendants.

9       Defendants' counsel and plaintiffs' counsel did meet and

10  confer prior to the filing of this motion.  Defendants had

11  offered a compromise to plaintiffs, a more narrow interrogatory

12  asking for an identification of persons who had material

13  information in support of their claims and a summary of that

14  information and also an identification of material facts that

15  support their claims and the identification of key documents that

16  support those facts.  Plaintiffs' response, which I believe you

17  just quoted from, was an indication to us that plaintiffs were

18  rejecting that compromise offer and, instead, plaintiffs

19  continued to offer only to identify categories of documents and

20  to offer to provide sample documents where we requested them.

21      We were hesitant to accept that offer because plaintiffs'

22  initial identification of categories of documents identified very

23  broad categories, including all of the documents that defendants

24  had produced in response to plaintiffs' requests for production.

25  That totals 40,000 documents, and we did not believe that

1   offering a sample of a range of documents that large while

2   continuing to maintain that plaintiffs might rely on the entire

3   category of 40,000 documents was sufficient.  Plaintiffs also did

4   not offer to link any of the information that they were willing

5   to provide us with to any specific allegation or complaint.  So

6   we were not satisfied that plaintiffs would be willing to provide

7   us with anything more than what they had offered in their

8   responses to our interrogatories, which were entirely too broad.

9           THE COURT:  Did you accept any proposal to say let's try

10  and you submit your representative samples so we can look and see

11  if they meet what our expectations are, or did you just lock down

12  and say that's not acceptable?

13          MS. BRAGA:  I think there was a little bit of a timing

14  issue.  If I remember correctly, that e-mail was sent by

15  plaintiffs just two days before the filing deadline.  So we were

16  not confident that we were able at that point to reach an

17  agreement.

18      Again, the hesitation is that allowing plaintiffs to identify

19  a sample of a category as broad as 40,000 documents would leave

20  open the possibility that plaintiff could rely on entirely

21  different documents as we move forward in the litigation, and we

22  believe it's unfair to defendants, who have bore most of the

23  burden to this point in discovery, to have plaintiffs not

24  meaningfully and sufficiently respond to our interrogatories,

25  especially in the compromised fashion that we have offered to

1    them.

2        THE COURT:  If you had that fear, counsel, is there any

3    reason why you couldn't give them the opportunity to give you the

4    samples and see if your fears were borne out as opposed to filing

5    a motion premised only upon fear?

6        MS. BRAGA:  Again, I think there was a bit of a timing

7    concern.  You know, plaintiffs didn't respond to our

8    interrogatories until soon before what at that point was the

9    motion filing deadline.  So we were forced to meet and confer

10   during -- in a limited time frame.  Again, I think that we --

11   Our belief is that if plaintiffs are maintaining that they are

12   going to be able to identify these broad categories of documents

13   as they have and then just provide a sample from each of those

14   categories, the worry is that the categories are so broad that

15   plaintiffs will be able to rely on entirely different information

16   than the sample that they provide to us.

17       THE COURT:  Have you proposed an agreement, counsel, to

18   restrict that concern?

19       MS. BRAGA:  Well, our identified -- or our proposed

20   compromise was to ask plaintiff to identify persons who had

21   material information in support of their claims and to summarize

22   that information and also to identify the material facts to

23   support their claim and to identify key documents that support

24   those facts.

25       THE COURT:  So what's your next move going to be,

 1   counsel, if the Court denies your request to compel?

 2          MS. BRAGA:  I'm sorry.  Again?

 3          THE COURT:  What's your next move going to be then,

 4   counsel, if the Court denies your motion?  Then you are back to

 5   square one.  So I'm trying to move you in a direction of looking

 6   toward resolution as opposed to conflict.

 7          MR. KIPNIS:  Your Honor, this is -- I'm sorry, Your

 8   Honor.  This is Brian Kipnis.  May I be heard for -- just on that

 9   point?

10          THE COURT:  Certainly.

11          MR. KIPNIS:  So, Your Honor, I take it from your

12   comments that you think that what we were asking for and what

13   we're reaching out for on these negotiations was too broad.  But,

14   frankly, Your Honor, I sat across at a deposition taken by the

15   plaintiffs in which they had a subset of these documents very

16   well organized in a set of binders, so they had made this

17   particular sorting already.  So I suppose the next thing we would

18   be asking for is, to the extent they have already identified a

19   subset of these key documents, that's all we're interested in.

20   So we're not really asking them for something they haven't

21   already done, Your Honor.  We could see it during the

22   depositions.

23          THE COURT:  Okay.  All right.  Any further response to

24   the questions the Court posed to the defendants?  Ms. Braga?

25          MS. BRAGA:  No, Your Honor.  Thank you.

1          THE COURT:  All right.  Let me hear from Mr. Hyatt.

2          MR. HYATT:  Good morning, Your Honor.  Thank you.

3     The plaintiffs believe that their responses and objections to

4     the interrogatories were proper and are still proper.  We did

5     make an offer to defendants' counsel to help resolve this

6     dispute.  We stand by that offer.  And, you know, we would be

7     willing to consider any fair counterproposals or a compromise to

8     our offer, but, you know, at the time of negotiations, that did

9     not happen.  So I think that's all that I have to say.

10    Certainly plaintiffs are still concerned about the breadth of

11    the interrogatories.  Even with defendants' proposed compromise,

12    they are still asking for, really, an annotation of a

13    293-paragraph complaint, and we would need a little bit more

14    specificity and narrowing of the interrogatory in order to

15    respond to it in the way that they would be satisfied.

16    And unless you have any specific questions, Your Honor,

17    that's the conclusion of my remarks, and we ask that you deny the

18    motion to compel.

19          THE COURT:  Well, I do have some additional questions,

20    counsel.  One is, when is the last time you had contact or

21    discussions about this particular issue?

22          MR. HYATT:  Your Honor, I believe it was in mid-October,

23    shortly before this motion was filed.  I am looking for the exact

24    date in my notes.  But I believe it was shortly before that.

25          THE COURT:  I don't need an exact date, counsel, but my

1    concern is, when you file these motions, that doesn't mean that

2    you just put your hands in various spans and not continue to

3    negotiate and work toward center.  Because that means from

4    October until now the parties have done absolutely nothing toward

5    resolving this conflict.  And, counsel, that's not going to

6    advance your case.

7         We've got a large, an extremely large caseload.  I have got

8    criminal cases right now that if I just tried criminal cases for

9    the balance of this year, that could absorb all of my docket

10   because it's high volume and it has been postponed and continued.

11   I have another trial, a criminal case that's set, assuming we can

12   get started with a COVID-19 trial, a post COVID-19 -- that's

13   simply going be the case -- that's going to be a four- to

14   six-week trial in January.

15        So the reality of this case getting to trial any time soon

16   without some clear and clean preparation to getting conflicts

17   resolved is going to present a problem.  And so you just can't

18   sit and do nothing for months toward resolving the conflict and

19   not meeting.  Counsel, you have got a lot more time on your hands

20   I think right now because you are not in an office setting.  I'm

21   not sure what your caseloads are like, but I know what ours are

22   looking like.

23        Now, counsel for the defendants have represented that they

24   have -- that you have organized binders and that you have key

25   documents and you've identified and structured your materials in

 1   a way that's easy for you to access and to be able to present.

 2   And I'm not asking you to turn over, you know, work product.

 3   That is not what I'm suggesting.  But what I am looking for is,

 4   what can you do by way of the organization that you've completed

 5   to try and make some meaningful response to what is being

 6   proposed by the defense?

 7             MR. HYATT:  Certainly, Your Honor.  And I appreciate

 8   your comments and certainly take them to heart, and we will

 9   endeavor to work with defendants to resolve this issue,

10   certainly, and other issues that we encounter as this case

11   progresses as well.

12       In terms of what we can offer at this point, we're certainly

13   willing to work with the defendants to reach a resolution on this

14   issue.  We are certainly, as you noted, Your Honor, concerned

15   about turning over certain work product.

16       Other issues that we have with turning over subsets of

17   documents is, one, that that would in some ways be binding on us

18   as key documents that would be offered, and certainly we wouldn't

19   want that to be the case.

20       But the last thing I will note is the subset of documents is

21   what we offered, and, you know, we thought that was a fair

22   compromise, and we would be willing to negotiate with the

23   defendants again on this issue and continue the discussions.

24             THE COURT:  All right.  Counsel for the defense, let me

25   hear from you on this last proposal regarding the subset and

1   where that would stand with your position?

2          MS. BRAGA:  We are willing to meet and confer with

3   plaintiffs' counsel about that.  As plaintiffs' counsel was

4   saying, we are not asking that they identify all documents.

5   That's why we have compromised to key documents.  As I said

6   before, our hesitation to accept a subset of a category as large

7   as 40,000 documents is that the subset in no way could be

8   representative of so many documents.  So the categories

9   themselves need to be narrowed in order to focus on key

10  documents.

11      As Your Honor was saying, it is important, we feel at this

12  point, to narrow the scope of the issues in this case, and as

13  Attorney Kipnis just explained, it seems that plaintiffs' counsel

14  has done the majority of the work to narrow the documents, and we

15  are hopeful that in further communications with them, they can

16  produce for us the documents and the information that will help

17  us move forward with this litigation.

18          THE COURT:  Counsel for the plaintiffs, counsel keeps

19  making reference to the 40,000 documents.  I've handled extremely

20  large cases.  What's a realistic number in terms of what

21  documents that you plan on utilizing for purposes of this trial,

22  to the extent that you know right now, based on the discovery and

23  based upon your trial preparation?

24          MR. HYATT:  I don't think I could give you an exact

25  answer on that, Your Honor.  The documents right now are

1   certainly likely in the hundreds, but, you know, not in the

2   thousands.  Most likely, my guess is in the hundreds.  Again, you

3   know, for trial, it will ultimately depend on what issues are

4   resolved through dispositive motions and other things, and so I

5   would also qualify my answer that way.

