THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDIQAFAR WAGAFE, *et al.*, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, President of the United States, *et al.*,<br><br>Defendants. | No. 2:17-cv-00094-RAJ<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: OUTSTANDING DISCOVERY DISPUTES**<br><br>**NOTE ON MOTION CALENDAR:**<br>**July 22, 2020**<br><br>Redacted Version |

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING DISCOVERY DISPUTES
(No. 2:17-cv-00094-RAJ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................... 1

II. ARGUMENT ..................................................................................................... 2

    A.  Plaintiffs Are Entitled to Know Why They Were Subjected to CARRP and How CARRP Interfered With the Adjudication of their Benefits Applications. ................................................................................................ 2

        1.  Plaintiffs' A-Files Are Highly Relevant to Their Claims. ....................... 2

        2.  Defendants Have Impermissibly Withheld All the "Why" Information ........................................................................................ 7

        3.  Withholding the "Why" Information Raises Serious Due Process Concerns. ......................................................................................... 10

        4.  In the Alternative, the Court Should Reconsider its Prior Order and Order Production of All "Why" Information. ........................................ 12

        5.  If the Court Does Not Reconsider Its Order, It Should Grant Plaintiffs Leave To Subpoena The Third Agencies for the "Why" Information. ........................................................................................ 13

    B.  The Court Should Order Production of the Disputed Policy Documents. ........... 14

    C.  Defendants' Clawback Requests Should Be Rejected. ...................................... 15

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING
DISCOVERY DISPUTES – i
(No. 2:17-cv-00094-RAJ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
  686 F.3d 965 (9th Cir. 2012) ............................................................................................. 11, 13

*Al Odah v. United States*,
  559 F.3d 539 (D.C. Cir. 2009) (per curiam) ............................................................................ 13

*Am.-Arab Anti-Discrimination Comm. v. Reno*,
  70 F.3d 1045 (9th Cir. 1995) ................................................................................................... 11

*Bismullah v. Gates*,
  501 F.3d 178 (D.C. Cir. 2007) ................................................................................................. 13

*Dent v. Holder*,
  627 F.3d 365 (9th Cir. 2010) ................................................................................................ 2, 12

*Greene v. McElroy*,
  360 U.S. 474 (1959) ................................................................................................................. 10

*In re Sealed Case*,
  856 F.2d 268 (D.C. Cir. 1988) ................................................................................................... 8

*Kaur v. Holder*,
  561 F.3d 957 (9th Cir. 2009) .................................................................................................... 10

*Kiareldeen v. Reno*,
  71 F. Supp. 2d 402 (D.N.J. 1999) ............................................................................................ 11

*KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*,
  710 F. Supp. 2d 637 (N.D. Ohio 2010) .................................................................................... 13

*Macon v. United Parcel Serv., Inc.*,
  No. C12-260 RAJ, 2013 WL 951013 (W.D. Wash. Mar. 12, 2013) ........................................ 14

*Oliver v. United States*,
  921 F.2d 916 (9th Cir. 1990) .................................................................................................... 10

*Rafeedie v. INS*,
  795 F. Supp. 13 (D.D.C. 1992) ................................................................................................ 11

*United States v. Abuhamra*,
  389 F.3d 309 (2d Cir. 2004) ..................................................................................................... 13

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING
DISCOVERY DISPUTES – ii
(No. 2:17-cv-00094-RAJ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Zerezghi v. USCIS*,
    955 F.3d 802 (9th Cir. 2020) ...................................................................................10, 12

**RULES**

Fed R. Civ. P. 26(b)(5)(B) ..................................................................................................2, 15

**REGULATIONS**

8 C.F.R. § 103.2(b)(16)............................................................................................................11

8 C.F.R. § 103.2(b)(16)(iv).......................................................................................................11

**OTHER AUTHORITIES**

Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2210 (3d ed.)...........................................9

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING
DISCOVERY DISPUTES – iii
(No. 2:17-cv-00094-RAJ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## I. INTRODUCTION

