0

The Honorable Richard A. Jones

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDIQAFAR WAGAFE, *et al., on behalf of himself and other similarly situated*,

Plaintiffs,

v.

JOSEPH R. BIDEN, President of the United States, *et al.*,

Defendants.[1]

CASE NO.  2:17-cv-00094-RAJ

**DEFENDANTS' NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M. KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES**

(Note On Motion Calendar for:
    April 9, 2021)

**FILED UNDER SEAL**

Defendants, through their attorneys of record, hereby move this Court pursuant Fed. R. Evid. 104(a) and 702, and pursuant to the Court's gatekeeping requirements to screen expert evidence for relevancy and reliability, to exclude the testimony, Declaration and reports of Sean M. Kruskol, an accountant (CPA) whom Plaintiffs designated as their expert in statistical analysis.  Defendants also move for the exclusion of Mr. Kruskol's testimony, Declaration and reports under Fed. R. Evid. 403.

This Motion is based upon the papers filed herein, including the following Memorandum, and Exhibits identified in a contemporaneously filed attorney Declaration of Lindsay M. Murphy and attached thereto, or submitted with Defendants' Motion to file exhibits under seal.  A proposed order is submitted for consideration by the Court.

---

[1] Plaintiffs sued all individual defendants only in their official capacities. *See* Dkt. No. 47 at 8-9. Pursuant to Fed. R. Civ. P. 24(d), the offices' incumbents are substituted for their predecessors.

NOTICE OF MOTION, AND MOTION TO EXCLUDE  TESTIMONY OF SEAN M. KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 1
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

Dated: March 25, 2021

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division
U.S. Department of Justice

AUGUST FLENTJE
Civil Division
Special Counsel

ETHAN B. KANTER
Chief, National Security Unit
Office of Immigration Litigation
Civil Division

BRIAN T. MORAN
United States Attorney

BRIAN C. KIPNIS
Assistant United States Attorney
Western District of Washington

ANNE DONOHUE
Counsel for National Security
Office of Immigration Litigation

ANTONIA KONKOLY
Trial Attorney
Federal Programs Branch

Respectfully submitted,

W. MANNING EVANS
Senior Trial Counsel
Office of Immigration Litigation

/s/ Lindsay M. Murphy
LINDSAY M. MURPHY
Senior Counsel for National Security
Office of Immigration Litigation

LEON B. TARANTO
Trial Attorney
Torts Branch

BRENDAN T. MOORE
Trial Attorney
Office of Immigration Litigation

JESSE L. BUSEN
Counsel for National Security
Office of Immigration Litigation

VICTORIA M. BRAGA
Trial Attorney
Office of Immigration Litigation

Counsel for Defendants

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M.
KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 2
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**INTRODUCTION**

3     Defendants seek to exclude evidence from Plaintiffs' accounting expert Sean M. Kruskol,

4  offered as a statistical expert, because he lacks the requisite expertise in statistical analysis.

5  Additionally, Mr. Kruskol's opinions and testimony do not satisfy Fed. R. Evid. 104(a) and 702 and

6  the *Daubert* requirements for relevancy and reliability, and would not assist the Court in addressing

7  any material issue.  Defendants also seek its exclusion under Fed. R. Evid. 403.

8

**BACKGROUND**

9     Mr. Kruskol, a Certified Public Accountant (CPA), claims expertise in "forensic accounting,

10  valuation, causation and economic damages issues in a wide variety of commercial disputes," but not

11  in statistical analyses, nor in processing immigration benefit applications, the issues on which

12  Plaintiffs offer his testimony as a statistical expert.  *See* Kruskol Declaration executed March 4, 2021

13  (Exhibit A) at Ex. BJ (Kruskol resume appended to Declaration).  In addition to a Declaration, Mr.

