# Exhibit D

1

2

3

4

5

6

7

8

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

ABDIQAFAR WAGAFE, *et al.*, on behalf of
themselves and others similarly situated,

            Plaintiffs,

    v.

JOSEPH R. BIDEN, President of the
United States, *et al.*,

            Defendant.

No. 2:17-cv-00094-RAJ

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN OPPOSITION
TO DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT**

NOTE FOR MOTION CALENDAR:
Friday, July 2, 2021

**ORAL ARGUMENT REQUESTED**

18

19

20

21

22

23

24

25

26

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ)
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     PLAINTIFFS' FACTS ........................................................................................ 2

III.    LEGAL BACKGROUND .................................................................................. 4

    A.   Statutory Eligibility Criteria and Judicial Review ................................. 4

    B.   Plaintiffs' Individual Claims Are Not Moot .......................................... 5

IV.     ARGUMENT ...................................................................................................... 6

    A.   Plaintiffs Are Entitled to Summary Judgment on their APA Claims ................... 6

        1.   CARRP Constitutes Final Agency Action ................................ 6

        2.   CARRP is Not a Matter Committed to Agency Discretion ..................... 10

        3.   CARRP Violates the INA and Agency Regulations and is Therefore Contrary to Law .............................................................. 11

        4.   CARRP Violates the APA Because it Unlawfully Withholds and Unreasonably Delays Adjudication of Class Members' Applications. .... 21

        5.   CARRP Violates the APA Because USCIS Failed to Engage in Required Notice and Comment Rulemaking .............................. 23

        6.   CARRP is Arbitrary and Capricious in Violation of the APA ................ 23

    B.   CARRP Violates the Procedural Due Process Rights of the Naturalization Class 27

        1.   The Naturalization Class Members' Interests are Significant ................. 28

        2.   CARRP Entails a High Risk of Erroneous Deprivation ......................... 28

        3.   Defendants' Burden in Adopting Additional Safeguards is Low ............ 29

        4.   *Brown* Did Not 'Narrowly Circumscribe' Plaintiffs' Due Process Rights 29

    C.   CARRP Denies Class Members Equal Protection. ............................................... 31

        1.   *Arlington Heights* Supplies the Relevant Standard. ................................. 31

        2.   The Undisputed Facts Establish that Discriminatory Intent was a Motivating Factor in CARRP's Design and Implementation .................. 31

        3.   CARRP is Subject to Strict Scrutiny, and Even if CARRP is Subject to a More Lenient Standard, it Would Fail ...................................................... 35

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - i
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

D.      Defendants May Not Use the Law Enforcement Privilege as a Shield and a Sword .................................................................................................. 36

E.      Objections to Defendants' Evidence ..................................................... 38

V.      CONCLUSION ................................................................................................ 40

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - ii
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AADC v. Reno,*
 70 F.3d 1045 (9th Cir. 1995) .......................................................................28, 30

*Al Otro Lado, Inc. v. McAleenan,*
 394 F. Supp. 3d 1168 (S.D. Cal. 2019)....................................................................22

*Ali v. Mukasey,*
 No. C07-1030, 2008 WL 682257 (W.D. Wash. Mar. 7, 2008) ..............................37

*Arce v. Douglas,*
 793 F.3d 968 (9th Cir. 2015) ..................................................................................32

*Army Corps of Engrs. v. Hawkes Co., Inc.,*
 136 S. Ct. 1807 (2016)............................................................................................10

*Ball v. Massanari,*
 254 F.3d 817 (9th Cir. 2001) ..................................................................................36

*Bennett v. Spear,*
 520 U.S. 154 (1997).............................................................................................7, 8

*Bittaker v. Woodford,*
 331 F.3d 715 (9th Cir. 2003) ..................................................................................37

*Broadgate Inc. v. USCIS,*
 730 F. Supp. 2d 240 (D.D.C. 2010) .........................................................................9

*Brown v. Holder,*
 763 F.3d 1141 (9th Cir. 2014) ..........................................................................30, 31

*Chen v. Allstate Ins. Co.,*
 819 F.3d 1136 (9th Cir. 2016) ..................................................................................6

*Ching v. Mayorkas,*
 725 F.3d 1149 (9th Cir. 2013) ................................................................................28

*Church of Scientology of Cal. v. United States,*
 920 F.2d 1481 (9th Cir. 1990) ................................................................................15

*City & Cnty. of San Francisco v. USCIS,*
 981 F.3d 742 (9th Cir. 2020) ..................................................................................26

*Columbia Riverkeeper v. U.S. Coast Guard,*
 761 F.3d 1084 (9th Cir. 2014) ..................................................................................7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Cook Cnty. v. Wolf*,
461 F. Supp. 3d 779 (N.D. Ill. 2020) ...................................................................36

*Dep't of Commerce v. New York*,
139 S. Ct. 2551 (2019) ...................................................................11, 19, 20

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
140 S. Ct. 1891 (2020) ...................................................................10, 11, 24, 25

*Dolan v. Sentry Credit, Inc.*,
No. C17-1632 RAJ, 2018 WL 6604212 (W.D. Wash. Dec. 17, 2018) (Jones, J.) ...................................................................6

*E. Bay Sanctuary Covenant v. Garland*,
994 F.3d 962 (9th Cir. 2020) ...................................................................24

*Eberle v. City of Anaheim*,
901 F.2d 814 (9th Cir. 1990) ...................................................................6

*Elhady v. Kable*,
993 F.3d 208 (4th Cir. 2021) ...................................................................34

*Encino Motorcars, LLC v. Navarro*,
136 S. Ct. 2117 (2016) ...................................................................25

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ...................................................................25

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*,
569 F. Supp. 2d 929 (N.D. Cal. 2008) ...................................................................12, 13

*Gill v. Dep't of Justice*,
913 F.3d 1179 (9th Cir. 2019) ...................................................................7, 8, 10

*Greene v. McElroy*,
360 U.S. 474 (1959) ...................................................................29

*Guiney v. Bonham*,
261 F. 582 (9th Cir. 1919) ...................................................................19

*Hamdi v. USCIS*,
No. EDCV 10-00894, 2012 WL13135302 (C.D. Cal. Aug. 29, 2012) ...................................................................20

*Heckler v. Chaney*,
470 U.S. 821 (1985) ...................................................................11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Hemp Indus. Ass'n v. Drug Enf't Admin.*,
    333 F.3d 1082 (9th Cir. 2003) ...........................................................................23

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
    340 F. Supp. 3d 934 (N.D. Cal. 2018) ...............................................................41

*Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*,
    408 F.3d 638 (9th Cir. 2005) ...........................................................................7, 9

*Jafarzadeh v. Duke*,
    270 F. Supp. 3d 296 (D.D.C. 2017) ....................................................................5

*Kaur v. Holder*,
    561 F.3d 957 (9th Cir. 2009) ............................................................................30

*Kungys v. U.S.*,
    485 U.S. 759 (1988) ...........................................................................................4

*Lands Council v. Powell*,
    395 F.3d 1019 (9th Cir. 2005) ..........................................................................26

*Laub v. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003) ............................................................................9

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ...........................................................................................5

*Lopez-Vasquez v. Holder*,
    706 F.3d 1072 (9th Cir. 2013) ............................................................................4

*Lujan v. National Wildlife Federation*,
    497 U.S. 871 (1990) .......................................................................................9, 10

*Luke v. Family Care and Urgent Med. Clinics*,
    323 F. App'x. 496 (9th Cir. 2009) .....................................................................39

*Maina v. Lynch*,
    5-cv-00113, 2016 WL 3476365 (S.D. Ind. Jun. 27, 2016) ................................14

*Mamigonian v. Biggs*,
    710 F.3d 936 (9th Cir. 2013) ..........................................................................5, 9

*Mariscal v. Graco, Inc.*,
    52 F. Supp. 3d 973 (N.D. Cal. 2014) ................................................................12

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) .............................................................................27, 28, 30

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Matter of Chawathe,*
   25 I. & N. Dec. 369 (USCIS AAO 2010) ......................................................................4

*Mattson v. Wolf,*
   826 F. App'x 603 (9th Cir. 2020) ............................................................................28

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983)...................................................................................................26

*Naiker v. USCIS,*
   352 F. Supp. 3d 1067 (W.D. Wash. 2018) (Jones, J.)..............................................17

*Nat'l Sec. Counselors v. C.I.A.,*
   931 F. Supp. 2d 77 (D.D.C. 2013) ...........................................................................23

*Nat'l Wildlife Fed'n v. Army Corps of Eng'rs,*
   384 F.3d 1163 (9th Cir. 2004) .................................................................................24

*Nilsson v. City of Mesa,*
   503 F.3d 947 (9th Cir.2007) ......................................................................................6

*Nio v. Dep't of Homeland Sec.,*
   385 F. Supp. 3d 44 (D.D.C. 2019) ...........................................................................10

*Nio v. United States Dep't of Homeland Sec.,*
   323 F.R.D. 28 (D.D.C. 2017) ...................................................................................23

*Occidental Eng'g Co. v. INS,*
   753 F.2d 766 (9th Cir. 1985) ...................................................................................24

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
   523 U.S. 726 (1998)...................................................................................................9

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.,*
   465 F.3d 977 (9th Cir. 2006) .....................................................................................8

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ...................................................................................22

*People v. Kinder Morgan Energy Partners, L.P.,*
   159 F. Supp. 3d 1182 (S.D. Cal. 2016)....................................................................41

*Perez Perez v. Wolf,*
   943 F.3d 853 (9th Cir. 2019) ...................................................................................11

*Price v. INS,*
   962 F.2d 836 (9th Cir. 1991) ...................................................................................34

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - vi
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Rajah v. Mukasey*,
  544 F.3d 427 (2d Cir. 2008)........................................................................................34

*Ramos v. Wolf*,
  975 F.3d 872 (9th Cir. 2020) ......................................................................................32

*Reno v. Bossier Par. Sch. Bd.*,
  520 U.S. 471 (1997).....................................................................................................32

*Roshandel v. Chertoff*,
  554 F. Supp. 2d 1194 (W.D. Wash. 2008)............................................................23, 28

*Ruiz-Diaz v. United States*,
  703 F.3d 483 (9th Cir. 2012) ......................................................................................37

*S.E.C. v. Jerry T. O'Brien, Inc.*,
  467 U.S. 735 (1984).....................................................................................................29

*Samma v. Dep't of Def.*,
  486 F. Supp. 3d 240 (D.D.C. 2020) ............................................................................11

*San Luis & Delta-Mendota Water Auth. v. Locke*,
  776 F.3d 971 (9th Cir. 2014) ......................................................................................25

*Singh v. Still*,
  470 F. Supp. 2d 1064 (N.D. Cal. 2007) ......................................................................37

*The Comm. Concerning Cmty. Improvement v. City of Modesto*,
  583 F.3d 690 (9th Cir. 2009) ......................................................................................32

*Tiwari v. Mattis*,
  363 F. Supp. 3d 1154 (W.D. Wash. 2019)............................................31, 32, 33, 36

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018).................................................................................................31

*U.S. v. Hovsepian*,
  422 F.3d 883 (9th Cir. 2005) ........................................................................................5

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977).................................................................................................31, 32

*Washington v. Davis*,
  426 U.S. 229 (1976).....................................................................................................34

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ....................................................................................40

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Zerezghi v. USCIS*,
   955 F.3d 802 (9th Cir. 2020) .........................................................................28, 29

*Zhu v. DHS*,
   No. 18-cv-00489, 2019 WL 4261167 (W.D. Wash. Sept. 9, 2019) ........................................31

**STATUTES**

5 U.S.C. § 555(b) ...........................................................................................21

5 U.S.C. § 701(a)(2) ........................................................................................10

5 U.S.C. § 706(1) ...........................................................................................22

5 U.S.C. § 706(2) ...........................................................................................22

5 U.S.C. § 706(2)(A), (C) ..................................................................................17

8 U.S.C. § 1101(f) ............................................................................................4

8 U.S.C. § 1103(a)(1) ......................................................................................12

8 U.S.C. § 1252(a)(2)(B)(ii) .................................................................................5

8 U.S.C. § 1421(c) ..........................................................................................29

Administrative Procedure Act, 5 U.S.C. § 706 ........................................................ passim

Immigration and Nationality Act ......................................................................... passim

**OTHER AUTHORITIES**

8 C.F.R. § 103.2(b)(16) ......................................................................12, 17, 18, 21

8 C.F.R § 103.2(b)(16)(i) ...................................................................................17

8 C.F.R § 103.2(b)(16)(ii) ..................................................................................17

8 C.F.R. § 103.2(b)(16)(iii) .................................................................................18

8 C.F.R § 103.2(b)(16)(iv) ..................................................................................18

8 C.F.R. § 103.2(b)(18) .....................................................................................38

8 C.F.R. § 103.3(a)(1)(i) ...................................................................................12

8 C.F.R. § 316.10(a)(2) .......................................................................................4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

First Amendment ..................................................................................................................34

Fifth Amendment .................................................................................................................33

Fed. R. Civ. P. 26(a)(2)(D)(ii) ............................................................................................40

Fed. R. Civ. P. 26(e) ............................................................................................................39

Fed. R. Civ. P. 37 .................................................................................................................40

Fed. R. Civ. P. 56(d) ...........................................................................................................39

*Pretextual*, CAMBRIDGE DICTIONARY,
    https://dictionary.cambridge.org/us/dictionary/english/pretextual ..................................19

Rule 23(a) .............................................................................................................................22

Rule 23(b)(2) ........................................................................................................................22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## I.    INTRODUCTION

The undisputed material facts demonstrate that Plaintiffs are entitled to summary judgment. Defendants do not, and cannot, dispute that CARRP inserts a new standard that USCIS invented into the process of adjudicating immigration benefits, and that CARRP governs whether, when, and how applications can be approved. Defendants do not dispute that they sought but failed to legislate CARRP and that they created the program without public notice and comment. They do not dispute that CARRP bars USCIS officers from approving eligible applications with "unresolved" national security concerns, and that those concerns do not correspond to ineligibility grounds set forth in the Immigration and Nationality Act ("INA"). Defendants do not dispute that USCIS never informs applicants that they have been referred to CARRP or discloses the "concerns" that prompted referral. Defendants' own statistics prove that CARRP cases are delayed and denied at significantly higher rates than non-CARRP cases, and that class members from Muslim-majority countries are referred to CARRP at *ten to twelve times* the rate of applicants from other countries. And Defendants do not dispute that ██████████ ████████████████████████████████████████████ for years despite their eligibility for the benefits they sought.

