# Exhibit E

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDIQAFAR WAGAFE, *et al.*, on behalf of themselves and others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>JOSEPH R. BIDEN, President of the United States; *et al.*,<br><br>                    Defendants. | Case No. 2:17-cv-00094-RAJ<br><br>DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT |

**TABLE OF CONTENTS**

I.  INTRODUCTION.................................................................................................1

II.  PLAINTIFFS' FLAWED NARRATIVES ARE GROUNDLESS. ..................................2

III.  SUMMARY JUDGMENT FOR DEFENDANTS IS WARRANTED ON THE
EQUAL PROTECTION CLAIM..............................................................................6

IV.  PLAINTIFFS FAIL TO SHOW CARRP IS REVIEWABLE UNDER THE APA
AND, EVEN IF REVIEWABLE, THAT IT IS UNLAWFUL.....................................9

A.  PLAINTIFFS FAIL TO SHOW CARRP IS REVIEWABLE UNDER THE APA................9

B.  EVEN IF CARRP IS REVIEWABLE UNDER THE APA, PLAINTIFFS FAIL
TO SHOW IT IS UNLAWFUL. ..........................................................................11

1.  CARRP Does Not Impose Extra-Statutory Eligibility Criteria. ................................11

2.  CARRP is Consistent with Regulations. ..................................................................12

3.  Plaintiffs Cannot Assert a Blanket Unlawful Delay Claim..........................................13

4.  CARRP is Neither a Legislative Rule nor Arbitrary and Capricious. ........................14

V.  SUMMARY JUDGMENT FOR DEFENDANTS IS WARRANTED ON THE
NATURALIZATION CLASS' PROCEDURAL DUE PROCESS CLAIM. ............................15

VI.  SUMMARY JUDGMENT AGAINST PLAINTIFFS IS WARRANTED ON THEIR
REMAINING CLAIMS. ......................................................................................18

VII.  PLAINTIFFS' EVIDENTIARY CHALLENGES LACK MERIT. ...........................................18

VIII.  CONCLUSION..................................................................................................20

CERTIFICATE OF SERVICE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

The evidence establishes beyond dispute that Defendants are entitled to summary judgment on all claims. Defendants have demonstrated the following:  (1) CARRP is an ordered process driven by fact-finding, informed by best practices across the U.S. Government, and executed by reasonable and dedicated civil servants; (2) USCIS refers applications for CARRP processing only when an applicant might be subject to a national-security-related ground of inadmissibility or removability under the Immigration and Nationality Act ("INA"); (3) CARRP creates no extra-statutory eligibility criteria—USCIS instructs officers to deny benefit applications only if there is a legally sufficient basis under the INA; (4) CARRP does not discriminate based on religion or national origin, while fully comporting with due process, the INA, and regulations; and (5) CARRP *facilitates* rather than delays decision-making on applications involving potential national security ("NS") concerns. Defs' MSJ 1-22, 39-70.

These showings alone end this case; even so, Defendants have also shown why CARRP is not only lawful but efficient and critical to addressing NS concerns arising in benefit applications.  CARRP has fostered trusting relationships between USCIS and law enforcement and intelligence agencies (which are instrumental to USCIS understanding the significance of national-security-related information); made vetting of applications raising NS concerns more consistent and reliable; and increased efficiency in the system for processing applications with NS concerns. Defs' MSJ 5, 22. For example, USCIS established a triage operation at the National Benefit Center ("NBC") which routinely diverts many cases from CARRP early on, demonstrating USCIS' longstanding efforts to process cases most efficiently.  Defs' MSJ 21-22.  The NBC's early screening and engagement with joint terrorism task forces ("JTTFs") and other agency record owners allow USCIS to "quickly resolve potential NS concerns for the substantial majority of applications that present such concerns." *Id*. at 22. In other words, CARRP has addressed, if not solved, some of the very deficiencies in USCIS' processing that Plaintiffs allege. Pls' MSJ 10, 15-16.

The evidence of CARRP's efficiency and importance—sourced to hundreds of pages of training documents, the administrative record, and the personal knowledge of numerous USCIS witnesses who routinely apply the CARRP policy—reveals Plaintiffs' attempt to cast CARRP as a compilation of brazen procedures, effectuated by cynical officials and designed to concoct any reason for denying benefit

applications, as contrived and lacking evidentiary support. But to create an issue of material fact, Plaintiffs rely on conclusory assertions, flawed narratives, and implausible themes—all conflicting with the undisputed evidence. For example, they assert that "CARRP at its core is about officers 'not approving' eligible applicants if they can possibly help it," Pls' Resp. 14, yet they fail to reconcile that assertion with the undisputed fact that USCIS grants well over 75% of all adjustment and naturalization applications processed in CARRP, Defs' MSJ 23; they focus on mistaken interpretations of a few training slides in conflict with the context created by thousands of others, Pls' Resp. 13; they claim CARRP instructs officers to "deny *eligible* applicants wherever possible," Pls' Resp. 13 (emphasis added), while voluminous evidence shows that USCIS' policy is to approve eligible applicants and deny ineligible applicants, Defs' MSJ 13-20; and Plaintiffs deposed six USCIS adjudicators without a single one testifying that they have denied cases for trivial or pretextual reasons or supervised such denials, Defs' MSJ 14-15.

In short, narratives and themes are no substitute for material evidence. Thus, below, in Part II, the Defendants first address Plaintiffs' central themes, demonstrating how their flawed narratives of CARRP's alleged harmful purposes and functions proceed on speculative assertions by individuals who do not qualify as experts, multiple declarations of their own counsel, and strained interpretations of USCIS statistics that erroneously equate correlation with causation. Second, in Parts III, IV, and V, Defendants apply controlling summary judgment standards to the actual evidence produced in this case, demonstrating that Plaintiffs fail to raise a genuine issue of fact to sustain their claims.

## II. PLAINTIFFS' FLAWED NARRATIVES ARE GROUNDLESS.

Plaintiffs' repetition of a handful of narratives – both old and new – dominates their cross-motion presentation. Yet the evidence before the Court reveals those themes to be dependent upon ambiguous readings of text, divorced from context, and contradicted by overwhelming record information and data. These themes arise out of the following flawed narratives:

"Extra-statutory": Throughout this litigation, Plaintiffs have used the term "extra-statutory" in a baseless attempt to equate CARRP with a rogue program. This theme has centered on the twin contentions that non-statutory "indicators" are an invalid basis for CARRP referrals, and that the

Defs' Reply on Cross-Summ. J.;
Case No. C17-00094

U.S. Dep't Of Justice, OIL/A, 450 5th St. NW,
Washington DC 20001; 202-616-2186

adjudicative phase of CARRP violates the INA. Tellingly, after Defendants cited the CARRP policy's emphasis on contextual assessments rather than isolated indicators, Plaintiffs retreated from the first contention. *Compare* Pls' MSJ 4, 29 *with* Pls' Resp. 16, 21.[1] Persisting in the second contention, they assert that CARRP "bars adjudicators from approving eligible applications with unresolved NS concerns." Pls' Resp. 1, 12. But CARRP imposes no such "bar." CARRP adjudicators can and regularly do approve eligible applications with unresolved NS concern, utilizing field-level supervisory review in the vast majority of applications (non-KSTs), and the less common, but still available SLRB process for higher-risk applicants (most always KSTs). *Compare id.* at 13 *with* Defs' MSJ 13-14; *see also* ECF 521, Siskin Decl. at 18, 22-23. Thus, eligible applicants with unresolved NS concerns can be approved, whether they are KSTs, or non-KSTs. While Plaintiffs' strawman may conjure notions of an extra-ordinary policy, the actual guideline is the more commonplace requirement for supervisory approval in the decision-making process – an internal workflow procedure well within an agency's latitude to create. *See Mass. v. EPA*, 549 U.S. 497, 527 (2007). Those procedures make even more sense when applied to applications for lasting benefits presenting NS concerns.

