1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDIQAFAR WAGAFE, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>JOSEPH R. BIDEN, President of the United States, et al.,<br><br>                    Defendants. | CASE NO. 17-CV-00094-LK<br><br>ORDER REGARDING MATERIAL TO BE SEALED AND DESIGNATED AS HSD |

Currently before the Court is the parties' consolidated response regarding material to be sealed or designated as highly sensitive documents ("HSD"). Dkt. No. 609; *see* Dkt. No. 587. Having reviewed the contents of the disputed documents (numbering well over 7,000 pages) and the parties' respective arguments and proposals, the Court directs the parties to comply with the attached Appendix summarizing its specific rulings as to each document.

## I.    BACKGROUND

### A.    Procedural History

Plaintiffs initiated this class action in early 2017 against the United States Citizenship and

1    Immigration Services ("USCIS"), a component of the Department of Homeland Security ("DHS"),

2    as well as several government officials. Dkt. Nos. 1, 17. Plaintiffs seek declaratory and injunctive

3    relief related to USCIS' Controlled Application Review and Resolution Program ("CARRP"), a

4    national security vetting program which affects the evaluation of some individuals' applications

5    for immigration benefits. *See generally* Dkt. No. 47. In June 2017, the Court certified two

6    nationwide classes to be represented by the five named Plaintiffs in this case: (1) individuals with

7    naturalization applications subjected to CARRP or a successor program whose applications have

8    been pending for more than six months (the "Naturalization Class"); and (2) individuals with

9    adjustment of status applications subjected to CARRP or a successor program whose applications

10   have been pending for more than six months (the "Adjustment Class"). Dkt. No. 49 at 9; Dkt. No.

11   69 at 8, 31.[1]

12        Following a lengthy and contentious discovery period, the parties submitted cross-motions

13   for summary judgment, as well as three motions to exclude expert witnesses. *See* Feb. 25, 2021

14   Minute Entry; Dkt. No. 595 (provisionally redacted summary judgment briefing); Dkt. Nos. 460,

15   463, 471, 475, 477 (motions to exclude expert opinions). This case was then stayed for the first

16   several months of 2022, as Defendants conducted an internal review of CARRP and the parties

17   explored potential settlement. *See* Dkt. Nos. 592, 601. Defendants recently filed a motion for leave

18   to file a motion to dismiss. Dkt. No. 623. These motions remain pending before the Court.

19   **B.    Disputes Regarding Material to Be Sealed, Redacted, or Designated as HSD**

20        1.   Protective Orders

21        Prior to discovery, the Court approved the parties' Stipulated Protective Order. Dkt. No.

22   86; *see* Fed. R. Civ. P. 26(c)(1); LCR 26(c)(2). The Order defines "Confidential Information"

23

24   _____

[1] The parties have agreed to a continuing stay of the Adjustment Class's claims. *See* Dkt. No. 613; Dkt. No. 618 at 1; Dkt. No. 622 at 1.

ORDER REGARDING MATERIAL TO BE SEALED AND DESIGNATED AS HSD - 2

under 16 subcategories of materials including, to name a few, personally identifiable information; information relating to the basis on which Defendants have identified any individual as a "National Security Concern" under CARRP; information related to the content or status of an individual's immigration benefit application to the extent that it is linked to the applicant's identity; information protected by state and federal statutes and regulations; trade secrets and other confidential research, development, and commercial information; non-public proprietary information purchased or obtained from a private entity; any sensitive, but unclassified, information "to include limited official use or for official use only information"; information compiled for law enforcement purposes, "including but not limited to, investigative files and techniques related to the integrity of the legal immigration system, suspected or known fraud, criminal activity, public safety, or national security, and investigative referrals"; information not in the public domain or improperly in the public domain; and medical records. *See* Dkt. No. 86 at 2–3. The Court also issued a Limited Protective Order in May 2018, prohibiting public disclosure of names, "Alien numbers," and the application filing dates of unnamed plaintiffs in the Naturalization and Adjustment Classes. Dkt. No. 183 at 2–3.

Under the Stipulated Protective Order, either party may designate materials as "Confidential Information," but they must "take care to limit any such designation to specific material that qualifies under the appropriate standards," and to do so for "only those parts of [the] material . . . that qualify, so that other portions of the material . . . for which protection is not warranted are not swept unjustifiably within the ambit of th[e] Order." Dkt. No. 86 at 7. If either party seeks to file, discuss, or reference "Confidential Information" on the Court's docket, the Stipulated Protective Order requires that the parties confer "to determine whether the designating party will remove the confidential designation, whether the document can be redacted, or whether a motion to seal or stipulation and proposed order is warranted" pursuant to Local Civil Rule 5(g).

