UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDIQAFAR WAGAFE, et al.,<br><br>                Plaintiff,<br>    v.<br><br>JOSEPH R. BIDEN, President of the United States, et al.,<br><br>                Defendant. | CASE NO. 17-CV-00094-LK<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on Defendants' Motion to Dismiss Claims of Naturalization Class and Individual Claims of Named Plaintiffs Wagafe, Jihad and Manzoor for Lack of Subject Matter Jurisdiction. Dkt. No. 628. Plaintiffs oppose the motion. Dkt. No. 634. For the reasons discussed below, the Court denies Defendants' motion.

## I.  BACKGROUND

Plaintiffs initiated this class action in early 2017 against the United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security ("DHS"), as well as several government officials. Dkt. Nos. 1, 17. Plaintiffs seek declaratory and injunctive

relief related to USCIS's Controlled Application Review and Resolution Program ("CARRP"), a national security vetting program which affects the evaluation and processing of some individuals' applications for immigration benefits. *See generally* Dkt. No. 47. The Court has certified two nationwide classes to be represented by the five named Plaintiffs in this case: the "Naturalization Class" and the "Adjustment Class." Dkt. No. 69 at 8, 31.

The Naturalization Class, represented by Plaintiffs Abdiqafar Wagafe, Noah Abraham (formerly known as Mushtaq Jihad), and Sajeel Manzoor, is comprised of all people "(1) who have or will have an application for naturalization pending before USCIS, (2) that is subject to CARRP or a successor 'extreme vetting' program, and (3) that has not been or will not be adjudicated by USCIS within six months of having been filed." *Id.* at 8. On behalf of this class, Plaintiffs allege that USCIS "has refused to adjudicate their applications in accordance with the governing statutory criteria," and instead "applied impermissible ultra vires rules" under CARRP, preventing "the agency from granting Plaintiffs' applications (and, in the case of Mr. Wagafe, caus[ing] the agency to delay granting his application until this lawsuit motivated it to do so)." Dkt. No. 47 at 3; *see also id.* at 33 ("Mr. Wagafe's naturalization application was subject to CARRP or its successor 'extreme vetting' program, which caused the delay in adjudication of his naturalization application, despite the fact that he was statutorily entitled to naturalize," and the delay caused him "significant harm"); *id.* at 39 (similar allegations as to Mr. Abraham); *id.* at 41 (similar allegations as to Mr. Manzoor); *id.* at 42–45 (similar allegations as to the Naturalization Class).

Plaintiffs assert seven causes of action on behalf of themselves and the Naturalization Class, alleging that CARRP violates (1) the Due Process Clause of the Fifth Amendment through failure to provide notice and an opportunity to respond to CARRP classification, Dkt. No. 47 at

47;[1] (2) the Due Process Clause of the Fifth Amendment through the unauthorized and indefinite suspension of the adjudication of applications, Dkt. No. 47 at 47; (3) the equal protection component of the Fifth Amendment's Due Process Clause through the indefinite suspension of the adjudication of applications based on country of origin, *id.* at 47–48; (4) the Immigration and Nationality Act ("INA") and its implementing regulations through the imposition of additional non-statutory, substantive adjudicatory criteria for naturalization, *id.* at 48–49; (5) and (6) the Administrative Procedure Act ("APA") through arbitrary and capricious final agency action and failure to provide a notice and comment period before implementing a substantive rule, *id.* at 49–50; and (7) the "Uniform Rule of Naturalization" clause of the Constitution through the creation of additional naturalization requirements not enacted by Congress; *id.* at 50.

