1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDIQAFAR WAGAFE, et al.,

                Plaintiffs,

      v.

JOSEPH R. BIDEN, President of the United
States, et al.,

                Defendants.

CASE NO. 17-CV-00094-LK

ORDER ON PENDING MOTIONS
TO EXCLUDE EXPERT
TESTIMONY

       This matter comes before the Court on the parties' motions to exclude the opinion and testimony of designated expert witnesses. *See* Dkt. Nos. 460, 463, 471, 475, 477.[1] Plaintiffs seek to exclude several opinions of Defendants' expert statistician, Dr. Bernard Siskin. Dkt. Nos. 460, 463. Defendants move to exclude evidence offered by four of Plaintiffs' experts: Sean M. Kruskol, Jay Gairson, Thomas Ragland, and Nermeen Arastu. Dkt. Nos. 471, 475, 477. The Court has

---

[1] Docket Numbers 460 and 471 are redacted versions of Docket Numbers 463 and 475, respectively, which the parties originally filed under seal. As explained below, the Court subsequently entered orders concerning the sealing and/or redaction of the motions and related briefing, and the parties also reached agreement on certain filings. *See* Dkt. Nos. 626, 626-1, 662. For the sake of clarity, the Court cites herein to the originally filed, unredacted version of these materials.

thoroughly reviewed the parties' motions, as well as the remainder of the relevant record, and for the reasons stated below, grants in part and denies in part Plaintiffs' motion regarding the opinions of Dr. Siskin, denies Defendants' motion regarding the opinions and testimony of Mr. Kruskol, and grants in part and denies in part Defendants' motion regarding the evidence offered by Mr. Gairson, Mr. Ragland, and Professor Arastu.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiffs initiated this class action in early 2017 against the United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security ("DHS"), as well as several government officials. Dkt. Nos. 1, 17. Plaintiffs seek declaratory and injunctive relief related to USCIS's Controlled Application Review and Resolution Program ("CARRP"), a national security vetting program which affects the evaluation and processing of some individuals' applications for immigration benefits. *See generally* Dkt. No. 47. In June 2017, the Court certified two nationwide classes to be represented by the five named Plaintiffs in this case: the "Naturalization Class" and the "Adjustment Class." Dkt. No. 69 at 8, 31. The parties have agreed to a continuing stay of the Adjustment Class's claims. *See* Dkt. No. 613 at 2; Dkt. No. 660 at 1.

Following a lengthy discovery period, the parties filed the three instant motions to exclude the opinions of expert witnesses, as well cross-motions for summary judgment. *See* Dkt. Nos. 665, 665-5, 665-6, 665-14 (redacted summary judgment briefing); Dkt. Nos. 460, 463, 471, 475, 477 (motions to exclude expert opinions). While these motions were still pending, Defendants sought leave of court to file a motion to dismiss the Naturalization Class's claims for lack of subject matter jurisdiction, which the Court granted. Dkt. Nos. 623, 627. Thereafter, Defendants moved to dismiss on this basis, Dkt. No. 628, which the Court denied, Dkt. No. 661. In addition, on

September 7, 2023 and May 23, 2024, the Court issued orders addressing the parties' disputes as to which materials could be filed publicly on the docket. *See* Dkt. Nos. 587, 609, 626, 626-1, 662.

**B.    Motions to Exclude Expert Witnesses**

The parties' three motions implicate the opinions of five designated experts. The Court provides a brief summary of each motion below.

1.    Plaintiffs' Motion to Exclude the Opinions of Bernard Siskin

Dr. Siskin is an expert statistician with a Ph.D. in statistics from the University of Pennsylvania who runs a statistical and economic consulting firm. Dkt. No. 462 at 92; Dkt. No. 521 at 2. He has testified in more than 200 cases and consulted, published, and lectured extensively on the subject of statistics. Dkt. No. 462 at 92–96. He has produced three reports in connection with this litigation: (1) an initial February 28, 2020 report, (2) an amended July 17, 2020 report based on updated USCIS data, and (3) an October 13, 2020 report responding to certain of Plaintiffs' experts' reports. *Id.* at 2–90 (February 2020 Report); *id.* at 125–261 (July 2020 Report); *id.* at 388–461 (October 2020 Report). He also was deposed and completed a declaration that Defendants cited in support of their opposition to Plaintiffs' motion for summary judgment and cross-motion for summary judgment. *Id.* at 295–373 (deposition transcripts); Dkt. No. 645-65 (same); Dkt. No. 521 (declaration).