6           THE COURT:  Well, counsel, is there some reason why you

7   couldn't create by agreement, not that you are bound, tightly

8   bound, but to get away from this illusion of this 40,000 subset,

9   40,000 documents, be able to create some type of syllabus that

10  would narrow the scope of the hundreds of documents now that

11  we're talking about so it would make it easier for the defendants

12  to have an appreciation for the direction that you're going so

13  they can defend themselves?  Is that something that realistically

14  can be done between the parties?

15          MR. HYATT:  Yes, I believe that is something that could

16  be done between the parties.

17      The only concern that we would still have, Your Honor, is the

18  scope of the interrogatories.  And so the defendants would have

19  to meet us part of the way as well in narrowing the specific

20  issues that they are looking for and not just this, you know,

21  sort of subset, annotated version of the complaint that has been

22  our fear all along.

23          THE COURT:  All right.  Well, counsel, unless you have

24  something more to add, the Court has given you its concerns.

25  I've already indicated in my preliminary direction that I'm

 1    inclined to deny the motion.  I'm hoping that counsel can narrow

 2    the scope of what you're looking for.  This meet is the key to

 3    resolving this particular issue.

 4        And, counsel, the 40,000 unwieldy number of documents, you

 5    certainly can come to an agreement as to what you're providing

 6    and what limitations and restrictions can be placed on what

 7    you're providing.  That can be done by way of agreement and

 8    stipulation that the Court can look at and make a determination

 9    to accept or not, in lieu of burdening the Court with more

10    motions to compel.

11        Is that clear on Motion No. 1, counsel?  Counsel for the

12    defendants?

13            MS. BRAGA:  Yes, Your Honor.  Thank you.

14            THE COURT:  Counsel for the plaintiffs?

15            MR. HYATT:  Yes, Your Honor.  Thank you.

16            THE COURT:  All right.

17            MR. HYATT:  Yes, Your Honor.  Thank you.

18            THE COURT:  All right.  Thank you.

19        Let's move now to Question No. 2.

20        And also for the benefit of the court reporter, I think we

21    have got a lot of people speaking, so if at some point in time

22    I'm going too fast, as I sometimes do, or counsel is going too

23    fast, or if we're not clear enough, would you agree that you

24    would let us know, so that you can stop and interrupt us?

25            THE COURT REPORTER:  Yes, Your Honor.  This is Nickie.

 1    Thank you.

 2        Your Honor, if you could move closer to your speaker or your

 3    phone, I would appreciate that as well.

 4              THE COURT:  I will take my headset off.  Thank you.

 5              THE COURT REPORTER:  Are we ready?

 6              THE COURT:  Is that better?

 7              THE COURT REPORTER:  No.

 8              THE COURT:  Okay.  Is that better?

 9              THE COURT REPORTER:  Yes, Your Honor.  Thank you.

10              THE COURT:  Okay.  Good.  Thank you.  Let me know if it

11    changes at any point in time.  I'm taking my headset off.

12        The second motion is Docket No. 309.  That's the plaintiffs'

13    motion for permission to interview a limited number of persons.

14    Again, since this Court is inclined to grant this motion, the

15    questions I have are primarily directed to the defense.

16        Now, counsel, it appears that a number of people have

17    responded to the notice and have contacted the Perkins attorneys.

18    It appears that the scope of follow-up interviews affirmatively

19    states that the Perkins lawyers would not confirm or deny

20    whether any individual's experience was subject to CARRP and that

21    they merely wished to gather information about the experiences in

22    applying for immigration benefits.  I'm looking specifically at

23    Document 310-1, Exhibit B, or in the briefing at 309, page 6,

24    because they list a series of specific inquiries that they would

25    make.  So it's not like they're trying to hide what the questions

1    are going to be or what the scope would be.  But I would like to

2    go through or you to go through -- if you could pull that docket

3    up and look at each one of the questions and explain your

4    objections and let me know what your general concerns are.

5        Now, you continue to advance the argument with the general

6    claim of national security without specifics, and that's

7    insufficient.  If your concern is that the people or persons

8    being investigated, or possibly investigated, would alter or

9    change their behavior or impede other investigations, does that

10   really serve as justification, if that person suspected that they

11   were a target, that their behavior issue is going to change?  It

12   would appear that they've contacted the Perkins attorneys.  Maybe

13   they have already that fear, and that's water under the bridge.

14       To me, I look at this like there's a wiretap in a criminal

15   investigation.  If the suspect gets wind of a wire that's up,

16   they're going to change their behavior long before they're

17   contacted by the police or arrested because they have suspicions,

18   not because an officer told them that they were suspects.  That

19   appears to be almost where we are right now.

20       So if you would give me a general response to what concerns

21   you have about the issues I've relayed and also go through the

22   specifics of the questions which are raised by counsel.  So if

23   you would take it from there, counsel.  I'm not sure who is going

24   to respond to this one.

25           MR. BRINKMAN:  Yes, Your Honor, this is Drew Brinkman

1    for the defendants.

2        The concerns we have --  Well, first, I want to remind you of

3    what the class --  The 50-case sample we provided that got us

4    this protective order in the first place, I want to remind you of

5    what that sample said.  And, you know, these are -- these are --

6    we don't know who these people that plaintiffs want to contact

7    are, but we do know who the 50-case sample are.  So we think that

8    shows there are serious national security concerns with this

9    class in general.

10        With respect to the argument that these unnamed class members

11   already confessed that they are subject to CARRP, we said in our

12   response that there's a -- we think there's a qualitative

13   difference between someone suspecting that they're subject to

14   CARRP and then the plaintiffs potentially confirming it without

15   saying it directly by contacting them in connection with this

16   case.  And we cited a case from the D.C. Circuit where the judge

17   used -- the circuit court used a reading similar to that where

18   they said, well, it really doesn't matter what people think; this

19   is official confirmation that it's true.  That's a big difference

20   from a national security perspective.

21        So while I understand the plaintiffs -- you know, that they

22   say they won't tell these people directly whether they were

23   subject to CARRP, I don't know how these people wouldn't surmise

24   that they were subject to CARRP, regardless if the plaintiffs

25   tell them.

1       And we also noted, and I agree, that there's more that the

2   plaintiffs --  You know, the plaintiffs don't know who

3   these people -- what derogatory information the government has on

4   these said people, and the plaintiffs don't know these people's

5   true intentions, and it is certainly possible that these people

6   are trying to see whether the government has derogatory

7   information on them.  And, you know, it is somewhat speculative,

8   but I think it's speculation grounded in logic.

9       And then turning to your questions about --

10          THE COURT:  Let me ask a follow-up question, counsel.

11   Where in the identified number of questions that counsel for the

12   plaintiffs have proposed are they attempting to elicit derogatory

13   information that the government may or may not possess?  Can you

14   point to one of the questions that you think answers that?

15          MR. BRINKMAN:  No.  Well, no.  No.  That's not a

16   question the plaintiffs would ask.

17       But I'm saying the people that -- the plaintiffs' counsel

18   don't know what derogatory information the government has.  So

19   these people could be truly bad actors, but they're telling

20   plaintiffs' counsel, "We're not bad actors, we can suspect we are

21   subject to CARRP, and we're innocent people."  So it's sort of an

22   unknown at this point is my point.

23          THE COURT:  What I'm saying, counsel, these are discreet

24   questions that are being posed to these individuals.  It's not

25   giving any information.  It's not eliciting any answer from them

1   as to their suspicions about derogatory information.  They're

2   talking about processing.  So I guess I'm at a loss as to your

3   expressed concern about the derogatory information and how that

4   would come out in this type of interview.

5            MR. BRINKMAN:  Well, the mere fact of contact, I think,

6   suggests that the government has derogatory information on these

7   individuals because it's public knowledge that the plaintiffs'

8   counsel have a class list, and if the plaintiffs reach out to

9   these people to talk to them about this case, I don't know how

10  these individuals wouldn't reason that the government has

11  derogatory information on them.  Why else would plaintiffs'

12  counsel be reaching out to them?

13           THE COURT:  Wouldn't the category of people that they've

14  identified be the people that have already contacted Perkins as

15  opposed to Perkins acting on the issue on their own from the very

16  beginning?

17           MR. BRINKMAN:  Yes.  Of course.

18           THE COURT:  So --

19           MR. BRINKMAN:  Go ahead.

20           THE COURT:  In other words, Perkins is not saying that

21  we're going to go out and randomly pick six people and ask

22  questions.  Perkins is in a situation where these people have

23  already contacted them and then Perkins is following up on that

24  contact.  Isn't that dramatically different from what you are

25  identifying for the Court?

 1          MR. BRINKMAN:  I don't think so.  I mean, I'm talking

 2   about the same scenario that you are talking about.

 3       Our point is that these people might reach out to Perkins to

 4   try and figure out whether they're on the class list, and the

 5   mere fact that Perkins follows -- you know, reaches back to them,

 6   after the individuals contact Perkins, that essentially confirms

 7   that these people are on the class list.

 8          THE COURT:  All right.  Please continue, counsel.  I

 9   think we've reached a point where we're not going anywhere on

10   that point.  Please continue.

11          MR. BRINKMAN:  Well, I guess -- I'm just walking

12   through -- you asked me to walk through the questions --

13          THE COURT:  Right.  Go ahead.

14          MR. BRINKMAN:  -- you know, that Perkins Coie would ask

15   these folks.

16          THE COURT:  Right.

17          MR. HYATT:  Question one:  Why they contacted us with

18   respect to the notice?  I'm note sure what they're getting at

19   with that, but I'm not sure how it would be relevant.

20       Do they have a pending application for benefits?  Well,

21   Perkins -- the plaintiffs should already know if they have a

22   pending application for benefits and what type of application

23   because we provided class lists that show who was in the class.

24   So they shouldn't be learning anything new from that question.

25          When the application was filed?  Again, that's provided in

1   the class list, so the plaintiffs shouldn't learn anything new

2   from that question.

3       If there was a decision?  They should also know because that

4   would be in the class list.

5       What the decision was?  They wouldn't know.  And that's

6   something perhaps that we could provide.  If, you know, there was

7   a decision for these six folks, we can provide a decision, I

8   think.  I would have to check with our clients, but that seems

9   fairly easy.