Defendants have refused to produce *any* information explaining why the Named Plaintiffs were subjected to CARRP in Plaintiffs' A-Files and how that designation impacted the adjudication of their applications. Dkt. 312. The Court has recognized that this "why" information—at the heart of Plaintiffs' claims—is "highly relevant" to demonstrate "that USCIS is improperly subjecting applications to CARRP." Dkt. 274 at 4-5. The Court held that Plaintiffs were entitled to "why" information from USCIS while preventing access to limited *sensitive* information produced by specific federal law enforcement third agencies (FBI, ICE, CBP) during CARRP's "external vetting" process. *Id.*; *see also* Dkt. 98 at 4. However, Defendants interpret the Court's order as authorizing them to withhold *any* information that *in any way* touches on a third party, even if that third party is an individual (█████████████████████) or a non-law enforcement agency, and even if that information is not sensitive (like public records and information already known to Plaintiffs). Their sweeping reading of the Court's order is not only entirely untethered from the narrow application of the law enforcement privilege, but it also raises serious due process concerns and severely restricts Plaintiffs' ability to litigate their claims. Recent data produced by Defendants reveal that ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████[1] Whidbee Declaration ("Whidbee Decl."), Ex. A. Defendants, in effect, are limiting discovery to the ████████████████████████████████ ███████████

Plaintiffs respectfully request that the Court confirm or clarify its order that Defendants must produce all A-File information either incorporated into USCIS documents or not produced by the FBI, ICE, or CBP during CARRP's "external vetting" process. Because of Defendants' failure to narrowly redact the A-Files in accordance with the Court's order, Plaintiffs request that the Court review the A-Files *in camera* and closely monitor Defendants' application of any

---

[1] ██████████████████████████████████████████████████████████ Whidbee Decl., Ex. A.

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING
DISCOVERY DISPUTES – 1
(No. 2:17-cv-00094-RAJ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

redactions. Alternatively, because new facts demonstrate how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the Court should reconsider its order and order Defendants to produce the A-Files, including information from third agencies (or, at the very least, grant Plaintiffs leave to subpoena those third agencies). Courts routinely order the production of highly sensitive (and even classified) information, and Defendants' concerns are fully addressed by the Attorneys' Eyes Only ("AEO") protective order or other heightened measures that the Court may deem appropriate.

Defendants have also improperly redacted information in the 41 policy documents (Dkt. 316) and have sought to clawback discovery that in any way touches on a third agency. For the same reasons that the Court should order the production of the "why" information, the Court should order production of the disputed documents and reject Defendants' clawback requests.

## II. ARGUMENT

### A. Plaintiffs Are Entitled to Know Why They Were Subjected to CARRP and How CARRP Interfered With the Adjudication of their Benefits Applications.

#### 1. Plaintiffs' A-Files Are Highly Relevant to Their Claims.

At issue in this dispute is Plaintiffs' longstanding request for their A-Files. The A-File is the administrative record of all immigration proceedings and interactions before USCIS, ICE and CBP, and is maintained by USCIS. *Dent v. Holder*, 627 F.3d 365, 372 (9th Cir. 2010). "The government uses the A-file routinely in almost every case to determine [the adjudication of immigration benefits]." *Id.* at 373. USCIS's failure to produce A-Files to noncitizens violates due process because it "denie[s] [them] an opportunity to fully and fairly litigate" their claims. *Id.* at 374. Indeed, most of the Named Plaintiffs already have versions of their A-Files produced under the Freedom of Information Act ("FOIA") prior to this lawsuit. Inexplicably, Defendants have withheld "why" information from Plaintiffs' counsel under a highly restrictive AEO protective order even when some of that information has previously been produced to the Plaintiffs

1   themselves under FOIA, including whether and when they were placed on a watchlist and the
2   results of various third-agency database checks. *See infra.*

3         Plaintiffs contend that CARRP—a program that operates with no transparency and was
4   never approved by Congress—unlawfully forestalls the timely and favorable adjudication of
5   meritorious naturalization and adjustment of status applications based on undisclosed and
6   untested accusations that a person is a "national security concern." *See* Dkt. 47 ¶¶ 7-21. Without
7   full disclosure of why the Named Plaintiffs were subjected to CARRP, this Court may be forced
8   to resolve Plaintiffs' claims based on mere innuendo that fails to explain why they were branded
9   as "national security concerns" and how CARRP impacted the adjudication of their applications.