14  Kruskol submitted three expert reports.[2]  His February 28, 2020, initial report was replaced by his

15  July 17, 2020, Supplemental Report (Ex. B), and supplemented by his September 21, 2020, Second

16  Supplemental Report (Ex. C).  He was deposed on October 20, 2020.  *See* Ex. D (Kruskol dep.).

17

**LEGAL STANDARDS**

18     The testimony and opinions of an expert witness must satisfy Fed. R. Evid. 702 requirements,

19  which govern the admissibility of expert testimony.  Rule 702 provides:

20
21     If scientific, technical or other specialized knowledge will assist the trier of fact to
       understand the evidence or to determine a fact in issue, a witness qualified as an expert
       by knowledge, skill, experience, training or education, may testify thereto in the form
22     of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data,
       (2) the testimony is the product of reliable principles and methods, and (3) the witness
23     has applied the principles and methods reliably to the facts of the case.

24  The trial court "must determine whether the expert witness is qualified and has specialized

25  knowledge that will assist a trier of fact to understand the evidence or determine a fact in issue."

26
27  2 Exhibits offered in support of this Motion are identified in the contemporaneously filed
    Declaration of Lindsay M. Murphy, and submitted with Defendants' Motion to Seal because they
    include protective order information.  A redacted Exhibit D is appended to the Murphy Declaration.

28

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M.
KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 1
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

1  *McKendall v. Crown Control Corp.*, 122 F.3d 803, 805-06 (9th Cir. 1997) (*internal quotes and*

2  *citation omitted*).  *Accord*, *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir.

3  2014).  Rule 702 also requires trial judges to ensure "that an expert's testimony both rests on a

4  reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509

5  U.S. 579, 597 (1993).  Thus, the Court must screen the proffered evidence to ensure it is not only

6  relevant but reliable, which the testimony's proponent must establish.  *Estate of Barabin v.*

7  *AstenJohnson, Inc.*, 740 F.3d 457, 463, 466 (9th Cir. 2014).  The Court is required to assess, under

8  Fed. R. Evid. 104(a), whether the expert is proposing to testify to "specialized knowledge that will

9  help the factfinder understand or decide a fact in issue." *United States v. Alatorre*, 222 F.3d 1098,

10  1102-03 (9th Cir. 2000), citing *Daubert*, 509 U.S. at 592.  In exercising discretion under Rule 702 to

11  allow expert testimony to assist the trier of fact to understand the evidence or determine a fact in

12  issue, the Court is to determine whether it is based upon sufficient facts or data, is the product of

13  reliable principles and methods, and that the expert has reliably applied the principles and methods

14  to the facts of the case.  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 709 F.3d 872, 882-83 (9th

15  Cir. 2013).  Expert testimony is relevant only if the knowledge underlying it has a valid connection

16  to the pertinent inquiry, and is reliable only if that knowledge has a reliable basis in the knowledge

17  and experience of the relevant discipline.  *City of Pomona*, 750 F.3d at 1043-44.

18      The basic purpose of a trial court's "gatekeeping requirement" is to ensure that the expert

19  "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an

20  expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  This

21  gatekeeping requirement applies not only to scientific knowledge, but also to testimony based on

22  technical and specialized knowledge. *Id.* at 141.  A proponent of expert testimony must "explain the

23  methodology the experts followed to reach their conclusions [and] point to any external source to

24  validate that methodology." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir.

25  1995).  Although the inquiry is "a flexible one," the Supreme Court suggested specific factors likely

26  to help trial courts evaluate whether expert testimony is reliable, including testing, peer review, error

27  rates, and acceptance in the relevant scientific community.  *Daubert*, 509 U.S. at 593-94.

28  

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M. KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 2
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

The requirement of specialized knowledge means "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.  Thus, "the opinions of [expert] witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others" should be excluded because these opinions "have no basis in any relevant body of knowledge or expertise." *In re Rezulin Prod. Liab. Lit.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).  An expert should also not "supplant the role of counsel in making argument at trial, and the role of the [decision maker] in interpreting the evidence." *Id.; see also Moses v. Payne,* 555 F.3d 742, 756 (9th Cir. 2009) ("Under Rule 702, expert testimony is helpful . . . if it concerns matters beyond the common knowledge of the average layperson and is not misleading."); *United States v. Hanna,* 293 F.3d 1080, 1086 (9th Cir. 2002); *United States v. Morales,* 108 F.3d 1031, 1039 (9th Cir. 1997) (*en banc*).  The Court "may reject expert testimony also where the 'analytical gap' between the data and the expert's conclusion is too great." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998), citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (2007).