Faced with these undisputed material facts, Defendants pursued obfuscation and misdirection. Defendants improperly suggest that evidence they withheld as "privileged" would show that CARRP is something other than what the record now shows, while also seeking to rely on inadmissible evidence and self-serving agency declarations. They strain to recast CARRP as a program that affects relatively few applicants, but their own data shows that CARRP has impacted tens of thousands of applicants since its inception. Defendants fail to grapple with controlling authority, rely on inapposite cases, and suggest USCIS possesses powers and discretion it does not. They effectively concede, by failing to address, Plaintiffs' claims that CARRP violates the INA and agency regulations, and that it unlawfully withholds and unreasonably delays adjudication of class members' applications. And Defendants fail to raise a

1  genuine dispute sufficient to avoid summary judgment on Plaintiffs' other claims.

2  **II.    PLAINTIFFS' FACTS[1]**

3  The undisputed facts demonstrate that ███████████████████████

4  ███████████████████████. Defendants do not dispute that (1) ██

5  ███████████████████████████████████

6  ███████████ [2] (2) in over three years USCIS never found any ineligibility

7  grounds despite ███████████████ one year after Mr. Wagafe filed; and (3) USCIS

8  stopped working on his application from October 2015 until the filing of this lawsuit. Plfs' Mot.

9  at 17-18; Defs' Mot. at 25. Defendants offer no evidence ███████████████ reason for

10  the delay. Defs' Mot. at 25.

11  Defendants do not dispute that ██████ Muslim from Iran working in the energy sector

12  with U.S. government contracts ██████ **Plaintiff Ostadhassan**███████████████ or that

13  only one month after Mr. Ostadhassan refused to meet voluntarily with the FBI, ██████

14  ███████████████████ Plfs' Mot. at 19; Defs' Mot. at 25-26. Critically, there is no

15  dispute that USCIS found him statutorily eligible for adjustment ██████ denied his application

16  ███████████████████████████████████

17  including by questioning the legality of his marriage, or that the denial decision did not meet the

18  legal standard for false testimony and discretionary denials. Plfs' Mot. at 21; Defs' Mot. at 25-

19  26. Defendants assert that Mr. Ostadhassan left the country "without first securing any lawful

20  means of return," Defs' Mot. at 26, but neglect to mention that Defendants issued him a denial

21  notice informing him he must leave. **Ex. 85** at DEF-00422120.0005.

22  Defendants admit that ███████████ **Plaintiff Bengezi**███████████████

23

24  ───────────────────
   [1] Plaintiffs' exhibits 1-100 are attached to the March 25, 2021 Declaration of Jennifer Pasquarella at Dkt.

25  472. Exhibits 101-113 are attached to the June 11, 2021 Second Declaration of Jennifer Pasquarella filed
   contemporaneously with this motion.

26  [2] "[I]n the majority of cases [a ███████████] should be thought of as an innocent party by default,"
   because most ███████████ are to witness and bystander names. **Ex. 38** (Danik Rep.) at 22; **Ex. 96** at 1.
   According to former DHS Secretary Michael Chertoff, "the vast majority of [hits on reference files] are benign
   mentions." **Ex. 71** (Chertoff Statement).

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 2
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Defs' Mot. at 26. ███████████

████████████████████████████████████

██████████████████████████████." **Ex. 82** at DEF-00419977.0583;

Plfs' Mot. at 22; Defs' Mot. at 26. Defendants suddenly reversed course within days of Ms.

Bengezi joining this lawsuit, determining that they could approve the application ██████

████████████████████████████████ Plfs'

Mot. at 22. Notably, Ms. Bengezi was shortly thereafter ███████████████████

applied for naturalization in March of 2020, ██████████████████████. Third

Pasquarella Decl. ¶2, filed concurrently.

Defendants do not dispute the facts that ████████████████████████

██████████ **Plaintiff Abraham**'s application for five years, immeasurably harming him and

his family. Plfs' Mot. at 23-25; Defs' Mot. at 26. ███████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████

██████ ³

Finally, Defendants do not dispute that ██████████ **Plaintiff Manzoor** ████████

██████████ his national origin (Pakistan), ███████████████████████

██████████████████████ Their own documents demonstrate

that ████████████████████████████████

████████████████ it to be swiftly approved on the "merits." Plfs'

Mot. at 25.



---

³ Defendants also do not dispute that █████████████████████
██████████. Plfs' Mot at 24-25.

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 3
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### III.   LEGAL BACKGROUND

**A.    Statutory Eligibility Criteria and Judicial Review**

Defendants mischaracterize basic immigration law. They claim applicants for adjustment of status must prove admissibility "clearly and beyond a doubt," Defs' Mot. at 29, but that is the standard to contest a charge of inadmissibility in immigration court. *See Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1074 n.1 (9th Cir. 2013). The standard to prove eligibility for adjustment of status before the agency is preponderance of the evidence. *See Matter of Chawathe*, 25 I. & N. Dec. 369, 375 (USCIS AAO 2010); *see id.* at 369 (preponderance standard met if claim is "probably true," even if there is "some doubt").

Regarding naturalization, Defendants portray the "good moral character" standard as open-ended. It is not. Applicants are *presumed* to possess "good moral character" *unless*, during the five years preceding the application date, they meet an enumerated category under 8 U.S.C. § 1101(f) for *lacking* good moral character. *See* 8 C.F.R. § 316.10(a)(2); **Ex. 89** (Ragland Rep.) ¶37. And even then, USCIS must be able to prove they lack good moral character by probative evidence—a far cry from the unproven allegations and "concerns" driving CARRP. Plfs' Mot. at 31-32 & n.16 (citing cases).[4] Moreover, Congress has repeatedly rejected adding *allegations* of terrorist activity to the statutory definition of lack of good moral character. *See, e.g.*, S. 2192, 115th Cong. § 1622 (2017); S. 1757, 115th Cong. § 622 (2017); H.R. 1148, 114th Cong. § 202 (2016). Contrary to their suggestion, Defs' Mot. at 31, Defendants may only "consider events" outside the five-year statutory period "insofar as it bears on [an applicant's] *present* moral character" during the statutory period. *U.S. v. Hovsepian*, 422 F.3d 883, 886 (9th Cir. 2005)

Defendants observe that, in certain circumstances, adjustment and naturalization applicants may seek mandamus for lengthy delays and judicial review for denials of their

---

[4] Defendants emphasize that "good moral character" excludes those who give "false testimony for the purpose of obtaining" an immigration benefit, Defs' Mot. at 31, but fail to mention that a finding of false testimony "will be relatively rare" because it requires proving an applicant made a false oral statement "with the subjective intent of obtaining immigration or naturalization benefits," as opposed to misrepresentations made for any other reason and concealments. *Kungys v. U.S.*, 485 U.S. 759, 780 (1988).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    applications. Defs' Mot. at 30, 32. But the availability of judicial intervention does not obviate

2    Defendants' obligation to follow the law and adjudicate applications based on the statutory

3    criteria. *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) ("[A]n agency is not free simply to disregard

4    statutory responsibilities."). Moreover, judicial review is "*expressly precluded* by 8 U.S.C. §

5    1252(a)(2)(B)(ii)" when USCIS denies adjustment applications as a matter of discretion.

6    *Mamigonian v. Biggs*, 710 F.3d 936, 943 (9th Cir. 2013). Indeed, USCIS frequently denies

7    CARRP applicants' adjustment of status as a matter of discretion and refuses to initiate removal

8    proceedings (against its own policy) to avoid judicial review, as ███████████████████████

9    ███. *See* **Ex. 89** (Ragland Rep.) ¶¶141, 132-133, 97-100, 139. And even where judicial review is

10   available, very few applicants have the resources to resort to the courts. *Id.* ¶112; **Ex. 9** (Arastu

11   Rep.) ¶¶102, 106.

12   **B.    Plaintiffs' Individual Claims Are Not Moot**

13        Defendants incorrectly claim that this Court "recognized" that Plaintiffs' individual

14   claims were moot. This is incorrect. The Court only "recognized" that Defendants *argued* their

15   individual claims were moot, but held their claims were not. Dkt. 69 at 29-30, 13 (holding

16   voluntary cessation does not moot Plaintiffs claims).

17        Moreover, Plaintiff Mehdi Ostadhassan's individual claim for relief is not moot. At the

18   time of filing, he sought an order requiring Defendants to adjudicate his application in

19   accordance with the law, ████████. Dkt. 47 at 51. Although Defendants adjudicated Mr.

20   Ostadhassan's application, ██████████████████████████ he remains entitled to the

21   relief he sought. *See Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 304 (D.D.C. 2017) (declining to

22   find plaintiffs' claims moot after USCIS adjudicated their applications because they challenged

23   the legality of CARRP, not just the delay in adjudication). Mr. Ostadhassan is entitled to

24   individual relief requiring Defendants to readjudicate his application lawfully ██████████

25   █████████████████ *See Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) ("a claim

26   becomes moot when a plaintiff *actually receives* complete relief on that claim").

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# IV.    ARGUMENT

As a threshold matter, Defendants do not move for summary judgment on *all* of Plaintiffs' claims, despite their passing reference to doing so. Defs' Mot. at 39. Their brief only addresses *some* claims: Claims Four (procedural due process), Six (equal protection), Eight (Administrative Procedure Act ("APA"), 5 U.S.C. § 706), and Nine (APA, *id.* § 553). They do not address Plaintiffs' Claim Eight contrary-to-law arguments except in a footnote (thus conceding it), nor Claims Five (substantive due process), Seven (INA and regulations), or Ten (Uniform Rule of Naturalization). Dkt. 47. Consequently, they are precluded from doing so on reply. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990). Defendants also rely heavily on self-serving, conclusory agency declarations unsupported by (and often contradicted by) documentary evidence. *See, e.g.,* Dkt. 522 (Webb Decl.) (making previously undisclosed claims about processing times without citing any evidence); Dkt. 520 (Renaud Decl.) (citing no evidence); Dkt. 524 (Atkinson Decl.) (same). But a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir.2007). The Court should disregard such evidence, as well as the inadmissible evidence Plaintiffs move to strike below. *Infra* Part IV.E; *see Dolan v. Sentry Credit, Inc.*, No. C17-1632 RAJ, 2018 WL 6604212, at *3 (W.D. Wash. Dec. 17, 2018) (Jones, J.).

## A.    Plaintiffs Are Entitled to Summary Judgment on their APA Claims

Defendants' opposition to Plaintiffs' APA claims hinges on the argument that CARRP does not constitute final agency action. Defs' Mot. 55-58. That is plainly wrong, as this Court has already held. Dkt. 69 at 19. Plaintiffs are entitled to summary judgment on their APA contrary to law, notice and comment, unreasonable delay, and arbitrary and capricious claims.

### 1.    CARRP Constitutes Final Agency Action

#### a.    CARRP is Final Agency Action as a Matter of Law

Agency action is final if it (1) "mark[s] the consummation of the agency's decision-

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 6
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

making process," and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (cleaned up). Courts interpret finality in a "pragmatic and flexible manner." *Gill v. Dep't of Justice*, 913 F.3d 1179, 1184 (9th Cir. 2019). The Court previously found that, assuming Plaintiffs' facts as true:

> The first [*Bennett*] prong is met because CARRP is an active program implemented by the agency and represents the culmination of USCIS's decision making process. The implementation of CARRP affects the thousands of applicants whose qualified applications are allegedly indefinitely delayed or denied without explanation. The second prong is met because this results in distinct legal consequences.