Plaintiffs suggest that the supervisory requirement exists to facilitate denials by higher officials willing to flout the guidelines. But supervisory approval is also required when an adjudicator recommends *denial* of an application with an unresolved NS concern. ECF 519, Relph Decl. ¶19. Plaintiffs do not acknowledge, much less reconcile, these two aspects of USCIS procedure. Indeed, were USCIS motivated to deny cases with unresolved NS concerns, the agency could permit line adjudicators to issue denials without review, which it does not. The rationale that reconciles these facts is obvious: cases involving NS concerns present greater levels of complexity, involve more risk, and require more interagency collaboration. It is simply good governance to have senior professionals review complex matters before final decision, and this is amply demonstrated by the record evidence. Defs' MSJ 1-22.

<u>Legislative History</u>: Plaintiffs assert it is "undisputed" that USCIS created CARRP as an end run around Congress' supposed rejection of the agency's legislative efforts, and repeat this assertion

---

[1] Plaintiffs wrongly attribute to Defendants the claim that only non-KST applicants with an articulable link determination may be subjected to CARRP. Pls' Resp. 16. Defendants made no such claim. Defs' MSJ 6-7 (Asserting that indicators are "important investigative tool[s]," and where indicator-based referrals occur and further vetting reveals "no articulable link exists despite an indicator, then the application 'is not subject to the CARRP policy' to any further extent.").

throughout their Response as if it were true and based on evidence. Pls' Resp. 1, 12-13, 23. To the

contrary, it is highly disputed, as discussed below. More importantly, Plaintiffs cite no policy or training

documents to show that CARRP does what they claim USCIS' proposed legislation intended. CARRP

does not bar USCIS from granting any applications, and it does not create any substantive grounds for

denying any applications. *See* Defs' MSJ 17-20. Plaintiffs' narrative that CARRP circumvents USCIS'

failed legislation is belied by simply comparing the CARRP policy to the proposed legislation.

    ████████████ Plaintiffs inaccurately claim that Defendants fail to dispute their factual

assertions concerning ████████████████████████████████████████. Pls'

Resp. 2-3. In actuality, Defendants simply elected not to dedicate significant portions of their opening

brief to responding to Plaintiffs' speculative assertions because they are not determinative of the legal

claims at issue in a class-action lawsuit. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 360, 367

(2011). ████████████████████████████████████████████████████

████████████████████████████████████████████████, even while this

Court has emphasized that this case concerns the lawfulness of the CARRP *policy. See* Defs' Ex. 31 at 15,

25, 30. Any suggestion by Plaintiffs that they need only show the merits of their legal claims with respect

to alleged harms experienced by a few is antithetical to class action law. *See Transunion LLC v. Ramirez,*

No. 20-297, 2021 WL 2599472, at *10 (U.S. June 25, 2021) ("Article III does not give federal courts the

power to order relief to any uninjured plaintiff, class action or not.") (internal marks and citation

omitted).[2]

    In any event, Plaintiffs' argument ████████████████████████████████

████████████████████████████████ is based upon flawed characterizations of the

evidence. For example, Plaintiffs assert as "factual" support the arguments of counsel in their opening

brief, as well as the conjecture of their own "experts" concerning propositions for which those "experts"

lack any personal knowledge. *See* Pls' Resp. 2, 3, 20. Plaintiffs also allege ████████████████

---

[2] Plaintiffs' unsupported allegations concerning ████████████████ are also at odds with their burden to prove their claims as to entire classes. For instance, Plaintiffs' reliance on data that ████████████████████████████████████, Pls' Resp. 16, directly undermines their claim that ████████████████████████████████████████ *Id.* at 2. If USCIS had a class-wide practice of designating applicants ████████████ for non-evidentiary reasons, a far higher percentage of class members would be designated ████████████

1    ██████████████████████████████ and then contend that Defendants have not disputed

2    those allegations.  Pls' Resp. 2-3. This is simply not the case. With the Court's approval, Defendants

3    withheld under the law enforcement privilege ████████████ originating from third agencies.

4    ECF 274 at 5. The Court ruled that it was not relevant to Plaintiffs' claim that USCIS misused the

5    CARRP process. *Id.* This third agency ████████████ is not part of the evidentiary record, thus

6    Plaintiffs' assertions concerning ████████████████████████ are not only

7    unfounded, but attempt to exploit ████████████████████████.[3] Notably, class

8    counsel initially alleged that ████████████████████████████████

9    ██████. *See* ECF 47 at 45-50. Just as that allegation has been proven wrong, Defs' MSJ 27, speculation

10   ████████████████████████████████ is likewise dubious.

11        "Pre-textual Denials": Plaintiffs' assertion that CARRP employs widespread "pretextual denials"

12   of applications suffers from two critical misconceptions: 1) that applicants denied at the conclusion of the

13   CARRP process were somehow found "statutorily eligible" before later having that eligibility stripped

14   away; and 2) where NS information indicating ineligibility remains unstated in the denial of an

15   application, any stated denial reason must be an illegitimate stand-in for the "real reason" for the denial.

16   Pls' Resp. 13, 18, 19, 38. But Defendants demonstrated that applicants must "continue to be eligible

17   through adjudication" and the eligibility finding to which Plaintiffs refer is only a preliminary, *prima*

18   *facie* preliminary determination. Defs' MSJ 18. Regarding the second misconception, the fact that there

19   may be stated and unstated reasons for a denial does not render stated reasons unlawful. Defs' MSJ 37,

20   50. Record testimony makes clear that "the stated grounds must nonetheless be based on adequate record

21   evidence, accurately reflect reasons that factored into the decision, and be sufficient under the law."

22   Defs' MSJ 20. Still, Plaintiffs point to no evidence that USCIS denies applications for reasons it does not

23   believe correctly apply, much less any class-wide practice of denying eligible applications for unlawful

24   reasons. In sum, Plaintiffs' repetitious narratives are rooted in selective and erroneous interpretations of

25   the evidence, statute, and case law. As demonstrated further below, upon application of the standards to

26   the record evidence, the Court should grant summary judgment for Defendants on all claims.

27
28

---

[3]  Plaintiffs assertion that "Defendants admit that ████████████████████████████████████
████  Pls' Resp. 2-3, is inaccurate; ████████ was also partially based on third agency information. Pls' Ex. 8 at 265:12-19.