1   *Id.*

2      2.  General Order No. 03-21

3         The Stipulated Protective Order and the usual legal standards are not the only

4 considerations here. During the pendency of the litigation, this district, like many others across the

5 country, entered a General Order directing "all parties to file HSDs outside of the Court's

6 electronic filing system" in light of "recent disclosures of wide-spread breaches of both private

7 sector and government computer systems[.]" *See* Gen. Order No. 03-21 at 1 (issued Mar. 1, 2021).

8 Under the General Order, "[a] document is an HSD if its subject matter renders it of potential value

9 to malicious nation-state actors seeking to harm the interests of the United States." *Id.* This

10 includes, but is not limited to, documents involving "matters of national security; foreign sovereign

11 interests; cybersecurity; intellectual property or trade secrets of value to malicious nation-state

12 actors; terrorism; investigation of public officials; and/or the reputational interests of the United

13 States." *Id.* at 2. Administrative immigration records and sealed filings in most civil cases "are

14 generally not considered HSDs[.]" *Id.* Disputes as to whether a document is an HSD are to be

15 resolved by the presiding judge, who, in making such a determination, "will consider the extent of

16 the domestic or international interests that are implicated." *Id.*

17      3.  The Court's January 31, 2022 Order and the Parties' Joint Response

18        Shortly after reassignment of this case to the undersigned District Judge, the Court struck

19 17 pending motions that either sought to seal materials or requested leave to file "highly sensitive

20 documents." *See* Dec. 20, 2021 Minute Entry (reassigning case); Dkt. No. 587 at 6 (striking Docket

21 Numbers 459, 464, 465, 474, 479, 484, 489, 496, 501, 505, 513, 514, 543, 544, 562, 564, 578).[2]

22

23
24 [2] In light of this Order and Defendants' subsequent filing of a corrected motion and proposed order at Docket Number 578, the Court terminates the parties' Joint Stipulated Motion to Withdraw and Re-File Defendants' Motion to Seal filings related to the summary judgment briefing, pending at Docket Number 577.

ORDER REGARDING MATERIAL TO BE SEALED AND DESIGNATED AS HSD - 4

Rather than untangling the web of back-and-forth motion practice that had transpired, the Court ordered the parties to meet and confer and to file a joint statement consolidating their respective positions on materials for sealing. *See* Dkt. No. 587 at 6–7; Dkt. No. 609. As part of their response, the parties filed a spreadsheet summarizing their respective positions regarding the 185 implicated documents and submitted a flash drive with the relevant materials for the Court's review. Dkt. No. 609 at 2, 36; Dkt. No. 609-1 ("Appendix A").[3] Of those 185 documents, Defendants have agreed that 42 may be publicly filed without redaction. Dkt. No. 609 at 8 n.4.[4] In addition, the parties agree that redaction of certain documents containing personally identifiable information is warranted in accordance with Local Civil Rule 5.2. Dkt. No. 609 at 8 n.3. However, the parties dispute whether, and to what extent, the 143 remaining documents should be disclosed. *See generally* Dkt. No. 609-1.

Among the contested documents are A-File excerpts and CARRP training and guidance materials, which Defendants seek to not file publicly, even in redacted form, Dkt. No. 609 at 8 n.5, as well as motion briefing and supporting documents related to the parties' summary judgment motions and motions to exclude expert testimony, *id.* at 3–6.

(a) *Defendants' General Position*

Defendants seek to protect four general categories of information from public disclosure: (1) information tending to reveal the CARRP status of specific individuals; (2) information describing USCIS' internal processes for handling CARRP cases; (3) information regarding USCIS and third-party law enforcement agency investigative processes; and (4) law-enforcement

---

[3] The Court's reference to "Document Numbers" or "Doc. Nos." herein corresponds with the numbering listed in Appendix A.

[4] Defendants list 41 documents that may be filed publicly but omit Document Number 51, which they indicate in Appendix A can be filed publicly without redaction. *Compare* Dkt. No. 609 at 8 n.4; Dkt. No. 609-1 at 7, *with* Dkt. No. 609 at 16–17 (including Doc. No. 51 in a list of exhibits including statistical data that they request to be sealed).

sensitive statistical data related to CARRP cases. Dkt. No. 609 at 8–9; *see also generally* Dkt. No. 609-2 (Declaration of Matthew D. Emrich).

With respect to the first category, Defendants state that they "designated as HSDs all documents that tend to indicate whether a particular individual's application was subject to CARRP, and why the individual was subject to CARRP, because it is national security-related information." Dkt. No. 609 at 9. Defendants are concerned that "publicly disclosing information about whose applications are subject to CARRP and why would necessarily reveal the identities of individuals whom USCIS suspects of presenting threats to national security," including to the suspected individuals themselves. *Id.* at 10.