Among other things, Plaintiffs request the following relief: (1) an order directing Defendants to adjudicate Plaintiffs' and the class members' applications, and to do so "based solely on the statutory criteria"; (2) a declaration that CARRP or any successor "extreme vetting" program violates the Constitution, the INA, and the APA; (3) an injunction prohibiting Defendants "from applying CARRP or any successor 'extreme vetting' program to the processing and adjudication of" Plaintiffs' and the class members' applications; (4) an order directing Defendants to "rescind CARRP or any successor 'extreme vetting' program because they failed to follow the process for notice and comment by the public"; and (5) alternatively, an order directing Defendants to provide Plaintiffs and class members "with notice that they have been subjected to CARRP or any successor 'extreme vetting' program, the reasons for subjecting them to [such program], and a reasonable opportunity to respond to those allegations before a neutral decision-maker[.]" *Id.* at 51–52.

---

[1] The Court previously dismissed this claim as to the Adjustment Class. Dkt. No. 69 at 17, 22.

1    The parties have agreed to a continuing stay of the Adjustment Class's claims. *See* Dkt. No. 613 at 2; Dkt. No. 660 at 1. Although the case as a whole was stayed for some time in anticipation that USCIS leadership would issue "new or revised relevant policies," Dkt. No. 592 at 2, USCIS stated in the parties' April 2024 joint status report that it "does not anticipate the promulgation of a new national security vetting policy in the foreseeable future," Dkt. No. 660 at 1.

Following a lengthy discovery period, the parties filed cross-motions for summary judgment and three motions to exclude the opinions of expert witnesses. *See* Dkt. No. 595 (provisionally redacted summary judgment briefing); Dkt. Nos. 460, 463, 471, 475, 477 (motions to exclude expert opinions). With these motions still pending, Defendants sought leave to file a motion to dismiss the Naturalization Class's claims for lack of subject matter jurisdiction, which the Court granted. Dkt. Nos. 623, 627. Thereafter, Defendants moved to dismiss on this basis. Dkt. No. 628.

## II.   DISCUSSION

Defendants move to dismiss the claims of the Naturalization Class and their individually named Plaintiff representatives for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and (h)(3). Dkt. No. 628 at 1. They argue that the INA establishes the type of special statutory review scheme that precludes federal question jurisdiction over the Naturalization Class's claims. *Id.* at 2–3, 7–14; Dkt. No. 639 at 2–8. Defendants also contend that such claims are "premature" and therefore unripe in light of the INA's review scheme for naturalization-related claims. Dkt. No. 628 at 14–17; Dkt. No. 639 at 8–11. And last, Defendants maintain that because the INA provides adequate remedies for the Naturalization Class's claims, Plaintiffs are unable to rely on the waiver of sovereign immunity contained in the APA. Dkt. No. 628 at 18–20 (citing 5 U.S.C. § 704).

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 4

From Plaintiffs' perspective, precluding the Naturalization Class's challenge to CARRP "would deny review to a whole range of conduct and complaints for which USCIS could never be held accountable[.]" Dkt. No. 634 at 6. Plaintiffs argue that Congress did not intend to create a special statutory review scheme covering all naturalization-related claims, and that even if it did, the applicable law weighs in favor of the Court's exercise of general federal question jurisdiction in this case. *Id.* at 6–17. In addition, Plaintiffs contend that neither Section 1447(b) or 1421(c) provides an adequate remedy for the Naturalization Class's claims, *id.* at 17–20, and that such claims are ripe for review because the class members have already been subjected to CARRP, *id.* at 20–24. The Court agrees with Plaintiffs.[2]

A.   **Legal Standard**

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A challenge to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," whereas "in a factual attack, the challenger disputes the truth of the allegations that,

---

[2] Defendants further argue that "[t]he Court's dismissal of the naturalization class claims . . . should apply equally to the individual claims of Named Plaintiffs Abdiqafar Wagafe, Mushtaq Abed Jihad and Sajeel Manzoor[.]" Dkt. No. 628 at 20 n.12. However, for the same reasons discussed below in denying Defendants' motion with respect to the claims of the Naturalization Class, the Court also denies Defendants' arguments with respect to the named Plaintiffs' individual claims.

by themselves, would otherwise invoke federal jurisdiction." *Id.* District courts resolve facial attacks as they do motions to dismiss under Rule 12(b)(6): "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor," and then determining whether they are legally sufficient to invoke jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). With a factual attack, on the other hand, "[t]he plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* In evaluating a factual attack, courts may look to evidence beyond the complaint without converting the motion to dismiss into one for summary judgment. *Safe Air for Everyone*, 373 F.3d at 1039.