Plaintiffs contend that certain aspects of Dr. Siskin's data analysis related to the processing and adjudication of relevant immigration applications "fall short of the standard for admissibility." Dkt. No. 463 at 2. Specifically, Plaintiffs urge the Court to exclude Dr. Siskin's opinions as to (1) "the costs and benefits of CARRP" and "its overall value as a program," (2) "the significance of USCIS's reliance on third-agency information," and (3) his regression analysis pertaining to the disparate impact of CARRP on applicants from Muslim-majority countries. *Id.*; *see also id.* at 4–8; Dkt. No. 503 at 2–7. They argue that Dr. Siskin's opinions on these three subjects are either

outside his knowledge and expertise or otherwise unreliable and should therefore be excluded. Dkt. No. 463 at 2. Plaintiffs take particular issue with Dr. Siskin's regression analysis, arguing that it "relies on deeply flawed data" drawn from the Global Terrorism Database ("GTD"), improperly uses a country's designation as a state sponsor of terrorism as a variable, and is generally speculative. *Id.* at 7–13.

Defendants maintain that Plaintiffs cannot show that Dr. Siskin's opinions "are the product of insufficient facts or data, or principles and methods that are unreliable or were applied unreliably[.]" Dkt. No. 485 at 3. In Defendants' view, Plaintiffs' objections go toward the weight that Dr. Siskin's opinions should be afforded, not their admissibility. *Id.* at 4–5, 8, 10, 13. With respect to Plaintiffs' arguments on Dr. Siskin's regression analysis, Defendants assert that "Plaintiffs' challenge . . . boils down to a classic debate between experts, for the Court to resolve as trier of fact." *Id.* at 13.

2. Defendants' Motion to Exclude the Testimony of Sean M. Kruskol

Mr. Kruskol is a licensed Certified Public Accountant ("CPA"), Certified Fraud Examiner, and Chartered Global Management Accountant who works as a consultant analyzing large-scale data analytics. Dkt. No. 476 at 26–32. Mr. Kruskol has authored four expert reports: (1) an initial February 28, 2020 report, (2) a July 17, 2020 supplemental report, (3) a September 21, 2020 second supplemental report, and (4) a March 4, 2021 supplemental declaration. Dkt. No. 494 at 2–35 (February 2020 Report); Dkt. No. 476 at 71–94 (July 2020 Report); *id.* at 145–56 (September 2020 Report); *id.* at 4–25 (March 2021 Supplemental Declaration). He also was deposed and submitted a declaration in support of Plaintiffs' opposition to Defendants' motion to exclude his testimony. *Id.* at 170–242 (deposition transcripts); Dkt. No. 491 at 169–78 (video deposition transcripts); Dkt. No. 492 (declaration); Dkt. No. 507 at 15–21 (video deposition transcript).

1   Defendants seek to exclude Mr. Kruskol's testimony and reports because "key aspects of

2   [his] statistical analysis are simply beyond his expertise." Dkt. No. 475 at 5. They specifically

3   point to his abilities with respect to "regression analyses, tests for *p*-values and determining

4   statistical significance, and trends analyses[.]" *Id.* at 5; *see also id.* at 6 ("As Mr. Kruskol is

5   incompetent to conduct, present or interpret such fundamental statistical analyses, he simply

6   cannot qualify as an expert witness in statistical analysis."); *see also* Dkt. No. 506 at 2–3.

7   Defendants also argue that Mr. Kruskol's opinions should be disregarded due to his lack of

8   experience conducting statistical analysis relating to either immigration benefit applications or

9   subject matter similar to the substance of this lawsuit, and because his opinions are irrelevant. Dkt.