10      Whether it was pending for longer than six months?  I think

11  that should be in the information we provided.  The class list

12  should show that.

13      If they were ever informed if the application was subject to

14  CARRP?  I mean, we know that USCIS generally does not tell people

15  if their cases were subject to CARRP.  We've admitted that.  So I

16  don't really know how that adds to the litigation.

17      Have there been personal or familial consequences if the

18  application was pending for longer than six months?  That's

19  something only the applicant could tell.  At least the

20  government, actually, I don't think could proffer that

21  information to the plaintiffs.  But we don't think that's

22  relevant.  We think that will distract from the central issue in

23  the case, which is whether CARRP is lawful as to the class as a

24  whole.

25      I don't think we should be getting into a back-and-forth

1   about individual applications.  The plaintiffs presumably are

2   going to be trying to put up evidence of someone that was subject

3   to CARRP, they waited a long time, and their case was denied,

4   because that fits their narratives.  Well, then, we could put up

5   evidence of someone that was put into CARRP, you know, waited a

6   short time, and their case was approved.  I don't think a

7   back-and-forth like that advances the case.  It's just a

8   distraction from it because the Court has said, you know, the

9   facts -- the facts for each individual class member are

10  irrelevant; it's whether CARRP is lawful to the class as a whole.

11        And then the last two, I mean, I really don't have anything

12  to add on those.  But does that give you any sense of where we're

13  coming from?

14              THE COURT:  That answers somewhat, counsel.

15              MR. KIPNIS:  Your Honor, this is Brian Kipnis again.

16  Can I just see if I can clear -- get us clear on one point just

17  to -- I'm sure you understand our position.

18        We are not certainly accusing Perkins of doing anything

19  consciously to confirm these people are in the CARRP program, but

20  we think necessarily by responding to these people who are --

21  responding to those out of the blue that they are -- that they

22  think they may have been in the CARRP program, Perkins is going

23  to reach out to them based on whether they're -- you know, what

24  their circumstances are, whether their name appears on the class

25  list.  Just simply by Perkins' interest in their case, there's a

1    confirmation that those people are in the CARRP program.  There

2    would be no other reason for them to be contacted.

3        To your point that this is speculative, it is speculative in

4    the sense that we don't know who these people are so we couldn't

5    possibly give you concrete information about what their

6    individual circumstances are.  We're not able to do that.  But we

7    do know that they were culled from a list which is populated by

8    people who are in this category for a reason.  We believe them to

9    be a risk, and there is derogatory information on them.  We don't

10   know in any of these individual cases how serious that is.  It

11   could be, in a worst case scenario, that it is serious.  And

12   perhaps it's speculative to say that, as this is your concern,

13   Your Honor, but we have no other ability but to speculate because

14   we don't know who these people are that Perkins is selecting.

15       So we're kind of in a quandary.  We're trying to do our job

16   here.  We're trying to protect the country by being as

17   risk-adverse as we can, and we're doing our best under the

18   circumstances, but the situation is just unusual because we're

19   all circling around unknowns.  We don't know who these people are

20   and so we can't give you anything more than speculation about the

21   danger, but we do know that they are in a class of people who are

22   dangerous.  So that's our concern in a nutshell, Your Honor.

23       And we don't think that the reward --  This is a risk-reward

24   situation.  There's some risk.  The question is:  Does the reward

25   justify the risk?  And what we're trying to say is this is a case

1    that is based upon a theory that if the government has been

2    unlawful as to one person, it's been unlawful to everyone for the

3    same reason because individual circumstances do not identify our

4    liability but identifies our liabilities that we are globally

5    wrong globally carrying out a program that's unlawful.  So what

6    we're saying is we're undertaking this risk for something that

7    doesn't really advance the case because it is a global case, not

8    one that's based on individual circumstances.  So that's what

9    we're trying to say.

10         THE COURT:  Let me ask you this, counsel.  If your

11   concern is the impression that this will give upon the

12   interviewee, is there a preamble that could be agreed upon

13   between you and plaintiffs' counsel which would make the

14   statement that you, the interviewee, have contacted our firm, we

15   are not confirming or denying that you are the subject of this

16   litigation; the only purpose of our investigation or interview is

17   to obtain background information for our case, or words to that

18   effect, or along that line?  That's just coming off the top of my

19   head, counsel.  Something that would alleviate some of the

20   concerns that you have.

21       Do you think that type of preamble -- and I know it's

22   not bulletproof by a long shot -- but that's something that could

23   advance trying to control the perception that people have that I

24   am a target, I am being investigated, the government does have

25   the derogatory information by the mere fact that Perkins is

1    contacting me.

2         MR. KIPNIS:  Well, you know, I mean, we prefer that they

3    don't know that we have derogatory -- I mean, this is the last

4    point, Your Honor -- but we don't want them to know that we have

5    derogatory information.  That's the thing that we're trying to

6    avoid.

7         And there's also an issue that I think has not been talked

8    about.  We don't really know what the ongoing relationship of

9    these people with Perkins is going to be.  Because, after all,

10   these people are Perkins' clients, right, so they can't be --

11   they can only be so cagey about what their ongoing relationship

12   is with them, consistent with their ethical obligations.  There's

13   an attorney-client relationship there.  There's so many unknowns

14   about how -- this can be so complicated -- about how this would

15   go forward when they are contacting people who are their clients

16   but not really telling them they're the clients, but signalling

17   by their interest that they are their clients.  And from our

18   perspective, all of this serves to confirm something that we're

19   trying to protect.  So that's our concern, Your Honor.

20        THE COURT:  I still didn't get a reaction from you,

21   counsel, in terms of trying to put some language in at the

22   beginning that would address your specific and precise concerns

23   of avoiding any impression of how these interviewees accept the

24   fact that they were contacted in the first place.

25        MR. KIPNIS:  Our position is, Your Honor, if that's

1    something that you want us to try to work out with plaintiffs'

2    counsel, we will try.  I guess if I'm -- and I apologize if it

3    seems like I dodged your question because I'm hesitant to say

4    that I think that that's workable.  But we're willing to try,

5    Your Honor.  We will give it a try, to see if there's something

6    we can work out.

7              THE COURT:  Counsel, I'm not requiring them -- again,

8    I'm trying to break up the logjam.

9              MR. KIPNIS:  I know, Your Honor.

10             THE COURT:  Give you some ideas to try and stimulate

11   some conversation or discussion between the parties to try and

12   come to resolution.  But unless you have something else to add,

13   Mr. Kipnis, I will go to the plaintiffs.

14             MR. KIPNIS:  No.  That's all, Your Honor.  Thank you.

15             THE COURT:  All right.

16        And did Mr. Brinkman have anything else that he wanted to add

17   before I ask plaintiffs' counsel some questions?

18             MR. BRINKMAN:  The only thing, Your Honor, is I think --

19   Well, there's the function of the initial interview, and, you

20   know, you're sort of focused on that, but I think it gets even

21   tougher as we get down the line in the case.  If the plaintiffs

22   want those people to testify, which they say they do, I really

23   don't know how these people won't know that they have been

24   subject to CARRP.  It's just another step down the line where it

25   just becomes inevitable that that's revealed.  So that's the only

1    thing I would add.

2            THE COURT:  Okay.  Thank you.

3        Counsel for the plaintiffs, you have been patiently sitting

4    there waiting.  I want to hear your response to some of the

5    concerns that have been expressed.  But before you get to that,

6    if you do seek the information in the interview and the questions

7    that you've identified for the defendants and the Court -- and

8    I'm looking down the road as far as admissibility versus

9    relevance; the relevance standard is a fairly low threshold, so

10   we're talking about admissibility -- have you considered what the

11   benefit and what you are going to do with this information for

12   trial purposes and how this type of evidence or what rules of

13   evidence this type of information would be permissible or

14   admissible at trial?

15           MR. HYATT:  Yes, Your Honor, we have considered that.

16   And we do believe that the stories of these unnamed plaintiffs

17   are both relevant, as the Court has already ordered, and

18   inadmissible -- admissible, excuse me, at trial through a number

19   of different vehicles.  You know, first, these are stories of

20   witnesses, folks that have had their applications sidelined by

21   CARRP, and, you know, that story and the injuries that they have

22   suffered as a result of CARRP and the program itself certainly

23   would be admissible, Your Honor.  But to add a little bit more

24   specificity to this, these stories are something that our experts

25   may rely on, our experts may use, as a part of their reports,

1   which, you know, may need to be supplemented.  You know,

2   plaintiffs have already submitted expert reports in this case,

3   but certainly if there are additional stories from our unnamed

4   plaintiffs, there may be some addition to those expert reports.

5        But, Your Honor, going back to your question about thinking

6   down the road, the time for those types of conversations and for

7   defendants to raise their objections to admissibility questions

8   are through motions in limine.  The phase that we are at in this

9   case, Your Honor, is still discovery, and we have the right to

10  reach out to our unnamed class members, to hear their stories,

11  and certainly we are asking to exercise that right through a

12  slight modification of the protective order.

13       I hope that answers your question.  And I will wait to sort

14  of further get into a response to the defendants' concerns.

15           THE COURT:  All right.  Let's now go to the plaintiffs'

16  concerns.

17           MR. HYATT:  Yes, Your Honor.  Thank you.

18       The purpose of these interviews, Your Honor, is to gather

19  these people's stories.  The questions that we have laid out --

20  and, frankly, we've been very transparent about the categories of

21  information for which we seek -- are aimed exactly at that.  We

22  want to understand the real impact on people's lives of this

23  program, how they're impacted, and what the results of this

24  program have been on these people.

25       In terms of the harm, or fear of harm I should say,

 1    defendants, I think, made it very clear that the harms that they

 2    fear are still speculative and unknown, and that, Your Honor, is

 3    not enough to restrict communications between counsel and unnamed

 4    class members.