10         Plaintiffs allege that USCIS's initial determination of a "national security concern" to
11   subject an individual to CARRP is overly-expansive, discriminatory, and has nothing, or at most
12   very little, to do with eligibility for immigration benefits. *Id.* ¶¶ 74-76. Plaintiffs further allege
13   that USCIS has allowed the FBI and other law enforcement agencies to abuse the adjudicative
14   process by deferring to those agencies' requests to hold an application in abeyance and by
15   allowing them to coerce applicants to become informants. Whidbee Decl., Ex. B (█████████
16   ████████████████████████████████████████████████████████████████████████
17   ████████████████████); Dkt. 47 ¶ 82. Furthermore, USCIS never informs applicants
18   that they are subjected to CARRP nor the reasons why they have been labeled "national security
19   concerns." USCIS never even seeks to prove these allegations, and applicants are never provided
20   an opportunity to respond to them. *Id.* ¶ 96. Although █████████████████████████
21   ████████████████████████████████████████████████████████████████████
22   █████, *see* Whidbee Decl., Ex. C; *id.* Ex. D, CARRP allows these untested allegations to
23   unfairly influence the adjudication of benefits as significant as U.S. citizenship.

24         Each of these issues bears directly on Plaintiffs' claims that CARRP is unlawful under
25   the Immigration and Nationality Act (Claim 7), the Administrative Procedure Act (Claim 8), and
26

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING
DISCOVERY DISPUTES – 3
(No. 2:17-cv-00094-RAJ)

1  the U.S. Constitution (Claims 4, 6, and 10). Yet, for each Named Plaintiff, Defendants continue
2  to withhold key "why" information that would allow Plaintiffs to prove these claims.

### a. Mehdi Ostadhassan

Plaintiff Mehdi Ostadhassan is an Iranian citizen and devout Muslim who married a U.S. citizen when studying at the University of North Dakota. For over three and a half years, Mr. Ostadhassan's adjustment of status application ███████████. When the application was denied following the filing of this lawsuit, Mr. Ostadhassan was forced to leave his tenure track position as a professor of petroleum engineering and start a life outside the United States.

[Lines 9–25 redacted]

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING
DISCOVERY DISPUTES – 4
(No. 2:17-cv-00094-RAJ)

      **b.**     **Sajeel Manzoor**

Plaintiff Sajeel Manzoor is a Pakistani citizen and Muslim who has lived in the United States for almost 19 years with his wife and two U.S.-citizen children. After graduating from the University of Texas at Arlington, he worked at global market research firm and applied for adjustment of status in 2007.

[REDACTED]

      **c.**     **Hanin Bengezi**

Plaintiff Hanin Bengezi is a Libyan national, Canadian citizen, and devout Muslim who lives with her U.S. citizen husband and child. She immigrated to the United States shortly after her fiancée visa was approved, and applied for adjustment of status in February 2015.

[REDACTED]

1 ████████████████████████████████████████████
2 ████████████████████████████████████████████
3 ████████████████████████████████████████████
4 ████████████████

### d. Abdiqafar Wagafe

Plaintiff Abdiqafar Wagafe is a Somali national and devout Muslim who has resided in the United States since March 2007, when he was admitted as a refugee with nine members of his family. He currently co-owns a Somali restaurant. Mr. Wagafe applied for naturalization in 2013. Despite numerous inquiries, USCIS refused to schedule him for an interview until after Plaintiffs filed this lawsuit. USCIS then granted his application at his February 2017 interview.

11 ████████████████████████████████████████████
12 ████████████████████████████████████████████
13 ████████████████████████████████████████████
14 ████████████████████████████████████████████
15 ████████████████████████████████████████████
16 ████████████████████████████████████████████
17 ████████████████████████████████████████████
18 ██████████████████████████████

### e. Noah Abraham (previously Mushtaq Jihad)

Plaintiff Noah Abraham is an Iraqi refugee with a wife and four daughters and has been living in the United States since 2008. Mr. Abraham fled Iraq after surviving a bomb explosion, which caused him to lose his leg and killed his one-week-old son. Mr. Abraham applied for naturalization in 2013, in which he stated his intention to change his last name "Jihad" because of negative reactions in the United States. ████████████████████████████████
████████████ *See id.*, Ex. S. While his application was pending, Mr. Abraham was diagnosed with leukemia. Because he was not a U.S. citizen yet, his social security disability

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING
DISCOVERY DISPUTES – 6
(No. 2:17-cv-00094-RAJ)

1  terminated, and he had to work multiple jobs to support his family and pay for medical
2  treatments. His application was not granted until after Plaintiffs filed this lawsuit.