"Even when expert testimony is otherwise admissible, the district court may exclude it under Rule 403." *United States v. Vallejo*, No. 99-50762, 2001 U.S. App. LEXIS 7367, at *31 (9th Cir. Jan. 16, 2001).  Thus, if the Court finds that the testimony would waste time, confuse, or not materially assist the trier of fact, it has discretion to exclude the expert's testimony. *Vallejo*, 2001 U.S. App. LEXIS 7367 at *12-15, citing *United States v. Hicks*, 103 F.3d 837, 847 (9th Cir. 1996), *cert. denied*, 520 U.S. 1193, 117 S. Ct. 1483 (1997).

## ARGUMENT

I.      **Mr. Kruskol's testimony, Declaration and reports should be excluded because he lacks expertise to make statistical analyses related to the issues in this litigation.**

Plaintiffs portray Mr. Kruskol as an expert in statistical analysis, but he falls short of the mark in fundamental respects.  He readily concedes that key aspects of statistical analysis are simply beyond his expertise, including some central to this case, specifically regression analyses, tests for *p*-values and determining statistical significance, and trends analyses – none of which he can perform. Kruskol dep. (Ex. D) at 34:9 – 35:8.  The Federal Judicial Center's *Reference Manual on Scientific Evidence, 3d ed.* (2011) underscores the critical importance of regression analyses, *p*-values,

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M. KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 3 (Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION Ben Franklin Station, P.O. Box 878 Washington, D.C. 20044 (202) 616-4900

statistical significance and trends analyses in statistical analyses in its *Reference Guide on Statistics* at pp. 213, 220-21, 230-31, 233, 236, 240-41, 248-58, 260-72, 279-95, 297-99.  *See also Reference Guide on Multiple Regressions* at pp. 303 *et seq*.  As Mr. Kruskol is incompetent to conduct, present or interpret such fundamental statistical analyses, he simply cannot qualify as an expert witness in statistical analysis.  Despite Mr. Kruskol's admitted lack of expertise, he seeks to testify to his criticisms of regression analyses and tests of statistical significance and for *p*-values conducted by Defendants' statistical expert, Dr. Bernard Siskin.  Kruskol dep. (Ex. D) at 186:18 – 187:2.  *See* Dr. Siskin's July 17, 2020, Amended Report (Ex. E) at pp. 4-5, 10, 17-18, 21, 23-30, 34, 45-46, 50, 53-54, 74, 81, 87-88, 95, 99-108, 112-30, 132-34, and October 13, 2020, Responsive Report (Ex. F) at pp. 13, 20, 25, 46-51, 53-55, 71-72, addressing regression analyses, statistical significance, and trend analyses, statistical analyses for which Mr. Kruskol disclaims any expertise.  And though Mr. Kruskol admits lack of competence to conduct trend analyses, his Supplemental Report (Ex. B) includes "fiscal year trend analyses" (pp. 12-13, 15) and cites trends in naturalization rates (p. 33).

Notably, Mr. Kruskol concedes that an expert analyzing statistical data needs to understand the substantive issues concerning the data's subject matter, including how that data was created.  Kruskol dep. (Ex. D) at 35:13-20.  Yet he admits he has no expertise in USCIS' processing of immigration benefit applications, generally or under CARRP.  *Id*. at 32:10-22.  He has no experience conducting statistical analyses relating to immigration benefit applications, or programs involving vetting or national security concerns (*Id*. at 35:13 – 36:1), or concerning bias or discrimination claims (*Id*. at 36:10-15), which are central to Plaintiffs' class claims.

Given his extensive uncertainty about critical aspects of the data he analyzed, owing largely to his lack of expertise in statistical analyses and the subject matter concerning immigration benefit applications and the CARRP process, Mr. Kruskol's testimony would not assist the trier of fact in resolving any fact at issue concerning any claim Plaintiffs assert.  Mr. Kruskol says that to understand the data he sought to analyze, he needed to understand how an application moved through the adjudication process from receipt to potential additional vetting procedures, all the way through adjudication.  *Id*. at 26:15-22.  He concedes it was important for him to have a firm