Dkt. 69 at 19. The undisputed facts now in the record fully support this conclusion.

The *Bennett* "consummation" prong requires that agency action "not be of a merely tentative or interlocutory nature." 520 U.S. at 178. Finality may result, for example, from a "guidance document" that "reflect[s] a settled agency position." *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1095 (9th Cir. 2014). Courts also assess "whether the [action] amounts to a definitive statement of the agency's position," and "whether immediate compliance is expected." *Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005).

Defendants' own documents indisputably demonstrate consummation: CARRP is "USCIS policy" established by the Deputy Director's directive that set an "effective date," rescinded prior policy guidance, and "provide[s] direction to identify and process cases containing NS concerns." **Ex. 13** at CAR 1-3. Related operational guidance directs "all Field Offices" to comply. CARRP plainly is neither tentative nor interlocutory; it is a formal program in effect since 2008. *See* Dkt. 74 (Answer) ¶55. And CARRP's policy directives are "definitive statements" with which "immediate compliance is expected." *Indus. Customers*, 408 F.3d at 646.

Courts assessing *Bennett's* second prong "focus on the practical and legal effects of the agency action." *Gill*, 913 F.3d at 1184. Agency action "by which rights *or* obligations have been determined, *or* from which legal consequences will flow" is enough. *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 987 (9th Cir. 2006) (quoting *Bennett*, 520 U.S. at 178). CARRP

is *designed* to have serious legal effects and consequences, and it does. CARRP policy and operational guidance "apply to all applications and petitions that convey an immigrant or non-immigrant status in which an officer identifies a NS concern." **Ex. 29** at CAR 13. The undisputed facts establish that CARRP: (1) requires officers to process and adjudicate class members' applications subject to CARRP procedures, rather than the usual process; (2) subjects class members to that process without their knowledge or consent; (3) restricts USCIS officers' ability to approve applications where there is an unresolved NS concern (Dkt. 74 ¶10); and (4) urges officers to find pretextual reasons to deny eligible applicants with unresolved NS concerns. This results in applications taking far longer to process, and being denied at higher rates, than other applications. Plfs' Mot. at 16-17. The second *Bennett* prong is met even if some applications subjected to CARRP are ultimately approved or adjudicated after lesser delays. *See Gill*, 913 F.3d at 1185 (agency action final even if certain effects were not guaranteed in all instances).

Defendants strain to recast CARRP as "simply an internal USCIS process" applied "before applications reach the same adjudicative juncture" as other applications. Defs' Mot. at 58. But the test is "the actual effects of the action," not "an agency's characterization." *Gill*, 913 F.3d at 1184. Defendants ignore their own admissions, *see* Dkt. 74 (Answer) ¶10, and the plain words of the CARRP policies in the administrative record, calling CARRP a process "for vetting *and adjudicating* cases with national security concerns." **Ex. 101** at CAR 8 (emphasis added). And this adjudication is *not* the same as in other cases: CARRP cases are taken out of the normal adjudicative process and subjected to different rules that USCIS simply made up. Indeed, the administrative record indisputably shows that officers "are not authorized to approve applications with remaining KST NS concerns," or "remaining Non-KST NS concerns without supervisory approval and concurrence from the local management." Defs' Mot. at 58.

All Defendants can muster in light of this overwhelming evidence are two cases regarding *Bennett's* second prong, neither of which undermine this conclusion. *Mamigonian*, 710 F.3d at 941-42, merely held there was no jurisdiction over the petitioner's APA claim because

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

USCIS had not yet made a determination on her application when she filed suit. That does not speak to USCIS's action here in establishing an extra-statutory adjudication process and subjecting class members to it. Similarly, in *Broadgate Inc. v. USCIS*, 730 F. Supp. 2d 240, 246 (D.D.C. 2010), the court held that an "advisory" non-binding memorandum that interpreted a formal regulation was not final agency action. In contrast, CARRP binds officers and field offices, and imposes clear, immediate, and substantial consequences. CARRP "directly affect[s]" class members and satisfies *Bennett's* second prong. *Indus. Customers*, 408 F.3d at 646.

### b.   Defendants' Argument that Plaintiffs' APA Claims Amount to an Unreviewable "Programmatic Challenge" is Meritless

Defendants remarkably argue that CARRP is beyond judicial review entirely. Defs' Mot. at 56-57. They claim *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), "foreclose[s] review of USCIS policies like CARRP." *Id.* at 56. But the Court in *Lujan* acknowledged that agency action can be final and challengeable at a broad, programmatic level: "If there is in fact some specific order or regulation, applying some particular measure across the board to all individual classification terminations and withdrawal revocations, and if that order or regulation is final, . . . it can of course be challenged under the APA by a person adversely affected." *Id.* n.2.[5] That language comfortably encompasses programs such as CARRP, and in the time since *Lujan*, courts have repeatedly found challenges to agency action at the programmatic level reviewable under the APA. *See, e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (challenge to rescission of DACA program); *Gill*, 913 F.3d at 1182 (reviewing national Suspicious Activity Reporting initiative); *Nio v. Dep't of Homeland Sec.*, 385 F. Supp. 3d 44 (D.D.C. 2019) (reviewing military naturalization policy).

*Lujan* did not carve out an expansive exception to the APA for "programmatic challenges," as Defendants suggest. Rather, *Lujan* simply acknowledged that inchoate agency

---

[5] The Supreme Court and Ninth Circuit have interpreted *Lujan* as primarily addressing ripeness. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735 (1998); *Laub v. Dep't of Interior*, 342 F.3d 1080, 1088 (9th Cir. 2003). Viewed through that lens, *Lujan* remains easily distinguishable, as the class members are currently subject to CARRP and its consequences, as described above, and their claims are plainly ripe.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

phenomena that are not the consummation of agency decision making are not subject to challenge under the APA. 497 U.S. at 891. Moreover, CARRP, is a binding policy delineated through directives that specify "concrete action" and impose clear consequences on applicants; it is not "constantly changing." *Id.* at 890-91. As Defendants admit and the administrative record demonstrates, CARRP's foundational 2008 documents still govern the program. *See* Dkt. 74 ¶¶10, 55; **Ex. 13**; **Ex. 29**; **Ex. 101**; **Ex. 102**. And the fact that CARRP is "subject to change as USCIS management sees fit," Defs' Mot. at 56, does not alter the result. *See Army Corps of Engrs. v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1814 (2016) (possibility of revision "is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal").

Finally, Defendants' argument that "judicial review exists for each application that may be subject to CARRP either on the basis of delay or denial," Defs' Mot. at 57, is false, as the law precludes judicial review for some applicants, *see supra* Part III.A, and ignores that the Court certified this case as a class action, finding "Defendants appear to be engaging in a strategy of picking off named Plaintiffs to insulate CARRP from meaningful judicial review." Dkt. 69 at 29.

### 2.     CARRP is Not a Matter Committed to Agency Discretion

Defendants further argue that CARRP is unreviewable under the APA because it "is committed to agency discretion by law." Defs' Mot. at 59. Once again, Defendants are incorrect. The APA embodies a "basic presumption of judicial review," and while the presumption may be rebutted if action is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), that exception should be read "quite narrowly." *Regents*, 140 S. Ct. at 1905.

CARRP does not fall within this narrow exception. Defendants identify no law that commits the formulation of eligibility criteria to USCIS's discretion. To the contrary, as Plaintiffs show in detail, the INA sets eligibility criteria and procedures for adjudicating applications. *See infra* Part IV.A(3). In an analogous context—U Visa processing—the Ninth Circuit observed that "statutes prescribe eligibility criteria, application procedures, and agency duties, all of which guide the Secretary's determination whether to grant or deny"

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

applications, and it held the exception did not apply because those "determinations are thus not 'wholly discretionary.'" *Perez Perez v. Wolf*, 943 F.3d 853, 867 (9th Cir. 2019). *See also Samma v. Dep't of Def.*, 486 F. Supp. 3d 240, 261 (D.D.C. 2020) (DOD policy for military naturalization not committed to agency discretion).

Defendants' reliance on *Heckler v. Chaney* is unavailing. In that case, the Supreme Court emphasized that the discretion exception is "very narrow" and arises only in "rare instances" when "there is no law to apply." 470 U.S. 821, 830 (1985) (quoting *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 410 (1971). And *Heckler* was about exercising discretion in *not taking action*. *Id.* That is not the case here. Rather than a decision *not* to exercise authority, CARRP is a policy delineating *how* USCIS exercises authority with respect to tens of thousands of applicants. And even if USCIS has some discretion in certain types of adjustment applications (unlike naturalization applications), that discretion is strongly circumscribed by applicable law. *See* Plfs' Mot. at 28; *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019) (revision of census questionnaire not committed to agency discretion where Census Act conferred "broad" but not "unbounded" authority). Indeed, the Supreme Court rejected the argument Defendants advance here when it invalidated DHS's rescission of the DACA program, even though that program more directly raised the selective enforcement considerations at play in *Heckler*. *See Regents*, 140 S. Ct. at 1906-07.

### 3.  CARRP Violates the INA and Agency Regulations and is Therefore Contrary to Law

CARRP inserts an agency-invented standard into the adjudication of immigration benefits and governs whether, when, and how applications can be approved, all without disclosing any information to the applicant. It imposes extra-statutory criteria not just for vetting but, critically, as barriers to the final adjudication and approval of benefits. CARRP is thus contrary to law under the APA because it violates both the INA and agency regulations. *See* Plfs' Mot. at 26-33.

Defendants do not substantively respond to Plaintiffs' motion on this claim, only mentioning it in a three-sentence footnote in which they assert without discussion that Plaintiffs'

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    *ultra vires* claim is refuted by Defendants' "broad authority to inquire and to develop

2    procedures." Defs' Mot. at 63 n.11. "A footnote is the wrong place for substantive arguments on

3    the merits of a motion." *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F.

4    Supp. 2d 929, 935 n.1 (N.D. Cal. 2008). Defendants thus concede this claim as a matter of law.

5    *See Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 984 (N.D. Cal. 2014). In any event, 8 U.S.C. §

6    1103(a)(1) "charge[s]" USCIS with administration and enforcement of immigration laws but

7    does not permit the agency to *exceed* that authority, as it does in CARRP, by making its own set

8    of rules that override the legal standards governing naturalization and adjustment of status.[6]

9    Plaintiffs are entitled to summary judgment on their contrary-to-law claim.

10                    **a.        Plaintiffs Have Shown That CARRP Violates the INA**

11                    Beyond Defendants' failure to contest this claim, the following undisputed material facts,

12    taken on their own and together, provide an ample foundation for summary judgment: (1)

13    CARRP impeded for years the favorable adjudication of Plaintiffs' applications despite their

14    proven eligibility; (2) CARRP's rules are legislative, as USCIS sought but failed to legislate the

15    same rules; (3) CARRP bars adjudicators from approving eligible applications with unresolved

16    NS concerns; as a result, (4) USCIS denies and delays applicants with unresolved NS concerns at

17    exceptionally high rates; even though, (5) NS concerns are not synonymous with grounds of

18    ineligibility. These undisputed facts prove that CARRP imposes extra-statutory criteria to the

19    approval of class members' applications in violation of the INA.

20                    <u>First</u>, the facts related to the adjudication of Plaintiffs' applications demonstrate that

21    despite the agency's own findings that Plaintiffs were eligible for the requested benefits, █████

22    ████████████████████████████████████████ years of delay, and, in Plaintiff

23    Ostadhassan's case, denial.

24                    <u>Second</u>, there is no dispute that Congress rejected USCIS's proposed legislation to enact

25    ─────────────────

26    [6] Defendants' footnote also claims that Plaintiffs' regulatory claim is wrong because 8 C.F.R. § 103.3(a)(1)(i) "does not abrogate the administrative law principle that an agency need not state all its reasons for a decision so long as the stated reasons are lawful." But Plaintiffs did not move for summary judgment on that regulation—they did not even mention it. Plfs' Mot. 32-33 (arguing CARRP violates 8 C.F.R. § 103.2(b)(16)).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    CARRP-like rules *eleven times*. Plfs' Mot. at 2-3**; Ex. 103** (relevant sections of the proposed

2    legislation). Defendants do not dispute the accounts of DOJ and DHS Inspectors General that

3    USCIS sought to legislate CARRP because it did not have authority to withhold approvals and

4    deny applicants based on security check concerns that were "unresolved" to DHS's satisfaction,

5    because the law *required* them to approve eligible applicants. Plfs' Mot. at 3; **Ex. 5** at 41281

6    (DHS report); **Ex. 4** at 11 & n.14 (DOJ report). Defendants do not dispute that CARRP enacts

7    the same rules and achieves the same outcomes USCIS sought in the failed amendments, and

8    thus displaces the very statutory rules it once knew it needed to amend.