III.    **SUMMARY JUDGMENT FOR DEFENDANTS IS WARRANTED ON THE EQUAL PROTECTION CLAIM.**

Defendants' cross-motion underscored that Plaintiffs cannot show that CARRP expressly discriminates based on religion or national origin; Plaintiffs do not dispute this. Defs' MSJ 40; Pls' Resp. 31. Plaintiffs lack evidence raising a genuine issue that the disparate impact in CARRP referral rates is anything more than an incidental, benign feature of the process. Defendants presented the expert statistical analyses by Bernard R. Siskin, Ph.D., showing that elevated CARRP referral rates for applicants from Muslim-majority countries are much more strongly correlated with the higher level of terrorism in those countries; the correlation with the applicants' national origin or religion mostly disappears and is not statistically significant after controlling for the far stronger correlation with international terrorist incidents. Defs' MSJ 42-44; *see also id.* at 23-24; Defs' Ex. 11 at 5, 27-28, 30-31, 130, 134. In addition, Defendants demonstrated that other alleged circumstantial evidence Plaintiffs cited was insignificant. Defs' MSJ 45-51. Beyond showing the lack of unlawful discriminatory intent, Defendants also established that CARRP is facially legitimate, bona fide, and rationally-based, which fully satisfies equal protection requirements in the national security and immigration context. *Id.* at 40, 52-54.

In opposing Defendants' showing, Plaintiffs fail to raise a genuine issue that unlawful discriminatory intent can be inferred from CARRP's implementation. They do not dispute that Dr. Siskin's regression analysis shows that "CARRP's disparate impact is simply reflective of the purportedly higher rate of terrorist events in majority Muslim countries." Pls' Resp. 32. Plaintiffs present no similar expert analysis to support the inference they would draw from CARRP referral rates, and do not dispute Dr. Siskin's statistical expertise or most of his analyses and conclusions. ECF 463 at 1. Further, as Defendants show (ECF 485 at 7-12), his sound regression analysis refutes any inference of unlawful discrimination arising from CARRP referral rates. Defs' MSJ 42-44; *see also id.* at 23-24.[4]

Plaintiffs further concede that "most referrals to CARRP are based on third-agency information,"

---

[4]  To exclude Dr. Siskin's regression analysis, Plaintiffs rely on the unsupported opinion of their expert, Dr. Sageman, that data showing higher rates of terrorist events in countries associated with higher CARRP referral rates is unreliable. Pls' Resp. 32 (citing ECF 463 at 6-12; ECF 503 at 3-6). Dr. Sageman's unsupported views include that the U.S. is, "by far, [the] number one" state sponsor of terrorism, Defs' Ex. 54, Deposition of Marc Sageman at 225:2 to 226:9, and that no act can constitute terrorism if it occurs in a country not at peace, *id.* at 22:16 to 23:12; 24:23 to 26:17.

and admit that "USCIS alone decides whether the third-agency information warrants CARRP treatment." Pls' Resp. 33. This admission undermines their theory that USCIS "subordinate[s] its authority" to third agencies (ECF 47 at 17), which is also controverted by the evidence (Defs' Ex. 10, ¶¶57-59; ECF 518, Quinn Decl. ¶34). Also, Plaintiffs cite no evidence that USCIS interprets third agency information differently depending on religion or national origin. It thus remains significant that information from third agencies drives CARRP referrals, not USCIS information. Defs' MSJ 44-45.

Plaintiffs wrongly claim that nationality ▮▮▮▮▮▮▮▮▮▮▮▮ once "require[d] greater scrutiny for NS concerns," and that this is undisputed. Pls' Resp. 33. Plaintiffs made no such previous assertion, describing instead the consideration ▮▮▮▮▮▮ in connection with other factors. Pls' MSJ 11; *see id.* at 49. They fail to show that national origin alone was ever a "motivating factor" in these assessments. Similarly, Plaintiffs fail to show that either the National Security Entry-Exit Registration System ("NSEERS") or Terrorist Screening Database ("TSDB") are relevant historical considerations to assessing whether CARRP is unlawfully discriminatory. Pls' Resp. 33. The Fourth Circuit decision upholding the TSDB did not analyze equal protection because the claim was dismissed and not pursued, suggesting it lacked merit. *See Elhady v. Kable*, 993 F.3d 208, 218 (4th Cir. 2021). The fact that *Rajah v. Mukasey*, 544 F.3d 427 (2d Cir. 2008), did not apply strict scrutiny does not change the fact that the decision upheld NSEERS.[5] Given the legality of these programs, they cannot infer CARRP's unlawfulness.

Regarding "religious scrutiny," Plaintiffs weave out of whole cloth a proposition that "Defendants . . . scrutiniz[e] religious practices only of CARRP applicants," apparently based on the assertion that Defendants "offer no evidence that they teach officers to ask the same questions about religious practices outside of CARRP." Pls' Resp. 34. To raise a genuine issue preventing summary judgment, Plaintiffs must show more than Defendants not affirmatively *disproving* Plaintiffs' claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (if moving party meets initial burden, opposing party must set forth specific facts showing a genuine issue). Plaintiffs fail to cite evidence that Defendants do not pose

---

[5]  Plaintiffs incorrectly assert that in *Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), the Ninth Circuit declined to apply the facial legitimacy/rational basis constitutional test of *Trump v. Hawaii*, 138 S. Ct. 2392, 2419-21 (2018), to "cases involving immigration benefits for U.S. residents." Pls' Resp. 31. This mistaken contention overreads *Ramos* and unjustifiably limits *Trump v. Hawaii*, as Defendants explained. Defs' MSJ 52-54 & n.7.

7

1   religion-related questions outside of CARRP, so USCIS asking such questions within CARRP is

2   immaterial where Defendants have already shown their legitimacy. Defs' MSJ 47-48. While Plaintiffs

3   contend that religion-related questions "cannot be divorced from the broader context of anti-Muslim

4   animus in the United States," Pls' Resp. 34, they cite no authority for the proposition that some "broader

5   context" beyond actions related to CARRP is relevant under *Arlington Heights v. Metro. Housing Dev.*

6   *Corp.*, 429 U.S. 252, 264-68 (1977). No similar considerations were made in cases analogous to the

7   present one. *See Trump v. Hawaii*, 138 S. Ct. at 2419-23; *Rajah*, 544 F.3d at 438-39.[6]

8       As to pretextual denials, Plaintiffs' assertion that the leading Supreme Court case is not "relevant

9   to an equal protection challenge," Pls' Resp. 35, is nonsensical when they assert that CARRP's alleged

10  "playbook of pretextual denials" supports their equal protection claim, Pls' MSJ 50. Defendants have

11  shown, particularly in light of that case, *Dep't of Com. v. New York*, 139 S. Ct. 2551 (2019), how

12  Plaintiffs' undefined references to "pretextual denials" are meaningless. Defs' MSJ 50-51. While

13  Plaintiffs now try to clarify their use of the term "pretextual," Pls' Resp. 19 n.12, their usage continues to

14  cover a variety of meanings, including what *Dep't of Commerce* recognizes as lawful: having unstated

15  reasons for an administrative decision in addition to stated reasons, *see* 139 S. Ct. at 2573, 2575.