Second, Defendants seek to protect materials describing USCIS' tools and methods for handling CARRP cases, which primarily consist of "training materials in the form of presentation slides[.]" *Id.* at 13. Defendants contend that these documents "reveal sensitive information showing how USCIS evaluates and makes decisions concerning applications presenting national security concerns" and that "[m]alicious actors privy to such information could learn specific factors USCIS considers in its investigations . . . and better prepare to slip through USCIS' vetting without triggering additional scrutiny." *Id.* Defendants also claim that redacting these materials is an unreasonable alternative and would not benefit the public. *Id.* at 14 ("[M]ost of the text would be shielded, leaving the disclosed, unconnected phrases divorced from context and susceptible to misinterpretation. In many instances, the absence of context would render disclosed portions incomprehensible to an outside observer.").

Third, Defendants seek to seal documents related to USCIS' "investigative processes" because such information "reveals sensitive, internal case-handling procedures that should not be publicly disclosed because public access, in this instance, would jeopardize the integrity of the investigations." *Id.* at 15. Specifically, Defendants maintain that malicious actors could use this

information "to try to evade detection of their organizations, personnel, or activities," and that disclosure could result in law enforcement agencies discontinuing cooperation with USCIS. *Id.*

Last, Defendants wish to keep sealed "a very limited portion of the statistical data related to the processing of CARRP cases that is referenced in briefs related to *Daubert* motions to exclude expert testimony or summary judgment motions, and in deposition transcripts, expert reports, and declarations submitted as exhibits concerning such motions." *Id.* at 16. This statistical data includes the following information:

> the number and percentages of cases referred to or processed through CARRP broken down by each year with specific granularity and details as to the number and percentages of cases referred to CARRP based on information derived from law enforcement investigations of other government agencies that interact with USCIS; data specific to each country based on the applicants' country of birth and nationality; whether the applicant is a known or suspected terrorist ("KST"), a non-KST, or holds another national security concern status that USCIS records in its computerized database for tracking and managing CARRP cases; the specified national security concern status for each applicant, individually and collectively; and the case numbers and referral rates to CARRP, processing times, and adjudication outcomes for each sub-category of cases set out by year, country, and national security concern type and status.

*Id.* at 17. Defendants argue that publicly revealing this "limited" statistical data "could harm the United States and private individuals" because, among other things, knowing "how many applications from certain countries of origin are processed through CARRP could jeopardize U.S.-foreign relations" and also help individuals who pose a national security risk to "evade detection of themselves and their activities." *Id.* at 17–18.

(b) *Plaintiffs' General Position*

Plaintiffs counter that Defendants fail to meet the HSD designation standard set forth in General Order No. 03-21 and have not otherwise provided "compelling reasons" to seal the A-File excerpts in dispute, and that the Court should reject Defendants' vague assertions of national security regarding this category of documents. *Id.* at 20–25; *see, e.g.*, *id.* at 22 ("What Defendants

1    seek to designate as HSD is exactly what the Court's General Order specifically says is not HSD,

2    namely 'administrative immigration records.'"); *id.* at 24–25 ("[W]hat Defendants are really

3    arguing is that the Court should consider all A-Files where applicants are subject to CARRP as

4    presumptively HSD even though the CARRP information is redacted in the A-File.").

5         With respect to the other documents relating to the parties' dispositive motions and motions

6    to exclude expert opinions, Plaintiffs argue that Defendants have failed to meet the standard for

7    sealing because there are no specific and compelling national security reasons for doing so and

8    much of the information is already publicly available. *Id.* at 25–32; *see e.g.*, *id.* at 25 ("Defendants

9    cannot simply rely on broad assertions that the documents they seek to seal would otherwise

10   threaten national security interests."); *id.* at 27 ("Defendants fail to point to a single example of

11   how the dispositive motions and supporting documents reveal sensitive law enforcement

12   techniques or intelligence gathering operations[.]"); *id.* at 29 ("Much of the information that

13   Defendants seek to keep under seal is information that Plaintiffs either obtained via court order,

14   the Freedom of Information Act ('FOIA'), or information that would be subject to FOIA.").

15        And last, Plaintiffs contend that "Defendants fail to meet the applicable [sealing] standard

16   for the statistics discussed in and supporting the dispositive briefs and the *Daubert* motions," and

17   that "Defendants' bare assertions simply cannot overcome the public's right to access court records

18   on a dispositive motion." *Id.* at 32–33.