**B.     *Thunder Basin* Does Not Preclude Federal Question Jurisdiction Over Claims**

Defendants argue that under *Thunder Basin Coal Company v. Reich*, 510 U.S. 200 (1994), *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023), and *Miriyeva v. United States Citizenship & Immigration Services*, 9 F.4th 935 (D.C. Cir. 2021), the INA's exclusive judicial review process "leav[es] general federal jurisdiction intact only for 'existential' questions about an agency's very power to act," which are not implicated by the Naturalization Class's claims. Dkt. No. 628 at 3.

  1.   *Thunder Basin* Doctrine

Generally, federal question jurisdiction under 28 U.S.C. § 1331 exists to review agency actions. *Califano v. Sanders*, 430 U.S. 99, 105 (1977). The APA provides a limited waiver of sovereign immunity in agency review actions seeking declaratory and injunctive relief. 5 U.S.C. §§ 701–06. Importantly, though, the APA's judicial review provisions do not apply where "statutes preclude judicial review." 5 U.S.C. § 701(a)(1); *see also Wade v. Blue,* 369 F.3d 407, 411 n.2 (4th

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 6

Cir. 2004) ("[A] specific limitation of federal court jurisdiction . . . overrides the general grant of federal jurisdiction in § 1331.").[3]

In *Thunder Basin*, the Supreme Court set out a two-step framework for determining when a statutory scheme of administrative and judicial review forecloses parallel district court jurisdiction under Section 1331. Courts first determine whether such intent is "fairly discernible in the statutory scheme." *Thunder Basin*, 510 U.S. at 207. If so, courts consider whether the litigant's claims are "of the type Congress intended to be reviewed within [the] statutory structure." *Id.* at 212. A finding that they are forecloses parallel district court jurisdiction.

When evaluating whether the plaintiff's claims are "of the type Congress intended to be reviewed within th[e] statutory structure," courts weigh three factors known as the "*Thunder Basin* factors": (1) whether precluding district court jurisdiction could "foreclose all meaningful judicial review" of the claim; (2) whether the claim is "wholly collateral to the statute's review provisions"; and (3) whether the claim is "outside the agency's expertise." *Axon Enter.*, 598 U.S. at 186 (cleaned up). The latter two factors "reflect in related ways the point of special review provisions—to give the agency a heightened role in the matters it customarily handles, and can apply distinctive knowledge to." *Id.*

Defendants argue that the INA sets forth a "comprehensive and exclusive review process" that envelopes the Naturalization Class's claims. Dkt. No. 628 at 9–14. In Defendants' view, 8 U.S.C. §§ 1447(b) and 1421(c) "provide meaningful judicial review by affording naturalization applicants *de novo* review of their claims in a United States District Court." *Id.* at 11. And because the Class's claims "attack *how* USCIS administers the national security vetting of benefit

---

[3] A statute may do so either explicitly, "providing in so many words that district court jurisdiction will yield," or implicitly, such as when a statutory scheme provides for "review in a court of appeals following the agency's own review process." *Axon Enter.*, 598 U.S. at 185.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 7

applications," rather than its "*power* to determine their eligibility for naturalization or to vet their applications as part of the process," the claims are not "wholly collateral." *Id.* at 12–13. Finally, Defendants contend that the Class's claims are not outside the agency's expertise, as reflected by Congress's overhaul of the statute in 1990 to enlarge the agency's role. *Id.* at 13.