10  No. 475 at 6–14. And last, Defendants claim that Mr. Kruskol's evidence should be excluded under

11  Federal Rule of Evidence 403 because rather than "assist[ing] the Court in understanding the

12  evidence or determining any fact at issue," his opinions would "simply confuse the issues and the

13  Court's understanding of the statistical evidence, and waste time." *Id.* at 14.

14  Plaintiffs counter that Defendants' motion "is illogical and unsupported." Dkt. No. 493 at

15  5. They contend that Mr. Kruskol is qualified to conduct the data analysis contained in his reports

16  and testimony, and that his opinions are relevant to their claims and corroborated by the underlying

17  datasets. *Id.* at 5, 7–15. Plaintiffs further argue that Defendants' arguments under Rule 403 are

18  unavailing. *Id.* at 16.

19      3.   Defendants' Motion to Exclude the Testimony of Nermeen Arastu, Jay Gairson, and
             Thomas Ragland

20

21  Defendants separately seek to exclude evidence provided by Professor Arastu, Mr.

22  Gairson, and Mr. Ragland. Dkt. No. 477 at 3; *see* Dkt. No. 480 at 4–40 (July 2020 Arastu Report);

23  *id.* at 167–232 (July 2020 Gairson Report); *id.* at 356–404 (June 2020 Ragland Report). Professor

24  Arastu is an associate professor of law at the City University of New York School of Law and has

worked extensively in the field of immigration law, both as a practitioner and scholar. Dkt. No. 480 at 42–45. Mr. Gairson and Mr. Ragland are experienced immigration practitioners based in Seattle, Washington and Washington, D.C., respectively, and each have published and presented work in the field. *Id.* at 234–36, 406–10.

Defendants assert that the central thrust of all three of these experts' reports is "the witnesses' opinions on the legality and constitutionality of CARRP," and such testimony should be excluded. Dkt. No. 477 at 5. With respect to Mr. Gairson and Mr. Ragland, Defendants maintain that these experts' "case studies" regarding their clients' experiences, including those of some of the named Plaintiffs, "position them as advocates, not expert witnesses." *Id.* at 5–6; *see also* Dkt. No. 504 at 2–3. Defendants also claim that Mr. Gairson and Mr. Ragland lack the expertise necessary to conduct statistical analyses and their conclusions are not based on reliable methodologies. Dkt. No. 477 at 6–11; Dkt. No. 504 at 3–4. With respect to Professor Arastu, Defendants aver that her evidence "is not based a on a reliable foundation" because she largely draws on her 2019 law review article, *Aspiring Americans Thrown Out in the Cold: The Discriminatory Use of False Testimony to Deny Naturalization*, 66 UCLA L. Rev. 1078 (2019). Dkt. No. 477 at 11–14; Dkt. No. 504 at 4–5.

Plaintiffs argue that Mr. Ragland and Mr. Gairson are highly qualified practitioners with decades of relevant experience, and that rather than asserting legal conclusions, their opinions contextualize CARRP and other national security-related immigration matters by conveying real world examples. Dkt. No. 499 at 7–13. Likewise, Plaintiffs reject the notion that Professor Arastu's report is inadmissible and instead maintain that her research and analysis are firmly grounded in her own experiences and those of other practitioners. *Id.* at 14–16.

## II.   DISCUSSION

**A.   Legal Standard**

An expert may testify based on his or her "scientific, technical, or other specialized knowledge" if it "will help the trier of fact to understand the evidence," provided that the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d); *see also United States v. Winters*, 729 F.2d 602, 605 (9th Cir. 1984) (in order for a witness's testimony to be admissible under Rule 702, the subject matter must be "beyond the common knowledge of the average layman," the witness must have "sufficient expertise," and the state of the relevant field must "permit[] the assertion of a reasonable opinion"). The proponent of the expert opinion or testimony bears the burden of proving its admissibility. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The Court's role at this stage is that of gatekeeper, and at the gatekeeping stage, the relevant inquiry is limited to whether the expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). "[T]he trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (cleaned up). An expert's opinion is reliable when it "has a reliable basis in the knowledge and experience of the relevant discipline." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (cleaned up), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020); *accord Primiano*, 598 F.3d at 565.