 5        The next point on this is to, again, reiterate that these

 6    individuals contacted us not by a communication directly to class

 7    members but through a public notice.  So any concern that the

 8    government has or the defendants have about these people

 9    confirming that they're subject to CARRP is, from our

10    perspective, a nonissue at this point because these people

11    already suspect that they may have been subject to CARRP.  The

12    mere fact of us interviewing these individuals is not going to

13    add to that concern.  But, you know, one thing that I would like

14    to highlight to the Court is that, you know, since the motion has

15    been filed, additional people have responded to the class notice.

16        And, you know, as a point of compromise, to alleviate

17    defendants' concerns, we will -- we would certainly be willing to

18    draft a preamble to make very clear that we will not tell them,

19    the individuals, whether they have been subject to CARRP or not

20    and that we are responding to them and their outreach to us.

21    But, also, Your Honor, we would offer to interview each person

22    who has responded to our notice and provided us enough

23    information so that we could be in contact with them again and

24    tell each other person that, that we are interviewing everybody

25    who has contacted us and who we can get back in touch with.

 1    I think all of these safeguards, including this most recent

 2  one that plaintiffs put forward, would alleviate any reasonable

 3  conclusion that somebody is, you know, subject to CARRP merely

 4  because we're reaching out to them.  So I hope that certainly

 5  alleviates the Court's concerns about there being any issues

 6  here, but also the government's as well.

 7    One more piece.  Just thinking down the road here, Your

 8  Honor.  You have -- you issued a protective order with relation

 9  to communications that plaintiffs, you know, can or cannot have

10  with unnamed class members.  We have strictly adhered to that

11  protective order.  And, you know, if you are to grant our motion

12  today, and the need arises for additional communications or

13  additional issues, we can certainly try and work those problems

14  out with the government beforehand, but, you know, the Court is

15  also obviously able to modify the protective order that it has in

16  place as well, should the need arise later on down the road.

17        The COURT:  All right.  Let me just check my notes,

18  counsel.

19    All right.  That appears to answer the questions the Court

20  has.  Is there anything by way of rebuttal, from the defense

21  perspective?

22        MR. KIPNIS:  This is Brian Kipnis, Your Honor.

23    I heard Mr. Hyatt talk about more people, but this motion is

24  about the six people, as far as I know.  Are they suggesting that

25  they are interested in contacting more than the six people that

1  are the subject of the motion?

2           THE COURT:  Let me hear from counsel.  Mr. Hyatt?

3           MR. HYATT:  Thank you, Your Honor.

4    We offer that as a suggestion to alleviate any of defendants'

5  concerns.  Though the motion itself does only indicate that we

6  are interested in reaching out to six individuals, you know, we

7  certainly would hope to interview everyone that has contacted us,

8  both as a means of compromise with the government, because we

9  think that's inherently a reasonable request, but also a

10  reasonable compromise to alleviate the defendants' concerns.

11          THE COURT:  Well, what I can tell, counsel, from the

12  conversation we've had on Motion No. 2 is there are some things

13  that can be done to try and minimize some of the concerns by the

14  government, as well as some limitations in terms of what counsel

15  for the plaintiffs can do.  So I'm going to stop here and move to

16  Motion No. 3, but it does appear that there can be some progress

17  made on that second motion.

18      The third motion is Docket No. 312.  That's the motion to

19  compel documents withheld under the law enforcement or

20  deliberative process privileges.  Now, my understanding is that

21  the request has been narrowed to a subset of 41 documents, plus

22  five from the certified administrative record.

23      The biggest issue the Court has is the parties are looking

24  for the Court to do the heavy lifting, to scour the docket to

25  find the documents.  There are over 350 docket entries, and the

1   way the Court reads is that we're doing everything right now by

2   pure technology.  We don't have the benefit of pulling out a

3   binder and setting up multiple binders to go through and look at

4   some of the exhibits and some of the documents.  So we're having

5   to pore through and do, to be honest, the heavy lifting that the

6   parties should be engaged in.

7        Now, I will give you a specific example.  Just one second.

8   Give me a second.  I'm trying to pull it up on my computer.

9   Please be patient.

10       All right.  Now, this one, this motion, essentially is asking

11   for two redactions on two separate documents.  I have already

12   indicated 36 were produced to plaintiff in discovery and five

13   from the administrative record.  Technically, six, but two of

14   them are almost identical.  Now, the administrative record is

15   filed in the docket, so we have those files, those five, but the

16   Court can't find the remaining 36 documents.

17       Now, in the initial declaration, that's Docket No. 313,

18   you've indicated that -- it indicates that they did not attach

19   documents, but they would at a later date.

20       When we were looking for it --

21            THE COURT REPORTER:  I'm sorry, Your Honor.  Could you

22   repeat that?

23            THE COURT:  Certainly.

24       Let me go back and look again.  The administrative record is

25   filed on the docket, so we have those five documents, but it's a

1    challenge to the Court to find the remaining 36 documents.

2        Now, in their initial declaration, it's Docket 313, there is

3    an indication that they did not attach the documents, but they

4    would at a later date.  And the Court has been looking on the

5    docket, but I think you may have forgotten.

6        For example, of the documents, we can't find any of the

7    documents in the reply brief, that is Docket No. 344, that begins

8    with the Bates DEF, for example, on page 1 -- and I will go

9    slow -- DEF, for defendant, -00021130 and DEF-00266453,

10   DEF-0004010, DEF-0009671, and then we transition to page 3,

11   DEF-00184286, DEF-00184291, and DEF-00184306.  So that's my first

12   question in terms of the challenge that we're having finding

13   these documents.

14       It appears --  Again, going to the docket, Docket 341 and

15   344, there appears to be an effort by the plaintiffs to winnow

16   down what you are seeking in the 41 documents.

17       What additional negotiations have been undertaken since the

18   time this motion was filed to resolve this issue?  That's a

19   question for counsel for the plaintiffs and also a question about

20   the documents being filed or not being filed.

21       MR. HYATT:  Yes, Your Honor.  I will address your second

22   question first, which is with respect to the documents.

23       You know, the procedural history, as you noted, with this

24   motion is a little bit complicated, and we certainly endeavored

25   to supply the documents to the Court under seal if it would have

1    been helpful to the Court to review the individual documents.  I

2    believe that was what we did with the first motion to compel as

3    well.  We would be happy to work with the defendants to make sure

4    that the documents that the Court would like to review are

5    available under seal with proper Bates numbers.  There was some

6    reproduction of documents with lesser redactions, that the

7    parties tried to negotiate a resolution to this issue before

8    filing additional briefing for the Court.  So, Your Honor, I

9    apologize for the confusion, and we will work with defendants to

10   make sure that the documents that are at issue, especially the

11   ones that you just outlined, are at the top or near the top of

12   the docket for your ease, and we will get that as soon as

13   possible to you under seal, if that would be most helpful to you.

14       As to your first question, the communications that have

15   occurred since the filing of the briefing -- well, I think what

16   you are really looking for, Your Honor, is communications that

17   have occurred since the end of the briefing occurred.  You know,

18   there were conversations between the parties to try and narrow

19   the dispute, and we were successful in some regard before the

20   opposition and the reply was filed.  After the motion was noted

21   for consideration, Your Honor, there had been very limited

22   discussions.  No discussions with respect to this issue.  There

23   have been limited discussions with respect to the law enforcement

24   privilege in general as the parties try and work out certain

25   claw-back requests that have been made.  Those conversations are

1   ongoing.  The parties have some fundamental disagreements about

2   what information should be subject to the law enforcement

3   privilege that we have been unable to resolve.

4       I will --

5           THE COURT:  Well --

6           MR. HYATT:  Oh, yes.  Go ahead, Your Honor.

7           THE COURT:  Go ahead.

8           MR. HYATT:  I just want to finish this by saying, you

9   know, again, in the first motion, your instructions to counsel

10  are well taken, and, you know, we will certainly endeavor to

11  speak with opposing counsel and find more ways and try again to

12  sort of reach a resolution without the Court's involvement.

13  Certainly that happened the first time around, before this motion

14  was noted for consideration.  But, you know, I wanted to make

15  sure you know we take your comments to heart and your

16  instructions to heart, and we will proceed accordingly.

17          THE COURT:  One of the things, counsel, is that --

18          THE COURT REPORTER:  I'm sorry.  I'm sorry.  Could you

19  repeat that, please?

20          THE COURT:  I'm sorry.  I'm sorry.

21      In the Emrich, E-m-r-i-c-h, declaration and the briefing, why

22  shouldn't the Court just look at this as just another motion for

23  reconsideration on an issue the Court has already ruled upon?

24          MR. HYATT:  Yes, Your Honor.  There are some -- well,

25  there are two issues here.  First, there are categories of

 1    documents that the plaintiffs have laid out in their reply brief

 2    that plaintiffs believe, and the documents suggest, are

 3    improperly redacted, consistent with Your Honor's most recent

 4    order.  For example, you know, plaintiffs believe that there are

 5    internal USCIS information to which plaintiffs are entitled that

 6    are still redacted.  It may be documents such as interviewing

 7    policies, vetting policies and procedures internal to USCIS,

 8    USCIS policies on when USCIS officers should reach out to

 9    third-party law enforcement agencies, or questions they should

10    ask to try and resolve potential national security concerns.

11    Certain examples used internally and internal guidance documents

12    are redacted beyond the personal identifying information that the

13    Court allowed the defendants to continue to redact.  And so, Your

14    Honor, we believe that some of the redactions that the government

15    has imposed do not comply with your order, and we have moved for

16    them to lift those redactions.

17        And the second part, Your Honor, of this is --  Well,

18    actually, for this motion, that is the main -- that is the main

19    thrust of the argument.

20        With respect to information that is intertwined with third-

21    agency information -- I'm quoting from page 6 of the defendants'

22    opposition -- this intertwined information, Your Honor, is, at

23    least plaintiffs believe, is USCIS analysis of third-agency

24    information, and to the extent that there is USCIS analysis done

25    by USCIS officers, that information should be produced without

 1    redaction.