### 2. Defendants Have Impermissibly Withheld All the "Why" Information.

This Court ordered Defendants to disclose information explaining why USCIS labeled the Named Plaintiffs as "national security concerns" to subject them to CARRP, including information obtained through USCIS's "internal vetting" process after they were so labeled. Dkt. 274 at 5. The Court found that "the 'internal' vetting procedures used by USCIS to be most relevant for the current dispute, and the Court at this point sees little justification for withholding this information based on the law enforcement privilege." *Id.* USCIS does not start the "internal

1   vetting" process until after it identifies an individual as a "national security concern." *See* Dkt.
2   74 at 25, 27 ("Defendants admit … that once an officer identifies a national security concern, the
3   application is then handled pursuant to CARRP" and "that under CARRP, internal vetting
4   occurs."). To understand how information obtained during the "internal vetting" process is
5   relevant to why USCIS subjected the Named Plaintiffs to CARRP, Plaintiffs must also be
6   entitled to why USCIS made the initial determination to identify them as "national security
7   concerns," as that determination "originated solely within USCIS." Dkt. 274 at 5.

8   Moreover, the Court only permitted Defendants to withhold information as part of
9   CARRP's "external vetting" process from specific law enforcement agencies (FBI, ICE, CBP)
10  because Defendants had provided "[d]eclarations from departmental heads" that the information
11  "could harm cooperation between law enforcement agencies and implicate ongoing
12  investigations." Dkt. 274 at 4-5. Therefore, contrary to Defendants' overbroad interpretations,
13  the Court's order does not authorize preventing Plaintiffs access to information that is not from
14  these agencies and does not implicate these alleged law enforcement concerns, which, to meet
15  the requirements of the law enforcement privilege, must be narrowly confined to the specific law
16  enforcement techniques claimed by the agency and balanced against Plaintiffs' significant
17  interests in disclosure. *In re Sealed Case*, 856 F.2d 268, 271-72 (D.C. Cir. 1988).

18  **a.   Defendants Have Improperly Withheld USCIS Information.**
19  Contrary to the Court's order, ███████████████████
20  ████████████████████████████████████████████
21  ████████████████████████████████████████
22  ████████████████████████████████████████
23  ████████████████████████████████████████
24  ████████████████████████████████████████
25  ████████████████████████████████████
26  ████████████████████████████████████████

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This information does not implicate the alleged

17 law enforcement concerns expressed in the Court's order and should be produced.

### b. Defendants Have Improperly Withheld Information Not Subject to the Law Enforcement Privilege.

Although the law is clear that "[a] party may be required to produce documents and things that it possesses even though they belong to a third person who is not a party to the action," Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2210 (3d ed.), Defendants have also redacted information from third parties that are not from the law enforcement agencies identified in the Court's order or otherwise privileged. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

4 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

5  Defendants have also inexplicably withheld information that has previously been produced through FOIA in more complete form. For example, in Ms. Bengezi's A-File, Defendants redacted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇, but that same memorandum had previously been produced in a less-redacted form under FOIA. *Compare, e.g., id.*, Ex. L (Defendants' initially produced version of ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇) *with id.*, Ex. DD (version of same document received through FOIA). Only after Plaintiffs provided the FOIA version to Defendants did they agree to produce a less-redacted version, but only to comport with the FOIA version. There is no reason why Defendants cannot produce the memorandum in full under the AEO protective order. Defendants' improper conduct clearly indicates that many of their other redactions likely also have no valid legal basis.

### 3.  Withholding the "Why" Information Raises Serious Due Process Concerns.

Defendants' failure to disclose any "why" information to Plaintiffs violates due process. The Supreme Court has held that "where governmental action … injures an individual, and the reasonableness of the action depends on fact findings, the evidence … must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Greene v. McElroy*, 360 U.S. 474, 496 (1959); *see also Oliver v. United States*, 921 F.2d 916, 921 (9th Cir. 1990) ("improperly foreclose[ing] [a plaintiff] from conducting civil discovery efforts" may violate due process).