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M. KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 4
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

understanding of the CARRP policy and how it operates, particularly in the context of I-485 and N-400 processing and adjudication, in order to conduct his analysis of the data. *Id*. at 27-9-18.  He admits, however, that he is not an expert in CARRP policy or CARRP terminology (*Id*. at 66:19-22, 67:12-16), despite having broad access through Plaintiffs to voluminous CARRP materials produced during discovery.  To prepare his reports, Mr. Kruskol needed to know the information listed on blank I-485 and N-400 forms, the information processed through various USCIS databases, and how an application would move through the various processes to final adjudication. *Id*. at 28:16-29:2. But Mr. Kruskol was unable to obtain answers to all of his questions about USCIS' processing of immigration benefit applications or about CARRP policy through his document review or conversations with Plaintiffs' counsel. *Id*. at 29:3-9, 30:12-17.  He was unable to resolve questions regarding how an application is identified as CARRP in the USCIS database and dataset provided, potential duplicates he thinks he might have found in the dataset and his lack of understanding how they might exist, some adjudication times for forms I-485 and N-400, and how there could be what he believes are data anomalies concerning an application's receipt date and last status date or adjudication date. *Id*. at 29:11-30:10.  *See also id*. at 30:19 – 31:12 (detailing other data issues he says are "unclear to me" or that he is "unable to explain").

Plaintiffs have failed to establish that Mr. Kruskol is qualified to provide statistical analyses as an expert in this case. *See Kumho Tire Co.*, 526 U.S. at 148-49 (court obliged to act as gatekeeper when expert's knowledge and experience is sufficiently called into question).  He has never published anything concerning statistical analyses.  Ex. D at 35:10-12.  It should be no surprise that he has never presented testimony on statistical analyses or been accepted by a court as a statistical expert. *Id*. at 36:17-25.  The mere fact he might have crunched numbers in a financial accounting setting is of no import in this litigation in which Plaintiffs' central theme is that the CARRP process for handling immigration benefit applications with potential national security concerns operates with an anti-Muslim animus or discriminates against applicants who are Muslim or from majority-Muslim countries.  Also, what little statistical analysis Mr. Kruskol offers, going far beyond his expertise, is

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M. KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 5
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

1  unsound, methodologically flawed, statistically incorrect, and subject to misuse and

2  misinterpretation.  *See* Siskin Responsive Report (Ex. F) at, *e.g.*, pp. 2.n1, 7-12, 14-21, 32.

3  **II.**   **Mr. Kruskol's testimony and opinions should be excluded because they are not**
      **relevant to determining any fact or resolving any issue in this case, will not assist**
4      **the trier of fact, and are not based on a reliable methodology.**

5      Mr. Kruskol's evidence does not address the issues for which the statistical evidence is

6  relevant to this litigation, most specifically Plaintiffs' claims that CARRP operates with an anti-

7  Muslim animus or effect.  Directed to the determination by Defendants' statistical expert, Dr. Siskin,

8  that once an application is referred to CARRP, there is no relationship between being from a

9  majority-Muslim country and how long it will take to process an application or whether it will be

10  approved or denied, Mr. Kruskol admitted he could not disagree but declined to further address the

11  issue because he had not performed the analysis and wanted to again review Dr. Siskin's statement.

12  Kruskol dep. (Ex. D) at 50:1-12.  Despite his access to data for that analysis, he explained that he did

13  not address this issue as it was not part of his assignment.  *Id*. at 50:18 – 51:6.  Mr. Kruskol could

14  not recall doing any analyses of CARRP adjudication outcomes for applicants from majority-Muslim

15  countries compared to applicants not from majority-Muslim countries.  *Id*. at 51:8-20.

16      The statistical evidence, which Mr. Kruskol's reports largely side-step or ignore, refute

17  Plaintiffs' claims that applicants who are Muslim or from majority-Muslim countries are commonly

18  referred to CARRP, where their applications are generally either not adjudicated or are denied.