9         <u>Third</u>, CARRP indisputably bars adjudicators from approving *eligible* applicants with an

10   unresolved national security concern, unless they have permission from the highest levels of

11   USCIS. Defs' Mot. at 14 ("Where the NS concern is unresolved, but the applicant is eligible, the

12   ISO and his/her supervisor will recommend the application for approval and the benefit will

13   issue *if the Field Office Director or Senior Leadership Review Board concur*.") (emphasis

14   added); Plfs' Mot. at 7.[7] This plainly violates USCIS's mandatory duty to adjudicate and approve

15   eligible applicants. Plfs' Mot. at 28, 33. Defendants offer no rejoinder.

16        Moreover, Defendants do not dispute that the process to obtain senior-level consent is

17   onerous—so onerous, it has rarely been invoked ███████████. Plfs' Mot. at 7. Nor do

18   they dispute that the default is that USCIS ████████████, even though that is

19   not grounds for ineligibility. *Id*. at 7, 9-10, 31.

20        Given its bars to approval, CARRP teaches officers to find ways to deny *eligible*

21   applicants due to ███████████. Defendants admit they instruct officers to find

22   pretextual bases to deny applicants with ███████████, Defs' Mot. at 14, and they do

23   not refute the clear directives in CARRP trainings to deny eligible applicants wherever possible.

24   Plfs' Mot. at 6, 15; *see, e.g.*, **Ex. 105** at CAR 1275 (where applicant is eligible the "purpose" is

25

26

---

[7] USCIS does not require this senior-level concurrence to approve any immigration benefits in any other context. *See* **Ex. 104** (USCIS Dep. 132:22-133:12).

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 13
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    to "resolve the concern, or deny the case"); **Ex. 16** at DEF-00116759.0146 (same).[8] Defendants

2    rely on the self-serving declaration of one USCIS official who claims that the instruction is to

3    only deny ineligible applicants, but the document he cites actually underscores CARRP's default

4    focus on delay and denial of *eligible* applicants. Defs' Mot. at 20. The document cited—which is

5    from an inadmissible 2020 training module, *see infra* Part IV.E—states that, if an applicant is

6    eligible, but the NS concern is unresolved, either: (1) get a senior leader to sign off on approval,

7    or (2) go back and do more vetting "to look for potential ineligibility." Defs' Ex. 14 at DEF-

8    00432008. The admissible version of the same training slide more plainly states option (2) as

9    "we have to find a way to not have to approve." Hyatt Decl. ¶5, Ex. B at 9 (comparing slides),

10   filed concurrently; **Ex. 19** at DEF-0090968.0014 (explaining that the purpose of 'going back' to

11   do more vetting on an eligible application is towards "the specific end of not approving an NS

12   concern"). The record is clear that CARRP at its core is about officers "not approving" eligible

13   applicants if they can possibly help it, and that is contrary to law.

14        Defendants also make no effort to contest that CARRP entails a search for

15   inconsistencies and mistakes, however trivial, to find bases to deny. Plfs' Mot. at 5-6.[9] They

16   resort to speculating that officers do not actually follow this aspect of the CARRP trainings.[10]

17   Defs' Mot. at 14-15. But agencies are presumed to follow their own policies. *See, e.g., Church of*

18

19   [8] *See, e.g.,* **Ex. 105** at 1291 ("we know that we would like to not approve them because they are an
     unresolved NS concern"); **Ex. 16** at DEF-00116759.0162 (same); **Ex. 105** at CAR 1273 ("The challenge comes

20   when the individual seems eligible, but. . . we're probably not going to be able to resolve the concern").
     [9] Underlying CARRP's training is USCIS's "common belief" that "[i]f you look hard enough, you can find

21   evidence of fraud and/or ineligibility in almost any case." **Ex. 21** at DEF-00068350.0011. That is because, as one
     USCIS adjudicator put it, "[i]t is common for an applicant to make 'a lot' of mistakes when filling out a

22   [naturalization application]," such that ten mistakes (incl. on travel, addresses, work history, etc) is "about average."
     *Maina v. Lynch*, 5-cv-00113, 2016 WL 3476365, *2 (S.D. Ind. Jun. 27, 2016). A hallmark of CARRP denials is

23   seizing on these to-be-expected mistakes and using them as bases to deny. For example, USCIS used the alleged
     failure of ████████████████████ to file a change of address form as the stated reason to deny them permanent

24   residency in the exercise of discretion, ignoring, unlawfully, all the positive factors meriting approval. **Ex. 89**
     (Ragland Rep.) ¶¶92-96.

25   [10] Defendants cite two depositions as support, which themselves refute the point. Defs' Mot. at 15. The two
     asylum officers deposed just explained that some of the trivial mistakes and inconsistencies that CARRP training

26   urged officers to use for denial were not applicable in *asylum* cases and so they never used them. *See* Defs' Ex. 16
     (Averill Dep. 267:11-22) ("minor misstatements, omissions, and mistakes" on an application were not statutory
     "grounds for a negative credibility determination" in asylum referrals); Defs' Ex. 17 (Costello Dep. 246:17-247:2).

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 14
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   *Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990).

2          <u>Fourth</u>, the fact that applicants with unresolved NS concerns are denied and delayed at

3   exponentially higher rates than other applicants is irrefutable proof of CARRP's extra-statutory

4   rules. There is no dispute that only 7.5% of applicants not subject to CARRP are denied, whereas

5   ███████████████████████████████████████████ are denied. Plfs' Mot. at 17. Delay for

6   CARRP applications is also far longer than "routine" applicants, many dragging on for years

7   because of CARRP's barriers to approval. *Id.* For example, in a seven-year period, Defendants

8   adjudicated only ████████████████████████████████████████████████████

9   ████████████████████████████████████████████. **Ex. 32** (Mar. 2021 Kruskol

10  Rep.) Exs. BM, BN; *see* Plfs' Mot. at 17. Rather than grapple with these important facts,

11  Defendants repeatedly cite approval rates for *all* applicants processed through CARRP, including

12  those whose concerns were "resolved." Defs' Mot. at 1, 23-25. But applications with "resolved"

13  concerns are released to "routine" processing where they are not subject to CARRP's extra-

14  statutory bars, so those numbers are inapposite. Plfs' Mot. at 6. Still, even including "resolved"

15  concern cases, Defendants' statistics further prove that CARRP cases are denied and delayed at

16  significantly higher rates than non-CARRP cases. *See* Defs' Mot. at 24 (comparing ██████ non-

17  CARRP adjustment cases filed in FY2013 that were approved to only ██████ of such CARRP

18  cases that were approved).

19         <u>Fifth</u>, these rules and outcomes could only be lawful if an unresolved NS concern was the

20  same as ineligibility, but it is not. As Defendants admit, NS concerns in CARRP are not

21  coextensive with eligibility criteria for naturalization and adjustment of status. Defs' Mot. at 17-

22  18 (NS concerns "not dispositive of eligibility"); Plfs' Mot. at 8, 29 (citing Defs' admissions).

23  Defendants claim instead that the significance of being flagged as an NS concern is only that it

24  requires a "certain process, not an adjudicative result." Defs' Mot. at 17. But as Plaintiffs have

25  demonstrated, being labeled an unresolved NS concern in CARRP is highly determinative of the

26  adjudicative result.

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 15
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Rather than dispute the material facts, Defendants take aim at tangential issues that

2    contradict their own agency admissions. For example, Defendants claim they do not treat

3    ████████████████████████████████████████████, but USCIS confirmed the

4    opposite, as does the very document Defendants cite and misquote. **Ex. 8** (USCIS Dep.) 172:21-

5    173:2 ("████████████████████████████████████████████████████████

6    ████████████████"); Defs' Mot. at 9 (misquoting Defs' Ex. 5 at DEF-431327, which confirms

7    ████████████████████████████████████ *see also* **Ex. 39** at DEF-00429588

8    ("███████████████████████████████████████"), 609

9    ██████████████████████████████████████████████████████████

10   ███████████████████████████"). The undisputed fact that USCIS treats applicants

11   with ████████████████████████████████████████████████████████

12   ██████ is further evidence that CARRP violates the INA.

13           Defendants also claim that, with respect to non-KSTs, only applicants with an

14   "articulable link"—itself an invented CARRP term—are subject to CARRP. Defs' Mot. at 6-7.

15   This is wrong. CARRP policy permits referrals to CARRP based on one or more "indicators" of

16   a concern, even where no "articulable link" is present. Plfs' Mot. at 9; *see* **Ex. 8** (USCIS Dep)

17   231:8-232:18. This fact about CARRP is so basic the officer certification test asks: "A case with

18   indicators of a connection to an area of national security concern cannot be handled in CARRP

19   until an articulable link is established?" Answer: "False." **Ex. 106** at DEF-0093119, DEF-

20   0093116. Defendants' track this distinction by labeling those with "articulable links" as

21   ████████ concerns and those with just "indicators" as ████████████ Plfs' Mot. at 8-9. It is

22   undisputed that ████ of non-KST cases in CARRP are ████████████ Plfs' Mot. at 9; *see also*

23   Johansen-Mendez Rep. ¶¶38-39 (concerns were rarely "confirmed" with an "articulable link").[11]

---

24           [11] Defendants further fault Plaintiffs for not acknowledging that officers are instructed to look for
25   "indicators" within the "totality of the circumstances," but never explain why that matters since it is not directed at
     eligibility for the immigration benefit. There is no dispute that the indicators reflect a litany of immutable traits that
26   are not reflective of statutory ineligibility. *See* **Ex. 35** at CAR 86; Plfs' Mot. at 8-15. Defendants attempt to
     rationalize labeling people "concerns" based on their lawful relationships and associations because they could or
     would have reasonably known about the suspected person's NS activities. Defs' Mot. at 10. But a person's

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    In sum, by applying a standard to the adjudication of immigration benefits not

2    authorized—indeed, rejected—by Congress, and by using a standard that significantly impedes

3    the approval of eligible applicants, CARRP is "not in accordance with law" and is "in excess of

4    statutory authority" under the APA. 5 U.S.C. § 706(2)(A), (C).

5            **b.    CARRP Violates 8 C.F.R. § 103.2(b)(16) and the APA**

6            Defendants also fail to directly address Plaintiffs' regulatory claim while simultaneously

7    admitting the facts proving it. There is no dispute that USCIS considers information it does not

8    disclose to deny CARRP cases, and it does not permit applicants to inspect and rebut any of that

9    information. This practice violates 8 C.F.R. § 103.2(b)(16).

10           The regulations are clear. They provide that "[i]f the decision will be adverse to the

11   applicant or petitioner and is based on derogatory information *considered* by [USCIS] and of

12   which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an

13   opportunity to rebut the information." 8 C.F.R § 103.2(b)(16)(i) (emphasis added). Accordingly,

14   USCIS must disclose any "derogatory information" USCIS has "considered" in denying an

15   application. Additionally, USCIS's "determination of statutory eligibility" must "be based only

16   on information contained in the record of proceeding which is *disclosed* to the applicant or

17   petitioner." 8 C.F.R § 103.2(b)(16)(ii) (emphasis added); *see also Naiker v. USCIS*, 352 F. Supp.

18   3d 1067, 1078 (W.D. Wash. 2018) (Jones, J.). This requirement is relaxed only where the

19   information is classified, in which case USCIS must "give[] [the applicant] notice of the general

20   nature of the information and an opportunity to offer opposing evidence." 8 C.F.R §

21   103.2(b)(16)(iv). Only where a decision turns on the exercise of discretion, and where the

22   information is classified, may the agency withhold information from the record and from the

23   applicant as otherwise required by the regulation. 8 C.F.R. § 103.2(b)(16)(iii).

24           Defendants admit they deny applicants for undisclosed reasons: "[i]n many CARRP cases

25

26   knowledge of someone else's bad acts is not a lawful basis to deny immigration benefits, nor does it make them
     guilty of any wrongdoing.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

where vetting is complete and the NS concern is still unresolved, USCIS is aware of information that makes an applicant ineligible for a benefit, but cannot disclose that information to the applicant because it might compromise United States government interests. Thus, USCIS trains its officers to explore alternative options to reach the same result without disclosing such information." Defs' Mot. at 14; *see also id.* at 19. In other words, in direct violation of § 103.2(b)(16), USCIS does not tell applicants about the unresolved NS concern creating the true reason for denial. *Id.* at 14, 19; *see also* Plfs' Mot. at 5-7 (citing evidence). The regulation already addresses Defendants' purported concerns because it protects *classified* information; it does not, however, give USCIS permission to exempt itself just because it decides the information is sensitive or "might compromise" government interests. Defs' Mot. at 14.

The regulation unambiguously applies where there is an adverse decision "based on derogatory information *considered* by the Service"; there is no exception for information USCIS unilaterally claims it can withhold. Yet Defendants try to nullify the rule by claiming they can fail to disclose the real reason for denial. They confusingly claim they need not provide notice if the information is "not legally relevant to the basis for [the] decision," even though it "happens to inform USCIS's decision," Defs' Mot. at 36, while elsewhere suggesting that such information is legally relevant, indeed that it "makes an applicant ineligible for a benefit." Defs' Mot. at 14; *see also id.* at 19. Either way, derogatory information that "inform[s] USCIS' decision" is relevant when the agency acknowledges *that information* causes it to deny applications that would otherwise be approved. Defs' Mot. at 36-37. What Defendants dismiss as "tangential considerations" are centrally relevant under the rule because they form the true basis for why the agency withholds and denies applications. *Id.* at 37, 14.