16  Plaintiffs apparently believe that *no* decision made under CARRP could fall within this description of a

17  lawful administrative decision, yet they offer no reason for that belief.

18      Finally, Plaintiffs fail to show that CARRP lacks a rational basis. That claim turns on their central

19  allegation that the CARRP NS inquiry is "extra-statutory," Pls' Resp. 36, yet this assertion is incorrect—

20  given that the grounds on which USCIS vets immigration benefits under CARRP are legitimately based

21  on terrorism-related grounds of inadmissibility and USCIS' broad inquiry authority. Defs' MSJ 6, 32-34,

22  63 n.11. Plaintiffs do not dispute the breadth of this authority, instead repeating a mantra of "extra-

23  statutoriness" based on an amalgam of theories for which they identify no precedent. Pls' Resp. 12. None

---

[6] Among Plaintiffs' irrelevant "broader context" evidence is the deposition of USCIS senior immigration officer Nadia Daud. Pls' Resp. 34-35. The quoted passages concern events unrelated to CARRP that occurred soon after September 11, 2001. Pls' Ex. 110 at 39:9-11, 39:25, 47:19-20. The training she arranged occurred no later than 2007. *Compare id.* at 41:6-9 *with* Defs' Ex. 55, Deposition of Nadia Daud, at 14:9-10. Meanwhile, she has been in her current position since 2017, yet never heard colleagues in her office "who work on CARRP cases mak[e] derogatory comments about individuals from the Middle East." *Id.* at 168:14-17; *see id.* at 20:14-18. Plaintiffs also challenge USCIS' current training as "profoundly biased," but cite only their counsel's declaration reciting the training. Pls' Resp. 35. Plaintiffs also claim "there is no evidence that Defendants actually provide" this training, but cite evidence showing cultural awareness training is given. Pls' Ex. 112 at 257:9-10.

of these theories, individually or collectively, shows that USCIS holds immigration benefit applicants to any legal standard other than that set by statute and regulation. Also, Plaintiffs' claim that "Defendants fail to meaningfully engage" with relevant precedent, Pls' Resp. 36, is simply wrong. Defs' MSJ 55 n.8 (citing, *inter alia*, "KAB Rpt at 16-17," located at Defs' Ex. 10).

## IV. PLAINTIFFS FAIL TO SHOW CARRP IS REVIEWABLE UNDER THE APA AND, EVEN IF REVIEWABLE, THAT IT IS UNLAWFUL.

As Defendants established, CARRP is neither an "agency action" nor a "final agency action," as required for review under the Administrative Procedure Act ("APA"). Defs' MSJ 55-58. In addition, CARRP is unreviewable as a matter "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), because it concerns an agency's decision about the degree and manner of scrutiny within its authorized inquiries. Defs' MSJ 59-60. Defendants also showed that judicial review is limited to the administrative record. *Id.* at 60-61. That record shows that USCIS adequately considered CARRP's implementation; CARRP is statutorily authorized; decisions under CARRP accord with regulations; CARRP did not require notice-and-comment; and Plaintiffs have no APA claim for systemic delay. *Id.* at 61-66 & n.11.

### A. Plaintiffs Fail to Show CARRP is Reviewable under the APA.

Contrary to their initial assertion, Pls' MSJ 26 n.12, Plaintiffs now recognize that the Court did not conclusively rule that CARRP is a "final agency action" under 5 U.S.C. § 704 so as to be reviewable under the APA. Pls' Resp. 7. They also recognize that CARRP's alleged effects on "qualified applications," meaning the applications of eligible applicants, was an important aspect to the Court's preliminary ruling in allowing APA claims to proceed, as Defendants explained. *Compare* Pls' Resp. 7 *with* Defs' MSJ 57-58 and Defs' Ex. 31 at 19. Yet Plaintiffs fail to show that CARRP systematically affects "qualified applications" so as to constitute final agency action. Their only assertion in this respect is that CARRP "urges officers to find pretextual reasons to deny *eligible* applicants with unresolved NS concerns." Pls' Resp. 8 (emphasis added). But well over 75% of applications subject to CARRP are approved, Defs' Ex. 11 at 50, showing that denial is not the norm, and Plaintiffs never show that denied applicants were nevertheless eligible. Further, Plaintiffs have never shown that denials of applications subject to CARRP meet in any consistent way, if at all, the criteria for impermissibly pretextual decisions

1  instead of permissibly having both stated and unstated denial reasons as discussed in *Dep't of Com.*, 139

2  S. Ct. at 2573-76. Plaintiffs therefore have not raised a genuine issue that CARRP affects thousands of

3  applicants whose *qualified* applications are "allegedly indefinitely delayed or denied," and therefore have

4  not proven a premise for the Court assuming the existence of "final agency action." Defs' Ex. 31 at 19.

5      Aside from asserting that CARRP "urges officers to find pretextual reasons to deny," Plaintiffs

6  cite three other facts in an effort to show that CARRP has legal consequences so as to constitute final

7  agency action. Pls' Resp. 8. All concern the manner in which CARRP operates, and show no legal effects

8  or consequences. Specifically, CARRP processing differs from "the usual process," but that fact in itself

9  neither has legal consequences for anyone, nor is it legally enforceable. The same is true for not

10  disclosing CARRP to applicants, and for restricting which official may approve certain CARRP

11  applicants. By contrast, in the case on which Plaintiffs primarily rely, *see* Pls' Resp. 8, abiding by the

12  government procedures at issue was a condition on participation in a group, and failure could result in

13  revoking group membership. *See Gill v. United States DOJ*, 913 F.3d 1179, 1184-85 (9th Cir. 2019).

14  CARRP is thus not an action "by which rights or obligations [are] determined, or from which legal

15  consequences will flow," and not final agency action. *Bennett v. Spear*, 520 U.S. 154, 178 (1997)

16  (internal marks and citation omitted). Instead, the reviewable final agency action is a denial of the benefit

17  application. *See Mamigonian v. Biggs*, 710 F.3d 936, 945 (9th Cir. 2013).[7]

18

19      Even if CARRP is a final agency action, Plaintiffs still fail to overcome clear law that creating

20  and implementing an internal agency policy guiding the level of scrutiny for lawful inquiries is

21  committed to agency discretion by law, and therefore unreviewable under 5 U.S.C. § 701(a)(2). In

22  rebuttal, Plaintiffs assert that CARRP "formulat[es] . . . eligibility criteria." Pls' Resp. 10. But it does not;

23  it only guides the agency's legitimate inquiries into statutory eligibility, Defs' MSJ 6-20, 32-34. Unlike

24  in the DACA case on which Plaintiffs rely, CARRP itself does not "create[] a program for conferring

25  affirmative immigration relief," or specify "enumerated criteria" upon which applications subject to

26  CARRP will be granted or denied. *DHS v. Regents*, 140 S. Ct. 1891, 1906 (2020). The decision in

27  *Perez Perez v. Wolf*, 943 F.3d 853 (9th Cir. 2019), is similarly distinguishable, as it concerned criteria for

28

[7] Also, while arguing that theirs is not an unreviewable programmatic challenge, Pls' Resp. 9-10, Plaintiffs fail to address decisions holding that USCIS policies analogous to CARRP are not subject to review under the APA. Defs' MSJ 56.

granting or denying U-visas. *See id.* at 859-60, 862-83. CARRP, however, concerns matters "traditionally left to agency discretion" that are unreviewable—particularly the level of scrutiny given to particular inquiries. *Regents*, 140 S. Ct. at 1905 (internal marks and citation omitted). While Plaintiffs read *Heckler v. Chaney*, 470 U.S. 821 (1985), as limiting unreviewable matters to an agency "not taking action," Pls' Resp. 11 (emphasis omitted), this is incorrect, as cited cases regarding level-of-scrutiny show. Defs' MSJ 59-60. Notably, *Heckler* encompassed not only agency decisions not to enforce, but also decisions not to investigate, *see* 470 U.S. at 824, 838, which necessarily include decisions about degree and scope.