19                          **II.   DISCUSSION**

20   **A.   Legal Standards**

21        Courts recognize a "general right to inspect and copy public records and documents,

22   including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172,

23   1178 (9th Cir. 2006) (internal quotation marks omitted) (quoting *Nixon v. Warner Commc'ns, Inc.*,

24   435 U.S. 589, 597 (1978)); *see also Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014)

1    ("Throughout our history, the open courtroom has been a fundamental feature of the American

2    judicial system."). Accordingly, when a district court considers a sealing request, it starts with "a

3    strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*,

4    331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to seal court filings bears the burden of

5    overcoming this presumption by providing "sufficiently compelling reasons for doing so." *Id.*

6          There is an exception to this general presumption of access, however, when the documents

7    are only tangentially related to the merits. In that case, the party seeking to seal the records need

8    only show "good cause." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097–1101,

9    (9th Cir. 2016); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2010)

10   (discussing the two standards governing motions to seal documents). Notably, the more onerous

11   "compelling reasons" test is not limited to motions that are "technically 'dispositive'"; rather, it

12   applies when "the motion is more than tangentially related to the merits of a case." *Ctr. for Auto*

13   *Safety*, 809 F.3d at 1101; *see also id.* at 1098–99 ("Most litigation in a case is not literally

14   'dispositive,' but nevertheless involves important issues and information to which our case law

15   demands the public should have access. . . . [P]lenty of technically nondispositive motions—

16   including routine motions in limine—are strongly correlative to the merits of a case.").

17         The Ninth Circuit has "emphasize[d] the difference between the 'compelling reasons'

18   standard and the 'good cause' standard[.]" *Kamakana*, 447 F.3d at 1180. The "good cause"

19   standard requires the party seeking protection to show "specific prejudice or harm" for each

20   document it seeks to protect. *Foltz*, 331 F.3d at 1130. "[B]road allegations of harm, unsubstantiated

21   by specific examples or articulated reasoning," do not suffice. *Beckman Indus., Inc. v. Int'l Ins.*

22   *Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (internal quotation marks and citation omitted). And a

23   "good cause" showing will not, without more, satisfy the more exacting "compelling reasons" test.

24   *Kamakana*, 447 F.3d at 1180. Under this higher "compelling reasons" standard, the Court "may

seal records only when it finds a compelling reason and articulates the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. for Auto Safety*, 809 F.3d at 1096–97 (cleaned up). Those compelling reasons must "outweigh the general history of access and the public policies favoring disclosure[.]" *Kamakana*, 447 F.3d at 1178–79. This is achieved when, for example, a court filing might "become a vehicle for improper purposes," *Nixon*, 435 U.S. at 598, or be used "to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets," *Kamakana*, 447 F.3d at 1179; *see also Oliner*, 745 F.3d at 1026–27 (party's desire to avoid embarrassment or annoyance and prevent an undue burden on his professional endeavors was not a "compelling reason").

National security concerns can also provide a compelling reason "for shrouding in secrecy even documents once in the public domain." *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of the Navy*, 860 F.3d 1244, 1262 (9th Cir. 2017). However, it is not enough that documents merely implicate national security "in some vague sense." *Id.* Moreover, "[t]hose situations, which often involve national security state secrets and other highly sensitive information, are few and far between; even when such rare circumstances arise, judges must minimize the extent of sealed proceedings and implement all feasible alternatives to minimize the risk of unnecessary closure." *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, No. SACV-16-00300-CJC (RAOx), 2017 WL 2806897, at *5 (C.D. Cal. Mar. 30, 2017) (cleaned up). The mere fact that disclosure of records "may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179.

Additionally, in the Western District of Washington, parties moving to seal documents must comply with the procedures established by Local Civil Rule 5(g). Under that rule, the party who designates a document confidential must provide a "specific statement of the applicable legal

1    standard and the reasons for keeping a document under seal," with an explanation of: "(i) the

2    legitimate private or public interests that warrant the relief sought; (ii) the injury that will result if

3    the relief sought is not granted; and (iii) why a less restrictive alternative to the relief sought is not

4    sufficient." LCR 5(g)(3)(B). Where, as here, the parties have entered into a stipulated protective

5    order, "a party wishing to file a confidential document it obtained from another party in discovery

6    may file a motion to seal," and the "party who designated the document confidential must satisfy"

7    the above showing in its response to the motion. *Id.* This rule provides that "[o]nly in rare

8    circumstances should a party file a motion, opposition, or reply under seal." LCR 5(g)(5). In the

9    event that the court denies a motion to seal, the clerk will unseal the relevant document(s) unless

10   "(1) the court orders otherwise, or (2) the party who is relying on the sealed document requests in

11   the motion to seal or response that, if the motion to seal is denied, the court withdraw the document

12   from the record rather than unseal it." LCR 5(g)(6). If a document is withdrawn for this reason,

13   "the parties shall not refer to it in any pleadings, motions or other filings, and the court will not