Plaintiffs counter that Sections 1447(b) and 1421(c) create only narrow "processes for obtaining judicial review of individual naturalization applications in certain procedural scenarios" not present here. Dkt. No. 634 at 12. According to Plaintiffs, if the Naturalization Class were to pursue remedies under 1447(b) or 1421(c), it would "foreclose the very relief they seek" because it "would be too late to prevent the years of delay and unlawful treatment caused by the application of an illegal policy to their case." *Id.* at 14. Plaintiffs emphasize that neither statute provides for challenges to the legality of agency policy and practices; 1447(b) "is a vehicle only to seek a decision on a naturalization application" and 1421(c) "only provides jurisdiction for de novo review of an individual applicant's eligibility to naturalize"—and since a 1421(c) litigant would no longer be subject to CARRP, their CARRP-related claims would be moot. *Id.* at 14–15. For this reason, Plaintiffs argue, the Naturalization Class's claims are wholly collateral to the INA's review scheme, and USCIS's expertise (or lack thereof) relative to their claims "simply does not fit the situation here." *Id.* at 15–17.

The Court assumes without deciding that the review scheme Congress established in the INA can implicitly foreclose federal question jurisdiction under Section 1331. *See, e.g.*, *Miriyeva*, 9 F.4th at 939–40. Even so, a review of the *Thunder Basin* factors does not indicate that the Naturalization Class's claims are of the type Congress intended to be reviewed under the INA.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 8

### 2. Precluding Jurisdiction Could Foreclose All Meaningful Judicial Review of the Naturalization Class's Claims

Naturalization decisions by USCIS pursuant to the INA are subject to three avenues of judicial review. *See Escaler v. U.S. Citizenship and Immigr. Servs.*, 582 F.3d 288, 290–91 (2d Cir. 2009). First, if an application for naturalization is not acted upon within 120 days of the naturalization examination, an applicant can seek a hearing in a district court, which may determine the application or remand it to USCIS with instructions. 8 U.S.C. § 1447(b).[4] Second, if an application is denied after completion of the available administrative review procedures, the applicant is able to seek *de novo* review of the denial in a district court. 8 U.S.C. § 1421(c).[5] Third, in extreme cases, mandamus relief may be available under 28 U.S.C. § 1361 for a failure to perform a clear, nondiscretionary duty. *See Heckler v. Ringer,* 466 U.S. 602, 616 (1984).

Here, the Naturalization Class alleges that USCIS's application of CARRP to class members' naturalization applications, resulting in the "unauthorized and indefinite suspension of Plaintiffs' and the Proposed Classes' applications for immigration benefits," violates the Equal Protection and Due Process Clauses of the Constitution, the Uniform Rule of Naturalization clause, the APA, and the INA. Dkt. No. 47 at 47–50. Because of this alleged "indefinite suspension," class members may never have an examination, much less a denial of their application (at which point

---

[4] Section 1447(b), entitled "Request for hearing before district court," specifically provides as follows:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

*See also id.* § 1446(a)–(d) (describing the investigation, examination, and determination phases).

[5] Section 1421(c), entitled "Judicial review," specifically provides that:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 9

they would no longer be a member of the class)—meaning they could never seek relief under either Section 1447(b) (which requires that an examination have occurred) or Section 1421(c) (which requires that a denial have occurred). Dkt. No. 634 at 14 ("It is precisely because thousands of class members are placed in limbo and are stuck waiting years for an interview and a decision, that they are barred from asking a district court to exercise jurisdiction and adjudicate their applications under §§ 1447(b) and 1421(c)."). And even those applicants who have had an examination and could therefore seek certain relief under 1447(b) would not necessarily know that their applications had been subjected to CARRP; USCIS does "not make information about CARRP public," Dkt. No. 47 at 5 n.1, and never notifies applicants that their applications are undergoing CARRP review, *id.* at 13–14, 20. Finally, as Defendants observe, the Naturalization Class does not "alleg[e] a failure by Defendants to carry out any clear, ministerial duty owed to the naturalization class in relation to CARRP that can be enforced through a writ of mandamus." Dkt. No. 628 at 6 n.5.