In *Daubert*, the Supreme Court supplemented Rule 702's base requirements with optional, non-definitive "general observations" to aid district courts in assessing whether a proffered

expert's testimony is reliable. 508 U.S. at 593. These factors include (1) whether the expert's theory can or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards or controls; and (5) the degree to which the theory or technique has been generally accepted in the expert's field. *Id.* at 593–94. But "[t]hese factors are meant to be helpful, not definitive[.]" *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) (cleaned up); *Kumho Tire*, 526 U.S. at 141–42 (the *Daubert* factors "neither necessarily nor exclusively appl[y] to all experts or in every case" and the district court has the "same broad latitude when it decides *how* to determine reliability as it enjoys with respect to its ultimate reliability determination").

The Ninth Circuit has repeatedly emphasized that the reliability inquiry is "flexible" and "should be applied with a liberal thrust favoring admission." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021) (cleaned up). When an expert's opinion is "not the junk science Rule 702 was meant to exclude, the interests of justice favor leaving difficult issues in the hands of the [factfinder] and relying on the safeguards of the adversary system—vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof—to attack shaky but admissible evidence." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) (cleaned up); *see also Pyramid Techs.*, 752 F.3d at 814 (once the expert meets the threshold established by Rule 702, he may testify, and it is up to the jury to assign weight to that testimony).

In addition, because *Daubert* is aimed at protecting juries from dubious scientific testimony, the Ninth Circuit has explained that where the district court sits as the factfinder, "there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for h[er]self." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (cleaned up); *see also F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) ("[T]here is less danger that a trial

court will be 'unduly impressed by the expert's testimony or opinion' in a bench trial.'" (quoting *Shore v. Mohave Cnty.*, 644 F.2d 1320, 1322–23 (9th Cir.1981))); *Volk v. United States*, 57 F. Supp. 2d 888, 896 n.5 (N.D. Cal. 1999) (same). For bench trials, district courts are able to make reliability determinations "during, rather than in advance of, trial," and therefore have leeway to admit "evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *Flores*, 901 F.3d at 1165 (cleaned up); *see also Lo v. United States*, No. 2:17-CV-01202-TL, 2022 WL 1014902, at \*2 (W.D. Wash. Apr. 5, 2022). And relatedly, although a Court may exclude relevant evidence under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Rule 403 "has a limited role, if any, in a bench trial." *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1216 (E.D. Wash. 2015) (citing *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994)).

**B.    The Court Grants in Part and Denies in Part the Parties' Motions**

Both Plaintiffs and Defendants raise valid concerns regarding the utility and propriety of the opinions, testimony, and evidence offered by the challenged expert witnesses. The Court finds inadmissible certain opinions of Dr. Siskin and portions of the expert reports of Jay Gairson, Thomas Ragland, and Nermeen Arastu, and will thus disregard this evidence and preclude such testimony at trial. The remaining opinions and testimony, though admissible, will be afforded the appropriate weight.

1.    Dr. Siskin's Opinions on the Costs and Benefits of CARRP and the Import of USCIS's Reliance on Third Agency Information Are Inadmissible

Plaintiffs wish to exclude Dr. Siskin's opinions as to (1) the costs and benefits of CARRP and its value as a program, (2) the "significance" of USCIS's use of "third-agency information,"

1  and (3) his regression analysis addressing the disparate impact of CARRP on applicants from

2  Muslim-majority countries. Dkt. No. 463 at 2. The Court agrees that Defendants have failed to

3  meet their burden as to the admissibility of the first two categories.

4        As an initial matter, Dr. Siskin is, by his own admission, not qualified to speak on the costs

5  and benefits of CARRP or its inner workings as an immigration or national security project. To

6  the extent Dr. Siskin conducts such analysis or weighs in on the "costs" associated with referring

7  (or not referring) an applicant to CARRP, *see, e.g.*, Dkt. No. 462 at 12–15, 138–41, it is not reliable

8  or helpful to the Court's understanding of the evidence in this case. He is not an expert in the fields

9  of immigration or national security, including CARRP. *See id.* at 302–03; *id.* at 314 ("I'm not an

10  expert on the CARRP policies."). And likewise, to the extent Dr. Siskin's opinions speak to the

11  "significance" or import of "third agency information," i.e., whether such information corresponds

12  to anti-Muslim bias (or lack thereof) on the part of USCIS, these opinions are inadmissible for the

13  same reasons. *See, e.g.*, *id.* at 127, 309–12. Accordingly, the Court grants Plaintiffs' motion with

14  respect to these two portions of Dr. Siskin's opinions.