 2         Your Honor, one of the key parts of this case is USCIS's

 3    determinations of an applicant's status as a potential national

 4    security concern and how USCIS reaches that determination, how

 5    they evaluate the information they receive, vet the information

 6    they receive, and what criteria USCIS uses to evaluate the

 7    information it receives.  All of these things bear on the

 8    determination that USCIS alone determines if someone else is or

 9    might be a national security concern.

10         So there are categories of documents, Your Honor, that we do

11    not believe are -- that are improperly redacting USCIS

12    information, and we ask that you issue another order to unredact

13    that information.

14              THE COURT:  Now, counsel, the references to the

15    third-party information and how it's used, how USCIS, I guess,

16    analyzed the information that they received, are you suggesting

17    that the defense would have to disclose the third-party agency

18    that provided the information and what they provided?

19              MR. HYATT:  Your Honor, what they provided is not

20    necessarily something that we would require the defendants to

21    produce.  What we're looking for, Your Honor, is exactly what you

22    have ordered in the past, that defendants be exacting with the

23    privilege and use a scalpel as opposed to an axe when they're

24    asserting the law enforcement privilege.

25         And, Your Honor, you have ruled that third-agency

 1    information, information that originates from third agencies, is

 2    privileged.  We do not seek to have you reconsider that order.

 3    But to more directly answer the second part of your question, we

 4    believe that, you know, broad references to third agencies should

 5    not be privileged.  If there are individual facts obtained from

 6    third agencies or hits, specific hits from a database code at

 7    some third agency, we don't believe that that is privileged --

 8    or, sorry, we accept that the Court has ruled that that is

 9    privileged, but, for example, you know, the information about

10    USCIS determinations with respect to the reliability or whether

11    USCIS should continue using information that comes from a third

12    party generally, that is important information for this case and

13    not something that falls within the law enforcement privilege.

14           THE COURT:  All right.  Thank you, counsel.

15       I will hear from the defendants now.  And one of the starting

16    points from the Court's perspective are points raised by the

17    plaintiffs regarding, for example, privilege logs, and they

18    assert that they lack page numbers, they have block redactions,

19    they have inconsistency in redactions, why can't you produce --

20    and why can't you produce the statistical information or data.

21       So let's start there, counsel.

22           MS. BRAGA:  With regard to the privilege log

23    specifically, Your Honor?

24           THE COURT:  Yeah, let's start with the privilege log.  I

25    will get to the issues raised by the plaintiff, but I want to

 1    start with the privilege log.  These are specific questions that

 2    I have.

 3            MS. BRAGA:  Okay.  I think it was our understanding that

 4    plaintiffs, following the January order, were no longer

 5    challenging the sufficiency of the privilege log.  Plaintiffs'

 6    counsel might be able to speak to that.

 7            THE COURT:  Let me hear from plaintiffs' counsel.

 8            MR. HYATT:  Yes, Your Honor.

 9        So after your ruling in early January on the first round of

10    the motion to compel, we told the defendants that we were

11    withdrawing the challenge, the formal challenge to the privilege

12    logs and the sufficiency of the privilege logs.  Though I will

13    note, Your Honor, it is difficult for plaintiffs to assess the

14    challenges raised by the defendants given the lack of

15    specificity, the page numbers, or the lack thereof, especially in

16    the limited subset of documents that we have requested a rereview

17    of.  But, yes, Your Honor, we have formally withdrawn that

18    challenge.

19            THE COURT:  All right.

20        The next question for the defendants.  You repeatedly

21    reference redactions were justified because, again, as counsel

22    for the plaintiffs has noted, and it's your words, it's

23    intertwined with third-party agencies.  The Court always has

24    concerns when there are block redactions that that's an

25    indication -- or it's an assumption, perhaps -- that target

1    redactions were not considered.  And it's difficult for the Court

2    to believe that the entirety of a document or page after page of

3    a document would necessitate being block or excluded.

4        Could you address that concern, counsel?

5        MS. BRAGA:  Well, with regard to the law enforcement

6    redactions, Mr. Emrich does say in his declaration that USCIS

7    information was withheld only insofar as the disclosure would

8    provide insight into third-agency law enforcement information.

9    He then explains how USCIS information can involve third-agency

10   information.  He says that in the USCIS documents there can be

11   investigative information obtained from law enforcement agencies.

12   There is also information and possibly screenshots of USCIS

13   databases and systems that interact with third-party databases,

14   such as texts, and that's a category of documents, and

15   particularly screenshots, that the Court has said may remain

16   redacted.  And it also said that information from USCIS

17   administrative investigations may reference investigations of

18   thirty-party law enforcement agencies.  So in those ways it

19   appears that USCIS documents can contain law enforcement --

20   information from law enforcement agencies.

21       Plaintiffs' counsel mentioned several categories of

22   documents.  One that he mentioned was questions that USCIS

23   officers ask third parties.  To the extent that those questions

24   implicate information maintained by the third-party agency, the

25   question, as well as the answer, would have to remain redacted.

1        Internal vetting procedures is another area that counsel

2    mentioned, which is redacted.  It is our understanding that

3    solely internal USCIS procedures should not be redacted; however,

4    to the extent that even internal vetting can involve a reach-out

5    to third-party agencies or the discussion of information obtained

6    from third-party agencies, that information will remain redacted.

7    We have said in our motion that we redact information that is

8    truly indistinguishable from otherwise protected information,

9    specifically as defined in the Court's January order.

10        THE COURT:  Let me ask you, counsel, if the Court orders

11    the defendants to provide in camera opportunity, are you

12    comfortable in representing to the Court that every page that has

13    been fully blocked would include either third-party agency

14    information or third-party intertwined information with USCIS?

15        MS. BRAGA:  Yes, Your Honor.  We have reviewed the

16    documents multiple times in the meet-and-confer process, and we

17    have produced multiple versions of them with lesser redactions,

18    and we believe at this point the only information that remains

19    redacted is third-party agency information or USCIS information

20    clearly implicating third-party agency information.

21        THE COURT:  All right.  Is it possible that you could

22    provide for these block redactions a summary of what's in that

23    document without attribution to the third-party agencies?  In

24    other words, I'm trying to get to a point where there's some

25    degree of comfort that the plaintiff would have that there's a

1    justified, specific reason for that information.

2        Right now, the plaintiffs are assuming and guessing there has

3    to be something because of block redactions.  I'm trying to get

4    toward resolution by you providing a summary of a block redaction

5    so that they at least have some semblance of an idea of what

6    content is being excluded.

7        MS. BRAGA:  I think that would be something we could

8    speak with plaintiffs' counsel about.  I think we would need some

9    clarity from them on what they are considering block redactions.

10   When they refer to block redactions, it's not always clear to us

11   that they mean entire page redactions.  They could just mean a

12   large redaction.  So in order to do that, I think we would need

13   from them a list of pages and the documents at issue that they

14   claim contain block redactions.  I think our privilege logs

15   do provide that information in some respects.  And as plaintiffs'

16   counsel said, they're no longer challenging the sufficiency of

17   the privilege log.  To the extent that it would be helpful to the

18   resolution of the motion, I think we can commit, in conjunction

19   with plaintiffs' counsel, to {inaudible} redactions identified

20   for us.

21       THE COURT REPORTER:  I'm sorry.  Could you repeat that

22   last sentence?

23       MS. BRAGA:  I think we can commit, in conjunction with

24   plaintiffs' counsel, to reviewing some block redactions and

25   possibly providing, you know, specific information to each block

 1  redaction, should plaintiffs' counsel be willing to identify the

 2  block redactions for us.

 3          THE COURT REPORTER:  Thank you.

 4          THE COURT:  Another question I have for the defense is,

 5  they represent that you redacted information that plaintiffs

 6  claim that they can -- public information that they can obtain

 7  off of the Internet.  And I don't know if there's a direct

 8  response to that.

 9          MS. BRAGA:  They're referencing, I think, their training

10  slides and {inaudible.}

11          THE COURT REPORTER:  I am sorry, counsel.  I think you

12  are cutting out.

13          MS. BRAGA:  Oh, I'm sorry.

14      To the extent that those documents say that the redacted

15  information was taken from the Internet, I think that it remains

16  redacted because it may be third-party information, and it's not

17  clear just from that that it's from a verifiable Internet source

18  or that the third party itself had released the information.

19          THE COURT:  Okay.  One second, counsel.

20      All right.  Please continue.  Please continue, counsel.

21          MS. BRAGA:  Thank you, Your Honor.

22      I don't think we have anything to add to the law enforcement

23  redactions other than to say that we are redacting these

24  documents, third-party agency information or USCIS information,

25  that clearly implicates such information.

```
 1        I did want to note, I know that Your Honor said that you had
 2   access to the administrative record documents.  As plaintiffs'
 3   counsel had mentioned, we did do a bit of work in lessening the
 4   redactions, even on the administrative record documents, before
 5   the motion was filed.  So I would caution the Court against
 6   relying on those documents because it is likely that redactions
 7   in those have changed at this point.
 8             THE COURT:  Thank you for clarifying that.
 9        All right.  Any further argument that you wish to make,
10   counsel for the defendants?
11             MR. KIPNIS:  Your Honor, this is -- I'm sorry, Your
12   Honor.  This is Brian Kipnis again.
13        I would just like to pick up on one point that you asked
14   plaintiffs' counsel about, which was why shouldn't you treat this
15   as a motion for reconsideration.  I think one thing that needs to
16   be borne in mind here, I don't think any of the parties want the
17   Court to do extra work here.  You instruct us to review and
18   re-redact these documents according to your order, and as
19   officers of the court, we endeavor to do that to our best
20   ability, and I think we're confident in the extent to which we
21   have done that.  So we are more than willing, if the Court wants
22   to make that happen.
23        This is a situation {inaudible} --
24             THE COURT REPORTER:  I'm sorry.  "This is a situation"?
25             MR. KIPNIS:  I'm sorry.
```

1    This is a situation in which you essentially are being asked

2  to double-check us on work that you asked us to do and that we

3  did to our best ability as officers of the court.  I think that's

4  a very unusual request.  I think to ask the Court to expend its

5  time double-checking us on our own work, without some very

6  distinct and palpable evidence that we didn't do what you told us

7  to do, is quite an unusual request.  And so I think -- I think

8  that's what the Court was hitting on when it was asking if it

9  shouldn't regard this as a motion for reconsideration.  So I just

10  wanted to make that point, Your Honor.