The Due Process Clause thus requires the Government to provide noncitizens with undisclosed derogatory information in immigration proceedings, even if that information is from third agencies, highly sensitive, or classified. *See Zerezghi v. USCIS*, 955 F.3d 802, 804 (9th Cir. 2020) (agency "violated due process by relying on undisclosed evidence that [plaintiffs] did not

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING
DISCOVERY DISPUTES – 10
(No. 2:17-cv-00094-RAJ)

1 have an opportunity to rebut"); *Kaur v. Holder*, 561 F.3d 957, 962 (9th Cir. 2009) (the "use of
2 [classified] secret evidence without giving Kaur a proper summary of that evidence was
3 fundamentally unfair and violated her due process rights"); *Am.-Arab Anti-Discrimination*
4 *Comm. v. Reno*, 70 F.3d 1045, 1070 (9th Cir. 1995) (the "use of undisclosed classified
5 information … violates due process" because "[w]e cannot in good conscience find that the
6 President's broad generalization regarding a distant foreign policy concern and a related national
7 security threat suffices to support a process that is inherently unfair because of the enormous risk
8 of error and the substantial personal interests involved"); *Kiareldeen v. Reno*, 71 F. Supp. 2d
9 402, 404, 414 (D.N.J. 1999) ("government's reliance on secret evidence … violates the due
10 process protections" even where "Kiareldeen was a suspected member of a terrorist organization
11 and a threat to the national security"); *Rafeedie v. INS*, 795 F. Supp. 13, 19, 24 (D.D.C. 1992)
12 ("by authorizing defendants to rely on undisclosed confidential information … the Court cannot
13 conclude that the processes that have been afforded Rafeedie satisfy the basic and fundamental
14 standard of due process"); *see also Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
15 686 F.3d 965, 1001 (9th Cir. 2012) ("OFAC violated AHIF–Oregon's Fifth Amendment right to
16 due process by failing to … prepar[e] and disclos[e] an unclassified summary" of evidence).

17 To address these due process concerns, USCIS regulations require applicants to "be
18 advised of" "derogatory information … of which the applicant or petitioner is unaware" and have
19 "an opportunity to rebut the information and present information in his/her own behalf before the
20 decision is rendered." 8 C.F.R. § 103.2(b)(16). Even if the information is classified, "the USCIS
21 Director or his or her designee should direct that the applicant or petitioner be given notice of the
22 general nature of the information and an opportunity to offer opposing evidence." 8 C.F.R.
23 § 103.2(b)(16)(iv). Because both the Due Process Clause and USCIS regulations require
24 providing the "why" information directly to the Named Plaintiffs themselves—and, importantly,
25 none of it is classified—there is no justifiable reason why Defendants cannot produce the A-File
26 information to Plaintiffs' counsel under the AEO protective order or heightened measures.

In the interest of expeditiously resolving this dispute, Plaintiffs request that the Court supervise, through *in camera review*, the process of properly redacting the A-Files to account for Plaintiffs' significant interests and the limited application of the law enforcement privilege. Plaintiffs also request that the Court clarify its prior order to remove any potential ambiguity about its meaning. Alternatively, this Court should reconsider its order.

**4.   In the Alternative, the Court Should Reconsider its Prior Order and Order Production of All "Why" Information.**

Reconsideration is appropriate upon a "showing of new facts ... which could not have been brought to [the Court's] attention earlier with reasonable diligence." L.R. 7(h). The following new facts unavailable to the Court and Plaintiffs at the time of the order warrant reconsideration: (1) Defendants' broad interpretation of the Court's order prevents Plaintiffs' access to all "why" information; (2) recently produced data indicates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Whidbee Decl., Ex. A; and (3) Defendants' July 2, 2020 supplemental initial disclosures disclose, for the first time, their intent to rely on third-agency information, including from the FBI, and to introduce witnesses who ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ when adjudicating the Named Plaintiffs' applications, *see id.*, Ex. EE, at 5-7 (Defs. 5th Supp. Disclosures).