19  Though his reports do not address those claims, Mr. Kruskol concedes that the USCIS data shows

20  that approximately 28,240 applications of the 10.6 million I-485 and N-400 applications USCIS

21  received (during FY 2013 – FY 2019) were referred to CARRP (about 0.3% of all applications), and

22  that 99.7% of the applications never went into CARRP.  *Id*. at 37:8 – 39:4.  [28,240/10,600,000 =

23  0.266%, *i.e.,* 99.724% were not referred to CARRP.]  When directed to Dr. Siskin's determination

24  that about 1.27% of applications from applicants from majority-Muslim countries were processed

25  under CARRP, and thus that 98.73% never went into CARRP, Mr. Kruskol was unable to recall the

26  data, and thus to challenge Dr. Siskin's statement concerning the data.  *Id*. at 41:20 – 42:6.

27

28

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M.
KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 6
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

Although Mr. Kruskol was unable to recall specific numbers, he testified that the determination that 81.1% of applications adjudicated under CARRP were approved, and that 18.1% were denied, is "generally consistent with [his] analysis of the data." *Id*. at 46:18 – 47:6.  Asked whether he noticed that the data shows that the approval rates for applicants from majority-Muslim countries whose applications were adjudicated after referral to CARRP were actually higher than for applicants not from majority-Muslim countries whose applications were adjudicated after referral to CARRP, Mr. Kruskol was unable to deny this; he explained this was something he had "not answered yet" in his review of the data.  *Id*. at 48:9 – 49:24.

Distracting from the statistical evidence that is relevant to and which refutes Plaintiffs' claims, Mr. Kruskol offers opinions and conclusions not relevant to resolving any factual issue in this case, and does so without providing a sound methodological basis for his opinions and conclusions.  *See Daubert*, 509 U.S. at 590.  He opines, for example, that the USCIS dataset *might* overstate the number of cases referred to CARRP, and might include duplicate cases.  But he does not state the likelihood of any over-flagging of cases as CARRP or how many cases were misclassified, and he does not state that there are any duplicates in the dataset, and if so, how many. Nor does he say whether or how correcting for overflagging or duplication would affect his conclusions concerning any issue or fact to be addressed by the Court.  Mr. Kruskol also suggests in his reports that CARRP has a discriminatory effect upon applicants who are Muslim or from majority-Muslim countries, with no stated bases or methodology for reaching that opinion.  Kruskol Supplemental Report (Ex. B) at p. 4 (¶ 7g-h), and pp. 16-18 (¶'s 44-52).  He points to USCIS data showing a higher percentage of referrals to CARRP for applicants from majority-Muslim countries, but this is an observation that the Court could make in perusing the produced USCIS data summaries without expert assistance.  What matters is whether the data actually evidence discrimination, given other explanations to account for the higher percentage and that Dr. Siskin address; Mr. Kruskol offers no assistance to the Court on that issue.

Mr. Kruskol concedes he is not an expert in determining whether USCIS has correctly referred a case to CARRP (Ex. D at 67:18-22), yet still insists upon addressing the issue.  While his

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M. KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 7
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

report says that USCIS detailed data "appears to overstate" the number of applications subject to CARRP, he confessed at his deposition that "I do not know for sure whether or not the updated USCIS detailed data overstates the number of applications subject to CARRP." *Id.* at 75:25 – 76:19. Mr. Kruskol notably claims no greater expertise than USCIS in determining whether any particular application in the dataset produced to Plaintiffs was referred to CARRP. *Id.* at 69-:22 – 70:10.  He conjectures that lacking access to applicants' A-files and applications diminishes his ability to determine which applications were referred to or processed in CARRP. *Id.* at 70:12 – 71:1.  He suggests that accessing USCIS' FDNS-DS database, for which he disclaims any expertise, *might* enable him to determine which applications were referred to CARRP. *Id.* at 71:24 – 73:9.

Though Mr. Kruskol suggests that USCIS *might* have overstated the number of applications subject to CARRP in its produced dataset, he declines to say there was in fact an overstatement of CARRP cases but conjectures only that "there is a potential for overstatement of CARRP processed applications." *Id.* at 155:18 – 156:2, 156:10-14.  He has made no attempt to quantify the apparent overstatement, claiming he would need additional fields contained within the FDNS-DS database. *Id.* at 156:20 – 157:4.  He admitted that he would be speculating to say that the overstatement were even more than 1%. *Id.* at 157:6-19.  Thus, even if his testimony were reliable, it would not be probative or relevant to determining any fact at issue, or understanding the evidence.