Defendants further claim that principles of administrative law somehow relieve them of their regulatory obligations but cite no authority for that proposition. Defs' Mot. at 37; *see also id.* at 63 n.11 (citing a different regulation). Instead, they claim *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019) authorizes their pretextual denial practices. But the issue discussed

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 18
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

there is whether an agency's *administrative record* must contain the actual reasons for its adoption of a policy to enable judicial review under an APA arbitrary and capricious claim. *Id.* at 2573-76. The case says nothing about whether, under an APA contrary to law claim, an agency may deny an individual a benefit without providing the true basis for the decision, and when a governing regulation requires it to. Moreover, *Department of Commerce* stands for exactly the opposite of what Defendants claim. Defs' Mot. at 37, 50-51. While the Supreme Court noted that agencies need not state all the reasons for a decision, it held they cannot hide the *true* reasons for their decisions by offering pretextual explanations in their place.[12] 139 S. Ct. at 2575-76 (describing "a significant mismatch between the [agency's] decision and the rationale [it] provided" and setting the policy aside). As the Court explained, "[t]he reasoned explanation requirement of administrative law . . . is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose of the enterprise." *Id.* at 2575-76.[13]

Here, the record is clear: USCIS teaches officers to do exactly what the Supreme Court has prohibited. It instructs officers to "build a separate evidentiary basis" for denial that does not reveal—indeed, is entirely dissimilar from—the true reason for denial: the unresolved NS concern. **Ex. 16** at DEF-00116759.0161; *see id.* at .0162 (teaching officers "a parallel construction to build a new path from the starting point (our person) to the ending point (we need to deny them)."); Defs' Mot. at 14; Plfs' Mot. at 5-7. As a result, the stated reasons are necessarily incongruent with the real reasons for the denial, and thus are unlawful. *Dep't of Commerce*, 139 S. Ct. at 2575 (describing pretextual reasons as "incongruent," "contrived,"

---

[12] Defendants take issue with the word "pretext," Defs' Mot. at 49, but Plaintiffs use the word as it is commonly understood: "a pretended reason for doing something that is used to hide the real reason." *Pretextual*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/pretextual.

[13] Defendants also rely on a decision from over a hundred years ago, *Guiney v. Bonham*, 261 F. 582 (9th Cir. 1919), but not only did that decision predate the regulation at issue here, the petitioner in that case *was* provided notice and an opportunity to respond to the charges levied against him, even if he did not see all the evidence. There was no allegation of a pretextual denial.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

"mismatched," and "disconnected" from the "genuine" reasons for a decision). For example, in

*Hamdi v. USCIS*, No. EDCV 10-00894, 2012 WL13135302 (C.D. Cal. Aug. 29, 2012), USCIS

subjected the applicant to CARRP because of a donation to a charity that later was accused of

financing terrorism. His donation was neither unlawful nor a basis to deny him naturalization,

but, as the district court found, "USCIS could not dispel the shadow of guilt those donations cast

on Hamdi" and "looked for other reasons to deny him United States citizenship." *Id.* at *13. The

adjudicator testified that, although the NS concern did not make Hamdi ineligible, under

CARRP, until the concern "is resolved, he won't get approved." **Ex. 107** (Osuna Dep.) at 171:4-

172:11. At each stage, from administrative proceedings to trial, the agency layered on new

pretextual reasons—eight in total—for denial. *Hamdi*, 2012 WL 13135302 at *5-12. The Court

held that none of these pretextual bases had a "reasonable basis in fact and law" and admonished

the agency for using "gossamer evidence" to render Hamdi's burden to demonstrate his

eligibility for citizenship "impossible to carry." *Id.* at *13. This is exactly what USCIS did to

███████████████ (and many other class members subjected to pretextual denials).[14] Each

time he rebutted the agency's pretextual reasons, it offered new spurious ones that were both

factually wrong and failed to satisfy the legal standard for denial. Plfs' Mot. at 20-21; **Ex. 89**

(Ragland Rep.) ¶¶141, 143, 49; **Ex. 88** (Bajoghli Rep.) ¶20. And because USCIS denied his

application in the exercise of discretion, he could not appeal or seek judicial review. *See supra*

Part III.A.

  In sum, Defendants concede—indeed, they insist—that they can completely hide the

basis for their actions, causing applicants years of unnecessary delay and unlawful denials

without an opportunity to address USCIS's "concerns" and move forward. These undisputed

facts make clear that CARRP violates 8 C.F.R. §103.2(b)(16).

---

[14] Plaintiffs' experts offer many other examples of CARRP pretextual denials that lack "reasonable basis in
law and fact." *Hamdi*, 2012 WL 13135302 at *13. *See, e.g.,* **Ex. 89** (Ragland Rep.) ¶¶74-100 (adjustment denials for
████████████████████████████ based on failure to file a change of address form); **Ex. 76** (Gairson Rep.) ¶¶204-
216, 241-253; **Ex. 108** (Johansen-Mendez Rep.) ¶¶66-82; **Ex. 9** (Arastu Rep.) ¶¶93-100; *see also id.* ¶¶68-91.

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 20
152782534.1

4.     **CARRP Violates the APA Because it Unlawfully Withholds and Unreasonably Delays Adjudication of Class Members' Applications**

Defendants have a mandatory and non-discretionary duty to act on naturalization and adjustment-of-status applications without unreasonable delay—an obligation that derives from both immigration law and the APA's mandate that agencies conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b); *see* Plfs' Mot. at 33. CARRP violates this clear mandate. One inevitable—and indeed, intended—result of CARRP's extra-statutory obstacles to the approval of eligible applicants is delay. When an application cannot be approved due to CARRP, and it cannot be denied because the applicant is eligible, USCIS simply sits on it, as it did with all five Plaintiffs. *See* Plfs' Mot. at 16-26; *supra* Part II. It is undisputed that adjudications of CARRP cases take 250% longer than non-CARRP cases, with hundreds of current class members stretching over five years of delay.[15] Plfs' Mot. at 16, 33-34. And there is no dispute that USCIS swiftly adjudicated 6,000 undeniably delayed CARRP cases in response to Plaintiffs' lawsuit.[16] Plfs' Mot. at 34; **Ex. 2** 121:20-126:6. These systemic delays are unreasonable as a matter of law. *See* Plfs' Mot. at 33-35.

Defendants' arguments to the contrary are unavailing. They first argue that the APA "provides no mechanism" for relief from these delays. Defs' Mot. at 64 (citing 5 U.S.C. §

---

[15] Defendants attempt to minimize the magnitude of the delays resulting from CARRP, but even their cherrypicked statistics show that applicants subjected to CARRP suffer far longer delays than applicants not subjected to CARRP. *See* Defs' Mot. at 24. Among adjustment applications filed in FY 2013, applications subject to CARRP were about *three times* more likely to remain unadjudicated by the end of the following fiscal year (10.9 percent versus 36.3 percent). *See id.* For naturalization applications filed in FY 2013, applications subject to CARRP were *17 times* more likely to remain unadjudicated by the end of the following fiscal year (1.6 percent versus 27.3 percent). *See id.* For other years, the discrepancy is even larger. For adjustment applications filed in FY 2016, applications subject to CARRP were *five times* more likely to remain adjudicated by the end of the following fiscal year (15.1 percent versus 77.9 percent). Def. Ex. 11 at 57. For naturalization applications filed in FY 2016, applications subject to CARRP were *14 times* more likely to remain adjudicated by the end of the following fiscal year. (5.3 percent versus 76.3 percent). *Id.* at 58.

[16] Defendants' witness Daniel Renaud quibbles only that he does not know the age of those 6,000 cases; he could have accessed that information, but he did not. Dkt. 520 (Renaud Decl.) ¶¶20-21. Plaintiffs' expert, a former USCIS adjudicator, worked on this national review to "clear out the backlog in CARRP cases" and was instructed to go through "stacks of neglected CARRP files" that had been "untouched and unworked for years." **Ex. 108** (Johansen-Mendez Rep.) ¶20. Moreover, statistically, many of those applications had to be old because, between 2017 and 2019, far more CARRP applications were adjudicated than were received. **Ex. 57** (July 2020 Kruskol Rep.) at Exs. AF, AG, AJ, AK.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

706(1); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). Second, they argue that "class-wide resolution of this claim is not possible" because "whether USCIS has acted unreasonably in any individual case requires a case-by-case determination taking into account the reasons for the 'delay.'" Defs' Mot. at 66. Both arguments miss the point. Plaintiffs do not challenge the government's failure to act in any individual case; rather, Plaintiffs challenge the systemic delays resulting from the CARRP policy as whole. CARRP *policy* is reviewable as a final agency action that the Court can and should "hold unlawful and set aside," while compelling the agency to act on applications it has "unlawfully withheld and unreasonably delayed" due to CARRP. *See* 5 U.S.C. § 706(2); 5 U.S.C. § 706(1); *see also Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1196 (S.D. Cal. 2019).

This Court already found this claim amenable to class treatment, Dkt. 69 at 25, and for good reason.[17] Nothing has changed since that ruling, nor have Defendants moved to decertify the classes. The certified classes present a common question under Rule 23(a)—whether the delays inherent in CARRP processing are unreasonable—that "can be determined in one stroke." *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014). The classes also seek uniform injunctive and declaratory relief from practices that affect all class members under Rule 23(b)(2). Rather than focus on the circumstances of each class member, Rule 23(b)(2) "focuses on the *defendant* and questions whether the *defendant* has a policy that affects everyone in the proposed class in a similar fashion." 2 William B. Rubenstein, Newberg on Class Actions § 4:28 (5th ed. 2019) (emphasis added). As this Court has done, "courts routinely certify classes in unreasonable-delay cases where a common issue exists regarding the legality of the government's policies and practices that serve as the reason for delay." *Nio v. United States Dep't of Homeland Sec.*, 323 F.R.D. 28, 30, 32 n.2 (D.D.C. 2017) (citing cases) (challenging policy resulting in naturalization delays); *see also, e.g.*, *Roshandel v. Chertoff*, 554 F. Supp. 2d 1194 (W.D. Wash. 2008) (same).

---

[17] Rejecting the government's argument that Plaintiffs' claims require a "fact-intensive, individualized inquiry into the causes of the delay in each case," the Court held that "Plaintiffs' claim is that CARRP is an unlawful program," and "[a] byproduct of CARRP's alleged unlawful program is unreasonable delays." Dkt. 69 at 25.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### 5.  CARRP Violates the APA Because USCIS Failed to Engage in Required Notice and Comment Rulemaking

There is no dispute that USCIS failed to engage in notice and comment rulemaking. **Ex. 7** (RFAs) No. 3. The only question is whether CARRP is a legislative rule—one that imposes "extrastatutory obligations" or "effect[s] a change in existing law"—or is an interpretive rule that "merely explains, but does not add to" existing law. *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003). CARRP is plainly a legislative rule, as it imposes extra-statutory eligibility criteria, encouraging officers to deny or withhold approvals of eligible applicants. *Supra* Part IV.A(3)(a). It is hardly a mere tool for agency "efficiency" and vetting standardization. Defs' Mot. at 64. "[T]he court need not accept the agency characterization at face value," *Hemp Indus.*, 333 F.3d at 1087, and Defendants' characterization is far off base. If CARRP were just an efficiency tool, it would not bar approval of eligible applicants absent senior-level approval or instruct officers to find ways to deny applicants with unresolved concerns. Nor would the agency have sought to legislate CARRP eleven times. *See supra* IV.A(3)(a). Defendants also claim that rules are only substantive if imposed by "outside parties." Defs' Mot. at 64. That is wrong. The two cases they cite are not APA challenges and are irrelevant. *Id.* The standard is plain: rules are procedural only if "they do not 'change the *substantive standards* by which the [agency] evaluates' applications." *Nat'l Sec. Counselors v. C.I.A.*, 931 F. Supp. 2d 77, 107 (D.D.C. 2013) (quoting *JEM Broad. Co. v. F.C.C.*, 22 F.3d 320, 327 (D.C. Cir. 1994). Here, Defendants changed the "substantive standard" and violated the APA when they adopted CARRP in secret and without public engagement.

### 6.  CARRP is Arbitrary and Capricious in Violation of the APA

As a threshold matter, Defendants claim the standard of review on summary judgment of an APA arbitrary and capricious claim is "somewhat modified because the agency, not the Court, is the finder of fact and the evidence considered by the Court is confined to what is contained in the administrative record," limiting review here to only "whether the agency could reasonably have found the facts as it did." Defs' Mot. at 38 (citing *Occidental Eng'g Co. v. INS*, 753 F.2d

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

766, 770 (9th Cir. 1985)). That standard is not applicable here. *Occidental* involved district-court review of an administrative proceeding in which the agency found facts and rendered a decision regarding an individual petitioner. 753 F.2d at 767-68. Here, Plaintiffs challenge the implementation of CARRP, for which USCIS conducted no proceedings and found no facts.