### B. Even if CARRP is Reviewable Under the APA, Plaintiffs Fail to Show It is Unlawful.

#### 1. CARRP Does Not Impose Extra-Statutory Eligibility Criteria.

Defendants addressed at length the substance of Plaintiffs' APA claims. Defs' MSJ 61-66 & n.11; *see also id.* at 32-37.[8] In response, Plaintiffs refer to five items as proof that "CARRP imposes extra-statutory criteria to the approval" of applications. Pls' Resp. 12; *see id.* at 12-17. These five items prove nothing. First, the fact that USCIS ultimately approved ▮▮▮▮▮▮▮▮▮▮ applications does not show ▮▮▮▮▮ applicants ▮▮▮▮▮▮▮▮ should be considered conclusively eligible earlier in the adjudication process. Plaintiffs do not expressly dispute that dispositive eligibility decisions await USCIS' final adjudication, nor do they contest USCIS' broad inquiry authority, Defs' MSJ 18, 32-34; both preclude considering applicants conclusively eligible prior to adjudication.[9]

Second, Plaintiffs incorrectly claim "CARRP's rules are legislative," and thus extra-statutory, "as USCIS sought but failed to legislate the same rules." Pls' Resp. 12. While the proposed legislation would have (1) barred USCIS from granting benefit applications before completing background and security checks, and (2) permitted denial or long-term withholding of adjudication of applications when an

---

[8] Plaintiffs erroneously assert that Defendants concede certain claims by not addressing them. Pls' Resp. 1, 6, 12. Yet Defendants addressed the issues cross-referencing an extended discussion further refuting Plaintiffs' arguments. Defs' MSJ 63 n.11 (referencing pp. 32-37). Regardless, omissions in summary judgment briefing are not concessions and do not alter summary judgment standards. LCR 7(b)(2); *Amica Ins. Co. v. Scherdnik*, No. 3:20-cv-05561-RAJ, 2021 WL 807675, at *2 (W.D. Wash. Mar. 3, 2021).

[9] Plaintiffs also do not dispute that potential inadmissibility on terrorism-related grounds implicates the good moral character and attachment requirements for naturalization. Defs' MSJ 2, 30-31, 53-54. They claim only that there is a presumption of good moral character, citing a regulation and their purported expert. Pls' Resp. 4. Their expert is incorrect, as the regulation shows. *See* 8 C.F.R. § 316.10(a)(1); *see also Berenyi v. Dist. Dir.*, 385 U.S. 630, 634, 637 (1967). Their reliance on a denaturalization case, Pls' Resp. 4 n.4, is inapt.

applicant is subject to an ongoing NS investigation, Pls' Ex. 103, Plaintiffs cite no policy or training documents showing that CARRP implements equivalent provisions—indeed, it does not.[10] Also, a bill's failure to pass "provide[s] no support for the hypothesis that both Houses of Congress silently endorsed [the opposite] position." *United States v. Estate of Romani*, 523 U.S. 517, 534 (1998).

Third, Plaintiffs cite CARRP's limitation on adjudicators approving certain eligible applications "unless they have permission from the highest levels of USCIS." Pls' Resp. 13. As such approvals actually occur, Pls' MSJ 17, this argument is only a legally unsupported attack on USCIS' delegation of authority and assignment of duties within its ranks. *Cf.* Defs' MSJ 29-32 (describing agency's sources of adjudication authority); *Mass. v. EPA*, 549 U.S. 497, 527 (2007) ("an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities"). Moreover, supervisory approval is required even when an adjudicator recommends denial of an application. ECF 519, Relph Decl. ¶19. Finally, Plaintiffs reprise, Pls' Resp. 13-14, their faulty arguments about pretextual decisions. *See supra* Parts III, IV.A; Defs' MSJ 49-51.

Plaintiffs' fourth and fifth assertions contend that ███████████████████████ ████████ although "NS concerns are not synonymous with grounds of ineligibility." Pls' Resp. 12; *see id.* at 15-16. These assertions amount to another instance of Plaintiffs mistaking correlation for causation. Defendants' statistics expert Dr. Siskin explained that "[j]ust because two factors are correlated does not mean that one causes the other." Defs' Ex. 11 at 5; *see also id.* at 7, 109-10. There are scientific methods for determining whether correlation is caused by certain factors, *cf. id.* at 19, 23-28, 111-30, but Plaintiffs offered no such evidence. In particular, they cite no data regarding the bases on which the applications in question were actually denied. Without excluding the possibility that the stated grounds were valid, Plaintiffs' correlation argument is meaningless.

## 2. CARRP is Consistent with Regulations.

In asserting CARRP violates 8 C.F.R. § 103.2(b)(16), which requires disclosure of the intended basis for the agency's decision, Pls' Resp. 17-20, Plaintiffs concoct a new claim not in their operative

---

[10] CARRP incorporates the general abeyance regulation, 8 C.F.R. § 103.2(b)(18), which provides for limited withholding of adjudication. Defs' MSJ 35-36. But the regulation pre-dates CARRP, *see* 53 Fed. Reg. 26034 (July 11, 1988), so legislation authorizing such abeyances for CARRP was unnecessary.

complaint, ECF 47. It fails in any event. Defendants acknowledged their limited disclosure requirements, including those under § 103.2(b)(16), in denying applications, and explained that this regulation does not require disclosure of considerations tangential to the basis for decision. Defs' MSJ 36-37, 58. In arguing about the meaning of language in the regulation, Plaintiffs ignore portions limiting the disclosure requirement to the grounds on which a decision is "based," while turning their blinders toward what USCIS "considered." *Id.* at 17-18. Clearly, though, if the regulation intended that USCIS must disclose everything it considered in deciding an application, it would say so—but does not. Instead, the regulation requires disclosure of only information on which decisions are "based." 8 C.F.R. § 103.2(b)(16)(i), (ii). [11] Plaintiffs also replay their faulty pretext argument, Pls' Resp. 18-20, which assumes that USCIS' consideration of *any* information in CARRP is always the basis for decision such that the regulation requires disclosure of all CARRP-related information. Plaintiffs do not and cannot show that this is uniformly true, as they must, Defs' MSJ 38, even assuming that might occur in a single instance. Their inability to show CARRP decisions are uniformly and unlawfully pretextual is particularly true given the recognized ability of agencies to have unstated reasons (including national security reasons) for their decisions. *See Dep't of Com.*, 139 S. Ct. at 2573, 2575. [12]