14   consider it." *Id.*

15   **B.    None of the Disputed Documents Qualify as HSDs Under General Order No. 03-21**

16            As an initial matter, the Court finds that Defendants have failed to show that the subject

17   matter of any of the disputed documents (other than the Deficient Submissions, which the Court

18   does not consider at this time—see *infra* note 5) implicate domestic or international interests to

19   the extent that they must be kept off the docket entirely, even if filed under seal. *See generally*

20   Gen. Order No. 03-21. In order for a document to be considered an HSD, its subject matter must

21   be of "potential value to malicious nation-state actors seeking to harm the interests of the United

22   States." *Id.* at 1. And while the General Order directs courts to consider whether a potential HSD

23   involves matters of national security, terrorism, and/or the reputational interests of the United

24   States, *id.* at 1–2, administrative immigration records and sealed filings in most civil cases are

1    generally not considered HSDs, *id.* at 2. Here, the Court finds that the subject matter of the A-File

2    excerpts designated by Defendants as HSD, *see* Dkt. No. 609 at 12 (citing Doc. Nos. 2, 4–10, 18–

3    23), do not meet this high bar. *See, e.g.*, *CommScope, Inc. v. Rosenberger Tech. (Kunshan) Co.*,

4    No. 19-CV-15962-MCA-LDW, 2021 WL 365168, at *2–3 (D.N.J. Feb. 2, 2021). That is not to

5    say that such documents should not be sealed. Rather, the implied national security and terrorism

6    matters Defendants point to are simply too attenuated from the actual contents of the immigration

7    files to be considered HSDs under the General Order.[5]

8        Accordingly, the Court will analyze Defendants' requests related to these documents under

9    the procedures set forth in the Court's local rules and CM/ECF filing procedures, including those

10   for filing documents under seal.

11   **C.   Certain Redactions Are Necessary for Any Filings on the Public Docket**

12       The Court notes that parties must "refrain from including, or shall partially redact where

13   inclusion is necessary, . . . personal data identifiers from all documents filed with the court or used

14   as exhibits in any hearing or at trial," such as (1) dates of birth; (2) names of minor children;

15   (3) social security numbers and taxpayer-identification numbers; (4) financial accounting

16   information; and (5) passport numbers and driver license numbers. LCR 5.2(a). In addition, "due

17   to the prevalence of sensitive information and the volume of filings" in most immigration cases,

18   parties ordinarily "must redact all personal information in accordance with LCR 5.2(a) or move to

19   file the document under seal in accordance with LCR 5(g)" when separately filing any excerpt of

20

21   ─────────────────────────
     [5] Defendants filed numerous documents with no easily ascertainable proposed redactions (collectively, the "Deficient
22   Submissions"). These submissions consist of (1) "public" versions of the documents with redactions and (2) non-
     public versions that do not contain any highlights or other indicators of proposed redacted text. The Court has already
23   reviewed thousands of pages to resolve the parties' disputes over sealing and redactions, and declines to engage in the
     burdensome and inefficient exercise of comparing the public and sealed versions of the Deficient Submissions side-
     by-side to discern which words Defendants wish to redact. Accordingly, as indicated in the attached Appendix, the
24   Court defers ruling on these submissions and orders Defendants to provide a version of each of these documents with
     proposed redactions highlighted so Court can efficiently identify their proposed redactions.

1   the administrative record. LCR 5.2(c); *see also* LCR 5(g)(1)(B) ("Parties must protect sensitive

2   information by redacting sensitive information (including, but not limited to, the mandatory

3   redactions of LCR 5.2) that the court does not need to consider.").

4   To the extent that documents not currently on the public docket will be filed, unsealed, or

5   unredacted as a result of this Order, and unless the Court orders otherwise, the parties must strictly

6   comply with the local rules and the Federal Rules of Civil Procedure as to redactions necessary to

7   protect personally identifiable information such as A-Numbers and dates of birth. The Court also

8   directs the parties to pay particular care to redacting other sensitive information, including names,

9   for individuals not party to this suit if the Court does not need to consider that information.

10  **D.      Defendants Agree 42 Documents May Be Filed on the Docket Without Redaction**

11  As previously mentioned, Defendants agree that 42 documents currently filed under seal

12  or previously designated as HSD may be filed publicly without redactions. These are Document

13  Numbers: 11 (HSD), 30, 34, 39, 47, 50, 51, 54, 65, 69, 70, 72, 77–80, 83, 96, 98, 100, 105, 106,

14  117, 118, 127, 131, 133, 135, 138, 141, 144, 145, 147, 157, 162, 167, 174, 176, 177, 180, 183,

15  184. The parties shall file these documents in accordance with the Court's directives below.