Under USCIS's theory, the agency could, for blatantly discriminatory purposes, shelve certain naturalization applications prior to any examination, and the applicants would have no judicial recourse. However, "Congress rarely allows claims about agency action to escape effective judicial review," *Axon Enter.*, 596 U.S. at 186, and the INA's statutory review scheme does not reflect that Congress intended such a futile result here. That is not to say that Sections 1421(c), 1447(b), and 1361 fail to provide meaningful judicial review in and of themselves. But in this case, the Court agrees with Plaintiffs that precluding federal question jurisdiction could foreclose meaningful judicial review of the Naturalization Class's causes of action in light of the near-term inapplicability of these provisions to the claims at hand.

The cases that Defendants rely on do not counsel otherwise. For example, in *Miriyeva*, the plaintiff attempted to challenge CARRP within the context of her already-denied naturalization application. 9 F.4th at 938, 941. As Defendants note, "Miriyeva asked the Court to 'stop the agency

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 10

from *maintaining the denial* of any naturalization application' on the basis of the challenged policy." Dkt. No. 639 at 4 (emphasis added) (quotation marks omitted) (quoting *Miriyeva*, 9 F.4th at 942). Here, by contrast, the Naturalization Class is not "challenging denied naturalization applications or seeking final decisions on their applications[.]" Dkt. No. 634 at 13. Instead, they are seeking to prohibit USCIS from applying CARRP when adjudicating their applications. *Id.*; *see also* Dkt. No. 47 at 51–52; *Axon Enter.*, 598 U.S. at 192 ("What makes the difference here is the nature of the claims and accompanying harms that the parties are asserting"; in other words, "the 'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process" as well as "subjection to that process irrespective of its outcome, or of other decisions made within it").

Because precluding district court jurisdiction could foreclose meaningful judicial review of the Naturalization Class's claims, the Court finds that the first *Thunder Basin* factor weighs in favor of exercising general federal question jurisdiction.

> 3. The Naturalization Class's Claims Are Wholly Collateral to the INA's Review Provisions

With respect to the second *Thunder Basin* factor, the Supreme Court's decision in *Elgin v. Department of Treasury* suggests that whether a claim is "wholly collateral" to the relevant statutory review scheme depends on whether that scheme is intended to provide the sort of relief sought by the plaintiff. 567 U.S. 1, 22 (2012) (ruling that the employees' claims were not "wholly collateral to the CSRA [Civil Service Reform Act] scheme" because they were "requesting relief that the CSRA routinely affords").

Here, the D.C. Circuit's analysis in *Miriyeva* is instructive. The court reasoned that "[i]f the plaintiff is seeking to have her denied application overturned," then "a claim regarding the process and policies that dictated that denial is not wholly collateral to such denial." 9 F.4th at 942

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 11

(quotation marks omitted). Accordingly, the court found that because Miriyeva was, "'at bottom' trying to reverse her denied [naturalization] application, her claims [we]re not wholly collateral." *Id.* (quoting *Heckler*, 466 U.S. at 614).

In contrast, for the Naturalization Class to prevail on their claims, it will not be necessary for the Court to determine their eligibility to naturalize or prescribe the outcomes of their naturalization applications. Rather, a successful class member would only be entitled to a CARRP-free adjudication—regardless of whether the adjudication was expedient or ultimately successful. *See* Dkt. No. 634 at 3 (class members "seek to enjoin the agency from applying the CARRP policy to the processing and adjudication of their applications, *not* to establish their eligibility for the benefit or to have their applications decided by the Court"); *see also McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 495 (1991) (finding that plaintiffs' challenges to the procedures used by the agency did not fall within the scope of relevant review statute where prevailing on the merits would not "have the effect of establishing their entitlement to" the immigration benefit); *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1060 (9th Cir. 1995) (concluding that general federal jurisdiction was permitted where plaintiffs were "not challenging the particular outcome of the application, but the collateral procedure" used to process applications).