15        As for Dr. Siskin's regression analysis, though it is a close call, the Court finds it to be

16  admissible in this case. Plaintiffs argue that "as a theory of correlation or an attempt to assess

17  causation," Dr. Siskin's "regression analysis is impermissibly speculative and divorced from fact."

18  Dkt. No. 463 at 13. However, Plaintiffs' disagreement with the methodology used does not indicate

19  the absence of a discernable methodology. Dr. Siskin acknowledges limitations of the GTD

20  database and explains his methodology, *see* Dkt. No. 462 at 238–44, and sitting as the factfinder,

21  the Court is not concerned that it will be "unduly impressed" by Dr. Siskin's analysis, *BurnLounge*,

22  753 F.3d at 888 (internal quotation marks omitted) (quoting *Shore*, 644 F.2d at 1322). Whether

23  Dr. Siskin's conclusions are ultimately correct is not the relevant inquiry here, and the Court need

24  not "exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis*

1    *Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013); *Primiano*, 598 F.3d at 564. In addition, "the

2    general rule is that the factual basis of an expert opinion goes to the credibility of the testimony,

3    not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion

4    in cross-examination." *Cal. Dep't of Toxic Substances Control v. NL Indus., Inc.*, 636 F. Supp. 3d

5    1092, 1131 (C.D. Cal. 2022) (quoting *Loudermill v. Dow Chemical Co.*, 863 F.2d 566, 570 (8th

6    Cir. 1998)). Thus, Plaintiffs' arguments are more appropriately directed toward the relative weight

7    Dr. Siskin's analyses should be afforded, and the Court will evaluate the reliability of those

8    analyses against the countervailing expert opinions presented by Plaintiffs. *See Vanguard Logistics*

9    *Servs. (USA) Inc. v. Groupage Servs. of New England, LLC*, No. CV-18-0517-DSF (GJSx), 2022

10   WL 17369626, at *3 (C.D. Cal. Oct. 4, 2022); *see also NL Indus.*, 2022 WL 14769903, at *31

11   ("While the line between [the expert]'s methodology and the 'factual basis' for his opinion is

12   somewhat blurry, the Court is satisfied that [the proponent]'s burden to establish reliability and

13   helpfulness under *Daubert* is satisfied.").

14             2.   Mr. Kruskol's Opinions and Testimony Are Admissible

15        Defendants primarily attack Mr. Kruskol's qualifications as an expert statistician. *See* Dkt.

16   No. 475 at 6 ("As Mr. Kruskol is incompetent to conduct, present or interpret such fundamental

17   statistical analyses, he simply cannot qualify as an expert witness in statistical analysis."); Dkt.

18   No. 506 at 2 ("Even if he can crunch numbers, that expertise equips him only to describe the data,

19   not to explain it or its significance."). Defendants argue, for example, that Mr. Kruskol should not

20   be allowed to speak to the data underlying Dr. Siskin's "regression analyses" if he does not perform

21   such regressions himself. Dkt. No. 475 at 6; Dkt. No. 476 at 178, 221–22.

22        The Court disagrees. Mr. Kruskol has more than a decade of experience "analyzing large

23   datasets of financial and non-financial information to identify, summarize, and report on patterns,

24   trends, and anomalies." Dkt. No. 492 at 2; *see also* Dkt. No. 476 at 26–32 (Mr. Kruskol's CV).

The fact that he "has never presented testimony on statistical analyses or been accepted by a court as a statistical expert" does not, as Defendants appear to suggest, render his opinions inadmissible. Dkt. No. 475 at 7; *see, e.g.*, *Echeverria v. State of Nev.*, No. 3:14-CV-00320-MMD-CSD, 2022 WL 1652450, at *21 (D. Nev. May 23, 2022) ("[W]hile this might be the first case where [the expert] testifies at trial as a survey expert in her career, the Court does not find that fact disqualifying."); *Walsh v. Reliance Tr. Co.*, No. CV-19-03178-PHX-ROS, 2023 WL 1966921, at *12 (D. Ariz. Feb. 13, 2023) ("[E]ven the world's most qualified expert . . . must have, at some point, testified for the first time in a[] . . . case."). Importantly, his opinions and testimony reliably address several issues of relevance in this case, some of which even Dr. Siskin concedes are "of value." Dkt. No. 462 at 393 ("Mr. Kruskol's analysis may be of value in addressing issues before the Court is his examination of the number of days awaiting adjudication based on the class list.").