11    THE COURT:  Well, counsel, that's a good point, but this

12  is a unique and --

13    THE COURT REPORTER:  Your Honor, I'm sorry.  "That's a

14  good point, but this is a unique and"?

15    THE COURT:  -- challenging set of circumstances as to

16  the nature of the protections you're asserting by way of law

17  enforcement privilege, national security.  So the Court has to be

18  very careful in making decisions as to whether or not -- and not

19  that I'm second-guessing you, counsel; that's not the point --

20  but the Court just wants to be right in making sure that your

21  assessment is consistent with the Court's assessment of the

22  scope of the law enforcement privilege and the national security

23  privilege and what that would represent.

24    So I'm not second-guessing you, but just out of curiosity, if

25  the Court were to undertake to consider reviewing the documents,

1    what volume are we talking about that are the subject of this

2    motion?

3            MR. KIPNIS:  On that specific question, let me defer to

4    Victoria.

5        Can you answer that question?

6            MS. BRAGA:  Sure.  I believe it would be several --

7    documents.

8            THE COURT REPORTER:  I'm sorry, Ms. Braga.  Ms. Braga,

9    you are cutting out.

10           MS. BRAGA:  Oh, I'm sorry.  Can you hear me better now?

11           THE COURT REPORTER:  Yes.  Thank you.

12           MS. BRAGA:  Great.

13       So I think it would be definitely several {inaudible} ...

14           THE COURT REPORTER:  I'm sorry.  "Several"?

15           MS. BRAGA:  Possibly several hundred pages of documents.

16   It's {inaudible} --

17           THE COURT REPORTER:  I'm sorry, Your Honor.  I am having

18   a difficulty with Ms. Braga.  It keeps cutting out.

19       Can you try again, Ms. Braga?  I'm sorry.

20           MS. BRAGA:  That's okay.  Can you hear {inaudible} --

21           THE COURT REPORTER:  I can hear you, and then it cuts

22   out, so let's try again and I will tell you what I can hear.

23           MS. BRAGA:  Is this better?

24           THE COURT REPORTER:  Yes.  Thank you.

25           MS. BRAGA:  Okay.  So I think it would be several

1   hundred, not numbering into thousands of pages.  Several of the

2   documents identified by plaintiffs, the certified administrative

3   record documents, are several hundred.

4        THE COURT:  All right.  Any further argument from either

5   plaintiffs' perspective or the defense perspective beyond what

6   you have already presented to this Court?

7        MR. HYATT:  Yes, Your Honor.  This is Heath Hyatt with

8   the plaintiffs.  And just very briefly, Your Honor, I want to

9   clarify something that Mr. Kipnis said.  The Court did not order

10  defendants to rereview all documents that had been produced and

11  were subject to the law enforcement privilege.  And with the

12  exception of maybe one or two documents, the documents at issue

13  in this motion are different from the ones that were at issue in

14  the first motion.  So I want to make sure that that is clear for

15  the Court.  This is not asking the Court to check the documents

16  that were re-reviewed and reproduced after that initial order

17  from the Court.

18       Secondly, Your Honor, with respect to the questions that

19  USCIS officers are instructed to ask third agencies, this is a

20  really important point in the case.  One of the key questions is

21  how USCIS corroborates information that they receive,

22  double-checks information that they receive, if they do at all,

23  from third agencies.  And so understanding the questions that are

24  asked of third agencies, based on the information that they

25  receive, is important to our inquiry.  And that's just one

1    targeted example, though, of a larger question in this case,

2    which is how USCIS confirms what third-agency information they

3    get is accurate and whether they do that reasonably.

4        The Internet citations or mention of redactions, Your Honor,

5    frankly, USCIS is putting them in their training manuals.  So if

6    these -- if this information obtained from the Internet is in the

7    training manual, then it should be authentic and it should be

8    real and therefore something that is subject to discovery.  So I

9    want to make sure that, you know, that that is -- that that point

10   is conveyed, that this is, you know, important information,

11   important enough to include in the training, but can be found

12   online, but because of the redactions, plaintiffs aren't able to

13   find it online or understand where it's coming from.

14       I believe that that's it, Your Honor, from my perspective,

15   unless Your Honor has any more questions.  Thank you.

16           THE COURT:  All right.  And there's nothing further from

17   the defense on this point?

18           MS. BRAGA:  No, Your Honor.  I think we've addressed

19   each of those concerns.

20           THE COURT:  All right, counsel, we normally take a break

21   after an hour-and-a-half session, and I don't want to burn up our

22   court reporter, so I want to make sure that we take our full

23   break.

24       So I have got just a couple of minutes before 11:00.  We will

25   resume at 11:13.  So if you will disconnect now, we will pick

 1 | back up with the remaining motion and the other matter the Court

 2 | wanted to address.  So 11:13, we will come back on line.

 3 | MS. BRAGA:  Okay.  Thank you, Your Honor.

 4 | MR. KIPNIS:  Thank you, Your Honor.

 5 | MR. HYATT:  Thank you, Your Honor.

 6 | (Recessed.)

 7 | THE COURT:  All right.  Victoria, would you recall the

 8 | case once again, with the parties identifying themselves?

 9 | THE CLERK:  Yes.

10 | We are resuming our telephone conference in the matter of

11 | Wagafe, et al., versus Trump, et al., Cause No. C17-94-RAJ.

12 | If counsel could please identify yourself for the record

13 | once again?

14 | MR. HYATT:  This is Heath Hyatt for the plaintiffs.

15 | MS. BRAGA:  Victoria Braga for the defendants.

16 | MR. BRINKMAN:  Drew Brinkman for defendants.

17 | MR. KIPNIS:  Brian Kipnis, Assistant United States

18 | Attorney, for defendants.

19 | MS. SLACK:  Michelle Slack for defendants.

20 | THE COURT:  All right.  Thank you once again.

21 | We will now turn to the remaining motion, and that's

22 | Docket 316, plaintiffs' motion to compel the A-files.

23 | Counsel for the plaintiffs, you claim that the defendants are

24 | not complying with the court order regarding the A-files and the

25 | redactions are inappropriate.

1      My first question is, how do you know if the redactions are

2    appropriate if you can't see what's being redacted?  Is this a

3    surmise or speculation, or what is it?

4           MR. HYATT:  Yes, Your Honor.  They're a little bit more

5    than educated guesses.

6      In respect to the document that was filed in the Hyatt

7    declaration, which was in the reply, the exhibit that we -- that

8    I'm about to vaguely reference was filed under seal, but some of

9    the redactions in that exhibit appear to be redactions of an

10   internal USCIS program to vet applicants.  And as the Court

11   ordered, information that is USCIS originating information cannot

12   be redacted.

13     The other aspect, though, of the Court's order on the A-file

14   "why" information was plaintiff -- or, excuse me, defendants can

15   continue to redact information that originates solely within

16   third agencies.  And there are other examples in the Sepe

17   declaration that was filed in the opening motion where it's clear

18   that defendants have gone beyond redacting information that just

19   originates from third agencies.  For example, the mere fact that

20   USCIS contacts a third agency about an applicant is not

21   privileged.  You know, again, this goes to one of those key

22   pieces of this case, and that is how USCIS evaluates,

23   corroborates, confirms the information that it receives from

24   third agencies, if it does at all.

25     So those are a couple of the clear examples, Your Honor, of

 1    not complying with the letter and the spirit of the order in our

 2    estimation, as well that there are examples in the Sepe

 3    declaration of larger redactions, you know, a couple of block

 4    redactions, but also an internal memo, or what appears to be an

 5    internal memo, as well as internal communications about an

 6    applicant.  These things are very much not privileged, based on

 7    the Court's order, and that's one of the reasons that we have

 8    brought this motion today.

 9            THE COURT:  Counsel, what have you done since this

10    motion was filed to try and advance or resolve this issue?

11            MR. HYATT:  Yes, Your Honor.

12        Again, plaintiffs, you know, have not had additional

13    communications with the government about this specific issue

14    since this motion was noted for consideration.  But, again,

15    taking your comments from before, about the need for the parties

16    to try and resolve these issues, you know, it is something that

17    the plaintiffs will endeavor to try and reach a compromise with

18    the defendants, though we reached an impasse fairly quickly on

19    this issue when we tried to discuss it again before filing this

20    motion.  You know, while we certainly, the plaintiffs, remain

21    committed to trying to work this out, there are some fundamental

22    disagreements here about what third-agency information is

23    privileged and what third-agency information should be allowed to

24    be presented in front of this Court.  And, you know, I will say,

25    again, Your Honor, that the mere reference to third agencies

1   should not be privileged, but we understand that Your Honor has

2   ruled that factual information or investigative information that

3   relates from third agencies, as well as database codes, may

4   remain privileged, we do not challenge that ruling, but we do

5   believe that there is a fundamental disagreement here, and it's a

6   disagreement that is important to plaintiffs' prosecution of this

7   case.

8           THE COURT:  And, counsel, do you need to know the name

9   of the third-party agency in these disclosures?

10          MR. HYATT:  It's not so much the name of the third-party

11  agencies, Your Honor.

12          THE COURT:  Counsel --

13          MR. HYATT:  It would be the disclosure of the --  I'm

14  sorry, Your Honor.

15          THE COURT:  No.  Go ahead.  My apologies for

16  interrupting.  Please continue.