These new facts demonstrate that it was manifest error to withhold any "why" information that "originates from law enforcement agencies external to USCIS immigration processing, such as the FBI, ICE, or CBP," Dkt. 274 at 5, even when that information is incorporated into USCIS analysis. This "why" information plays a central role in CARRP (▮▮▮▮▮▮▮▮▮▮▮▮▮▮), and Defendants themselves plan to introduce evidence from these third agencies to defend their case. Moreover, because Defendants plan to rely on witnesses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to argue that the Plaintiffs' CARRP designations were justified, due process requires that Plaintiffs have access to the same information to have a "meaningful opportunity" to rebut Defendants' arguments. *Zerezghi*, 955 F.3d at 813; *see also Dent*, 627 F.3d

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING
DISCOVERY DISPUTES – 12
(No. 2:17-cv-00094-RAJ)

at 374-75 (failure to provide A-File violated due process because "when it is fully examined … [it] may show that Dent is a naturalized citizen of the United States").

All of Defendants' alleged law enforcement concerns can be mitigated by the AEO protective order or any other heightened measures the Court may deem appropriate. Courts routinely order the production of information—even classified information—in national security cases that is significantly more sensitive than what Plaintiffs seek here: unclassified information explaining why a non-law enforcement agency (USCIS) labeled individuals as "national security concerns" after their applications have already been resolved. *See, e.g.*, *Bismullah v. Gates*, 501 F.3d 178, 187 (D.C. Cir. 2007) (granting counsel access to classified information supporting enemy combatant determination); *Al Haramain*, 686 F.3d at 983-84 (requiring provision of unclassified summaries of classified information); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 710 F. Supp. 2d 637, 657-60 (N.D. Ohio 2010) (requiring Government to declassify and/or summarize classified information and, if that was insufficient or impossible, requiring plaintiff's counsel to view the information under a protective order); *Al Odah v. United States*, 559 F.3d 539, 544-45 (D.C. Cir. 2009) (per curiam) (court may compel disclosure to counsel of classified information for habeas corpus review); *United States v. Abuhamra*, 389 F.3d 309, 329 (2d Cir. 2004) (requiring substitute disclosures to explain "the gist or substance" of ex parte submissions).

### 5. If the Court Does Not Reconsider Its Order, It Should Grant Plaintiffs Leave To Subpoena The Third Agencies for the "Why" Information.

The Court has already recognized that relevant third-agency information in Defendants' possession should be produced. *See* Dkt. 148 at 9 ("Plaintiffs are seeking documents within Defendants' control that reference certain programs that are promulgated or maintained by ICE. Any relevant documents within Defendants' possession, custody, and control must be produced."). Therefore, there is no reason why A-File information from third agencies in USCIS's possession should also not be produced. However, if the Court has concerns about

1    Defendants producing ICE, CBP, or FBI information contained in the A-Files, then Plaintiffs
2    respectfully request that the Court grant it leave to serve subpoenas to obtain the crucial "why"
3    information directly from those agencies (and Plaintiffs can serve those subpoenas right away).
4          When counsel's failure to issue subpoenas earlier is "predicated on a good faith belief"
5    that the opposing party "would cooperate" with discovery, this Court has granted permission to
6    file third-party subpoenas after the discovery deadline. *See Macon v. United Parcel Serv., Inc.*,
7    No. C12-260 RAJ, 2013 WL 951013, at *5 (W.D. Wash. Mar. 12, 2013) (denying motion to
8    quash subpoenas compelling production of documents after the discovery cutoff date). Plaintiffs'
9    failure to serve these subpoenas earlier was based on their good-faith belief that Defendants
10   would produce "why" information sufficient for Plaintiffs to litigate their claims. Regardless of
11   whether the Court reconsiders its prior order or grants Plaintiffs leave to issue the subpoenas,
12   given Plaintiffs' significant due process right to full disclosure of their A-Files and the "why"
13   information's importance to this case, the Court should order its production.

14   **B.    The Court Should Order Production of the Disputed Policy Documents.**

15         The Court should order the production of the disputed information in the 41 policy
16   documents for the same reasons that the "why" information should be disclosed: the Court's
17   prior order requires disclosure of information from USCIS or not subject to the law enforcement
18   privilege even if it touches upon third agencies. The order only allowed Defendants to withhold
19   specific third-agency information disclosing sensitive internal information-gathering techniques
20   or processes. *See* Dkt. 320 at 6-8. Defendants have improperly redacted ▇▇▇▇▇▇
21   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
22   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Whidbee Decl., Ex. FF; Ex. GG; Ex. HH; Ex. II. Defendants also
23   have redacted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
24   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.*, Ex. JJ; Ex. KK. This highly relevant information must be
25   disclosed for Plaintiffs to have a complete understanding of CARRP and adequately litigate their
26   claims. Defendants' remaining deliberative process privilege assertions over these documents are

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING
DISCOVERY DISPUTES – 14
(No. 2:17-cv-00094-RAJ)

1  similarly without merit and should be produced.  For example, Defendants have improperly
2  redacted
3  *See id.*, Ex. LL; Ex. MM.