Notably, Mr. Kruskol does not criticize the criteria USCIS used for determining whether a case is a CARRP case, saying "he has no opinion one way or another" concerning the criteria. *Id.* at 159:12-23.  Though seeking to raise questions concerning whether USCIS has correctly flagged applications as having been processed under CARRP, Mr. Kruskol confessed that he cannot say with 100% certainty, or even 50% plus probability, that an application was never in CARRP for an application that was pending at any time while a CME record was open. *Id.* at 181:1-23.[3]

---

[3] Mr. Kruskol understands that the CME (case management entity) identifier in FDNS-DS for a national security concern case may be opened when it is necessary to perform further review on an individual's application.  Ex. D at 73:10 – 74:2.  A pending I-485 or N-400 application can be subject to additional vetting under CARRP where a CME is open for the applicant. *Id.* at 74:4-17.

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M. KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 8
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

While Mr. Kruskol opines that the USCIS updated data "appears" to have overstated the number of applications subject to CARRP, he cannot answer whether that purported overstating is of the number of applications that were subject to CARRP at any time during their pendency, or rather an overstating of the number that remained subject to CARRP from the time of referral up to their adjudication or the end of the study period (9/30/19).   Kruskol dep. (Ex. D) at 80:10 – 81:23.

Mr. Kruskol testified that even if he had access to all of the data from the sub-status and NS concern type fields in USCIS' FDNS-DS database, he could not know in advance of seeing that data whether, based upon it, he would be able to reach any conclusions on whether any CARRP-flagged cases were incorrectly flagged and never referred to CARRP.  *Id*. at 140:8 – 141:9.  *See also id*. at 90:18 – 91:7 (Kruskol "cannot conclude" whether he would change the CARRP flag for any cases from *yes* to *no* if he were to review sub-status data for each CARRP-flagged case); *id*. at 104:2-12 (Asked if obtaining data on the NS concern type and sub-status for the CARRP-flagged applications would impact his determination whether cases were in CARRP or not, Mr. Kruskol was "unable to determine" how his conclusions or analyses might change.)  After *all* that data was subsequently produced to Plaintiffs and Mr. Kruskol in early January 2021 pursuant to the order granting Plaintiffs' motion to compel production of statistical data (Dkt #445), his Declaration essentially abandoned the claim that any CARRP-flagged cases in the dataset were incorrectly flagged as CARRP cases, and actually referred to CARRP, identifying no cases as incorrectly flagged.

Mr. Kruskol suggested in his Declaration and at his deposition that reviewing all underlying applications *might* assist him in determining which applications were subject to CARRP, though he never offers any basis for that conjecture.  He testified that "[w]ithout reviewing any of the underlying CARRP applications, [he's] unable to confirm whether or not the data within the updated detailed data is accurate" and thus to validate USCIS' data on whether an application was subject to CARRP.  *Id*. at 122:24 – 123:16.  He recalled that USCIS' Rule 30(b)(6) deponent Kevin Shinaberry testified that reviewing the 10.6 million applications would not be necessary to determine which ones were ever referred to or processed in CARRP (*Id*. at 123:16 – 124:2), and was unable to identify any basis for disagreeing; he simply stated that he did not know whether USCIS' data

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M. KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 9
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

1   accurately reflects a review of the underlying applications and CARRP processing status.  *Id*. at
2   124:4-14.

3    Mr. Kruskol's suggestion that reviewing 10.6 million applications would help him determine
4   which cases were referred to CARRP is not just unfeasible but entirely speculative.  He could not
5   know if CARRP information is discernible from the applications since he could not even recall ever
6   having reviewed any "completed" I-485 or N-400 applications, or if Plaintiffs' attorneys had
7   provided any to him.  *Id*. at 124:16-25.  He did review blank application forms, which he confirmed
8   contain no field or category indicating if an application is subject to CARRP.  *Id*. at 125:14-25.
9   Even if Mr. Kruskol had access to the underlying 10.6 million applications that are the source of the
10   data produced to Plaintiffs, he does not know if he would have done any different analyses.  *Id*. at
11   127:10-22.  Further, he has never seen an A-file (where USCIS maintains each applicant's N-400
12   and I-485 applications, and other information on the individuals' immigration history) on anyone.
13   *Id*. at 127:23 – 128:4.  Even if he could access the 10.6 million applications and/or A-files at issue,
14   or some number of them, he does not know how long he would need to review even a single
15   application; nor can he provide any time range for that review.  *Id*. at 128:5-16.