The APA supplies the standard of review: Agency action must be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Nat'l Wildlife Fed'n v. Army Corps of Eng'rs*, 384 F.3d 1163, 1170 (9th Cir. 2004) (quoting APA).

> ### a.        The Undisputed Facts Demonstrate that CARRP is Arbitrary and Capricious

Defendants emphasize that Plaintiffs' arbitrary-and-capricious claim must be adjudicated solely based on the administrative record, Defs' Mot. at 60-61, but that record is of no help to Defendants. It lacks any (1) reasoned explanation for CARRP's adoption and implementation; (2) evaluation of alternatives; (3) analysis of CARRP's harms against its purported benefits; and (4) data, research, evidence, or agency findings. USCIS considered nothing—not benefits or downsides of the policy, nor evidence supporting or undermining it. The administrative record contains only CARRP policies and training documents and presents CARRP as a *fait accompli*, devoid of the "reasoned analysis" or "reasoned decisionmaking" that is "the touchstone of arbitrary and capricious review." *Regents*, 140 S. Ct. at 1913; *see E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 980-81 (9th Cir. 2020) (amended op.). Any of these omissions alone would be sufficient to render CARRP arbitrary and capricious. *Regents*, 140 S. Ct. at 1913 (DHS's failure to consider available policy alternatives "alone renders [its] decision arbitrary and capricious"). Taken together, there can be no doubt.

Defendants point to isolated phrases scattered in the administrative record, from which they infer CARRP's "purpose" and "rationale." Defs' Mot. at 61-62. According to Defendants, that purpose is "to efficiently process cases with NS issues and mitigate potential risks to national security." *Id.* at 62 (citing CAR 8). But even if these fragments could be considered a coherent statement of CARRP's purpose, such conclusory statements do not supply the reasoned

analysis the APA requires. *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126-27 (2016) (noting the agency "offered barely any explanation" for rule change and holding that "conclusory statements do not suffice to explain its decision"). Isolated references to efficiency, consistency, or national security do not explain how CARRP would facilitate such concepts, assess whether it would improve on the status quo ante, analyze potential alternatives, parse relevant data, or otherwise demonstrate that CARRP was "founded on a reasoned evaluation of the relevant factors." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 995 (9th Cir. 2014). Additionally, in implementing CARRP—a sweeping policy change, *see* **Ex. 13** at CAR00002-3 (rescinding prior policies and procedures)—USCIS impermissibly departed *sub silentio* from prior policy without "show[ing] that there are good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Defendants' assertion that CARRP has a "rational basis" is both ironic and inapposite. Defs' Mot. at 61. That assertion, which immediately follows Defendants' insistence that APA review be limited to the administrative record, relies heavily on extra-record evidence. *See id.* at 54. Plaintiffs recognize that courts may consider extra-record evidence in limited circumstances, *see* Plfs' Mot. at 38 n.20, but Defendants' proffered evidence of CARRP's "rational basis" does not fall within any of those exceptions, and Defendants make no attempt to argue that it does. USCIS's claim here is simply the kind of "*post hoc* rationalization[] for agency action" the Supreme Court has long held impermissible. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).

**b.     USCIS's Failure to Consider Important Factors Underscores that CARRP is Arbitrary and Capricious**

Because the administrative record self-evidently lacks what the APA requires, the Court need look no further to conclude that CARRP is arbitrary and capricious. The Ninth Circuit, however, has identified narrow but "widely accepted" exceptions to the general rule that APA review is limited to the administrative record, including to "determine whether the agency has considered all relevant factors and has explained its decision." *Lands Council v. Powell*, 395

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

F.3d 1019, 1030 (9th Cir. 2005). Plaintiffs have adduced undisputed evidence that further demonstrates that USCIS ignored key factors relevant to CARRP's adoption. Defendants' attempt to dismiss such evidence wholesale is unavailing.

First, USCIS failed to consider the costs and consequences that CARRP would impose on applicants. *See* Plfs' Mot. at 37-39. Defendants argue that such consequences "all tie back to the issue of delay" and that because the administrative record references efficiency, USCIS must have considered unnecessary delay as a factor. Defs' Mot. at 63. That is unwarranted supposition. Agencies cannot ignore the effects a policy will have on those subject to it. *City & Cnty. of San Francisco v. USCIS*, 981 F.3d 742, 759 (9th Cir. 2020). Not only was it foreseeable that CARRP would cause delay, increased likelihood of denial, confusion, and stigmatization, among other harms, but it is also clear that USCIS could have but did not consider those harms against any purported benefits when it adopted CARRP, as the agency did with previous policies.[18] Defendants do not dispute that USCIS considered no information other than the INA and "on-the-job" experience of USCIS staff in adopting CARRP. **Ex. 8** (USCIS Dep.) 34:4-35:16, 42:13-43:3. The isolated reference to efficiency in the administrative record does not address CARRP's harms, explicitly or implicitly. **Ex. 13** at CAR 3.

Second, USCIS failed to consider whether CARRP would yield any meaningful benefit. *See* Plfs' Mot. at 39-40. Defendants do not argue otherwise, nor do they dispute that USCIS had available to it evidence that measures like CARRP did not, and would not, yield national security benefits. *See, e.g.*, **Ex. 71** (Chertoff) at 3 ("If you're going to do something bad, you're still here legally" whether or not you get a green card). Yet the administrative record is silent as to whether or how CARRP would contribute to national security, and it is undisputed that USCIS conducted no studies, drafted no reports, and consulted no one outside USCIS in formulating CARRP. **Ex. 8** (USCIS Dep.) 32:10-35:16, 42:13-43:3; **Ex. 109** (Burbank Rep.) (CARRP does not "advance public safety" and "lacks a valid security-based rationale").

---

[18] *See, e.g.*, **Ex. 71** (Chertoff) at 2 (policy change balanced risk of harm against benefit to applicants).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Third, USCIS failed to consider research or evidence as to how frequently CARRP would

2    cause applicants to be misidentified as NS concerns and denied critical benefits to which they are

3    entitled. *See* Plfs' Mot. at 40-43. Defendants do not address this failure, and the undisputed

4    evidence demonstrates that USCIS could have consulted information on the unreliability of the

5    "indicators" it relies on for CARRP referrals—but did not. *See, e.g.*, **Ex. 8** (USCIS Dep.) 162:20-

6    22 (USCIS has made no effort to research or study the reliability of the Watchlist); **Ex. 92** at 1,

7    19-20 (2006 study detailing pervasive problems with the Watchlist); **Ex. 95** at 10 (2008 DOJ

8    Audit identifying weaknesses and poor quality control in Watchlist procedures); **Ex. 96** at 33-34

9    (2008 DOJ Audit raising reliability concerns with TECS and FBI Name Check databases).

10   Thus, the administrative record on its face and additional undisputed evidence

11   demonstrate that USCIS failed to consider important factors relevant to whether CARRP is fair,

12   necessary, or effective. The implementation of CARRP was therefore arbitrary and capricious.

13   **B.    CARRP Violates the Procedural Due Process Rights of the Naturalization Class**

14   Plaintiffs have raised a quintessential procedural due process claim under *Mathews v.*

15   *Eldridge*, 424 U.S. 319 (1976). "[I]t is an 'immutable' principle of due process 'that where

16   governmental action seriously injures an individual, and the reasonableness of the action depends

17   on fact findings, the evidence used to prove the Government's case must be disclosed to the

18   individual so that he has an opportunity to show that it is untrue.'" *Zerezghi v. USCIS*, 955 F.3d

19   802, 813 (9th Cir. 2020) (citation omitted). *See also Mattson v. Wolf*, 826 F. App'x 603 (9th Cir.

20   2020) (same). As discussed above, Defendants provide class members no notice and opportunity

21   to respond to their allegations of NS concerns. Plfs' Mot. at 44; Defs' Mot. at 70.

22   Defendants contend that no court has "assessed the adequacy of administrative

23   naturalization procedures under *Mathews*." Defs' Mot. at 67. But the Ninth Circuit routinely

24   assesses the adequacy of immigration procedures under *Mathews. See Zerezghi*, 955 F.3d at 810;

25   *Ching v. Mayorkas*, 725 F.3d 1149, 1159 (9th Cir. 2013); *AADC v. Reno*, 70 F.3d 1045, 1061

26   (9th Cir. 1995). CARRP's treatment of naturalization is subject to standard *Mathews* review.

1    **1.      The Naturalization Class Members' Interests are Significant**

2    Defendants agree that class members have an interest in "the lawful adjudication of

3    [their] naturalization applications." Defs' Mot. at 68. They only argue that this interest does not

4    extend to the "timely" adjudication of their applications. *Id.* This Court has already rejected that

5    argument. Dkt. 69 at 17 (recognizing that "[p]ace of the adjudication is a byproduct" of

6    Plaintiffs' "allegation that an extra-statutory policy based on discriminatory and illegal criteria is

7    blocking the fair adjudication of immigration benefits"). Class members "have a right to a

8    *prompt* adjudication of their naturalization application[s]," as unlawful delays and denials

9    prevent them from obtaining significant benefits of citizenship for months or years, including the

10   rights to "vote or serve on juries," "travel abroad without fear of being denied re-entry into the

11   United States," obtain "jobs for which they are qualified," obtain social security benefits, and

12   petition for relatives abroad. *Roshandel*, 554 F. Supp. 2d at 1201; Plfs' Mot. at 44-45.

13   **2.      CARRP Entails a High Risk of Erroneous Deprivation**

14   Defendants do not dispute that CARRP entails a high risk of erroneous deprivation

15   caused by its sweeping use of "indicators" to form a concern, its broad and imprecise "articulable

16   link" standard, its use of the over-inclusive Watchlist for automatic referral to CARRP, and its

17   complete lack of notice or any meaningful opportunity to respond to CARRP designations. Pl.

18   Mot. at 45-47. Instead, Defendants incorrectly argue that CARRP "is only a pre-decisional

19   process" that "do[es] not implicate the Due Process Clause." Defs' Mot. at 69. But even a "pre-

20   decisional process" violates the Due Process Clause where it causes cognizable harm—as

21   CARRP plainly does. *See Greene v. McElroy*, 360 U.S. 474, 496 (1959); *Zerezghi*, 955 F.3d at

22   809. And CARRP, moreover, is not solely an "administrative investigation [that] adjudicates no

23   legal rights." *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984); *see* Defs' Mot. at 69.

24   Instead, it indisputably has a significant substantive effect on the adjudication of class members'

25   applications, leading to harmful delays and unlawful denials.

26   Defendants further suggest that the probative value of additional procedural safeguards is

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 28
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    low because class members "have multiple opportunities to respond to USCIS' stated grounds

2    for denying naturalization." Defs' Mot. at 69. But Defendants miss the point. As they admit,

3    Defs' Mot. at 19, the *actual* reason that Plaintiffs' applications are denied is the underlying

4    unresolved NS concern, which Defendants refuse to disclose to class members and to which they

5    cannot respond. *See supra* Part IV.A(3).

6          Defendants are also wrong that CARRP complies with due process simply because "de

7    novo district court review for denied [naturalization] applications exists under 8 U.S.C. §

8    1421(c)." Defs' Mot. at 69. Defendants cite no case that holds that the availability of post-hoc

9    federal court review satisfies essential due process requirements of *pre-deprivation* notice and

10   opportunity-to-respond. Process is due before the operative decision is made and harms ensue.

### 3.      Defendants' Burden in Adopting Additional Safeguards is Low

12         Finally, Defendants argue that their burden in adopting additional safeguards is high

13   because CARRP "concerns assessing the extent to which NS concerns affect applicants'

14   statutory eligibility for naturalization . . . as well as avoiding interference with other law

15   enforcement investigations." Defs' Mot. at 70. But even taking those arguments at face value, the

16   Ninth Circuit consistently has held such "concerns" do not overcome the due process

17   requirement that the government provide noncitizens with undisclosed derogatory information,

18   even if it is classified or from third agencies or confidential sources. *See, e.g.*, *Kaur v. Holder*,

19   561 F.3d 957, 962 (9th Cir. 2009) (must disclose "alleged terrorist activities," lists of "targeted

20   victims," and "locations and approximate dates for these alleged activities"); *AADC*, 70 F.3d at

21   1069 (Government's interest in "protecting its confidential sources involved in the investigation

22   of terrorist organizations" does not outweigh "lack the procedural safeguards that form the core

23   of constitutional due process").