### 3. Plaintiffs Cannot Assert a Blanket Unlawful Delay Claim.

Regarding delay issues, Plaintiffs mischaracterize the Court's certification order, asserting that it ruled a delay claim is "amenable to class treatment." Pls' Resp. 22 (citing ECF 69, at 25). There was no such ruling; in fact, the Court rejected Defendants' argument that alleged delay was at the heart of the case: "Plaintiffs' claim is that CARRP is an unlawful program. A byproduct of CARRP's alleged unlawful program is unreasonable delays." ECF 69, at 25; *see also id.* at 19; ECF 58, at 8, 23, 26-27 (Plaintiffs similarly describing their suit). Plaintiffs now assert that alleged delay is not a byproduct of other alleged wrongs, but a wrong in itself. As previously explained, Defs' MSJ 64-66, this generalized

---

[11] Plaintiffs' argument, in the analogous context of prosecutorial discretion, would appear to require all uncharged violations and related investigative material to be disclosed (even investigative material unnecessary to sustain a charged offense), opening to question the motives for pursuing only lesser offenses or unrelated violations.

[12] Judicial review of a final denial is available, Defs' MSJ 30, 32, and in such proceedings an unsuccessful applicant may claim that an agency decision is unlawfully pretextual. Contrary to Plaintiffs' view, Pls' Resp. 5, this is true even where USCIS denies adjustment of status purportedly in the exercise of discretion, because discretion cannot be exercised unlawfully. *Cf. Rivera-Peraza v. Holder*, 684 F.3d 906, 909 (9th Cir. 2012).

delay claim is not cognizable, and the cases Plaintiffs cite are inapposite. One explains that common issues *aside from delay* may warrant class treatment, even while "varying times of delay . . . could influence the type of relief [to be] grant[ed]." *Nio v. United States DHS*, 323 F.R.D. 28, 32 n.2 (D.D.C. 2017). Delay of specific applications is not at issue here, with named plaintiffs' applications decided.[13]

### 4. CARRP is Neither a Legislative Rule nor Arbitrary and Capricious.

Plaintiffs' notice-and-comment claim turns on whether CARRP implements extra-statutory eligibility criteria. Pls' Resp. 23. As again shown above, *see supra* Part IV.B.1, it does not, and therefore the claim fails. Defendants have shown USCIS' considerations in deciding to implement CARRP were more than adequate. Defs' MSJ 61-63; *see also FCC v. Prometheus Radio Proj.*, 141 S. Ct. 1151, 1160 (2021) ("[t]he APA imposes no general obligation on agencies to conduct or commission their own empirical or statistical studies"). Moreover, as the Supreme Court just reiterated, "a reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 141 S. Ct. 1669, 1679 (2021) (internal marks and citation omitted). Especially given this standard, Plaintiffs fail to show that USCIS' implementation of CARRP was deficient under the APA. Their claim that CARRP "impermissibly departed *sub silentio* from prior policy," Pls' Resp. 25, is contradicted by CARRP's express rescission of prior procedures, *see* Defs' Ex. 1 at CAR000002-3. Plaintiffs incorrectly claim the implementing document did not explain the change. *Id.* at CAR000003; *see also* Defs' MSJ 61-62.

Aside from the unpersuasiveness of their APA showing, Plaintiffs fail to remedy their improper resort to extra-record evidence. Defs' MSJ 60-61. The Court should disregard Plaintiffs' arguments relying on such evidence. Pls' MSJ 38-39, 41-43; Pls' Resp. 26-27. A party seeking to place extra-record materials before the Court bears a "heavy burden." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). They must show the material is "necessary to adequately review" the challenged agency decision. *Id.* Even then, the Court may only consider the material for limited purposes;

---

[13] While Plaintiffs also assert that CARRP cases generally take longer to adjudicate than non-CARRP cases, Pls' Resp. 21, they fail to show that another process for vetting NS concerns would be any faster. Nor do they show that applications with NS concerns would have the same time track and outcome as applications without those concerns if handled on the same track, outside CARRP. As for the assertion regarding 6,000 applications having been "swiftly adjudicated" in response to the present lawsuit, statistics expert Dr. Siskin determined that "there is no statistical evidence that USCIS shortened the adjudication processing time as a result of th[is] lawsuit." Defs' Ex. 56 at 52 (Siskin responsive report); *see also id.* at 52-55.

most importantly, the party must demonstrate that consideration of the extra-record document is not sought for the purpose of attacking "the wisdom of the agency's action." *San Luis & Delta-Mendota Water Authority v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014). Yet Plaintiffs continue to treat the bar on extra-record evidence as an inconvenience they are free to ignore simply by citing an exception. Pls' MSJ 38 n.20; Pls' Resp. 25. That is not the law. *See Nw. Env't Advocs. v. United States Fish & Wildlife Serv.*, No. 3:18-CV-01420-AC, 2019 WL 6977406, at *7-9 (D. Or. Dec. 20, 2019) (rejecting this "liberal view"). "[B]efore supplemental material may be considered under any of these exceptions, a plaintiff must first make a showing that the record is inadequate." *Univ. of Wash. v. Sebelius*, No. C11-625RSM, 2011 WL 6447806, at *2-3 (W.D. Wash. Dec. 22, 2011); *see also Animal Defense Counsel v. Hodel*, 840 F.2d 1432, 1436-37 (9th Cir. 1988), *amended*, 867 F.2d 1244 (9th Cir. 1989). The Court should not abide Plaintiffs' failure to do so or their unilateral decision about what extra-record materials will be considered and for what purposes. Their extra-record references for their APA arguments should be disregarded.[14]

## V.   SUMMARY JUDGMENT FOR DEFENDANTS IS WARRANTED ON THE NATURALIZATION CLASS' PROCEDURAL DUE PROCESS CLAIM.

Defendants' cross-motion established that the only entity with an existing procedural due process claim, the Naturalization Class, has no protected interest to which the analysis in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), applies. Defs' MSJ 66-68. The only protected interest is in lawful adjudication of naturalization applications; Plaintiffs fail to show the necessary elements of a violation as to all class members. *Id.* at 67-68. Even assuming *Mathews* applies, Defendants showed that the balance of factors weighs against notifying applicants of their referral to CARRP. *Id.* at 68-70.

Rather than attempt to identify a specific protected interest held by Plaintiffs and to which a *Mathews* analysis would apply, Plaintiffs generally assert that "the Ninth Circuit routinely assesses the adequacy of immigration procedures under *Mathews*." Pls' Resp. 27. But two of their three cited cases recognize that a sufficiently protected interest is a prerequisite to assess whether administrative procedures are constitutionally adequate (the third did not discuss the matter). *See Zerezghi v. USCIS*, 955 F.3d 802, 808, 810 (9th Cir. 2020); *Ching v. Mayorkas*, 725 F.3d 1149, 1155, 1157 (9th Cir. 2013).

---

[14]   The remedy for a record inadequately explaining agency action is to seek further explanation from the agency. *See Moore v. United States*, No. C13-2063RAJ, 2015 WL 1510007, at *10 (W.D. Wash. Apr. 1, 2015). If Plaintiffs had filed a timely motion showing record inadequacy, the Court could have considered whether further agency explanation was needed.