16  **E.      The Compelling Reasons Standard Applies to the Remaining Disputed Documents**

17  For the remainder of the documents, the initial inquiry is whether the good cause or

18  compelling reasons standard for sealing applies. Defendants frame their arguments exclusively

19  under the compelling reasons standard. *See e.g.*, Dkt. No. 609 at 8 ("[C]ompelling reasons exist to

20  keep the remaining information sealed."). Plaintiffs, on the other hand, maintain that "the standard

21  to seal the *Daubert* motions is 'good cause,' but the 'compelling reasons' standard applies to the

22  summary judgment briefs and supporting documents." *Id.* at 20 n.8.

23  While it is true that the *Daubert* motions are not "literally dispositive," the Court finds that

24  these motions and their supporting documents are "strongly correlative to the merits" of this case,

1    and that the compelling reasons standard therefore applies. *Ctr. for Auto Safety*, 809 F.3d at 1098–

2    99; *see also In re Midland Nat'l Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1120–21

3    (9th Cir. 2012) (per curiam) (applying "compelling reasons" standard to *Daubert* motions

4    submitted "in connection with" motions for summary judgment). In addition, in several instances,

5    the same documents are attached to both the motions to exclude expert opinions and the parties'

6    summary judgment motions, requiring the Court's review in both the dispositive and "non-

7    dispositive" contexts. *See, e.g.*, Doc. Nos. 31 & 185, 32 & 102, 41 & 122, 44 & 121, 55 & 74.

8            Accordingly, the Court applies the compelling reasons standard throughout.[6]

9    **F.    Defendants' Sealing and Redaction Requests for the Remaining Documents Are Overbroad**

10           Although CARRP, by definition, involves matters of national security, not every document

11   concerning CARRP contains information so sensitive that a compelling reason exists to keep the

12   entirety of its contents under seal. For example, and despite Defendants' arguments to the contrary,

13   highly generalized information regarding the operational mechanics of CARRP or statistical

14   overviews of the program do not necessarily outweigh the presumption of public access to court

15   documents. In contrast, discrete and granular applications of CARRP and information revealing

16   specific, sensitive national security indicators, fields, or "red flags" may overcome this

17   presumption where disclosure could change an applicant's behavior or divulge sensitive

18   information regarding the Government's internal databases.

19           Guided by these overarching principles, the Court addresses each category of documents

20   in order to further explain its specific rulings in the attached Appendix.

21

22

23   ───────────
     [6] Defendants claim that it is law of the case that disclosure of certain law enforcement information would harm national security. Dkt. No. 609 at 16. This contention is misplaced. The Court reached this finding when ruling on a discovery motion (a motion to compel production of documents without redaction) applying the much more lenient "good cause" standard. *See* Dkt. No. 274; Fed. R. Civ. P. 26. Nowhere in the Court's opinion does it hold that Defendants have

24   compelling reasons to withhold such law enforcement information from Plaintiffs.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1.  <u>A-File Excerpts and General Information Regarding Named Plaintiffs' CARRP</u>
    <u>Status</u>

Several of the disputed documents constitute excerpts of the named Plaintiffs' A-Files or otherwise generally indicate whether named Plaintiffs have been subjected to CARRP. *See, e.g.*, Doc. Nos. 2, 4–10 (A-File excerpts); Doc. No. 24 (declaration summarizing named Plaintiffs' CARRP status).[7] The Court finds that compelling reasons exist to file these documents under seal only to the extent that they include specific applications of CARRP to the named Plaintiffs or sensitive information regarding specific indicators or database fields. However, Defendants have not satisfied the compelling reasons standard with respect to A-File excerpts that are just that, i.e., those that do not contain any detailed application of CARRP, or for documents that state in highly general terms whether a named Plaintiff has been subjected to CARRP. *See, e.g.*, Doc. Nos. 18–23. Defendants fail to concretely articulate what harm can result from this information.

2.  <u>Training Materials</u>

The next major grouping of documents relates to CARRP training and background materials. *See* Doc. Nos. 71, 81, 82, 84–94, 99, 101, 104, 107–116, 119, 120, 123–126, 128–130, 132, 134. 136, 137, 140, 142, 143, 148, 149, 153–156, 158–161, 165, 166, 168–170, 173, 175. Such materials—many of which are PowerPoint slide decks—are for the most part high-level overviews of the mechanics of CARRP, including definitions of key terms, explanations of statutory applications, and historical context.[8] As Plaintiffs point out, some of this information is already publicly available. *See* Dkt. No. 609 at 30 & n.9 (citing, *inter alia*, 2013 ACLU of Southern California report). In addition, some of these materials are already heavily redacted. *See, e.g.*, Doc.