The Court therefore finds that the Naturalization Class's claims challenging the legality of CARRP are wholly collateral to the review scheme provided in the INA, and the second *Thunder Basin* factor also supports an exercise of jurisdiction under Section 1331.

4. <u>The Naturalization Class's Claims Would Not Benefit From the Agency's Expertise</u>

Plaintiffs claim that the final *Thunder Basin* factor "simply does not fit the situation presented here," Dkt. No. 634 at 17, whereas Defendants maintain that Congress "has granted the agency a critical role in reviewing naturalization applications in the first instance," Dkt. No. 628 at 13.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS - 12

When a litigant includes constitutional challenges among its claims, this factor does not turn on "an agency's relative level of insight into the *merits* of [the] constitutional question[.]" *Jarkesy v. S.E.C.*, 803 F.3d 9, 28 (D.C. Cir. 2015). Instead, it turns on whether the agency's expertise may be "brought to bear" on "the many threshold questions that . . . accompany a constitutional claim." *Elgin*, 567 U.S. at 22–23. Here, it is not difficult to imagine USCIS's expertise being relevant to certain questions ancillary to the Naturalization Class's claims. But "[t]he main thrust of this case is the legality of CARRP," Dkt. No. 69 at 15, not those ancillary questions. As discussed above, Plaintiffs ultimately seek an application process free of CARRP, not amelioration of non-CARRP-related delays or a review of denied naturalization applications. Thus, the Naturalization Class's "claims of here-and-now harm would remain no matter how much expertise could be 'brought to bear' on the other issues these cases involve," *Axon Enter.*, 598 U.S. at 195 (quoting *Thunder Basin*, 510 U.S. at 215), leaving the Court "at no disadvantage in answering" the statutory and constitutional questions presented by those claims, *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 (2010). Even if USCIS's expertise is relevant to certain threshold questions, this factor does not dictate that the Naturalization Class's claims are of the type Congress intended to be reviewed within the INA. *See Axon Enter.*, 598 U.S. at 186 (a court still may conclude that Congress does not intend to limit jurisdiction "if the [*Thunder Basin*] factors point in different directions").

\* \* \*

Because the Court finds that (1) the Naturalization Class cannot receive meaningful judicial review of their claims under Sections 1447(b) or 1421(c), (2) the Class's claims are collateral to the review provided under those sections of the INA, and (3) the claims would not benefit from USCIS's expertise, the Court concludes that the statutory review scheme established by Congress, even if exclusive where it applies, does not reach the claims in question.

### C. The Naturalization Class's Claims Are Ripe for Adjudication

"The basic rationale of the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (cleaned up). There are constitutional and prudential components of ripeness. The former "is synonymous with the injury-in-fact prong of the standing inquiry," *id.* (quoting *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003)), and the latter is "guided by two overarching considerations: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration," *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1154 (9th Cir. 2017) (cleaned up). "Prudential considerations of ripeness are discretionary." *Id.* (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1142 (9th Cir. 2000)).

Defendants contend that the claims of the Naturalization Class are not ripe because "(1) the claims are premised on Plaintiffs' benefit applications remaining undecided by USCIS, (2) there are multiple nontrivial grounds on which the agency may ultimately decide the applications, and (3) . . . the actual basis for any potential denial of class member applications is . . . necessarily unknown." Dkt. No. 628 at 15; *see also* Dkt. No. 639 at 8. As Plaintiffs point out, though, "class members may never have ripe claims under §§ 1447(b) and 1421(c) precisely because CARRP prevents their applications from being scheduled for an interview and decided." Dkt. No. 634 at 21. The Court reiterates that members of the Naturalization Class are not challenging the ultimate outcomes of their applications; they are challenging the legality of CARRP vis-à-vis their pending applications. *See* Dkt. No. 47 at 47–52 (Plaintiffs' causes of action and prayer for relief). The Court agrees with Plaintiffs that "their claims are ripe because they are, by definition, currently subject to CARRP, and thus already suffering the very conduct they complain about." Dkt. No. 634 at 3.