Furthermore, if expertly "understand[ing] the substantive issues concerning the data's subject matter" were the relevant prerequisite—as Defendants argue—then neither Dr. Siskin nor Mr. Kruskol would be qualified to offer reliable statistical opinions because neither possesses "expertise in USCIS' processing of immigration benefit applications, generally or under CARRP," and neither is an "expert in CARRP policy or CARRP terminology." Dkt. No. 475 at 6–7; *see also* Dkt. No. 493 at 11. And contrary to Defendants' assertions otherwise, Mr. Kruskol's identification of "potential data anomalies" without opining on definitive causes for such anomalies is not necessarily an indicator of unreliability. *See, e.g.*, Dkt. No. 476 at 8, 23–24, 52–58, 76, 153–56; *see also Primiano*, 598 F.3d at 565 ("Lack of certainty is not, for a qualified expert, the same thing as guesswork."). Similarly, Mr. Kruskol's passing critique of the underlying data used for Dr. Siskin's regression analysis, *see* Dkt. No. 476 at 153 n. 36, does not make his reports and testimony inadmissible in their entirety. As Plaintiffs point out, Mr. Kruskol need not be an expert in regression analysis and *p*-values if he does not offer such analysis for the Court's consideration,

and the Court can afford the appropriate weight to Mr. Kruskol's opinions and testimony bearing upon Dr. Siskin's regression analysis. Dkt. No. 490 at 10–11. And last, given that this case will not go before a jury, Defendants' Rule 403 arguments are unavailing. *See* Dkt. No. 475 at 14; *Cow Palace*, 80 F. Supp. 3d at 1216.

3.  Mr. Gairson's, Mr. Ragland's, and Professor Arastu's Opinions Are Partially Inadmissible

Defendants object to the final three experts' reports and opinions because they claim these reports go to the ultimate issue in this case: the legality and constitutionality of CARRP. Dkt. No. 477 at 5. For the reasons discussed below, the Court finds that certain of these three witnesses' opinions and testimony are inadmissible.

(a) *Mr. Gairson's and Mr. Ragland's Opinions on the Legality of CARRP Are Inadmissible*

With respect to Mr. Gairson and Mr. Ragland, Defendants argue that their narrative "case studies" are subjective and offer unreliable statistical analyses that these witnesses are not qualified to provide. *Id.* at 5–11. Plaintiffs point out, and Defendants do not contest, that both Mr. Gairson and Mr. Ragland qualify as expert immigration practitioners. Dkt. No. 499 at 5. Indeed, beyond their combined decades of experience, they have each represented hundreds of individuals applying for immigration benefits. Dkt. No. 480 at 169 (estimating that Mr. Gairson has provided direct representation to "close to a thousand clients with immigration cases"); *id.* at 360 (estimating that Mr. Ragland has represented more than 300 people in their adjustment of status applications and more than 200 people in their naturalization applications). Accordingly, to the extent that Mr. Gairson and Mr. Ragland set forth their experiences navigating their clients' applications for immigration benefits when national security-related issues occur, such opinions and testimony are generally admissible in this case. *See, e.g.*, *id.* at 174–75, 199–232 (Mr. Gairson's client stories and observations); *id.* at 360–66, 375–78, 381–90, 395–97 (Mr. Ragland's client stories and

observations). These anecdotes provide helpful and reliable context for Plaintiffs' claims and are based on decades of first-hand experience in the field.