17          MR. HYATT:  Thank you, Your Honor.

18     It's not so much the name of the third agency that is

19  necessarily of concern for us, although it is important because

20  USCIS or defendants may have other reports on the, you know,

21  effectiveness, validity, or useful of the information that comes

22  from those third agencies, but that it's the mere fact of

23  following up with the agencies, trying to work with the agencies

24  to resolve any kind of concern that may exist, or corroborate

25  whether any kind of communication exists.  So the mere fact of

 1  those communications occurring -- you know, not necessarily the

 2  content -- but the mere fact of them occurring is certainly

 3  information that is relevant to plaintiffs' claims.  But the one

 4  big one, Your Honor, is the determinations of somebody's status

 5  or their category as a national security concern or potential

 6  concern.  You know, plaintiffs have alleged -- and it has been

 7  revealed in publicly available documents through FOIA requests --

 8  that USCIS uses categories to, in a sense, label people whether

 9  they are a national security concern or what type of national

10  security concern they might be.  That information is redacted as

11  well in these A-files.

12          THE COURT:  All right.  Thank you, counsel.

13      Any additional argument you wish to make on this issue,

14  counsel?

15          MR. HYATT:  No, Your Honor.  Other than to very briefly

16  reiterate the importance of nine, what USCIS does with the

17  information that it receives, that that is a key component to

18  this case, and we believe that information has been redacted in

19  the A-files.  And we ask that you please order the defendants to

20  remove the redactions on that information, as well as others

21  outlined in the briefing.

22          THE COURT:  All right.

23      Counsel for the defendant, Ms. Braga, will you be

24  responding?

25          MS. BRAGA:  Yes, I will be.

1          THE COURT:  My first question to you is about the extent

2     of the redactions.  The scope of the order does not restrict

3     USCIS generated analysis information.  Why can't the parties come

4     to some center point without the Court having to get involved by

5     in camera review or a line-by-line review of these documents?

6          MS. BRAGA:  Thank you, Your Honor.

7       Before I answer your question, I do just want to say, if this

8     call is open to the public, or on a public line, I am somewhat

9     limited in what I can say about the A-files and "why" information

10    because that has been designated as "Attorney Eyes Only."

11      So with that being said, to the extent that "why"

12    information --

13         THE COURT:  Let me stop you there, counsel.  If you

14    believe, to advance your point, that you need to include or

15    incorporate a part of your response that needs to be closed to

16    the public, the Court can send an e-mail or a communication to

17    the parties with a secure line that would restrict the public, if

18    you are representing that, in order to be able to advance and not

19    violate attorney-client privilege or orders of the Court, if

20    that's the only way you can make your argument.  So if you get to

21    the point that you believe that that's appropriate, then the

22    Court can make that determination if we need to.  Is that

23    understood, counsel?

24         MS. BRAGA:  Okay.  Thank you.

25         THE COURT:  Is that understood?

 1          MS. BRAGA:  Yes.  Thank you, Your Honor.

 2          THE COURT:  All right.  You may proceed.

 3          MS. BRAGA:  So I will tell you, to the extent that "why"

 4   information exits in the A-files and it has been redacted,

 5   defendants have done so consistently with the Court's July 9th

 6   order.

 7       I think plaintiffs' counsel misclassified the order a little

 8   bit.  In that order, the Court said that defendants may redact

 9   "why" information contained within the A-files that originate

10   from law enforcement agencies; the Court also said defendants may

11   also redact communications between USCIS and these agencies

12   relating to this information; and then the Court finally said

13   defendants may not redact "why" information that originated

14   solely within USCIS.  That information, to the extent that it

15   exists in the A-files, has been released to plaintiffs.  To the

16   extent that plaintiffs are now reading this order to state that

17   defendants should be releasing also any sort of communication

18   between USCIS and third-party agencies, defendants believe that

19   it is clear in the July 9th order that that information is

20   protected.

21       To respond to some of the more specific claims that

22   plaintiffs' counsel made, I believe he referenced internal USCIS

23   information that appeared to be redacted.  To the extent that

24   that exists and that it is redacted, I will say that USCIS

25   personnel can and does communicate with each other regarding

1   third-party law enforcement information.  I will also say that

2   not all third-party law enforcement information that exists in an

3   A-file is "why" information.  There may be third-party law

4   enforcement information existing in an A-file as a result of

5   background checks that is not related to a national security

6   determination.  That information would remain third-party law

7   enforcement information, and it would be redacted.

8           THE COURT:  Well, counsel, I have expressed this concern

9   before, in the last motion, and I will restate it again, is that

10  the large block redactions appear to suggest that there's no

11  line-by-line review.  And I will reference you to Docket 317,

12  which is the Sepe, S-e-p-e, declaration, where whole pages are

13  redacted.  Are you representing that there's no single sentence

14  or line in that document that can be produced?

15          MS. BRAGA:  To the extent that block redactions exist in

16  the A-files and that those redactions are over "why" information,

17  such a block redaction would likely be because third-party law

18  enforcement information is being discussed or because the

19  information redacted is third-party law enforcement information

20  itself.  For example, a memo from a third-party law enforcement

21  agency.

22          THE COURT:  Again, coming back to the Court's suggestion

23  to alleviate concerns and providing summaries, particularly as it

24  relates to block redactions, is that something that is considered

25  or has been considered, or is that even a realistic opportunity

1    which you could discuss with opposing counsel?

2         MS. BRAGA:  I think we could discuss it.  As we

3    referenced in our filings, we have provided opposing counsel with

4    privilege logs, which should explain exactly the type of

5    information that has been redacted, and opposing counsel has not

6    challenged our privilege logs in this respect.

7         With regard to some of the information or some information

8    that may exist within the A-files, even a summary might not be

9    possible.  I think, again, if plaintiffs' counsel are willing to

10   identify each block redaction that they are concerned with, we

11   can see if we can provide any additional information other than

12   what is said in the privilege log.

13        What I would note in this respect is that plaintiffs

14   essentially are contending that the government did not adequately

15   comply with the Court's July 9th order.  We understood that the

16   Court's July 9th order ordered us to take a look at and lessen

17   the redactions in the A-files, and we did that.  We did it in

18   good faith, and we believe we did it correctly.  And we see

19   plaintiffs' motion challenging the A-files and challenging our

20   understanding of the order, and essentially, as we have discussed

21   before, asking the Court to check our work, and we don't think

22   that that's necessary or appropriate.

23        THE COURT:  Counsel, the last point that was made by

24   plaintiffs was, with emphasis, they need to know what USCIS has

25   done with information that they may have received from third

 1   parties.  Is it your contention that that type of information is

 2   not subject to disclosure, or what is your position?

 3              MS. BRAGA:  I think it would be a case-specific inquiry.

 4   Again, I think the Court's order is clear that the defendants may

 5   not redact "why" information that originated solely within USCIS,

 6   but to the extent that USCIS personnel is talking about "why"

 7   information that originated with a third agency, or to the extent

 8   that they're communicating with a third agency, yes, it is the

 9   government's position that, very clearly under this July 9th

10   order, that information can remain redacted.

11              THE COURT:  Okay.  Anything further from the defense?

12              MS. BRAGA:  I'm sorry, Your Honor?

13              THE COURT:  Anything further, counsel?

14              MS. BRAGA:  I don't think there's anything further from

15   the government on this.

16              THE COURT:  All right.  Let me hear from the plaintiff.

17              MR. HYATT:  Thank you, Your Honor.

18      Just a couple of quick points.  I want to make clear for the

19   record that in my opening comments I endeavored to not reveal

20   anything subject to protective order, and I believe I was

21   successful in that endeavor.  I will continue to do so, but

22   wanted to state that for the record.

23      With respect to third-agency communications, the redaction in

24   the Sepe declaration, Your Honor, with respect to those

25   third-agency communications, are what appear to be USCIS notes of

 1    those communications and the fact that the communications

 2    occurred; not the content of the communication, not facts

 3    originating within any third agency.  This is USCIS work that

 4    they are doing to, in theory, corroborate or check the

 5    information that they have received from third agencies.

 6        It's also worth noting, Your Honor, that there is, you know,

 7    considerable information that comes from third agencies to USCIS

 8    that USCIS considers when it is making these determinations, and

 9    that is really the crux of why this issue is so important and

10    why, you know, we have stressed that the intertwining of

11    information or some of these analyses of third-agency

12    communications or facts are important for discovery and, you

13    know, must be produced, to the extent that they don't conflict

14    with previous orders.

15        The last piece, Your Honor, is I wanted to make clear that

16    this motion is just -- it's not just about checking work.  You

17    know, yes, we believe that there are instances where the Court --

18    excuse me, where the defendants have not complied with the letter

19    and the spirit of the Court's order, but that there is some new

20    information that, you know, plaintiffs do seek, and that's some

21    clarity in this USCIS analysis that the defendants continue to

22    redact, despite orders from the Court.

23        And with that, Your Honor, if there is any further questions,

24    I would be happy to entertain them and answer them, but that's

25    all I have.

1          THE COURT:  All right.  Would you, counsel, express your

2     concern about what clarity looks like that would address your

3     concerns, other than filing a motion?

4          MR. HYATT:  I'm sorry, Your Honor.  Would you repeat

5     your question?

6          THE COURT:  Certainly.

7       Have you expressed or communicated to defense counsel what

8     clarity looks like that would address your specific concerns?

9          MR. HYATT:  We have certainly had discussions about our

10    respective positions about what information should be redacted

11    and unredacted.  We have voiced our concerns in numerous

12    communications and across different issues about what issues we

13    still have with respect to these documents.

14      With respect to this motion in particular, plaintiffs would

15    endeavor to work with defendants to try and provide more

16    specificity or clarity, but I'm not sure how we could be more

17    helpful at this point to them because we, in all honesty, Your

18    Honor, can't be sure exactly what we are looking at.  We can only

19    surmise based on the documents that are unredacted or the

20    portions that are unredacted and make conclusions based on the

21    redactions that are there and the consistency of the documents

22    themself.  But as has been a theme today, Your Honor, we would

23    certainly endeavor to be more clear and specific in any kind of

24    future request to opposing counsel.