### C.  Defendants' Clawback Requests Should Be Rejected.

The Protective Order's clawback provision incorporates Fed R. Civ. P. 26(b)(5)(B), which allows a party to dispute a privilege claim by "promptly present[ing] the information to the court under seal for a determination of the claim." *See* Dkt. 86 at 12. The information that Defendants request to clawback, which Plaintiffs provide under seal (*see* Whidbee Decl., Ex. NN, OO, PP, QQ (with highlights indicating information sought to be clawed back)), should remain unredacted for the same reasons discussed above. The information at issue simply touches upon third agencies without disclosing any sensitive information or third-agency techniques. For example, Defendants request to claw back deposition testimony just because it

*Id.*, Ex. PP.

*Id.*, Ex. RR (                        ).

*Id.*, Ex. SS at 21 ¶ 75; *see also id.* at 22 ¶ 76 (

), 22 ¶ 78. Mere reference to                is not privileged and, moreover, a positive hit in                                   does not itself reveal anything sensitive, but is important for Plaintiffs' claims to demonstrate that                                              . The Court should reject Defendants' clawback requests.

PLAINTIFFS' SUPPLEMENTAL BRIEF RE OUTSTANDING
DISCOVERY DISPUTES – 15
(No. 2:17-cv-00094-RAJ)

| | |
|---|---|
| Respectfully submitted, | DATED: July 10, 2020 |

s/ Jennifer Pasquarella
Jennifer Pasquarella (admitted pro hac vice)
**ACLU Foundation of Southern California**
1313 W. 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236
jpasquarella@aclusocal.org

s/ Matt Adams
Matt Adams #28287
**Northwest Immigrant Rights Project**
615 Second Ave., Ste. 400
Seattle, WA 98122
Telephone: (206) 957-8611
matt@nwirp.org

s/ Stacy Tolchin
Stacy Tolchin (admitted pro hac vice)
**Law Offices of Stacy Tolchin**
634 S. Spring St. Suite 500A
Los Angeles, CA 90014
Telephone: (213) 622-7450
Stacy@tolchinimmigration.com

s/ Hugh Handeyside
s/ Lee Gelernt
s/ Hina Shamsi
Hugh Handeyside #39792
Lee Gelernt (admitted pro hac vice)
Hina Shamsi (admitted pro hac vice)
**American Civil Liberties Union Foundation**
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2616
lgelernt@aclu.org
hhandeyside@aclu.org
hshamsi@aclu.org

s/ Sameer Ahmed
Sameer Ahmed (admitted pro hac vice)
**Harvard Immigration and Refugee Clinical Program**
Harvard Law School
6 Everett Street; Suite 3105
Cambridge, MA 02138
Telephone: (617) 495-0638
sahmed@law.harvard.edu

s/ Harry H. Schneider, Jr.
s/ Nicholas P. Gellert
s/ David A. Perez
s/ Heath L. Hyatt
s/ Paige L. Whidbee
Harry H. Schneider, Jr. #9404
Nicholas P. Gellert #18041
David A. Perez #43959
Heath L. Hyatt #54141
Paige L. Whidbee #55072
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
HSchneider@perkinscoie.com
NGellert@perkinscoie.com
DPerez@perkinscoie.com
HHyatt@perkinscoie.com
PWhidbee@perkinscoie.com

s/ Kristin Macleod-Ball
Kristin Macleod-Ball (admitted pro hac vice)
**American Immigration Council**
1318 Beacon Street, Suite 18
Brookline, MA 02446
Telephone: (857) 305-3600
kmacleod-ball@immcouncil.org

s/ John Midgley
s/ Molly Tack-Hooper
John Midgley #6511
Molly Tack-Hooper #56356
**ACLU of Washington**
P.O. Box 2728
Seattle, WA 98111
Telephone: (206) 624-2184
jmidgley@aclu-wa.org

*Counsel for Plaintiffs*