16    Mr. Kruskol's Declaration suggests, with no basis, that the USCIS data concerning CARRP-
17   flagged cases is anomalous because it includes cases in which the sub-status for various cases
18   change during CARRP processing, and sometimes change more than once on the same day.  Yet at
19   his deposition he acknowledged that after a CARRP case goes through vetting, its sub-status can
20   change from one entry to another, such as from NS Not Confirmed to NS Resolved.  *Id*. at 102:9-19.

21    Mr. Kruskol's opinions concerning potential duplicates in the USCIS dataset are not only
22   speculative, but also not relevant to resolving any fact at issue or understanding the evidence.  While
23   Mr. Kruskol suggests the prospect of duplicates within the USCIS data, he is adamant that he is not
24   claiming there are any duplicates within the data, but only that "there are potential duplicates."  *Id*. at
25   198:12-16.  He is "unable to confirm whether or not [he] identified true duplicate records."  *Id*. at
26   206:14 – 207:6.  Nor does he know whether removing the potential duplicates would have a
27   statistically significant impact on his analyses and conclusions.  *Id*. at 220:11 – 221:3.  Notably, none

28

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M.
KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 10
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

of the potential duplicates listed in his report are CARRP cases. *Id*. at 224:9-14. He is not even able to say that the percentage of duplicates that are CARRP cases is even closer to 1% than to 0%. *Id*. at 221:5 – 222:10. Also, none of the potential duplicates his report lists involve, to his knowledge, applicants from majority-Muslim countries. *Id*. at 224:16 – 225:16.

Most critically, after Mr. Kruskol examined USCIS' "granular dataset containing 28,214 records [on CARRP-flagged applications] and 219 fields of application and related USCIS data" [Ex. A, Kruskol Declaration ¶ 13], he identified not even one potential duplicate among the CARRP cases in the dataset. Moreover, in his listing of potential duplicates in his prior Second Supplemental Report (Ex. C), based on matching information in a more limited number of fields (*e.g.*, birthdate, country or birth and nationality, application form, application date), Mr. Kruskol did not consider the frequency of twins or multiple births as accounting for most or even a significant portion of his potential duplicates, using for example CDC's 3.3% background rate for twin births in the United States, which would include about 350,000 twins or multiple births among a population equivalent to the 10.6 million applicants included in the dataset. Kruskol dep. (Ex. D) at 207:25 – 213:23. As explained in Dr. Siskin's Responsive Report (Ex. F at pp. 10-11), Mr. Kruskol's claim that the USCIS data contains duplicate applications is not supported by the data he cites. The USCIS data analyst who prepared the database has confirmed that personal identification information shows that the entries are not duplicates, and that the amount of duplication would not be meaningful even if one incorrectly accepted as accurate Mr. Kruskol's count of potential duplicates. *Id*.

Mr. Kruskol also suggested that the dataset's inclusion of cases adjudicated within 60 days might be problematic since one of Plaintiffs' attorneys, whom Mr. Kruskol could not identify, suggested that adjudication within 60 days of application receipt is inconsistent with the time it *usually* takes to adjudicate an I-485 or N-400 application. Ex. D at 235:24 – 239:1. But of the 10.6 million applications included in the dataset, Mr. Kruskol has no guess as to the percentage that should fall within the usual time for adjudication. *Id*. at 239:14-22. He conceded that over 98% of the adjudications in the USCIS dataset occurred more than 60 days following application receipt. *Id*. at 239:24 – 240:22. In short, he cannot establish that the data includes questionable adjudications.

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M.
KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 11
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

In summary, Mr. Kruskol does not present evidence meeting Fed. R. Evid. 702 and *Daubert* standards.  He provides only "subjective belief" and "unsupported speculation."  *Daubert*, 509 U.S. at 590.  His Declaration, reports and testimony should be excluded since they are not founded on a reliable methodology, and provide improper conclusions, or opinions and inferences that would not assist the Court as trier of fact in understanding the evidence or resolving any issue in this case.  His selective citing of reported data (or simplistic calculations using that data, *e.g.,* comparing two numbers to determine the mathematical difference), without any statistical analysis, constitutes nothing more than statements of fact for which the Court does not need his assistance to discern.