### 4.      *Brown* Did Not 'Narrowly Circumscribe' Plaintiffs' Due Process Rights

25         Recognizing the weakness of their argument under *Mathews*, Defendants ask this Court

26   to look to *Brown v. Holder*, 763 F.3d 1141 (9th Cir. 2014) for due process guidance, but they

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 29
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

read *Brown* too narrowly. The petitioner in *Brown* had substantively failed to meet the citizenship requirements but claimed governmental misconduct caused the denial. In this context, the court held the petitioner could prove a violation of fundamental due process principles only if the government "arbitrarily and intentionally obstructed his application" or was "motivated by animus or malicious intent." *Id.* at 1150. *Brown* does not hold or remotely suggest that this standard applies to the systemic pre-adjudication procedural due process questions raised here.

Here, unlike in *Brown*, Plaintiffs are not petitioning after denial of relief for which they are not statutorily eligible. They instead challenge Defendants' failure to disclose, and allow response to, the imposition of *additional* requirements and vague "concerns" *beyond that* which the INA mandates while the citizenship determination is pending. *See* Dkt. 69 at 17 (due process claim "centers on [Plaintiffs'] allegation that an extra-statutory policy … is blocking the fair adjudication of immigration benefits of which they are statutorily eligible"). Moreover, unlike *Brown*, Plaintiffs seek not a grant of citizenship but a constitutional process.[19]

Finally, Defendants are wrong that Plaintiffs have failed to show a "systemic" due process violation because "[t]he three individual Plaintiffs who allege claims regarding naturalization … have all been naturalized." Defs' Mot. at 67. This ignores the irreparable harm CARRP causes to the Naturalization Class, not only through denial of applications, but also via unreasonable delays, which unlawfully prevent those eligible from enjoying the many benefits of citizenship. *See* Plfs. Mot. at 16-25. Therefore, even if *Brown*'s general due process standard did apply here, Plaintiffs have shown "that CARRP systemically interferes with naturalization applications intentionally or with deliberate indifference." Defs' Mot. at 67.[20]

---

[19] *Zhu v. DHS* is similarly inapposite both because of the plaintiff's failure to satisfy the statutory requirements for naturalization and his failure to "allege a denial of adequate procedural protections." No. 18-cv-00489, 2019 WL 4261167, at *4 (W.D. Wash. Sept. 9, 2019).

[20] Even if it were required, Plaintiffs have also demonstrated "that CARRP unlawfully discriminates or is motivated by animus" in violation of the Equal Protection Clause. Defs' Mot. at 67-68; *see* Pl Mot. at 48-50.

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 30
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  **C.    CARRP Denies Class Members Equal Protection**

2      **1.    *Arlington Heights* Supplies the Relevant Standard**

3  Where, as here, a plaintiff challenges a facially neutral law or policy on equal-protection

4  grounds, the court must decide whether the evidence, including circumstantial evidence, shows

5  that intent to discriminate was "a motivating factor" behind the law or policy. *Vill. of Arlington*

6  *Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977); *see also, e.g.*, *Tiwari v. Mattis*,

7  363 F. Supp. 3d 1154, 1167 (W.D. Wash. 2019). If the court concludes, based on this multifactor

8  inquiry, that intent to discriminate based on a suspect characteristic motivated the challenged law

9  or policy, strict scrutiny applies. *Id.*

10  Defendants appear to mostly agree that *Arlington Heights* governs the equal protection

11  claim here. *See* Defs' Mot. at 39–51, 53–55. To the extent they suggest that CARRP is subject to

12  the different standard articulated in *Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018), they are

13  wrong. Defs' Mot. at 52–53. The Ninth Circuit has rejected that argument in cases involving

14  immigration benefits for U.S. residents. *Ramos v. Wolf*, 975 F.3d 872, 896 (9th Cir. 2020).

15  Defendants' claim that "*Ramos* does not apply" because the present case involves "national

16  security concerns" misunderstands the holding. Defs' Mot. at 53 n.7. As in *Ramos*, this case

17  involves the administration of a statute to "foreign nationals who have lawfully resided in the

18  United States for some time," not a presidential executive order governing admission into the

19  country, to which the courts have accorded greater deference. *Ramos*, 975 F.3d at 896.[21]

20      **2.    The Undisputed Facts Establish that Discriminatory Intent was a Motivating**
        **Factor in CARRP's Design and Implementation**
21

22  The undisputed facts establish that discrimination based on national origin, religion, or

23  both were motivating factors in CARRP's design and implementation. At a minimum, Plaintiffs

24  _____

25  [21] Defendants similarly attempt to deflect all the evidence of discrimination inherent in CARRP by asking
this Court to "presume" they are not violating class members' constitutional rights. Defs' Mot. 45, 48. Plaintiffs
are unaware of, and Defendants do not cite, any case applying a "presumption of regularity" to agency action in the

26  context of an equal-protection challenge. If such a presumption applied here in the way Defendants posit, no agency
action could serve as circumstantial evidence of discriminatory intent and *Arlington Heights* would be a nullity.

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 31
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   raise a genuine dispute as to whether CARRP's design and implementation are driven, at least in

2   part, by discriminatory intent. *See Arce v. Douglas*, 793 F.3d 968, 977-78 (9th Cir. 2015).

3       **a. Gross disparate impact.** There is no dispute that USCIS refers class members from

4   Muslim-majority countries to CARRP at ten to twelve times the rate of applicants from other

5   countries. Plfs' Mot. 48-49; *see also id.* at 12 (most applicants in CARRP are from Muslim-

6   majority countries). This "gross disparity" is enough alone to establish that discriminatory intent

7   was a motivating factor in CARRP's design and implementation. *The Comm. Concerning Cmty.*

8   *Improvement v. City of Modesto*, 583 F.3d 690, 703 (9th Cir. 2009). At a minimum, this gross

9   disparate impact is strong evidence of discriminatory intent. *Reno v. Bossier Par. Sch. Bd.*, 520

10  U.S. 471, 489 (1997) (whether a challenged government action "bears more heavily" on a

11  suspect class is "[t]he important starting point"); *accord Tiwari*, 363 F. Supp. 3d at 1167.

12      Defendants' attempts to rationalize CARRP's undisputed disparate impact as

13  nondiscriminatory fail. First, Defendants claim that CARRP's disparate impact is simply

14  reflective of the purportedly higher rate of terrorist events in majority Muslim countries. Defs'

15  Mot. 44. Their sole support for this assertion is the regression analysis of their statistical expert,

16  Dr. Siskin, which is unreliable and inadmissible because it relies on fundamentally unsound data

17  and assumptions. Dkt. 463 at 6-12; Dkt. 503 at 3-6. Even if admissible, it deserves no weight.

18      Second, Defendants argue that CARRP's disparate impact is constitutionally insignificant

19  because only a "minute fraction" of people who apply for benefits are subject to CARRP. Defs'

20  Mot. 43. But a government program that discriminates based on a suspect class cannot evade

21  equal-protection scrutiny merely because "the discrimination is not complete." *Tiwari*, 363 F.

22  Supp. 3d at 1164. Moreover, CARRP affects thousands of people who are entitled to the

23  protections of the Fifth Amendment.

24      Third, Defendants argue that, in CARRP, applicants from Muslim-majority countries are

25  approved at approximately the same rate, within approximately the same time, as applicants from

26  other countries. Defs' Mot. 44. But again, Plaintiffs are not required to show that CARRP harms

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 32
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

applicants from Muslim-majority countries at every possible juncture; it is sufficient that CARRP is harmful to *everyone* subjected to it, and that applicants from Muslim-majority countries are placed in CARRP at a vastly disproportionate rate.

Fourth, Defendants argue that CARRP's disparate impact does not evince discriminatory intent because most referrals to CARRP are based on third-agency information. Defs' Mot. 44-45. But USCIS alone decides whether the third-agency information warrants CARRP treatment. *See* Dkt. 463 at 4-6; *see also* Defs' Mot. 29-37.

**b.** ▇▇▇▇▇▇▇ **discrimination.** Tellingly, Defendants do not dispute that for years USCIS treated nationality from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Plfs' Mot. at 49. This by itself is evidence that CARRP was designed to have a discriminatory impact. Defendants respond instead that no court has held unconstitutional USCIS's focus on ▇▇▇▇▇▇▇▇▇▇▇. Defs' Mot. at 46. But the fact that USCIS considered ▇ nationalities to be indicators of NS concerns was revealed for the first time in this case—and still is not publicly known. National origin targeting is further baked into CARRP guidance that still governs today because it treats 'reside[nce] in' or 'travel through' 'areas of known terrorist activity' as NS concern indicators. Plfs' Mot. at 11, 49.

**c. Historical context.** Defendants do not dispute that CARRP emerged from the same historical milieu as other post-9/11 programs, like NSEERS, that targeted Muslims for enhanced scrutiny by federal immigration officials. Plfs' Mot. 49. They argue only that two post-9/11 programs were upheld in federal court. Defs' Mot. at 46. But *Elhady v. Kable*, 993 F.3d 208, 228 (4th Cir. 2021), analyzed procedural due process, not equal protection. And in *Rajah v. Mukasey*, 544 F.3d 427, 439 (2d Cir. 2008), the court never applied strict scrutiny, and thus rejected the plaintiffs' selective-enforcement defense to deportation. Neither case speaks to the relevant point here that the government's post-9/11 immigration programs targeted Muslims.

**d.** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Plfs' Mot. at 12, 49-50; *see also id.* at 19

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 33
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000



1

2

3

4                                                                      . *Price v. INS*, 962 F.2d 836,

5   843-44 (9th Cir. 1991).

6

7                                                              of CARRP applicants, who are mostly

8   from majority-Muslim countries,[22]

9            . Defendants' attempts to minimize and isolate each fact misses the point: the question

10  is whether "an invidious discriminatory purpose" is inferable from "the *totality* of the relevant

11  facts." *Washington v. Davis*, 426 U.S. 229, 242 (1976) (emphasis added). Here, it clearly is.

12

13

14

15

16

17

18                                                          . *Cf.* **Ex. 9** (Arastu Rep.) Ex. C at 1118-20

19                                                                                       **Ex. 108**

20  (Johansen-Mendez Rep.) ¶84

21                                   ; *id.* ¶86

22

23                                                      . Defendants' own witness, Nadia Daud, a

24  USCIS adjudicator, described at her deposition

25                                                                                .

26

---

[22] Nearly 70% of the naturalization applicant USCIS subjects to CARRP are from Muslim-majority countries, even though they make up only 17% of the general applicant pool. Plfs' Mot at 12.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    **Ex. 108** (Daud Dep) at 36:8-49:22. She testified that ███████████████

2    ███████████████████████████████████████████████████████████████

3    ███████████████████████████████████████████████████████

4    ███████████████████████████████████, *id.* at 39:25-40:17, ████████████

5    ███████████████████████████████████████████████████

6    ███████████████████████, *id.* at 40:23-42:19. ████████████████

7    ███████████████████████████ Defs' Mot. at 48, ██████████████

8    ███████████████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████

10   ████████. Chia Decl. ¶¶4-5, filed concurrently.[23] ████████████████

11   ███████████████████████████████████████. Plfs' Mot. at 10.[24]

12   **e. Pretextual denials.** Defendants strain to apply the Supreme Court's decision in

13   *Department of Commerce* to Plaintiffs' equal protection claim, Defs' Mot. at 49-51, but, as

14   shown above, that case neither authorizes Defendants' practice of withholding the true reasons

15   for their decisions while offering unrelated reasons in their place, nor is it relevant to an equal

16   protection challenge. *Cook Cnty. v. Wolf*, 461 F. Supp. 3d 779, 794-95 (N.D. Ill. 2020)

17   (*Department of Commerce* is an APA case and its "rationale is a mismatch for an equal

18   protection challenge"). Further, Prof. Nermeen Arastu's report is admissible, for all the reasons

19   Plaintiffs have already elaborated in prior briefing. Dkt. 499 at 10-12.

20   **3.    CARRP is Subject to Strict Scrutiny, and Even if CARRP is Subject to a**
     **More Lenient Standard, it Would Fail**

21

22   Because the totality of the evidence shows intentional discrimination based on national

23   origin, religion, or both was a motivating factor in CARRP's design and implementation,

---

[23] In any event, ████████████████████████████, **Ex. 104** (USCIS Dep.) 95:3-99:6, and there is no evidence that ████████████████████████████████████████████. **Ex. 110** (Daud Dep.) 31:12-32:5; **Ex. 111** (Negrut-Calinescu Dep.) 38:9-39:1; **Ex. 112** (Costello Dep.) 257:12-258:8.
[24] Moreover, Defendants' attempts to rationalize ████████████████████████████████ ██████████████████. Defs' Mot at 48.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  CARRP is subject to strict scrutiny. *See Tiwari*, 363 F. Supp. 3d at 1166-67; *see also Ball v.*

2  *Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). It cannot survive strict scrutiny because it is not

3  precisely tailored to serve a compelling government interest. *See* Plfs' Mot. 50.