Both cases concerned the statutory right of U.S. citizens to visa petitions for their eligible non-citizen spouses. By contrast, this Court already recognized the limited nature of Plaintiffs' protected interest – it does not extend to naturalization itself but only to the lawful adjudication of naturalization applications. Defs' Ex. 31 at 16 (citing *Brown v. Holder*, 763 F.3d 1141, 1147 (9th Cir. 2014)). That distinction is important because constitutionalizing the administrative procedures for naturalization would contradict the principle that "[a]n alien who seeks political rights as a member of this Nation can rightfully obtain them only upon terms and conditions specified by Congress" – including, logically, statutorily authorized administrative procedures. *INS v. Pangilinan*, 486 U.S. 875, 884 (1988) (internal marks and citation omitted); *see also* 8 U.S.C. § 1421(d). The remedy for prejudicial flaws in those procedures is for an unsuccessful naturalization applicant to seek judicial review under 8 U.S.C. § 1421(c). *Cf. Aparicio v. Blakeway*, 302 F.3d 437, 447 (5th Cir. 2002) (statute provides "complete and wholly adequate review").

Plaintiffs also assert that Defendants "read *Brown* too narrowly," Pls' Resp. 30, but fail to identify anything in the case recognizing a protected interest subject to a *Mathews* analysis. Instead, they explain that, unlike in *Brown*, they are challenging certain administrative procedures. *Id.* That may be true, but it does not show that *Brown* recognized any protected interest that permits such challenges under *Mathews*. Even assuming *Mathews* applies, Plaintiffs' showing fails. They claim *timely* adjudication is part of their protected interest, *id.* at 28, but fail to refer to anything in *Brown* supporting the proposition – though they recognize it is their only authority for asserting an interest protected by due process, *id.* at 29-30.

Regarding the risk of erroneous deprivation, Plaintiffs' argument depends on a critical but mistaken assumption that USCIS' decisions at the end of the CARRP process are based on undisclosed information. Pls' Resp. 28-29. It is only on this assumption that their citations to *Greene* and *Zerezghi* could be relevant. *See id.*; *see also Greene v. McElroy*, 360 U.S. 474, 493 (1959); *Zerezghi*, 955 F.3d at 809. Notably, the Supreme Court distinguished *Greene*, where the government relied on undisclosed information, because it concerned an actual determination whether to grant a security clearance, and not a government inquiry. *See Hannah v. Larche*, 363 U.S. 420, 452 (1960). The Court enlarged on this distinction in *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984), following *Hannah* and ruling that due process did not apply to agency investigations because they do not adjudicate legal rights—even

1   when investigations concern possible securities law violations. These decisions show that *Greene* and

2   *Zerezghi* are irrelevant here because USCIS, although it may have considered derogatory information in

3   its inquiries under CARRP, does not base decisions on such information unless authorized (in which

4   event it discloses the information). Defs' MSJ 14, 19-20; 8 C.F.R. §§ 103.2(b)(16), 103.3(a)(1)(i); *cf.*

5   *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489-91 (1999) (explaining, partly by

6   analogy to criminal prosecutorial discretion, general unreviewability of removal charging decisions).

7   Plaintiffs incorrectly assert that Defendants "admit the actual reason that Plaintiffs' applications are

8   denied is the underlying unresolved NS concern." Pls' Resp. 29 (citing Defs' MSJ 19). While

9   information revealed during CARRP may influence a decision without providing the stated reasons, that

10  feature is consistent with the permissible existence under *Dep't of Com.*, 139 S. Ct. at 2573, 2575, of both

11  stated and unstated reasons for agency decisions, and with the fact, implicit in *Jerry T. O'Brien, Inc.*, that

12  investigations possibly having some effect on subsequent proceedings does not import due process rights

13  into agency inquiries.

14        Regarding the third prong of *Mathews*, Plaintiffs fail to respond to the Court having already

15  effectively ruled that there would be an overwhelming cost to the government if it were required to

16  disclose derogatory information considered in CARRP. *Compare* Pls' Resp. 29 *with* Defs' MSJ 70.

17  Instead, Plaintiffs again cite inapposite precedents regarding the need to disclose information on which

18  the government relies to make a decision, rather than information simply considered in the course of

19  inquiries but not forming the basis for decision. Pls' Resp. 29 (citing *Kaur v. Holder*, 561 F.3d 957 (9th

20  Cir. 2009), and *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995)).

21        Plaintiffs cannot raise a genuine issue under *Mathews*, even assuming that balancing assessment

22  is appropriate here (which it is not). As their last resort, Plaintiffs assert that they should prevail because

23  they have established under *Brown* that CARRP systemically interferes with naturalization applications

24  intentionally or with deliberate indifference, based on denial of applications and delays in adjudication.

25  Pls' Resp. 30. This assertion fails too. First, Plaintiffs make no showing that all Naturalization Class

26  members are eligible for naturalization, as they must to benefit from *Brown*. Defs' MSJ 68. Second,

27  naturalization applications subject to CARRP were approved at a rate of 81.69% during FY 2013-19,

28

Defs' Ex. 11 at 50, and Plaintiffs fail to prove that any individual was wrongly denied naturalization. CARRP therefore cannot be said to result in systemic denials. Third, while naturalization applications subject to CARRP are adjudicated more slowly than other naturalization applications, most decisions are made by the second fiscal year after filing, *id.* at 58. Plaintiffs also fail to show there is anything about CARRP – as opposed to other legitimate processes for vetting possible NS concerns – that unreasonably prolongs the adjudications period. Moreover, the reasonableness of any delay is necessarily case-specific, and Plaintiffs fail to show otherwise. In sum, there is no merit to the procedural due process claim.

## VI.    SUMMARY JUDGMENT AGAINST PLAINTIFFS IS WARRANTED ON THEIR REMAINING CLAIMS.

Plaintiffs incorrectly assert that Defendants have not moved for summary judgment on all claims, even while citing Defendants' express assertion. Pls' Resp. 6; *see* Defs' MSJ 38 n.3. They then ignore or dismiss Defendants' analyses as to all but four claims. While Plaintiffs' failure to respond does not alter the summary judgment standards, *see supra* note 7, Defendants meet those standards on all claims for the reasons set in their motion. Defendants have shown they merit summary judgment on all theories within Plaintiffs' Sixth Claim, regarding equal protection. Defs' MSJ 39, 45 n.6. Defendants' showing regarding all equal protection theories also addressed Plaintiffs' First through Third Claims regarding executive orders, as Defendants stated. Defs' MSJ 45 n.6. Regarding the Fourth Claim for procedural due process, Plaintiffs acknowledge that summary judgment is at issue, and Defendants cited the relevant standards for the Fifth Claim, regarding substantive due process, which require a protected interest, as does the Fourth Claim. Defs' MSJ 38 n.3 (citing *Hotop v. City of San Jose*, 982 F.3d 710, 718 (9th Cir. 2020), *petition for cert. filed* (U.S. June 16, 2021) (No. 20-1755)). Finally, Plaintiffs note that summary judgment is at issue on the Eighth and Ninth Claims regarding the APA, and the Seventh and Tenth Claims are subsumed therein, as Defendants asserted. Defs' MSJ 66 n.12. The Court indicated as much regarding the Seventh Claim, Defs' Ex. 31 at 17-18, and similar reasoning pertains to the Tenth Claim, *cf. id.* at 14.