---

[7] The description for Document Number 20 in Appendix A is "Excerpts from T-file of a Named Plaintiff," which the Court assumes is a typographical error. Dkt. No. 609-1 at 3.

[8] The Court has deferred ruling on several of these and other types of documents due to Defendants' failure to provide sufficiently detailed rationales in support of their sealing requests. *See infra* Conclusion Section 1.a.

1  Nos. 110, 129. Thus, for these types of documents, Defendants have not adequately explained how

2  access to such information could "better prepare" malicious actors "to slip through USCIS' vetting

3  without triggering additional scrutiny." Dkt. No. 609 at 13.

4       Certain training materials, however, are far more specific. These documents offer granular

5  guidance on how USCIS officers evaluate factual scenarios and further reveal law enforcement

6  sensitive indicators that could flag an individual's application for CARRP. *See, e.g.*, Doc. Nos. 81,

7  91. Because such documents, or portions of such documents, might "become a vehicle for

8  improper purposes," *Nixon*, 435 U.S. at 598, the Court finds that Defendants have satisfied the

9  compelling reasons standard for sealing or redacting.

10      3.  Expert Reports and Declarations

11      The parties further dispute whether certain expert reports, expert declarations, and other

12  materials including data about CARRP should be sealed. *See* Doc. Nos. 3, 12, 13, 27, 28, 31, 32,

13  40–42, 44, 45, 55–57, 59, 60, 62–64, 74, 95, 97, 102, 103, 121, 122, 146, 150, 151, 163, 164, 171,

14  181, 185. These documents include statistical analysis, anecdotal narratives, and other information

15  pertaining to CARRP, such as processing times. As with the previous categories, Defendants

16  satisfy the compelling reasons standard for only a portion of the documents they seek to seal or

17  redact. More specifically, the Court finds that detailed explanations of how CARRP is applied on

18  an individualized basis, country-specific data, and law enforcement sensitive national security

19  indicators should remain under seal and redacted on the public docket. Because this information

20  tends to reveal actionable information, the Court finds that the general presumption of public

21  access is outweighed for a selection of these filings.

22      Statistics about CARPP, on the other hand, such as processing times, the number of people

23  subjected to CARPP, and other insights into the way CARPP operates on a general level, do not

24  present the same concern. Because Defendants have not sufficiently demonstrated compelling

1    reasons for why such information should remain sealed, the Court grants Defendants' requests

2    only in part. *Kamakana*, 447 F.3d at 1179.

3          4.   Deposition Excerpts and Non-Expert Declarations

4          For similar reasons, the Court permits only partial sealing and redactions of deposition

5    excerpts and non-expert declarations in Document Numbers 14, 17, 24, 29, 35–37, 43, 48, 52, 53,

6    58, 66–68, 73, 75, 76, 139, 152, 172, 178, 179, 182.

7          5.   Motion Briefing

8          Last, most of the motion briefing constitutes Deficient Submissions. *See, e.g.*, Doc. Nos.

9    1, 15–16, 25, 33, 38, 46, 49; *see also supra* note 5. The few proposed redactions that are easily

10   discernable withhold too much. Consistent with the Court's findings herein, Defendants have

11   demonstrated compelling reasons for some of the provisional redactions, but not all, as indicated

12   in the attached Appendix. *See, e.g.*, Doc. Nos. 26, 61 (motions to exclude expert opinions briefing).

13                              *    *    *    *    *

14          In sum, this litigation encompasses sensitive topics that the Court and the parties have a

15   responsibility to protect from unwarranted disclosure. The Court does not take this task lightly,

16   nor does it discount Defendants' arguments as to why much of this litigation should remain under

17   seal. But, for the reasons discussed above, the countervailing presumption of public access

18   mandates that this litigation proceed unencumbered by the level of secrecy Defendants advocate.

19          Finally, the Court notes that its review of these documents was hampered by unhelpful

20   "blanket" objections by Defendants and similar "blanket" arguments from Plaintiffs. For example:

21          •    Defendants typically offer nothing but broad rationale such as: "Contains law

22               enforcement sensitive A-File information that tends to confirm or deny CARRP

23               status (see Defs' Statement § A); Contains sensitive training material that reveals

24               how USCIS evaluates national security concerns (see Defs' Statement § B);

Contains sensitive information regarding USCIS investigative processes (see Defs' Statement § C)." Dkt. No. 609-1 at 2. These sweeping arguments are not helpful to the Court as it reviews thousands of pages, page by page, redaction by redaction, and must justify each redaction. In addition, for at least 58 documents, Defendants have apparently refused to engage in a meaningful review of the contents, citing "the significant burden on government to review and redact all sensitive national security information in the document." *See, e.g.*, *id.* at 11. Defendants may not transfer this burden to the Court. As the Court has previously cautioned Defendants, "vague descriptions" of alleged harms of disclosure are insufficient, *see, e.g.*, Dkt. Nos. 98, 274, and Defendants were required to engage in meaningful review of all documents and supply specific rationale for proposed sealing and redactions.