It is not clear to the Court why members of the Naturalization Class would need to have their applications denied before their claims challenging CARRP could be considered ripe. *See, e.g.*, *Am.-Arab Anti-Discrimination Comm.*, 70 F.3d at 1060 (finding that "a positive outcome of the legalization process" is not "determinative in the ripeness analysis of [a] due process claim . . . challeng[ing] a collateral procedure limiting access to an entitlement"); *cf. Al Naham v. U.S. Dep't of State*, No. 14-CV-9974 (JPO), 2015 WL 3457448, at *3 n.8 (S.D.N.Y. June 1, 2015) ("[A]pplicants are likely to have an independent interest in finality that is frustrated by the absence of any decision, favorable or not."). On the contrary, according to the allegations in this case, by applying for naturalization and being subjected to CARRP, these Plaintiffs have taken "the affirmative steps that [they] could take" before USCIS impeded their path. *Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1138 (9th Cir. 1999) (quoting *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 59 (1993)).

In sum, the constitutional and prudential components of ripeness are satisfied. The claims of the Naturalization Class establish an injury in fact showing that the legal issues presented are fit for judicial decision, and the hardship to the class absent judicial consideration is apparent.

**D.   The INA Does Not Provide An Adequate Remedy for the Naturalization Class's APA Claims**

Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. To be adequate, an alternative remedy must at a minimum provide the plaintiff "specific procedures" by which the agency action can receive judicial review or some equivalent. *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). The adequacy of the relief available need not provide review identical to that which the APA would provide, so long as the alternative remedy offers the "same genre" of relief. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846

F.3d 1235, 1245 (D.C. Cir. 2017). However, "[a]n alternative remedy will not be adequate under § 704 if the remedy offers only 'doubtful and limited relief.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *Bowen*, 487 U.S. at 901).

Defendants contend that Sections 1447(b) and 1421(c) provide adequate alternative remedies that preclude the exercise of jurisdiction over the Naturalization Class's two APA claims, leaving Plaintiffs without the APA's waiver of sovereign immunity. Dkt. No. 628 at 18–20; *see* Dkt. No. 47 at 49–50 (APA causes of action). For reasons similar to those discussed above regarding the first and second *Thunder Basin* factors, the Court finds that Defendants have failed to establish that the INA provides an adequate alternative remedy for the Naturalization Class's APA claims.

Sections 1447 and 1421 would not necessarily remedy the injury about which the class complains. Section 1421(c) requires a denial, and Section 1447(b) requires an interview—things that may never occur due to CARRP's allegedly unlawful "indefinite suspension" policy. *See Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[US]CIS simply does not possess unfettered discretion to relegate [noncitizens] to a state of 'limbo,' leaving them to languish there indefinitely."). And again, even those applicants who receive an interview or whose applications are ultimately denied would not have reason to know their application had been subjected to CARRP. Indeed, Plaintiffs' complaint seeks a remedy for this lack of notice precisely to afford them "a reasonable opportunity to respond to those allegations before a neutral decision-maker." Dkt. No. 47 at 52. For these reasons, it is far from certain that the Naturalization Class, as certified, could ever bring their collateral claims under the INA.

Defendants argue for the first time in their reply brief that because some class members have had their naturalization interview and could invoke Section 1447(b), the Court "is unable to issue relief to the Naturalization Class as a whole" and therefore "may decertify the Naturalization

Class *sua sponte* because it does not meet the requirements of Rule 23." Dkt. No. 639 at 11 & n.9. The Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Nor does the Court find occasion to *sua sponte* revisit its prior finding that the class shares a "common question" of "whether CARRP is lawful" that "will not change based on facts particular to each class member," thus enabling a single ruling to provide relief to the entire class. Dkt. No. 69 at 25, 30.

### III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, Dkt. No. 628, is DENIED.

Dated this 20th day of May, 2024.

Lauren King
United States District Judge