However, the Court will disregard these witnesses' statistical analyses and their opinions on whether certain individuals definitively were or were not subjected to CARRP, the merits of USCIS's conduct toward their clients and especially toward individuals they did not represent, and the legality of CARRP. *See, e.g.*, *id.* at 179 (Mr. Gairson: "[f]undamentally, USCIS has gone beyond the statutory scheme enacted by Congress and has, instead, applied its own standards for national security."); *id.* at 374 (Mr. Ragland: "CARRP allows USCIS to deny immigration benefit applications on national security grounds based on subjective hunches, without the sort of definitive proof needed for a TRIG determination."); *id.* at 378 (Mr. Ragland: "CARRP exceeds the statutory basis for national security and terrorism-related inadmissibility grounds provided in 8 U.S.C. § 1182(a)(3)(B)."); *id.* at 400 ("[I]t is my opinion that Plaintiff Ostadhassan was unreasonably and unlawfully denied adjustment of status."). First, "[e]xpert testimony is not proper for issues of law." *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996); *accord Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017). And second, many of these arguments merely echo Plaintiffs' summary judgment briefing and do not assist the trier of fact to understand the evidence. *See generally* Dkt. No. 480 at 176–99, 373–75, 378–81, 392–95, 397–98, 403–04; *see also Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d 1004, 1006–07 (S.D. Cal. 2018) ("Where an expert becomes an advocate for a cause, he therefore departs from the ranks of an objective expert witness[.]" (cleaned up)); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 721 (N.D. Cal. 2019) (precluding expert from testifying about "the causation of plaintiffs' damages in this case, or the intent of these defendants," where such subject matters extended "beyond his area of expertise" and "verge[d] on legal conclusions" (emphasis omitted)),

1    *aff'd sub nom. Planned Parenthood Fed'n of Am., Inc. v. Newman*, No. 20-16068, 2022 WL

2    13613963 (9th Cir. Oct. 21, 2022).

3         Last, with respect to Mr. Gairson's and Mr. Ragland's "statistical analysis," the Court

4    agrees with Defendants that they are not qualified to offer such analysis but notes that such

5    "analysis" comprises a negligible portion of their reports and thus does not provide a basis to

6    exclude their opinions entirely. *See* Dkt. No. 480 at 198, 390–92; Dkt. No. 499 at 13.

7              *(b) Professor Arastu's Report Is Partially Inadmissible*

8         Defendants separately seek to exclude Professor Arastu's report under Rule 702. Although

9    Professor Arastu's report is somewhat broad-based and generalized in its attempt to synthesize her

10   own research with the particulars of this case, the Court finds that, as with Mr. Gairson and Mr.

11   Ragland, Professor Arastu is qualified to offer her experiences navigating national security-related

12   issues in applications for immigration benefits on behalf of clients. *See, e.g.*, Dkt. No. 480 at 4–

13   10, 30–36. However, such opinions are subject to the same limitations described above: the Court

14   finds inadmissible Professor Arastu's opinions on whether certain individuals definitively were or

15   were not subjected to CARRP, the merits of USCIS's conduct in individual cases, and her opinions

16   on the legality of CARRP. *See, e.g.*, *id.* at 22 ("In addition to the various ways CARRP's design

17   creates systematic pressure to deny cases, the way CARRP identifies NS concerns is systematically

18   discriminatory against Muslims in America."); *id.* at 25 (stating that CARRP "institutionalizes

19   discriminatory denials"); *id.* at 39 ("CARRP creates additional layers of scrutiny that have no basis

20   in statute[.]"); *see also Racicot*, 87 F.3d at 1045; *Versa CIC*, 349 F. Supp. 3d at 1006–07. With

21   respect to the portion of Professor Arastu's report recounting and applying her 2019 law review

22   study, *see* Dkt. No. 480 at 10–14, 26–30, the Court finds—for reasons similar to those supporting

23   consideration of Dr. Siskin's regression analysis—that this section is admissible and any risks

24

arising from her flaws in methodology are diminished given that the Court is the factfinder in this case. *See BurnLounge*, 753 F.3d at 888.

### III.   CONCLUSION

For the reasons stated herein, the Court hereby FINDS and ORDERS:

1.   Plaintiffs' Motion to Exclude Opinions of Dr. Bernard Siskin is GRANTED in part and DENIED in part, Dkt. Nos. 460, 463;

2.   Defendants' Motion to Exclude Testimony of Sean M. Kruskol is DENIED, Dkt. Nos. 471, 475;

3.   Defendants' Motion to Exclude the Testimony and Reports of Nermeen Arastu, Jay Gairson, and Thomas Ragland is GRANTED in part and DENIED in part, Dkt. No. 477.

Dated this 26th day of June, 2024.

Lauren King
United States District Judge