25          THE COURT:  Okay.  All right.  Counsel, this is what I'm

 1   going to do as it relates to the four separate motions.  I'm just

 2   not satisfied that the parties have engaged and exhausted their

 3   efforts at resolving the conflicts that you have.  The Court has

 4   even thrown out suggestions such as, for example, one, the

 5   preamble.  That wasn't something I thought about last night, but

 6   the more I heard from the parties, it became quite clear to me

 7   that that was the type of suggestion or approach, just thinking

 8   outside the box, to resolving your differences in calling all the

 9   parties -- or calling all the individuals that are the topic of

10   the second motion.

11       These are things that the parties can do and should have done

12   as opposed to just kicking it to the Court and waiting for the

13   Court's final determination.  I think you can do a lot more work

14   on this case.  I think you can do a lot more engagement in terms

15   of a meaningful meet-and-confer.  There needs to be more give and

16   take from the parties if you wish to advance this case to a trial

17   opportunity.  Because I'm not satisfied that the parties have

18   been doing that up to this point in time.

19       So I'm going to strike all four motions.  I'm going to set

20   two weeks from today's date for the parties to have gotten

21   together.  And I want the parties to file a joint submission

22   briefly summarizing exactly where the parties are as it relates

23   to all four of these motions.  I don't want new motions filed.

24   That's not what I'm asking.  I want a joint submission from the

25   parties that summarizes exactly where you are, what concessions,

 1   what agreements that you have made, and hopefully how you have

 2   resolved your conflict or concerns.

 3        So today's date is May 14th.  I'm going to set this for the

 4   28th of May at 9:30 a.m.  Is that clear for the parties?

 5             MR. KIPNIS:  Yes, Your Honor.

 6             MS. BRAGA:  Yes, Your Honor.

 7             MR. BRINKMAN:  Yes, Your Honor.

 8             THE COURT:  Plaintiff?

 9             MR. HYATT:  Yes, Your Honor.

10             THE COURT:  Next, counsel, I told you I would get to the

11   issue of the sanctions motions, or sanction motions outstanding.

12   An order will be coming out more probably than not later today.

13   It's just about finished.  And I'll give you a heads-up.  It's

14   not what the plaintiffs are asking for, and it's not reduced to

15   what the defendants are asking for.  So if that gives you some

16   idea of how judges resolve conflict, that's what we do.  But,

17   nonetheless, you will have a determination this afternoon or, at

18   the very latest, tomorrow.

19        Next, counsel, there was a motion to stay the case schedule

20   in this case, and the Court required the parties to file joint

21   status reports each month so that I have some idea of where

22   things were.  The next one being due on May 27th.  And, again,

23   not much progress has been made other than the fact that these

24   motions were filed and the hearings set.  And I don't know what

25   else you have been doing by way of preparation.  We need to get a

1    case schedule that sets very specific deadlines and one that the

2    parties work toward.

3        What I have done in all my other civil cases that are set for

4    trial between now and August is set case schedules or get case

5    schedules issued so that the parties have clear guidance and

6    direction from this Court regarding dispositive motions deadlines

7    and discovery deadlines.

8        This Court has continued this multiple times and given the

9    parties multiple extensions, and I don't think we have progressed

10   to the point that a trial date -- any trial date the Court would

11   provide would be meaningful in any way.  I know you want

12   resolution, but the only way you can get resolution is to have

13   some clear and firm deadlines.  The Court has concluded that the

14   driver of moving not just this case but all of our cases is to

15   have a definite and defined case schedule.  The driver is not the

16   trial date.

17       We're having a difficult time, as I imagine that you

18   understand, in trying to reconfigure and reconstruct what a jury

19   trial or what a trial is going to look like.  There have been a

20   few attempts at trials across the country, or at least the

21   beginning of that process, either bench trials or through video

22   conferencing and some other means, but far short of having a jury

23   trial.  Our jury committee has even engaged in getting

24   information from other jury trials that were put in recess when

25   the stay-at-home orders were issued by governors in respective

1  states, and jurors were loath to come back to the courthouse.

2  And many of the jurors expressed that if it were a question of

3  their health compared to the defendant's or the litigant's right

4  to a trial, their health would take paramount concern for them.

5      So I can let you know that a jury trial is not something

6  realistically that we will be able to accomplish any time in the

7  near future based on what we know right now.  But I do want to

8  have this case ready so that if we do have a window, if some of

9  the other criminal cases do fold and resolve by plea or other

10  means, that I can start marshaling in the opportunity for the

11  parties to get their cases tried.  The only way that that is

12  going to take place is if the parties are ready and we have

13  addressed dispositive motions and we have addressed any final or

14  any remaining discovery issues that might be outstanding.

15      Just one second.  I'm sorry.  I'm trying to check the

16  background noise out.

17      But, nonetheless, we need to have a case schedule so that the

18  parties understand that these are deadlines that we need to have.

19  So when you submit that summary to the Court -- and I'm going to

20  require that to be filed two weeks from today, and I would like

21  that summary to be provided that last week in May, let's say the

22  26th, and then the hearing will take place on the 28th -- I would

23  like your proposed case schedules for deadlines, for dispositive

24  motions, as well as deadlines for discovery, for it to be closed.

25  This way, I think all of you will move in a more positive

 1 | direction, we can get clarity on the issues, and advance your
 2 | opportunity for trial.
 3 |     Counsel for the plaintiff, Mr. Hyatt, any questions?
 4 |         MR. HYATT:  No, Your Honor.  Thank you for your time
 5 | today.
 6 |     Just one point of clarification, though.  The parties have
 7 | agreed to a bench trial in this case.  You know, nonetheless, we
 8 | will be -- we will endeavor to come up with a schedule to get
 9 | this trial ready, and we will continue to work together and be
10 | ready for the next hearing in two weeks.
11 |     Thank you, Your Honor.
12 |         THE COURT:  All right.
13 |     Counsel for the defense, Ms. Braga?
14 |         MS. BRAGA:  No, Your Honor.  Thank you for your time
15 | today.
16 |         THE COURT:  Mr. Kipnis, you jumped in a couple of times.
17 | Is there anything further from you as well?
18 |         MR. KIPNIS:  No.  No, Your Honor.  I think my jumping in
19 | is probably done for the day.  Thank you very much.
20 |         THE COURT:  Okay.  And I think that the other lawyers
21 | for the defense haven't added anything, so I'm sure that they
22 | have no additional issues.  Is that correct?  Ms. Slack?
23 |         MS. SLACK:  Yes, Your Honor.  This is Ms. Slack.
24 |     I just wanted to note the stage of the case right now.  We
25 | have a number of depositions still to be completed that have been

1    impacted by the conditions of the pandemic, and I didn't know if

2    the Court wanted to speak to the expectations about how we do

3    those in the sort of uncertain times that we have right now.

4         THE COURT:  Well, counsel, to be honest with you, other

5    cases I have had where they have had deposition issues, they're

6    doing depositions by video.  And I will tell you that the Court

7    will be accommodating, particularly if this is going to be a

8    bench trial, to allow a witness to testify by video.  We're

9    trying to reduce the concern that people have coming to the

10   courthouse for safety reasons.  People are reluctant to come to

11   the courthouse, from what we can anticipate and from what we have

12   learned from other jurisdictions.  And so video depositions are

13   something that you should meaningfully engage in at this point in

14   time, unless you have some specific concerns.  The issue of "We

15   can't address credibility on video," I think, hopefully, we're

16   beyond that issue.  It's been at least raised by some

17   individuals.  That shouldn't be a concern in a case of this type.

18   If you believe it is, you can bring it to the Court's attention,

19   but I see no reason why you can't do video depositions.  It may

20   be complicated, but I think you can work through that, just as

21   the Court has been working through the hearings that we have been

22   able to handle.

23        Does that answer your question?

24        MS. SLACK:  I would just mention, as the Court has

25   acknowledged already today, that this case is unique and it

1   presents particular challenges, particularly because of the law

2   enforcement sensitive nature of a lot of the material that we're

3   dealing with, which also further complicates the ability to do

4   some depositions by video, and note that the seven-hour

5   depositions we've already held, because of breaks that were

6   necessary to discuss the multiple privileges implicated in this

7   case, have resulted in 12-, 13-hour days for us.  So I just

8   wanted to note that.  But we will certainly do our best to try to

9   get the case moving forward more, though we have been trying to

10  do as much prep work on the case as we can under the

11  circumstances and have progressed on a number of fronts, as

12  reported to the Court in the last report.

13          THE COURT:  All right.  Well, counsel, I have indicated

14  the Court is engaging in outside-the-box efforts to address the

15  multitude of cases that we have and engaging in extraordinary

16  measures in these extraordinary times.  And so you may have to do

17  some things that you haven't done before by way of the

18  depositions or trial preparation if you want this case to go

19  forward.  So if it presents a problem, please let the Court know

20  in lieu of filing a motion.  I would be much more amenable to

21  dealing with it like that as opposed to just having to push the

22  issue or push resolution much further down the road.  I want to

23  give you an opportunity to get it done and get your answer sooner

24  as opposed to later.  So if you have conflict or problems, just

25  call Ms. Ericksen and let her know, and we can schedule something

 1   to help you resolve whatever that issue is.

 2            MS. SLACK:  Thank you, Your Honor.

 3            THE COURT:  I think the last person I didn't speak with

 4   is Mr. Brinkman.

 5       Mr. Brinkman, anything further from you?

 6            MR. BRINKMAN:  Nothing from me, Your Honor.  Thank you.

 7            THE COURT:  All right.  Thank you all for participating

 8   and agreeing to appear by telephone conference.  And thank you to

 9   the court reporter as well for your patience with the difficulty

10   in constantly hearing what's been said.

11       We will be in recess.  Thank you.

12            MR. KIPNIS:  Thank you, Your Honor.

13            MR. HYATT:  Thank you, Your Honor.

14            MS. BRAGA:  Thank you.

15                      (Adjourned.)

16

17                 C E R T I F I C A T E

18       I, Nickoline M. Drury, RMR, CRR, Court Reporter for the

19   United States District Court in the Western District of

20   Washington at Seattle, do certify that the foregoing is a correct

21   transcript, to the best of my ability, from the record of

22   proceedings in the above-entitled matter.

23

24                 /s/ Nickoline Drury

25                 Nickoline Drury