### III.     Mr. Kruskol's testimony and opinions should be excluded under Rule 403 because their presentation would waste time, cause confusion and not materially assist the Court as the trier of fact.

Fed. R. Evid. 403 expressly empowers the Court to exclude evidence, even if deemed competent expert testimony that meet the relevancy and reliability requirements of Rule 702 and *Daubert*, "if its probative value is substantially outweighed by a danger of one or more of the following: … confusing the issues, misleading the jury [or factfinder], undue delay, wasting time, or needlessly presenting cumulative evidence."  Providing minimal statistical analysis, Mr. Kruskol's reports consist mainly of data snippets he lifted from USCIS tabular summaries of data Defendants produced in June 2020, selected to shore up Plaintiffs' case narrative, or rudimentary calculations using data from the tabular summaries that require no expert presentation.  Where Mr. Kruskol departs from presenting simple snippets of data, or rudimentary calculations made from them, he refers to possible anomalies, potential duplicates, and possible overflagging of CARRP cases, never attesting to the likelihood such anomalies, duplicates or overflagging are actual rather than just potential or, more importantly, that they had a significant impact on the data and would lead to a different resolution of any issue presented to the Court.  Mr. Kruskol's discussion of potential anomalies, duplicates and overflagging would not assist the Court in understanding the evidence or determining any fact at issue, but simply confuse the issues and the Court's understanding of the statistical evidence, and waste time.

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M. KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 12 (Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION Ben Franklin Station, P.O. Box 878 Washington, D.C. 20044 (202) 616-4900

# CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the motion to exclude the testimony, Declaration, and reports of Plaintiffs' designated expert Mr. Kruskol.

Dated: March 25, 2021                    Respectfully submitted,

BRIAN M. BOYNTON                         W. MANNING EVANS
Acting Assistant Attorney General        Senior Trial Counsel
Civil Division                           Office of Immigration Litigation
U.S. Department of Justice
                                         /s/ Lindsay M. Murphy
AUGUST FLENTJE                           LINDSAY M. MURPHY
Special Counsel                          Senior Counsel for National Security
Civil Division                           Office of Immigration Litigation

ETHAN B. KANTER                          LEON B. TARANTO
Chief, National Security Unit            Trial Attorney
Office of Immigration Litigation         Torts Branch
Civil Division
                                         BRENDAN T. MOORE
BRIAN T. MORAN                           Trial Attorney
United States Attorney                   Office of Immigration Litigation

BRIAN C. KIPNIS                          JESSE L. BUSEN
Assistant United States Attorney         Counsel for National Security
Western District of Washington           Office of Immigration Litigation

ANNE DONOHUE                             VICTORIA M. BRAGA
Counsel for National Security            Trial Attorney
Office of Immigration Litigation         Office of Immigration Litigation

ANTONIA KONKOLY
Trial Attorney
Federal Programs Branch                  *Counsel for Defendants*

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M.
KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 13
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF CONFERENCE**

I HEREBY CERTIFY that counsel for both parties met and conferred on March 22, 2021, during which time counsel for Defendants notified Plaintiffs' counsel of our intention to file the foregoing motion to exclude expert testimony.  Plaintiffs' counsel indicated that they did not agree with the relief sought.

Dated: March 25, 2021

 /s/ *Lindsay M. Murphy*
LINDSAY M. MURPHY
Civil Division
U.S. Department of Justice

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M.
KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES - 14
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2021, I electronically filed the foregoing UNDER SEAL via the Court's CM/ECF system, which will send notification of such filing to all counsel of record. Additionally, I directed that an encrypted copy of the foregoing SEALED submission be served on counsel for Plaintiffs via email.

/s/ Lindsay M. Murphy
LINDSAY M. MURPHY
Senior Counsel for National Security
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 616-4018

NOTICE OF MOTION, AND MOTION TO EXCLUDE TESTIMONY OF SEAN M. KRUSKOL; MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES
(Case No. C17-00094RAJ)

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION
LITIGATION
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 616-4900