4        Defendants concede that they are not entitled to summary judgment if CARRP is subject

5  to strict scrutiny. Defs' Mot. 54-55. They claim that strict scrutiny does not apply because the

6  federal government may "draw distinctions among non-citizens along protected lines subject

7  only to rational basis review." Defs' Mot. 54-55. Defendants cite no support for that proposition

8  and rely entirely on Ninth Circuit law applying rational-basis review to an immigration

9  regulation that "[did] *not* target any religious group." *Ruiz-Diaz v. United States*, 703 F.3d 483,

10  486 (9th Cir. 2012) (emphasis added). CARRP, by contrast, does involve invidious targeting.

11        Regardless, CARRP would fail even under rational-basis review. Withholding

12  adjudication of U.S. residents' applications for immigration benefits for prolonged periods

13  because of an extra-statutory NS concern bears no rational relation to national security

14  interests—as this Court has previously made clear. *Ali v. Mukasey*, No. C07-1030, 2008 WL

15  682257, at *4 (W.D. Wash. Mar. 7, 2008); *see also* Plfs' Mot. 35, 50. Defendants fail to

16  meaningfully engage with *Ali* and the closely related *Singh v. Still*, 470 F. Supp. 2d 1064, 1070-

17  71 (N.D. Cal. 2007). *See* Plfs' Mot. at 35. And while Defendants assert that CARRP withstands

18  rational-basis review because Congress sought to enhance "national security removal grounds in

19  response to 9/11," Defs' Mot. at 53, they fail to mention that Congress repeatedly rejected

20  proposals to expand the INA to authorize CARRP-like vetting. Plfs' Mot. at 3. There is neither

21  Congressional authorization nor a rational basis for CARRP.

22  **D.    Defendants May Not Use the Law Enforcement Privilege as a Shield and a Sword**

23        During discovery, Defendants used the law enforcement privilege as a shield to avoid

24  disclosure of a range of relevant evidence. Now, they improperly seek to use that privilege as a

25  sword to defeat and win summary judgment. A party "may not abuse the privilege by asserting

26  claims the opposing party cannot adequately dispute unless it has access to the privileged

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 36
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (referring to the sword-shield rule as "the fairness principle"). A holder of the privilege has a choice: "If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it." *Id.* at 720. Here, Defendants defend CARRP by seeking to rely on the very categories of information they withheld from Plaintiffs as privileged.

In discovery, Defendants withheld all information that touched on third-agency security checks and information, and cooperation and communication with USCIS. Third Pasquarella Decl. ¶3, filed concurrently. They also withheld information on why and how USCIS concluded Plaintiffs and other class members were NS concerns, and how CARRP caused long delays, and in some cases, pretextual denials in their cases. *Id.* ¶4.

Defendants now seek to weaponize the withheld information, making broad yet vague claims that USCIS's NS concern designations are legitimate, and not discriminatory or misconstrued, because they rely primarily on law enforcement information. Undisputed evidence in the record on CARRP and its implementation roundly refutes these claims, demonstrating they are based on profiling, inferences, and unsubstantiated suspicions that have no bearing on eligibility. Plfs' Mot. at 8-15, 40-43. Defendants' protests to the contrary may not be credited because Defendants withheld the information that would allow Plaintiffs to test their assertions. Similarly, Defendants claim that 8 C.F.R. § 103.2(b)(18) authorizes them to withhold adjudication of CARRP cases, including at the request of third agencies, Defs' Mot. at 35, but Defendants withheld all information that would permit Plaintiffs to test whether delays under CARRP were based on proper invocation of this regulation, including in Plaintiffs' own cases. Third Pasquarella Decl. ¶5. Moreover, Defendants repeatedly claim that CARRP is just a process that does not dictate adjudicative results or lead to unreasonable delay in individual cases, Defs' Mot. at 17, but they withhold the very evidence in individual cases that would demonstrate how CARRP's rules lead to pretextual denials and years of inaction. Third Pasquarella Decl. ¶4.

Defendants also withheld evidence about how USCIS impermissibly allows law

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 37
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

enforcement agencies to influence its adjudication process. For example, USCIS permits law enforcement agencies to request that a benefit be denied or to "object" to the approval of a benefit, *see* Defs' Mot. at 13; Plfs' Mot. at 22-23, **Ex. 113** (FOIA doc) at 269-70, and claim they "heavily rel[y]" on the "feedback" of law enforcement in adjudicative decisions, Defs' Mot. at 13, yet they withheld all evidence of this "feedback" and how it influences their decision-making and violates the INA. Third Pasquarella Decl. ¶6. In Plaintiff Ostadhassan's case, the evidence suggests the FBI influenced USCIS not to grant his application after he refused to voluntarily talk with the FBI. Plfs' Mot. at 19. If that was the basis for Defendants' denial, it would be unlawful and further prove ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ Third Pasquarella Decl. ¶7.

Plaintiffs have proved their claims based on the undisputed evidence presented in this motion. The Court should not credit Defendants' characterizations of categories of evidence they withheld from Plaintiffs. If the Court is to consider such evidence, it would have to defer or deny Defendants' summary judgment motion, deem Defendants to have waived privilege, and permit Plaintiffs discovery into those matters. *See* Fed. R. Civ. P. 56(d) (when facts unavailable to nonmovant a court may "defer considering the motion or deny it" to allow time for discovery).

**E.    Objections to Defendants' Evidence**

Plaintiffs move to strike two categories of evidence submitted by Defendants that are inadmissible. First, Defendants' exhibits 4, 5, 14, and 19 are inadmissible under Federal Rule of Civil Procedure 26(e). These exhibits contain an "updated" version of the CARRP training modules that Defendants transparently sanitized in response to Plaintiffs' challenges and disclosed one year after the close of discovery. Hyatt Decl. ¶3. Rule 26(e) permits supplementation of a disclosure "if the party learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Luke v. Family Care*

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 38
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*and Urgent Med. Clinics*, 323 F. App'x. 496, 500 (9th Cir. 2009). It does not permit a party

"who wishes to revise her disclosures in light of her opponent's challenges to the analysis and

conclusions therein" to add "them to her advantage after the court's deadline for doing so has

passed." *Id.*

Fact discovery closed on November 29, 2019, and Plaintiffs took Defendants' 30(b)(6)

deposition on September 3, 2020. Hyatt Decl. ¶2. At the 30(b)(6) deposition, USCIS confirmed

that the 2017 version of the training modules was still the operative version, **Ex. 104** (USCIS

Dep.) 24:21-25:4, and that the 2017 version in the administrative record appeared accurate. *Id.* at

75:2-6; *see also id.* at 70:19-71:18, 73:15-74:7 (confirming 2017 modules used for basic CARRP

training). When asked if there had been any updates to the 2017 training slides, USCIS answered

definitively: "No." *Id.* 75:8-11. Yet on November 9, 2020, Defendants disclosed to Plaintiffs a

supposed "updated" version of the training modules dated September 2020. Hyatt Decl. ¶2. In

this "updated" version, Defendants scrubbed the language that demonstrates USCIS teaches

officers to deny eligible applicants based on unresolved NS concerns, and adds self-serving

statements aimed at defeating Plaintiffs' claims. For example, Defendants changed the 2017

training instruction to "Resolve the [NS] concern, or deny the case," to read "Resolve the

concern and/or adjudicate the case." Hyatt Decl. ¶4, Ex. A at 4 (comparing slides); *see* **Ex. 16** at

DEF-00116759.0146; Defs' Ex. 19 at DEF-00431935. And although the "update" does not

change the NS indicators which instruct officers to consider national origin and religion, *see*

Plfs' Mot. at 11-12, they added the statement: "Please note that protected characteristics, such as

national origin or religion, ARE NOT indicators of NS Concerns" to the 2020 training manuals.

Hyatt Decl. ¶6, Ex. C at 15 (comparing slides). This directive does not appear anywhere in the

pre-2020 training modules. *See, e.g.,* **Ex. 6** (2017 version); **Ex. 64** (2015 version). Defendants

made many more semantic changes like these clearly for no other purpose than to alter the

evidence and avoid Plaintiffs' claims. To aid the Court's review, Plaintiffs provide hereto side-

by-side demonstratives to help identify the changes Defendants made. Hyatt Decl. ¶¶4-7, Exs. A-

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 39
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    D.

2        Because Defendants' disclosure was untimely and made only to "revise" the evidence in

3    light of Plaintiffs' claims, the Court should strike Defendants' exhibits 4, 5, 14, and 19 under

4    Federal Rule of Civil Procedure 37, and the agency testimony that relies on these exhibits,

5    because Defendants cannot prove that its untimely disclosure was substantially justified or

6    harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001).

7    Even if they are not stricken, they should be given no weight, as it is undisputed that Defendants

8    do not retrain officers based on updates to their training modules, **Ex. 8** (USCIS Dep.) 75:21-

9    77:9, and Defendants have not conducted the CARRP in-person training that uses these modules

10   during the Covid-19 pandemic. **Ex. 8** (USCIS Dep.) 71:5-14.

11       Second, Plaintiffs move to strike Defendants' submission of the rebuttal report of Kelli

12   Ann Burriesci. Pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii), Defendants only

13   disclosed Ms. Burriesci as a rebuttal witness to Plaintiffs' law enforcement experts. Here, they

14   do not offer her testimony to rebut or contradict any evidence proffered by Plaintiffs' experts, but

15   instead as new, affirmative evidence in support of their case-in-chief. Defs' Mot. at 8, 9, 54. This

16   is improper, and her report should be stricken. *See People v. Kinder Morgan Energy Partners,

17   L.P.*, 159 F. Supp. 3d 1182, 1991-93 (S.D. Cal. 2016) (excluding rebuttal expert testimony

18   offered to support case-in-chief at summary judgment); *Huawei Techs., Co, Ltd v. Samsung

19   Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018) (same).

20                        **V.     CONCLUSION**

21       For the foregoing reasons, the Court should grant Plaintiffs' motion for summary

22   judgment on behalf of Plaintiff Mehdi Ostadhassan and the certified classes.

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

Respectfully submitted,                          DATED: June 11, 2021

2
s/ Jennifer Pasquarella                          s/ Harry H. Schneider, Jr.
s/ Liga Chia                                     s/ Nicholas P. Gellert
3
Jennifer Pasquarella (admitted pro hac vice)     s/ David A. Perez
Liga Chia (admitted pro hac vice)                s/ Heath L. Hyatt
**ACLU Foundation of Southern California**        s/ Paige L. Whidbee
4
1313 W. 8th Street                               Harry H. Schneider, Jr. #9404
Los Angeles, CA 90017                            Nicholas P. Gellert #18041
5
Telephone: (213) 977-5236                        David A. Perez #43959
jpasquarella@aclusocal.org                       Heath L. Hyatt #54141
6
mcho@aclusocal.org                               Paige L. Whidbee #55072
lchia@aclusocal.org                              **Perkins Coie LLP**
7
                                                 1201 Third Avenue, Suite 4900
s/ Matt Adams                                    Seattle, WA 98101-3099
8
Matt Adams #28287                                Telephone: 206.359.8000
**Northwest Immigrant Rights Project**            Hschneider@perkinscoie.com
9
615 Second Ave., Ste. 400                        Ngellert@perkinscoie.com
Seattle, WA 98122                                Dperez@perkinscoie.com
10
Telephone: (206) 957-8611                        Hhyatt@perkinscoie.com
matt@nwirp.org                                   Pwhidbee@perkinscoie.com
11

12
s/ Stacy Tolchin                                 s/ John Midgley
Stacy Tolchin (admitted pro hac vice)            John Midgley #6511
13
**Law Offices of Stacy Tolchin**                  **ACLU of Washington**
634 S. Spring St. Suite 500A                     P.O. Box 2728
14
Los Angeles, CA 90014                            Seattle, WA 98111
Telephone: (213) 622-7450                        Telephone: (206) 624-2184
15
Stacy@tolchinimmigration.com                     jmidgley@aclu-wa.org

16
s/ Hugh Handeyside                               s/ Sameer Ahmed
s/ Lee Gelernt                                   s/ Sabrineh Ardalan
17
s/ Hina Shamsi                                   Sameer Ahmed (admitted pro hac vice)
s/ Charles Hogle                                 Sabrineh Ardalan (admitted pro hac vice)
18
Hugh Handeyside #39792                           **Harvard Immigration and Refugee**
Lee Gelernt (admitted pro hac vice)                **Clinical Program**
19
Hina Shamsi (admitted pro hac vice)              Harvard Law School
Charles Hogle (admitted pro hac vice)            6 Everett Street; Suite 3105
20
**American Civil Liberties Union Foundation**     Cambridge, MA 02138
125 Broad Street                                 Telephone: (617) 495-0638
21
New York, NY 10004                               sahmed@law.harvard.edu
Telephone: (212) 549-2616                        sardalan@law.harvard.edu
22
hhandeyside@aclu.org
lgelernt@aclu.org
23
hshamsi@aclu.org
chogle@aclu.org                                  *Counsel for Plaintiffs*

24

25

26

PLAINTIFFS' REPLY IN SUPPORT OF MOT. FOR SUMM. J.
(NO. 2:17-CV-00094-RAJ) - 41
152782534.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000