## VII.    PLAINTIFFS' EVIDENTIARY CHALLENGES LACK MERIT.

Plaintiffs "move to strike…the rebuttal report of Kelli Ann Burriesci" that Defendants transmitted on July 10, 2020 in "rebuttal" to Plaintiffs' experts. Pls' Resp. 40. Ignoring both innumerable cites to

Plaintiffs' experts Marc Sageman, Jeffrey Danik and Christopher Burbank (Defs' Ex. 10 ¶¶7-11, 14, 19, 20, 29, 31-32, 34-35, 37, 41, 44, 49, 50-52, 57, 59, 61, 65-67), and the fact that Ms. Burriesci's entire report responds to these experts, Plaintiffs claim Defendants did not present the report to rebut Plaintiffs' experts, but only as "new, affirmative evidence." Pls' Resp. 40. The Burriesci expert report, however, clearly rebuts Plaintiffs' experts, so the request to strike is groundless.

Similarly, Plaintiffs "move to strike" certain exhibits of Defendants containing portions of the 2020 CARRP training. Pls' Resp. 38-40. Plaintiffs' arguments are unavailing. First, their attempt to frame the updated training modules as an untimely "revised disclosure" designed "to add" to Defendants' "advantage" in this litigation is as meritless as it is myopic. Pursuant to Plaintiffs' own RFPs, Defendants fulfilled an obligation to produce responsive discovery pertaining to the CARRP policy. Defs' Ex. 57, Pls' First Request for Production, at Nos. 4-9.[15] Further, in the last six years, USCIS updated the CARRP training modules three times (2015, 2017, and 2020) and the timing of the most recent update was consistent with past practice. And, of course, it makes little sense for this Court to evaluate the legality of an outdated CARRP training module, rather than the most current version. Plaintiffs' argument is essentially a contention that the agency should suspend its normal operations during the pendency of a lawsuit if aspects of those operations are disadvantageous to their claims. Even more, as record evidence establishes, the training is never static and "has been strengthened over time . . . as a result of the feedback [the] training office receives from numerous channels." ECF 518, Quinn Decl. ¶41. The 2020 version of the training represents a continuation of the agency's effort to improve the resources it publishes for its personnel—which, as here, are often vital to the effective execution of their responsibilities. Finally, contrary to Plaintiffs' assertion that the 2020 training is an effort to "sanitize" specific slides, the update is consistent with core content but alters the curriculum structure and adds

---

[15] With respect to timeliness, Plaintiffs' assertion that discovery closed on November 29, 2019 is misleading and irrelevant. Indeed, the parties continued certain aspects of discovery through the spring of 2021. Plaintiffs also updated their disclosures in October of 2020. See Defs' Ex. 59, Pls' 4th Supp. Discls. But the cutoff date for document discovery is largely irrelevant because Defendants produced the 2020 trainings in accord with their Rule 26 duty to supplement. Plaintiffs were apprised in the early fall of 2020 that an updated version of the training had been issued and the parties communicated on several occasions concerning its production with Plaintiffs voicing no objection, see Defs' Ex. 60, counsel's email to Plaintiffs, and they brought no related motion before this court, as they had done in the fall of 2020 when they moved to compel additional discovery from Defendants after claiming that they would be prejudiced without it. See ECF 424 at 2.

numerous practical exercises and fact patterns to assist officers in applying CARRP policies.[16] ECF 518, Quinn Decl. ¶¶17, 19.

Finally, Plaintiffs charge that Mr. Russell Webb, ECF 522, makes "undisclosed claims about processing times without citing any evidence." Pls' Resp. 6. But this USCIS official—whose declaration discusses the very pre-screening process he oversees—was named in Defendants' disclosures years ago and his testimony closely tracks that disclosure. *See* Defs' Ex. 58, Defs' 3rd Supp. Discls at 2. Plaintiffs simply elected not to depose him.

## VIII. CONCLUSION

The Court should grant Defendants' cross-motion for summary judgment motion and enter judgment for Defendants on all claims.

---

[16] Plaintiffs also contend that Defendants violate the sword/shield doctrine by using withheld third-agency information to claim that all CARRP NS concern designations are legitimate, but their argument is misguided and misunderstands Defendants' factual statements. Pls' Resp. 37. Defendants are not using any privileged information as a sword in these instances. Although Defendants have invoked the privilege to protect the identities of agencies and specific information obtained from them regarding particular applicants, that information is not being used to make affirmative arguments. Rather, the information Plaintiffs attempt to place under question concerns general practices of the CARRP process, i.e., the fact that USCIS is statutorily obligated to conduct security background checks, most of its vetting arises from those security checks, it has discussions with third agencies to assist in determining whether an applicant should be referred to CARRP and, finally, its CARRP vetting assesses the extent to which NS information may bear on eligibility. These practices have been disclosed and are well known to Plaintiffs as core functions of the CARRP process. As Defendants have not shielded this generalized information, their decision to avail themselves of it in support of their motion for summary judgment is proper.

Dated:  July 2, 2021                                      Respectfully  submitted,

BRIAN M. BOYNTON                                         LINDSAY M. MURPHY
Acting  Assistant Attorney General                       Senior  Counsel for National Security
Civil  Division                                          Office of Immigration  Litigation
U.S. Department of Justice

                                                         /s/ W. Manning Evans
AUGUST FLENTJE                                           W. MANNING EVANS
Special  Counsel                                         Senior Litigation  Counsel
Civil  Division                                          Office of Immigration  Litigation

ETHAN B. KANTER                                          /s/ Brendan Moore
Chief, National Security Unit                            BRENDAN T. MOORE
Office of Immigration  Litigation                        Trial Attorney
Civil  Division                                          Office of Immigration  Litigation

TESSA M. GORMAN                                          JESSE L. BUSEN
Acting United States Attorney                            Counsel for National Security
                                                         Office of Immigration  Litigation
BRIAN C. KIPNIS
Assistant United States Attorney                         VICTORIA M. BRAGA
Western District of Washington                           Trial Attorney
                                                         Office of Immigration  Litigation

LEON B. TARANTO                                          ANNE P. DONOHUE
Trial Attorney                                           Counsel for National Security
Torts Branch                                             Office of Immigration  Litigation

                                                         ANDREW C. BRINKMAN
                                                         Senior  Counsel for National Security
                                                         Office of Immigration  Litigation

                                                         *Counsel for Defendants*

Defs' Reply on Cross-Summ. J.;
Case No. C17-00094

U.S. Dep't Of Justice, OIL/A, 450 5th St. NW,
Washington DC 20001; 202-616-2186

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 2nd day of July 2021, I directed that the foregoing document be hand delivered to the Clerk of the Court, and electronically transmitted to Plaintiffs' counsel, in accordance with Western District of Washington General Order No. 03-21.

*/s/ W. Manning Evans*
W. MANNING EVANS
Senior Litigation Counsel
Office of Immigration Litigation – Appellate Section