- Plaintiffs contend that more than 70 documents are either public or contain information that is public, and that "[i]t is Defendants' burden, not Plaintiffs' to show what is publicly available already and what isn't." *See, e.g.*, Dkt. No. 609-1 at 11. Defendants contend that the documents and information are not public, and it is unclear to the Court how they might prove this. Plaintiffs' refusal to identify where the documents and information have been disclosed leaves the Court with no efficient way to discern whether such disclosure has occurred other than by searching thousands of pages in the record (which the parties have not provided in a consolidated OCRed format) and searching online.

In the future, the Court will not consider any such "umbrella" arguments.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### III.   CONCLUSION

For the above reasons and those in the attached Appendix, the Court ORDERS as follows:

1.   Consistent with this Order, the parties must comply with the Court's rulings in the attached Appendix as to each specific disputed document. Page numbers refer to the PDF page numbers. In reviewing provisional redactions, the Court does not in every case provide line by line rulings, but instead expects the parties to infer from the examples provided which categories of information may remain under seal and redacted.

   a.   <u>Determinations requiring Defendants to "either consent to publication or propose specific redactions."</u> Defendants are ordered to comply with this directive within 30 days of this Order. Because the Court has warned Defendants multiple times that "vague descriptions" of alleged harms of disclosure are insufficient, *see, e.g.*, Dkt. Nos. 98, 274, and because any newly proposed redactions from Defendants in response to any determination requiring them to "either consent to publication or propose specific redactions" will multiply the matters before the Court, the Court cautions Defendants against regurgitating the same generalized harms already raised during this litigation. In the event that Defendants fail to articulate specific rationales for specific redaction requests, the Court will order Defendants to pay Plaintiffs' reasonable attorney fees for the time spent reviewing and responding to any such newly proposed redactions.

   b.   <u>Deferred determinations requiring Defendants to provide a document version with proposed redactions highlighted</u>. As noted above, the Court defers ruling on several documents, including the parties' summary judgment briefing, so that Defendants may provide a version of said documents clearly noting the proposed redactions. To the extent the parties are unable to agree on redactions for these documents,

1         Defendants are ordered to file compliant versions within 30 days of this Order,

2         including specific rationales for each proposed redaction.

3    2.  Because some documents are currently not on the docket in any form, and others are filed

4         under seal as a single attachment together with documents that will remain sealed, the Court

5         directs the parties to, where necessary, file a supplemental submission, with each newly

6         unsealed or unredacted document as its own separate attachment, using the fewest number

7         of docket entries possible and indicating each document's original docket number to the

8         extent it was previously filed on the docket. The parties should file duplicative documents

9         once, indicating the corresponding existing docket entries. If a document is currently under

10        seal but the entire docket entry can be unsealed as a result of this Order, e.g., Dkt. No. 463,

11        the Court will unseal such documents.

12    3.  To the extent that the Appendix permits documents currently filed under seal to remain

13         under seal, no action is required. For documents that were previously designated as HSD

14         and not filed in any form, the parties should file them under seal as directed by this Order

15         or the attached Appendix. For documents where <u>only</u> a redacted version is currently on the

16         docket, an unredacted version should be filed under seal.

17    4.  No later than 21 days from the date of this Order, the parties may file a joint response

18         seeking any necessary <u>clarification</u> as to specific documents or filing procedures. This is

19         not an invitation to relitigate the disputes that are the subject of this Order.[9] The Court may

20         schedule a status conference following the parties' joint response.

21    5.  If either party would like to withdraw a document that the Court has ordered unsealed, <u>the</u>

22

---

23  [9] To the extent any party wishes the Court to reconsider certain of its rulings, the party must address whether it provided sufficiently specific information for the Court in the first instance, and if not, explain why such failure should not waive the objection. The party must also provide a specific rationale—down to the page (if the party proposes an entire document be sealed/unsealed or designated as HSD) or down to the redaction.

24

1    party who is relying on the sealed document may request that the Court withdraw the

2    document from the record rather than unseal it, in accordance with Local Civil Rule

3    5(g)(6), as part of the same joint response mentioned above.

4    6.  In light of this Order and the corrected motion and proposed order filed and stricken at

5         Docket Number 578, the parties' Joint Stipulated Motion to Withdraw and Re-File

6         Defendants' Motion to Seal filings related to the summary judgment briefing, pending at

7         Docket Number 577, is terminated.

8

9         Dated this 7th day of September, 2023.

10

11                                             Lauren King
                                               United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24