1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
9                                        AT SEATTLE

10

11    ABDIQAFAR WAGAFE, et al.,                    CASE NO. 2:17-cv-00094-LK

                          Plaintiff,               ORDER ON CROSS-MOTIONS
12                                                 FOR SUMMARY JUDGMENT
               v.
13
      JOSEPH R. BIDEN, President of the United
14    States, et al.,

15                        Defendants.

16

          This matter is before the Court on the parties' cross-motions for summary judgment. *See*
17
     Dkt. Nos. 665, 665-6.[1] The Court held oral argument on the motions on July 19, 2024. Dkt. No.
18
     672. After thoroughly reviewing the parties' motions, as well as the remainder of the relevant
19
     record, and for the reasons stated below, the Court grants in part and denies in part the parties'
20
     motions.
21

22   ───────────────────────
     [1] The parties initially refrained from publicly filing their cross-motions for summary judgment due to Defendants'
     contention that the motions constituted highly sensitive documents ("HSDs"). *See* Gen. Order No. 03-21 (issued Mar.
23   1, 2021). They later filed provisionally redacted versions of their summary judgment briefing. *See* Dkt. Nos. 595–595-
     5. Following the Court's orders regarding what materials can be filed publicly, *see* Dkt. Nos. 626, 626-1, 662, 662-1,
     the parties then filed updated versions of their redacted motion briefing and related documents, *see generally* Dkt.
24   Nos. 645, 665. Where possible, the Court cites herein to the unsealed iterations of the parties' motion briefing and
     related materials filed following Court's September 2023 and May 2024 orders.

In sum, although Plaintiffs have raised some legitimate concerns regarding the United States Citizenship and Immigration Services' ("USCIS") Controlled Application Review and Resolution Program ("CARRP"), the evidence they have submitted in support of the Naturalization Class's claims is ultimately insufficient for most of their claims to survive summary judgment. However, the Court does grant summary judgment to Plaintiffs on their claim that CARRP is arbitrary and capricious because USCIS failed to (1) explain its basis for implementing this policy, (2) indicate what data, evidence, or factors the agency considered before doing so, and (3) consider an important aspect of the problem—i.e., USCIS's statutory mandate to adjudicate naturalization applications within a reasonable time.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiffs initiated this class action in early 2017 against USCIS, a component of the Department of Homeland Security ("DHS"), as well as several government officials. Dkt. Nos. 1, 17. Plaintiffs seek declaratory and injunctive relief related to USCIS's CARRP, a national security vetting program which affects the evaluation and processing of some individuals' applications for immigration benefits. *See generally* Dkt. No. 47. In June 2017, the Court certified two nationwide classes to be represented by the five named Plaintiffs in this case: the "Naturalization Class" and the "Adjustment Class." Dkt. No. 69 at 8, 31. The parties have agreed to a continuing stay of the Adjustment Class's claims. *See* Dkt. No. 613 at 2; Dkt. No. 660 at 1.[2]

Following a lengthy discovery period, the parties each moved for summary judgment. *See* Dkt. Nos. 665, 665-5, 665-6, 665-14 (redacted summary judgment briefing). The parties also moved to exclude the opinions, testimony, and reports of five expert witnesses. *See* Dkt. Nos. 460,

---

[2] Unless otherwise specified, this Order pertains only to the claims of the Naturalization Class.

463, 471, 475, 477 (sealed and redacted motions to exclude expert opinions). While these motions were pending, Defendants also moved to dismiss the Naturalization Class's claims for lack of subject matter jurisdiction. Dkt. No. 628. The Court denied Defendants' motion to dismiss on May 20, 2024, Dkt. No. 661, and then granted in part and denied in part the parties' respective motions to exclude the opinions, testimony, and reports of the five expert witnesses, Dkt. No. 668.

Separately, after striking 17 pending motions that either sought to seal materials or requested leave to file HSDs, the Court issued two orders addressing the parties' disputes as to which materials could be filed publicly on the docket. First, the Court issued an order on the parties' consolidated response regarding material to be sealed or designated as HSDs. Dkt. Nos. 587, 609, 626, 626-1. As part of that order, the Court permitted some filings to be unsealed or filed publicly on the docket, and allowed other filings to remain under seal or be filed on the docket under seal. Dkt. No. 626 at 20; *see also generally* Dkt. Nos. 626-1, 645–646. The Court further directed the parties to submit supplemental information for certain categories of documents, including documents for which Defendants were required to either consent to publication or propose specific redactions, as well as documents Defendants were required to resubmit with proposed redactions. Dkt. No. 626 at 19–20. The parties then submitted a joint submission seeking clarification, Dkt. No. 637, and Defendants filed a motion for reconsideration, Dkt. Nos. 640, 642-2; *see also* Dkt. No. 645-1 (summarizing status of each document following the Court's September 2023 Order). On May 23, 2024, the Court granted in part and denied in part Defendants' motion for reconsideration and further clarified its rulings as to the appropriate sealing and redactions on the docket, prompting a final round of sealed, redacted, and unsealed filings. Dkt. No. 662; *see also generally* Dkt. Nos. 662-1, 664–66.

**B.    The Naturalization Class and Its Claims**

The Naturalization Class, represented by Plaintiffs Abdiqafar Wagafe, Noah Abraham

1   (formerly known as Mushtaq Jihad), and Sajeel Manzoor, is comprised of all people "(1) who have

2   or will have an application for naturalization pending before USCIS, (2) that is subject to CARRP

3   or a successor 'extreme vetting' program, and (3) that has not been or will not be adjudicated by

4   USCIS within six months of having been filed." Dkt. No. 69 at 8. On behalf of this class, Plaintiffs

5   allege that USCIS "has refused to adjudicate their applications in accordance with the governing

6   statutory criteria," and instead "applied impermissible ultra vires rules" under CARRP, preventing

7   "the agency from granting Plaintiffs' applications (and, in the case of Mr. Wagafe, caus[ing] the

8   agency to delay granting his application until this lawsuit motivated it to do so)." Dkt. No. 47 at 3;

9   *see also id.* at 33 ("Mr. Wagafe's naturalization application was subject to CARRP or its successor

10  'extreme vetting' program, which caused the delay in adjudication of his naturalization

11  application, despite the fact that he was statutorily entitled to naturalize," and the delay caused him

12  "significant harm"); *id.* at 39 (similar allegations as to Mr. Abraham); *id.* at 41 (similar allegations

13  as to Mr. Manzoor); *id.* at 42–45 (similar allegations as to the Naturalization Class).

14          Plaintiffs assert seven causes of action on behalf of themselves and the Naturalization

15  Class, alleging that CARRP violates (1) the Due Process Clause of the Fifth Amendment through

16  failure to provide notice and an opportunity to respond to CARRP classification, Dkt. No. 47 at

17  47;[3] (2) the Due Process Clause of the Fifth Amendment through the unauthorized and indefinite

18  suspension of the adjudication of applications, Dkt. No. 47 at 47; (3) the equal protection

19  component of the Fifth Amendment's Due Process Clause through the indefinite suspension of the

20  adjudication of applications based on country of origin, *id.* at 47–48; (4) the Immigration and

21  Nationality Act ("INA") and its implementing regulations through the imposition of additional

22  non-statutory, substantive adjudicatory criteria for naturalization, *id.* at 48–49; (5) the

23

24  ---
    [3] The Court previously dismissed this claim as to the Adjustment Class. Dkt. No. 69 at 17, 22.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 4

Administrative Procedure Act ("APA") through arbitrary and capricious final agency action, *id.* at 49, (6) the APA through failure to provide a notice and comment period before implementing a substantive rule, *id.* at 49–50; and (7) the "Uniform Rule of Naturalization" clause of the Constitution through the creation of additional naturalization requirements not enacted by Congress, *id.* at 50.

In light of the above, Plaintiffs request, among other things, the following relief: (1) an order directing Defendants to adjudicate Plaintiffs' and the class's applications, and to do so "based solely on the statutory criteria"; (2) a declaration that CARRP or any successor "extreme vetting" program violates the Constitution, the INA, and the APA; (3) an injunction prohibiting Defendants "from applying CARRP or any successor 'extreme vetting' program to the processing and adjudication of" Plaintiffs' and the class's applications; (4) an order directing Defendants to "rescind CARRP or any successor 'extreme vetting' program because they failed to follow the process for notice and comment by the public"; and, in the alternative, (5) an order directing Defendants to provide Plaintiffs and class members "with notice that they have been subjected to CARRP or any successor 'extreme vetting' program, the reasons for subjecting them to CARRP . . . , and a reasonable opportunity to respond to those allegations before a neutral decision-maker[.]" *Id.* at 51–52.

## C.    Overview of Naturalization

The Secretary of Homeland Security possesses "sole authority to naturalize persons as citizens of the United States," 8 U.S.C. § 1421(a); *see* 6 U.S.C. § 557, and USCIS is the agency within DHS that implements this authority, *see* 8 C.F.R. § 310.1(b); 6 U.S.C. § 271(b); *see also Mestanek v. Jaddou*, 93 F.4th 164, 170–71 (4th Cir. 2024);[4] *Roshandel v. Chertoff*, 554 F. Supp.

---

[4] The Court notes that Defendants submitted *Mestanek* as part of their June 11, 2024 Notice of Supplemental Authority. *See* Dkt. No. 663 at 3, 97–110.

2d 1194, 1199 (W.D. Wash. 2008). To become a naturalized United States citizen, an applicant must normally show (1) continuous residence in the United States for five years immediately preceding the date of filing the application, (2) certain physical presence and residence requirements both before and after filing her application, and (3) that she "has been and still is a person of good moral character[.]" 8 U.S.C. § 1427(a); *see also id.* § 1101(f); 8 C.F.R. §§ 316.2(a), 316.10. "An applicant bears the burden to show his or her eligibility for citizenship in every respect." *Hussein v. Barrett*, 820 F.3d 1083, 1088 (9th Cir. 2016); *accord Berenyi v. Dist. Dir., Immigr. & Naturalization Serv.*, 385 U.S. 630, 637 (1967); 8 C.F.R. § 316.2(b).

In evaluating naturalization applications, USCIS officers are authorized to, among other things, "take and consider evidence concerning the privilege of any person to . . . reside in the United States, or concerning any matter which is material or relevant to the enforcement of [8 U.S.C. §§ 1101–1537] and the administration of the Service[.]" 8 U.S.C. § 1357(b). When adjudicating naturalization applications, designated USCIS employees are also required to "conduct a personal investigation" of the applicant and "to conduct examinations," or interviews, and are authorized to "take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization[.]" *Id.* § 1446(a)–(b); *see also id.* § 1443(a); 8 C.F.R. §§ 335.1–335.2. "[I]f the applicant has complied with all requirements for naturalization under this chapter," then "USCIS shall grant the application[.]" 8 C.F.R. § 335.3(a).

If the applicant has submitted "all required initial evidence . . . but the evidence submitted does not establish eligibility," USCIS may (1) deny the application due to ineligibility; (2) request more information or evidence from the applicant; or (3) notify the applicant of its intent to deny the application. 8 C.F.R. § 103.2(b)(8)(iii). USCIS is also permitted to hold an application in abeyance if it "determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion . . . in connection with the benefit request, and that the

disclosure of information to the applicant or petitioner in connection with the adjudication of the benefit request would prejudice the ongoing investigation." 8 C.F.R. § 103.2(b)(18). If the investigation has not been completed within one year of its inception, USCIS must determine whether adjudication "should be held in abeyance for six months or until the investigation is completed, whichever comes sooner," and must review that determination every six months thereafter. *Id.*[5] If USCIS decides to notify an applicant of its intention to deny the application, the agency is required to "specify . . . the bases for the proposed denial sufficient to give the applicant . . . adequate notice and sufficient information to respond." 8 C.F.R. § 103.2(b)(8)(iii)–(iv). If USCIS denies an application, it must "explain in writing the specific reasons for denial." *Id.* § 103.3(a)(1)(i). Subject to certain exceptions, a naturalization applicant "shall be permitted to inspect the record of proceeding which constitutes the basis for the decision." *Id.* § 103.2(b)(16). Relevant exceptions include decisions based on classified information: applicants "shall not be provided any information contained in the record or outside the record which is classified" unless the classifying authority authorizes such disclosure, and "[a] decision based in whole or in part on such classified information shall state that the information is material to the decision." *Id.* § 103.2(b)(16)(iv).

If the government has not adjudicated a naturalization application within 120 days following an applicant's interview, the applicant may apply to a district court for a hearing. 8 U.S.C. § 1447(b). In addition, Section 1447(a) permits naturalization applicants to request a hearing before an immigration officer once their application has been denied, and Section 1421(c) permits them to seek de novo review in district court of that denial thereafter. 8 U.S.C. §§ 1421(c),

---

[5] USCIS guidance implementing this regulation requires supervisory approval to hold a case in abeyance, and extending abeyances beyond one year requires a USCIS District Director to obtain a Regional Director's approval; beyond 18 months requires the joint approval of two headquarters directorates. Dkt. No. 645-86 at 7.

1447(a).

**D.    Overview of CARRP**

USCIS describes CARRP as a "policy for identifying and processing [immigration] cases with national security . . . concerns[.]" Dkt. No. 286-3 at 1; *see also id.* at 40 (June 5, 2009 USCIS memo referring to CARRP as "a disciplined approach for identifying, recording, and adjudicating applications and petitions where a National Security (NS) concern is identified"); Dkt. No. 126-1 at 3; Dkt. No. 517 at 3.[6] CARRP was not created by statute or regulation; it is an internal USCIS policy "memorialized in a series of memoranda." Dkt. No. 517 at 9; *see* Dkt. No. 286-3 at 1–11; *see also* Dkt. No. 74 at 18; Dkt. No. 645-33 at 14–15.[7]

Although all applicants for naturalization in the United States are subject to background checks run by the USCIS National Benefits Center ("NBC"), not all applications are subject to CARRP review. Dkt. No. 645-34 at 12–13; Dkt. No. 522 at 2–3; Dkt. No. 665-17 at 9. In routine cases, following the completion of these background checks, NBC schedules an applicant for an interview and sends the case to a benefits adjudication officer, or Immigration Services Officer ("ISO"), who evaluates the applicant's eligibility, conducts an interview, and, if the eligibility requirements are met, approves the application. Dkt. No. 645-28 at 25–28; Dkt. No. 645-35 at 11;

---

[6] USCIS's website currently defines CARRP as a "USCIS-wide process for handling cases with national security concerns," which generally arise "when a person or organization has been determined to have a link to past, current, or planned involvement in an activity or organization involved in terrorism, espionage, sabotage, or the illegal transfer of goods, technology, or sensitive information." Refugee Processing and Security Screening: USCIS National Security Processing, USCIS (March 14, 2024), https://www.uscis.gov/humanitarian/refugees-and-asylum/refugees/refugee-processing-and-security-screening (last visited January 9, 2025). The Court takes judicial notice of the contents of a governmental website. *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010); *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 n.3 (9th Cir. 2015).

[7] In the years following September 11, 2001, Congress amended the INA to expand the class of individuals considered inadmissible and deportable due to national security concerns. *See* USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001); The REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (May 1, 2005). These statutory provisions are known as the terrorism-related inadmissibility grounds ("TRIG"). 8 U.S.C. §§ 1182(a)(3)(A)–(B), (F), 1227(a)(4)(A)–(B). The statute that lists requirements for naturalization does not explicitly mention any terror-related grounds for denial; however, "[i]n determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship," the Attorney General may take into consideration the applicant's conduct and acts at any time prior to the filing of the application. 8 U.S.C. § 1427(e).

Dkt. No. 522 at 2. In cases where applications are reviewed under CARRP, however, applicants face several other steps prior to adjudication.

There are four phases to CARRP. Dkt. No. 666-25 at 3; Dkt. No. 126-1 at 3. The first phase involves identifying a national security ("NS") concern associated with an applicant. Dkt. No. 645-32 at 21; Dkt. No. 645-55 at 13; Dkt. No. 665-18 at 8–9. If a concern is identified, the agency moves to the second stage and internally vets the applicant's eligibility for the benefit, followed by, if necessary, the third phase of external vetting, and then fourth, adjudication. Dkt. No. 286-3 at 3–7; *see also* Dkt. No. 645-37 at 6.

Only a small percentage of total naturalization applications are processed through CARRP, and most are ultimately approved. *See, e.g.*, Dkt. No. 645-5 at 34, 51. However, CARRP delays the adjudication of applications relative to non-CARRP processing—sometimes significantly. *See, e.g.*, Dkt. No. 645-14 at 12 ("Applications subject to CARRP and adjudicated by USCIS decision were pending for two and a half times longer than applications not subject to CARRP."); Dkt. No. 645-26 at 1 (certain applicants subjected to CARRP "waited on average 3.15 times longer to be adjudicated than routine applicants"); Dkt. No. 645-33 at 61 (noting that as of August 10, 2020, the mean wait time for the Naturalization Class was 881 days and the median wait time was 588 days); Dkt. No. 665 at 26–27 (a class list from March 2021 indicated that 1,348 class members had waited more than two years for a decision and 1,285 had waited more than three years, and that CARRP cases were significantly delayed compared to non-CARRP cases); Dkt. No. 665-14 at 20 (Defendants' reply brief acknowledging that "naturalization applications subject to CARRP are adjudicated more slowly than other naturalization applications").[8] In addition, USCIS does not inform individuals that their applications are being reviewed under CARRP or provide them an

---

[8] Following Plaintiffs' filing this lawsuit, USCIS identified a large number of "adjudication ready" CARRP cases and adjudicated 6,000 such cases. Dkt. No. 645-28 at 17–22.

opportunity to challenge the agency's decision to process their application pursuant to the program. Dkt. No. 645-32 at 22.

### 1. Identifying NS Concerns

An NS concern exists under CARRP "when an individual or organization has been determined to have an articulable link to prior, current, or planned involvement in, or association with, an activity, individual, or organization described in sections 212(a)(3)(A), (B), or (F), or 237(a)(4)(A) or (B) of the [INA]." Dkt. No. 286-3 at 1 n.1; Dkt. No. 645-32 at 15; *see also* Dkt. No. 645-55 at 15, 22; Dkt. No. 126-1 at 3. The term "articulable link" does not appear in the relevant TRIG statutes, 8 U.S.C. §§ 1182(a)(3)(A)–(B), (F), 1227(a)(4)(A)–(B); *see also* Dkt. No. 645-32 at 15, but under USCIS policy, an articulable link is "a synopsis of facts which tie an individual or organization to a national security ground," Dkt. No. 666-21 at 2. "[A]rticulating a link (or determining that no link exists)" may involve interagency coordination "or research in another system," and "[u]ntil a definitive judgment is reached about whether an articulable link exists, the case must remain open." Dkt. No. 665-19 at 185.

If an applicant presents an NS concern, USCIS places the applicant into one of two categories: Known or Suspected Terrorists ("KSTs") or Non-Known or Suspected Terrorists ("non-KSTs"). Dkt. No. 286-3 at 1–2 & n.3; Dkt. No. 645-32 at 16. A KST includes any person in the Terrorist Screening Database ("TSDB"), placed on the Terrorist Watch List, and designated as a "KST" in TECS,[9] whereas a non-KST "is the category of remaining cases with NS concerns, regardless of source, including but not limited to: associates of KSTs, unindicted co-conspirators, terrorist organization members, persons involved with providing material support to terrorists or

---

[9] TECS "is a multiagency effort with a central system that combines information from multiple agencies, databases, and system interfaces to compile data relating to national security risks and other issues." Dkt. No. 126-1 at 4 n.2; *see also* Dkt. No. 517 at 5; Dkt. No. 645-29 at 3–4; Dkt. No. 645-45 at 8; Dkt. No. 645-54 at 3.

terrorist organizations, and agents of foreign governments." Dkt. No. 286-3 at 1 n.3; *see also* Dkt. No. 645-54 at 2 & n.1; Dkt. No. 126-1 at 4.[10]

KSTs "automatically indicate the presence of a NS concern" and satisfy the articulable link standard. Dkt. No. 645-54 at 2; Dkt. No. 645-33 at 37–38; Dkt. No. 665-20 at 32, 47; *see also* Dkt. No. 665-19 at 158. For non-KSTs, USCIS identifies NS concerns by relying on information from the following sources: TECS, FBI name and fingerprint checks, agency databases, the applicant, and "[a]ny other manner in which USCIS is notified or obtains information that an individual has an articulable link to a national security concern." Dkt. No. 126-1 at 4; *see also* Dkt. No. 645-54 at 2–3; Dkt. No. 665-20 at 58. Utilizing these information sources, officers are instructed to exercise their judgment and assess applications for "indicators" of an NS concern. Dkt. No. 645-54 at 3; Dkt. No. 645-59 at 3; *see also* Dkt. No. 645-33 at 35–36; Dkt. No. 665-18 at 42, 61. Such indicators can relate to, among other things, an individual's employment, education, training, travel, associations and/or affiliations, and activities. Dkt. No. 645-54 at 3–5; Dkt. No. 665-24 at 31. USCIS's training materials state that "protected characteristics, such as national origin or religion, ARE NOT indicators of an NS concern," Dkt. No. 666-17 at 28,[11] and that connecting an individual to an NS ground "must be based on evidence, not instinct," Dkt. No. 645-59 at 3; *see also* Dkt. No. 522 at 3–4, 6.[12]

USCIS also subdivides non-KSTs into two additional categories: "confirmed" and "not confirmed" NS concerns, as well as a third designation of "Non-NS" if the concern is resolved

---

[10] As of June 2017, the Terrorism Watchlist contained more than 1 million people. Dkt. No. 645-8 at 16; *see also Elhady v. Kable*, 993 F.3d 208, 213 (4th Cir. 2021). However, KSTs represent a minority of CARRP applicants: between fiscal years 2013 and 2019, one percent of adjustment of status and naturalization applications adjudicated through CARRP (and five percent of non-adjudicated applications) were considered KSTs. Dkt. No. 645-13 at 10.

[11] Prior to 2020, this statement was not contained in USCIS's training materials. Dkt. No. 546 at 2; Dkt. No. 549 at 15; *see also* Dkt. No. 665-14 at 21.

[12] Plaintiffs move to strike USCIS's updated CARRP training modules. Dkt. No. 665-5 at 48–50. As discussed below, this motion is denied. *See infra* II.C.

1    through vetting. Dkt. No. 645-31 at 19; Dkt. No. 645-33 at 53–56; Dkt. No. 645-55 at 27–32; Dkt.

2    No. 666-17 at 27. A "confirmed" NS concern occurs when an officer expresses an articulable link,

3    i.e., describes "a clear connection between a person (on the one hand), and an activity that threatens

4    the safety and integrity of the United States or another nation (on the other)." Dkt. No. 666-13 at

5    2; *see also* Dkt. No. 645-31 at 17; Dkt. No. 645-71 at 18–19; Dkt. No. 645-33 at 54.[13] A "not

6    confirmed" NS concern, on the other hand, is when a USCIS officer identifies at least one

7    "indicator" of concern that does not reach the threshold of an "articulable link" but signals a

8    potential NS concern. Dkt. No. 645-31 at 18; Dkt. No. 645-33 at 54–55; Dkt. No. 645-70 at 8–9;

9    Dkt. No. 645-55 at 31; Dkt. No. 665-24 at 31; Dkt. No. 666-17 at 42. A "not confirmed" NS

10   concern based on "indicators" is still subject to CARRP review. Dkt. No. 645-33 at 57–58; Dkt.

11   No. 645-55 at 38–39; Dkt. No. 665-19 at 144–45, 181; Dkt. No. 666-13 at 2. However, if USCIS

12   determines that such indicators do not to relate to the applicant or confirms that there is no

13   articulable link between the applicant and the national security concern, the application is no longer

14   subject to CARRP. Dkt. No. 126-1 at 3.

15           Once a field office identifies a potential NS concern or confirms an articulable link, an

16   application will move into the second phase of CARRP: internal vetting and eligibility assessment.

17   Dkt. No. 666-25 at 3; *see also* Dkt. No. 286-3 at 4 ("[O]nce the concern has been identified, the

18   officer must conduct a thorough review of the record associated with the application or petition to

19   determine if the individual is eligible for the benefit sought" and also "conduct internal vetting to

20   obtain any relevant information to support adjudication and, in some cases, to further examine the

21   nature of the NS concern." (footnotes omitted)).

22

23   ───────────────────
     [13] According to USCIS data for fiscal years 2013 through 2019, three percent of adjudicated and 13 percent of pending
24   naturalization applications processed through CARRP were designated as "NS confirmed." *See* Dkt. No. 645-13 at
     18–19.

     ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 12

### 2.  Internal Vetting and Eligibility Assessment

At the second stage of CARRP, the focus is on the applicant's eligibility for the desired immigration benefit. Dkt. No. 645-37 at 3; Dkt. No. 286-3 at 4; Dkt. No. 666-14 at 14. "The purpose of the eligibility assessment is to ensure that valuable time and resources are not unnecessarily expended externally vetting a case . . . when the individual is otherwise ineligible for the benefit sought." Dkt. No. 286-3 at 5. In such instances, "the application or petition may be denied on any legally sufficient grounds." *Id.*; *see also* Dkt. No. 645-78 at 3. Officers evaluate whether the applicant is "not ineligible," warranting a continuation in CARRP processing, as opposed to "clearly ineligible," at which point the application can be denied. Dkt. No. 666-14 at 21–22 ("[W]e can't always make a decision about whether someone is eligible . . . [b]ut we can definitely say that they're not clearly ineligible[.]"). The internal vetting is conducted by "any CARRP designated officer," which in some cases is a USCIS officer within the Office of Fraud Detection and National Security ("FDNS"). Dkt. No. 666-14 at 24; *see also* Dkt. No. 645-31 at 26; Dkt. No. 645-45 at 8; Dkt. No. 645-93 at 3.[14] If, after the completion of this internal assessment and vetting, the applicant appears potentially eligible for the benefit sought, "or if field management determines further processing is necessary to strengthen or support a decision," the application will proceed to the third phase: external vetting. Dkt. No. 645-48 at 141; *see also* Dkt. No. 666-25 at 3–5; Dkt. No. 666-14 at 80.

### 3.  External Vetting

The external vetting phase of CARRP focuses on whether an NS concern exists, which generally requires coordination with third-party law enforcement agencies who possess further

---

[14] FDNS is the "office within USCIS established to enhance the integrity of the legal immigration system by identifying threats to national security and public safety, detecting and combating benefit fraud and removing systemic and other vulnerabilities." Dkt. No. 645-45 at 8; *see also id.* at 10; Dkt. No. 517 at 7.

information about the NS concern. Dkt. No. 286-3 at 5–6; Dkt. No. 645-49 at 21–23; Dkt. No. 666-14 at 83, 87, 100, 103; *see also* Dkt. No. 666-25 at 5 (declaration of Mathew Relph, an Immigration Officer assigned to the FDNS, stating that: "Between the initial processing at NBC and the internal vetting, I would have learned which third agencies have records related directly or indirectly to the applicant. . . . The most common record holders are Homeland Security Investigations, Customs and Border Patrol, and the Federal Bureau of Investigation[.]").[15] The conversations with record holders are geared toward exploring "the details of the agency's records that may relate to the applicant or give context to the national security concern" and engaging in "deconfliction." Dkt. No. 666-25 at 5. Deconfliction, which can take place at any stage of CARRP, is a term used to describe "[t]he coordination between USCIS and other governmental agencies who own NS information" in order to "ensure that planned adjudicative activities do not compromise or impede an ongoing investigation or other record owner interest." Dkt. No. 645-31 at 25, 46–48; *see also* Dkt. No. 645-45 at 9.

Ultimately, "the goal is to achieve an outcome: resolve the concern or decide the benefit." Dkt. No. 666-14 at 137;[16] *see also id.* at 135 ("If there's no more NS concern, or if the person is clearly ineligible, there's an easy end to CARRP[.] The challenge comes when the individual seems eligible, but we've done enough vetting to know that we're probably not going to be able to resolve the concern[.]"); Dkt. No. 645-31 at 44. If the NS concern is "resolved," the application is returned to the normal processing track for final adjudication of the application. *See* Dkt. No. 286-3 at 5; Dkt. No. 666-25 at 7; *see also* Dkt. No. 645-31 at 30 (explaining that "resolved" is a

---

[15] For KST NS concerns, field officers are not authorized to conduct external vetting. Instead, such vetting is conducted by FDNS headquarters "only as a last resort when ineligibility grounds have not been identified." Dkt. No. 645-49 at 28; *see also* Dkt. No. 286-3 at 7; Dkt. No. 645-51 at 5.

[16] The 2017 version of this training phrased the purpose as: "[r]esolve the concern, or deny the case." Dkt. No. 645-78 at 4.

synonym for "overcome," and that "'We <u>resolved</u> the NS concern' is clearer when you think of it as 'We <u>overcame</u> the NS concern"); Dkt. No. 645-33 at 52 ("A national security concern in a CARRP case is considered resolved when we have investigated the factors that led to the articulation of a national security concern and indicated that . . . those factors no longer apply to the case."). "If the national security concern is resolved through the vetting process and if the applicant is otherwise eligible for the immigration benefit sought, the USCIS field-level adjudicator may approve the application." Dkt. No. 645-32 at 22. If the NS concern remains "unresolved," USCIS may either "(1) approve the application (despite the continued existence of the NS concern) after receiving proper supervisory approval, or (2) deny the application based on statutory or regulatory grounds of ineligibility that are legally sufficient and can be cited in a decision." Dkt. No. 645-93 at 15 (citing Dkt. No. 666-22 at 10). To achieve the latter outcome, USCIS engages in a process called "lead vetting," whereby the officer builds a separate but parallel evidentiary basis for a denial because the NS-related evidentiary basis is classified or otherwise restricted. Dkt. No. 666-14 at 150–57; *see also* Dkt. No. 286-3 at 6 (explaining that the third-party record owner must authorize USCIS to use information obtained during the external vetting process); Dkt. No. 666-22 at 23; Dkt. No. 645-78 at 5–6.

Although USCIS instructs officers to "make every effort to complete NS cases within a reasonable amount of time," Dkt. No. 286-3 at 7, the external vetting period can take anywhere from weeks to years, Dkt. No. 666-25 at 7. This phase can also be delayed due to the USCIS regulation that allows for a case to be placed in abeyance. Dkt. No. 666-25 at 6; *see supra* I.C; 8 C.F.R. § 103.2(b)(18). In the CARRP context, this occurs when the record owner asks that USCIS hold the application in abeyance because it has a pending investigation implicating an applicant's eligibility for a pending benefit, and disclosure of certain information may impede the investigation. Dkt. No. 666-25 at 6; *see also* Dkt. No. 666-22 at 44.

4. <u>Adjudication</u>

After external vetting is complete, the application enters the final stage of CARRP: adjudication. Dkt. No. 286-3 at 6. This stage differs depending on whether the applicant is considered a KST or non-KST. *Id.* at 6–7; Dkt. No. 645-49 at 31; Dkt. No. 666-22 at 43; *see also* 645-37 at 5–18 (CARRP workflows). If an applicant is a KST with an unresolved NS concern, "officers must obtain concurrence from the USCIS Director or Deputy Director before approving the application." Dkt. No. 645-32 at 14; *see also* Dkt. No. 666-22 at 31–32. Between fiscal years 2013 and 2019, USCIS approved 25 total KST applicants and denied 193. Dkt. No. 645-13 at 10; *see also* Dkt. No. 645-50 at 2 (internal USCIS email from 2015 noting that "KSTs cannot be approved and that is why we have some cases over 3 years pending"). For non-KSTs with unresolved NS concerns, CARRP prohibits officers from approving their applications "without supervisory approval and concurrence from a senior-level official," and also permits officers to "request additional external vetting assistance from HQFDNS[.]" Dkt. No. 286-3 at 6–7; *see also* Dkt. No. 645-32 at 14; Dkt. No. 645-37 at 13, 17–18; Dkt. No. 645-49 at 29, 31; Dkt. No. 666-22 at 33.

**E.    Named Plaintiffs**

As noted above, there are five named Plaintiffs representing the certified classes in this case, three of whom represent the Naturalization Class.

- <u>Abdiqafar Aden Wagafe</u> is a Somali national who resettled in the United States as a refugee in March 2007. Dkt. No. 646-1 at 11. He applied for naturalization in November 2013. *Id.* USCIS took no adjudicatory action until February 22, 2017, when it interviewed Mr. Wagafe and approved his application. *Id.* at 2.

- <u>Noah Abraham</u>—formerly known as Mushtaq Jihad—is an Iraqi refugee and Muslim who resettled in the United States in 2008 with his wife and children. Dkt. No. 468 at

1. He applied to naturalize in July 2013. *Id.* at 2. On his naturalization application, he requested that his name be changed "from Mushtaq Jihad to Noah Abraham because [he] found that Americans misunderstood the name 'Jihad' and discriminated against [him] as a result." *Id.* Later that year, FBI agents questioned him at his house in front of his family for nearly six hours, and thereafter he did not receive updates about his application for several years. *Id.* In 2015, Mr. Abraham, who suffers from leukemia, lost his social security benefits due to his lack of citizenship status. *Id.*; *see* 8 U.S.C. § 1612(a)(2). Shortly after joining this lawsuit, he was interviewed and approved for naturalization. Dkt. No. 468 at 3. He avers that the delay in adjudication took a toll on his health and caused him and his family severe stress. *Id.*

- <u>Sajeel Manzoor</u> is a Pakistani national and Muslim who came to the United States as a student in 2001. Dkt. No. 469 at 1. He applied for adjustment of status in October 2007, and, after a two-hour interview with the FBI, was not approved until the fall of 2010. *Id.* at 2. Mr. Manzoor then applied to naturalize in November 2015. *Id.* In 2016, he received another visit and call from the FBI, and again experienced a delay in his application process. *Id.* Then, in May 2017 after joining this litigation, USCIS scheduled his naturalization interview and granted his application on the same day as his interview. *Id.* at 3. The delay in adjudication caused him to refrain from traveling internationally due to fear of not being able to re-enter the country, forcing him to forgo attending important life events in Pakistan. *Id.* at 2–3.

## II.  DISCUSSION

Plaintiffs move for summary judgment on several of the Naturalization Class's claims. First, they seek summary judgment on their claims that CARRP violates the APA because it is contrary to law, results in agency action unlawfully withheld or unreasonably delayed, was adopted

without notice and comment rulemaking, and is arbitrary and capricious. Dkt. No. 665 at 36–53; *see* Dkt. No. 47 at 49–50. Second, they contend summary judgment is warranted on their claim that CARRP violates the procedural aspect and equal protection component of the Fifth Amendment's Due Process Clause. Dkt. No. 665 at 53–60; *see* Dkt. No. 47 at 47–48. Defendants seek summary judgment on "Plaintiffs' First through Tenth Claims, excepting the Fourth Claim regarding adjustment of status." Dkt. No. 665-6 at 43; *see also id.* at 74 ("[T]he Court should grant Defendants' cross-motion for summary judgment . . . , deny Plaintiffs' motion for summary judgment, and enter judgment for Defendants on all claims.").

Plaintiffs argue that "Defendants do not move for summary judgment on all of Plaintiffs' claims, despite their passing reference to doing so," because "[t]heir brief only addresses . . . Claims Four (procedural due process), Six (equal protection), Eight (Administrative Procedure Act ("APA"), 5 U.S.C. § 706), and Nine (APA, *id.* § 553)," and does not address "Claim Eight contrary-to-law arguments except in a footnote (thus conceding it), nor Claims Five (substantive due process), Seven (INA and regulations), or Ten (Uniform Rule of Naturalization)." Dkt. No. 665-5 at 16. This is true only with respect to Plaintiffs' fifth claim. Defendants clearly move for summary judgment—complete with substantive argument—on Plaintiffs' first through third claims and seventh and tenth claims in footnotes, Dkt. No. 665-6 at 49 n.6, 70 n.12, and while it is not a best practice to do so, it does not mean Defendants "concede this claim as a matter of law," Dkt. No. 665-5 at 22. Defendants do not, however, substantively address Plaintiffs' fifth claim. *See generally* Dkt. No. 665-6. Although Defendants argue that "omissions in summary judgment briefing are not concessions," Dkt. No. 665-14 at 13 n.8; *see also id.* at 21, that is true only with respect to opposition briefs, Fed. R. Civ. P. 56(e)(2); LCR 7(b)(2). A non-moving party must receive adequate notice and an opportunity to respond to the moving party's arguments before summary judgment can properly be entered against it. *See Portland Retail Druggists Ass'n v.*

*Kaiser Foundation Health Plan,* 662 F.2d 641, 645 (9th Cir. 1981); *see also Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2015 WL 660214, at *1 (N.D. Cal. Feb. 12, 2015) ("As the party moving for summary judgment, Plaintiff was required to frame the relief sought by his motion clearly, in order to provide adequate notice to the opposing party and to the Court."). Because Defendants' motion does not provide such notice to Plaintiffs with respect to claim five, the Court does not entertain that request.

## A.    Legal Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When parties file simultaneous cross-motions for summary judgment on the same claim, the Court "must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001); *see also Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (the district court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard" (cleaned up)). The Court "giv[es] the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). However, to the extent the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the

movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried its burden under Rule 56, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). Metaphysical doubt is insufficient, *id.* at 586, as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89. Nor is it the Court's job to "scour the record in search of a genuine issue of triable fact"; rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quotation marks and citation omitted).[17]

## B.    Plaintiffs' Motion to Strike

Plaintiffs move to strike two categories of evidence that Defendants included in their consolidated opposition and cross-motion. First, Plaintiffs argue that certain of Defendants'

---

[17] Defendants contend that a "somewhat modified" standard for summary judgment applies here with respect to Plaintiffs' claim under 5 U.S.C. § 706(2). Dkt. No. 665-6 at 42 (contending that "[t]he Court's task in judicial review under the APA is not to determine whether genuine issues of material fact preclude summary judgment, but to determine only 'whether the agency could reasonably have found the facts that it did'" (citing *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985))). A motion for summary judgment is generally the proper mechanism for a court to decide as a matter of law whether an agency's administrative decision is supported by the administrative record under the APA, *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994), because the court "is not required to resolve any facts in a review of an administrative proceeding" except under limited circumstances, such as when the agency fact-finding is inadequate. *Occidental Eng'g Co.*, 753 F.2d at 769 (citing, *inter alia*, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)). In other circumstances, such as when the agency's "fact-finding procedures are inadequate," *Overton Park*, 401 U.S. at 415; *Proietti v. Levi*, 530 F.2d 836, 838 (9th Cir. 1976), de novo review of the agency's decision is appropriate, and the typical summary judgment standard applies, *Occidental Eng'g*, 753 F.2d at 769 (citing, *inter alia*, *Overton Park*, 401 U.S. at 415); *Ahmed v. United States Dep't of State*, No. 23-CV-02474-SVK, 2024 WL 315705, at *2 (N.D. Cal. Jan. 26, 2024) (applying "typical summary judgment standard" where parties agreed there was no administrative record for the court to review). As reflected below, even if the Court considered only the administrative record—as Defendants request—it would still grant summary judgment to Plaintiffs on their claim that CARRP is arbitrary and capricious. And even if the Court were to consider extra-administrative-record evidence—as Plaintiffs request—it would grant summary judgment to Defendants on Plaintiffs' other APA claims.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 20

1  "revised" 2020 CARRP training modules created during this litigation and disclosed after the

2  expiration of the fact discovery deadline, as well as agency testimony relying on these exhibits,

3  are inadmissible under Federal Rule of Civil Procedure 26(e) and should be stricken under Federal

4  Rule of Civil Procedure 37. Dkt. No. 665-5 at 48–50. Plaintiffs specifically take issue with

5  Defendants' Exhibits 4 (Dkt. No. 666-17), 5 (Dkt. No. 666-18), 14 (Dkt. No. 666-22), and 19 (Dkt.

6  No. 666-23). Dkt. No. 665-5 at 48–50. According to Plaintiffs, "[t]hese exhibits contain an

7  'updated' version of the CARRP training modules that Defendants transparently sanitized in

8  response to Plaintiffs' challenges and disclosed one year after the close of discovery." *Id.*; *see* Dkt.

9  Nos. 645-78–81 (side by side comparisons of 2017 and 2020 training slides); Dkt. No. 298 at 1

10  (setting non-expert discovery deadline of November 29, 2019). Second, Plaintiffs ask that the

11  Court strike the rebuttal expert report of Kelli Ann Burriesci because Defendants improperly offer

12  her testimony as affirmative evidence in support of their case-in-chief. Dkt. No. 665-5 at 50; *see*

13  Dkt. No. 645-84 (Burriesci report).[18]

14  With respect to the first category of evidence, Defendants respond that USCIS periodically

15  updates the CARRP training modules and that "[t]he 2020 version of the training represents a

16  continuation of the agency's effort to improve the resources it publishes for its personnel[.]" Dkt.

17  No. 665-14 at 21. Defendants further contend that "the update is consistent with [the] core content"

18  contained in older training modules, that "the parties continued certain aspects of discovery

19  through the spring of 2021," and that Defendants "produced the 2020 trainings in accord with their

20

21  ───────────────

[18] Separately, Plaintiffs urge the Court to "disregard" Defendants' "self-serving, conclusory agency declarations unsupported by (and often contradicted by) documentary evidence." Dkt. No. 665-5 at 16 (citing Dkt. Nos. 517, 520, 522). While it is true that courts may "disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence," declarations will often be "self-serving." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). On summary judgment, district courts must "focus on the admissibility of the evidence's . . . contents," *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003), and Plaintiffs do not object to specific portions of these declarations or contend that they "cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). Accordingly, the Court will consider them.

Rule 26 duty to supplement." *Id.* at 21 & n.15; *see* Dkt. No. 563-6 (Oct. 14, 2020 email noting Plaintiffs' "Fourth Supplemental Initial Disclosures"); Dkt. No. 563-7 (Oct. 15, 2020 email stating that "[i]n compliance with Defendants' obligations under Rule 26(e)," Defendants would "soon be producing some additional documents . . . , including CARRP training materials that were updated in September of [2020]"). With respect to the Burriesci expert report, Defendants argue that it "clearly rebuts Plaintiffs' experts, so the request to strike is groundless." Dkt. No. 665-14 at 21.

### 1.   Updated CARRP Training Materials

Under Federal Rule of Civil Procedure 26(e), if a party learns that its Rule 26(a) disclosure or response is incomplete or incorrect in some material respect, "and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," that party must, in a timely manner, "supplement or correct its disclosure or response." Fed. R. Civ. P. 26(e)(1)(A). Courts in the Ninth Circuit have found that the duty to supplement can persist "even after the discovery cut-off date." *Hernandez v. Polanco Enters., Inc.*, 19 F. Supp. 3d 918, 933 (N.D. Cal. 2013); *see also K.J.P. v. Cnty. of San Diego*, 621 F. Supp. 3d 1097, 1138 (S.D. Cal. 2022); *Sanders v. Univ. of Idaho, Coll. of L.*, No. 3:19-CV-00225-BLW, 2022 WL 280875, at *2 (D. Idaho Jan. 31, 2022). Failure to comply with Rule 26(e) precludes that party from using such information "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). Rule 37(c)(1) "gives teeth" to the requirements of Rule 26(a)(2)(B) and affords the district court "particularly wide latitude . . . to issue sanctions" for a party's failure to meet those requirements. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "The party requesting sanctions bears the initial burden of establishing that the opposing party failed to comply with the disclosure requirements established in Rule 26." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D.

1    Nev. 2017).

2        Although the Court understands Plaintiffs' concerns regarding Defendants' motivations for

3    revising the training modules, *see* Dkt. No. 665-5 at 49, it disagrees that Defendants' production

4    contravenes Rule 26(e) or otherwise warrants sanction. Moreover, these documents are relevant to

5    the Naturalization Class's due process, INA, APA, and Uniform Rule of Naturalization claims,

6    which each allege ongoing harm. *See* Dkt. No. 47 at 47–50. And even if Defendants' disclosure

7    failed to comply with Rule 26, the Court finds that Defendants have adequately shown that such

8    failure was "substantially justified" because they could not have disclosed the updated training

9    modules prior to their creation. Fed. R. Civ. P. 37(c)(1); *cf. Sanders*, 2022 WL 280875, at *4–5.

10   Accordingly, the Court will consider the disputed exhibits along with the other relevant training

11   materials in the record.

12            2.  Burriesci Rebuttal Expert Report

13       As for Burriesci's rebuttal expert report, Plaintiffs concede that Defendants disclosed

14   Burriesci as a rebuttal witness to Plaintiffs' law enforcement experts in accordance with Federal

15   Rule of Civil Procedure 26(a)(2)(D)(ii), but object to Defendants' reliance on her report "as new,

16   affirmative evidence in support of their case-in-chief." Dkt. No. 665-5 at 50 (citing Dkt. No. 665-

17   6 at 12, 13, 58). "The scope of an expert's rebuttal report is limited," and "[e]xperts designated as

18   rebuttal experts . . . may not testify in a party's case-in-chief" or "explore new areas not raised in

19   initial reports." *Ahtna Design-Build, Inc. v. Asphalt Surfacing, Inc.*, No. 3:21-CV-00228-JMK,

20   2024 WL 473615, at *14 (D. Alaska Feb. 7, 2024). However, because Plaintiffs do not challenge

21   Burriesci's report itself, but instead Defendants' citations to that report in support of their case-in-

22   chief, the Court finds that striking the report in its entirety is unnecessary. The Court will consider

23   Burriesci's report only for its proper purpose of rebutting Plaintiffs' law enforcement experts. *Cf.*

24   *Huawei Techs., Co., Ltd, v. Samsung Elecs. Co., Ltd.*, 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018)

1    (permitting the use of proper portions of rebuttal expert's opinions); *Dolan v. Sentry Credit, Inc.*,

2    No. C17-1632-RAJ, 2018 WL 6604212, at \*3 (W.D. Wash. Dec. 17, 2018) (clarifying that the

3    court will only consider evidence properly before it on summary judgment).

### C.    Claims Seven through Ten

5      Turning to the substance of the Naturalization Class's claims, Plaintiffs argue that CARRP

6    violates the APA for four separate reasons: (1) it is contrary to the INA and its implementing

7    regulations, (2) it results in agency action unlawfully withheld or unreasonably delayed, (3) it was

8    adopted without notice and comment rulemaking, and (4) it is arbitrary and capricious. Dkt. No.

9    665 at 36; Dkt. No. 47 at 49–50. Plaintiffs therefore seek summary judgment on their eighth and

10   ninth causes of action. Dkt. No. 665 at 36–53. Defendants seek summary judgment on these claims

11   as well, contending that CARRP is not a reviewable agency action, and even if it were, the decision

12   to adopt CARRP was not arbitrary and capricious and did not require notice and comment

13   rulemaking, and Plaintiffs have failed to identify any discrete agency action that has been

14   unlawfully withheld or delayed. Dkt. No. 665-6 at 59–70.[19]

15     Before addressing the merits of Plaintiffs' claims, the Court first addresses Defendants'

16   contentions that CARRP is unreviewable under the APA, or in the alternative, that such review

17   must be limited to the administrative record. *See* Dkt. No. 665-6 at 59–65. Ultimately, the Court

18   finds that Plaintiffs are entitled to summary judgment on their claim that CARRP is arbitrary and

19   capricious.

20     1.   Reviewability Under the APA

21     The APA "embodies a 'basic presumption of judicial review[.]'" *Dep't of Com. v. New*

---

[19] The Court previously held that Plaintiffs' seventh claim is subsumed by their eighth claim because it challenges agency action. Dkt. No. 69 at 17–18. The same is true for Plaintiffs' tenth claim. Dkt. No. 47 at 50. Defendants seek summary judgment on these claims for the same reason they seek summary judgment on claims eight and nine. Dkt. No. 665-6 at 70 n.12.

*York*, 588 U.S. 752, 771 (2019) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967)). The statute "authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute,'" but "[w]here no other statute provides a private right of action, the 'agency action' complained of must be 'final agency action.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61–62 (2004) (emphasis omitted) (quoting 5 U.S.C. §§ 702, 704); *see also* 5 U.S.C. § 551(13) ("'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]"). Within this framework, reviewing courts shall: "(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action" deemed to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C. § 706(1)–(2).

Plaintiffs contend that "CARRP is reviewable . . . because, as this Court has already held, it is final agency action under 5 U.S.C. § 704." Dkt. No. 665 at 36 n.12 (citing Dkt. No. 69 at 19); *see also* Dkt. No. 665-5 at 16–19. Defendants maintain that "CARRP is not a discrete 'agency action' under 5 U.S.C. § 702" or a "final agency action" subject to review under 5 U.S.C. § 704, but instead "an internal vetting process" and an "ongoing, day-to-day operation subject to change as USCIS management sees fit." Dkt. No. 665-6 at 60–61; Dkt. No. 665-14 at 11–12. Defendants argue in the alternative that CARRP is unreviewable under 5 U.S.C. § 701(a)(2) because it is "committed to agency discretion by law." Dkt. No. 665-6 at 63–64; Dkt. No. 665-14 at 12–13. For the reasons in the Court's prior order, Dkt. No. 69 at 19, and as explained below, the Court again holds that CARRP is subject to review under the APA.

### (a) CARRP Qualifies as Final Agency Action

"As a general matter, two conditions must be satisfied for agency action to be 'final': First,

the action must mark the 'consummation' of the agency's decisionmaking process," and "second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow[.]" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotation marks and citations omitted); *accord Navajo Nation v. U.S. Dep't of Interior*, 819 F.3d 1084, 1091 (9th Cir. 2016). The core question under the *Bennett* test is "whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) (cleaned up). In making this determination, courts "focus on the practical and legal effects of the agency action." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) ("The requirement of finality is interpreted pragmatically." (citations omitted)). Regardless of an agency's characterization of its policies, courts "consider the actual effects of the action to determine whether it is final." *Gill v. United States Dep't of Just.*, 913 F.3d 1179, 1184 (9th Cir. 2019).

Here, Defendants argue that CARRP does not meet this two-part test because (1) "CARRP is simply an internal USCIS process to systematize the vetting of certain benefit applications, *i.e.*, those that raise NS concerns, before those applications reach the same adjudicative juncture and legal standards as other applications," and (2) "as a process or form of guidance for USCIS Field Offices," CARRP is not "an action by which rights or obligations are determined, or from which legal consequences will flow." Dkt. No. 665-6 at 62 (cleaned up). The Court disagrees.

The record reveals that CARRP established a mandatory USCIS policy, rescinded prior guidance, and has remained in effect since 2008. *See* Dkt. No. 74 at 18; Dkt. No. 286-3 at 1–3, 8–9; Dkt. No. 645-32 at 13. By implementing CARRP, USCIS created a new, formal process that is triggered whenever USCIS identifies an "NS concern" in a naturalization application. *See* Dkt. No.

1  645-36 2–4.[20] Under CARRP, an applicant with an "NS concern" generally must clear at least

2  three hurdles: (1) the background check; (2) assessment of eligibility and internal vetting; and

3  (3) if the applicant's NS concern is not resolved, external vetting. Dkt. No. 287-3 at 15–26; Dkt.

4  No. 645-36 at 4–7; Dkt. No. 666-17 at 69; Dkt. No. 472-1 at 496, 499. Applicants with NS concerns

5  may also be required to undergo lead vetting and deconfliction. Dkt. No. 472-1 at 148, 489, 550,

6  699–702, 743–44. And applicants who either have unresolved NS concerns or are KSTs face

7  additional hurdles: supervisory approval and concurrence from the local field office director. Dkt.

8  No. 645-36 at 7–8; Dkt. No. 645-32 at 14. In contrast, an applicant on the "normal" adjudication

9  track must clear two hurdles: (1) the background check and (2) an interview and assessment of

10  benefit eligibility. Dkt. No. 645-28 at 24–27.

11      CARRP also satisfies the second prong of the *Bennett* test because the policy creates

12  concrete obligations for USCIS officers. *See Sierra Club v. Trump*, 929 F.3d 670, 698 n.23 (9th

13  Cir. 2019) (in determining finality, a court may consider "whether the agency action imposes

14  obligations on the agency"). "[A]ll Field Offices are directed to comply with [CARRP] when

15  adjudicating applications or petitions with national security concerns." Dkt. No. 645-91 at 3. In

16  particular, CARRP imposes specific obligations and procedures for adjudicating immigration

17  applications that present NS concerns. *Id.*; *see, e.g.*, Dkt. No. 645-49 at 5–6; Dkt. No. 666-22 at

18  44. This includes external vetting, which generally requires coordination with third-party law

19  enforcement agencies, *see* Dkt. No. 286-3 at 5–6; Dkt. No. 645-49 at 21–23, as well as a separate

20  adjudication and approval process if an NS concern remains unresolved or if the applicant is

21

22  [20] CARRP's definition of an "NS concern" is purportedly "tethered to the national security-related statutory grounds set forth in the INA," Dkt. No. 641-5 at 21 (citing Dkt. No. 645-93 at 6–7), and therefore reflects the agency's

23  interpretation of the INA, *id.* at 58 ("The document creating CARRP 'outlines USCIS policy for identifying and processing cases with national security (NS) concerns,' defined in terms of the relevant INA removal grounds."

24  (quoting Dkt. No. 645-36 at 2 and citing *id.* at 4–8 (setting out policy))); *see also* Dkt. No. 666-17 at 16; Dkt. No. 645-54 at 2–4.

considered a KST or non-KST, Dkt. No. 645-93 at 15; Dkt. No. 666-14 at 150–57; Dkt. No. 286-3 at 6–7. For instance, USCIS officers cannot approve the applications of non-KSTs with unresolved NS concerns "without supervisory approval and concurrence from a senior-level official." Dkt. No. 286-3 at 6–7; *see also* Dkt. No. 287-3 at 19 ("When the NS concern remains and the individual is deemed eligible for the benefit at the [internal vetting] stage, <u>no benefit may be granted until</u> external vetting is complete, unless an exception applies."); Dkt. No. 645-32 at 14; Dkt. No. 645-37 at 13, 17.

For these reasons, the Court finds that CARRP satisfies both prongs of the *Bennett* test and is a final agency action under the APA. *See, e.g.*, *Biden v. Texas*, 597 U.S. 785, 808–10 (2022);[21] *Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 41–43 (D.D.C. 2018); *cf. R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 375–76 (S.D.N.Y. 2019) (new guidance instructing USCIS employees on how to interpret a statute satisfies *Bennett*'s second prong because the guidance was "the source of profound legal consequences for the plaintiffs because the USCIS relie[d] on it to deny their . . . petitions"); *Texas v. United States*, 555 F. Supp. 3d 351, 391 (S.D. Tex. 2021) (memoranda effectively substituting a prioritization scheme in place of enforcement mandates set forth in statutory provisions and imposing preapproval requirements on certain detentions constituted a change in the Department of Homeland Security's legal obligations).

Defendants also argue that Plaintiffs' APA claims qualify as an "unreviewable programmatic challenge" to USCIS policy. Dkt. No. 665-6 at 60 (citing, *inter alia*, *Lujan*, 497 U.S. at 889–91; *Norton*, 542 U.S. at 64). "While a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA." *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001); *see id.* ("A plaintiff cannot seek wholesale improvement of a

---

[21] Defendants submitted *Biden v. Texas* as part of their June 11, 2024 Notice of Supplemental Authority. *See* Dkt. No. 663 at 2, 60–96.

program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." (cleaned up)); *see also Ams. For Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. CV 22-3118 (CKK), 2023 WL 1438376, at *18 (D.D.C. Feb. 1, 2023). But here, rather than challenging an unidentified "national security vetting measure"—which would be more analogous to the "land withdrawal review program" at issue in *Lujan*—Plaintiffs are challenging a final, specific policy—CARRP—which "appl[ies] some particular measure across the board" and therefore "can of course be challenged under the APA by a person adversely affected[.]" *Lujan*, 497 U.S. at 890–91 & n.2; *Jafarzadeh*, 321 F. Supp. 3d at 43 n.14; *Nat'l Urb. League v. Ross*, 489 F. Supp. 3d 939, 971–72 (N.D. Cal. 2020); *Doe v. Trump*, 288 F. Supp. 3d 1045, 1070 (W.D. Wash. 2017). The fact that CARRP is "subject to change as USCIS management sees fit," Dkt. No. 665-6 at 60, does not render it nonfinal. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016) (possibility of revision "is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal").

Thus, the Court concludes that CARRP constitutes a final agency action subject to review under Section 704 of the APA.

### (b) CARRP is Not an Action Committed to Agency Discretion

Separately, Defendants argue that even if CARRP qualifies as a final agency action, it is unreviewable under the APA because it "is committed to agency discretion by law." Dkt. No. 665-6 at 63 (quoting 5 U.S.C. § 701(a)(2)); *see also* Dkt. No. 665-14 at 12–13.

Section 701(a) "limits application of the entire APA to situations in which judicial review is not precluded by statute [(Subsection (a)(1))], and the agency action is not committed to agency discretion by law [(Subsection (a)(2))]." *Webster v. Doe*, 486 U.S. 592, 599 (1988) (citations omitted). "Subsection (a)(1) is concerned with whether Congress expressed an intent to prohibit judicial review," whereas "subsection (a)(2) applies in those rare instances where statutes are

drawn in such broad terms that in a given case there is no law to apply." *Id.* (quotations marks and citations omitted); *see also Samma v. United States Dep't of Def.*, 486 F. Supp. 3d 240, 261 (D.D.C. 2020). Thus, "even where Congress has not affirmatively precluded review" under Section 701(a)(1), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." *Id.*

Defendants maintain that Section 701(a)(2) "applies to agency actions such as CARRP that concern the scope of, and methods, for agency inquiries." Dkt. No. 665-6 at 63. However, Defendants identify no specific law that commits the formulation of national security vetting criteria to USCIS's discretion such that CARRP is unreviewable under Section 701(a)(2). Dkt. No. 665-5 at 20; *see* Dkt. No. 665-7 at 63–64; Dkt. No. 665-13 at 12–13; *see also, e.g.*, *Dep't of Com.*, 588 U.S. at 772 (citing *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018)). Nor do Defendants establish that there is truly "no law to apply" here. *Perez Perez v. Wolf*, 943 F.3d 853, 861 (9th Cir. 2019). Indeed, applicable law imposes a mandatory, nondiscretionary duty to adjudicate naturalization applications in accordance with statutory naturalization criteria within a reasonable time. 8 U.S.C. § 1446(d); 8 C.F.R. § 316.14(b)(1); 8 C.F.R. § 335.3(a); 5 U.S.C. § 555(b). Policies such as CARRP that directly bear upon this duty cannot escape judicial review. As one court put it:

> If defendants have an obligation to decide applications but have unfettered discretion to put off deciding an application for as long as they want, how could the duty to decide ever be judicially enforced? Under defendants' view, the answer to that question would be never, except perhaps if they expressly refused to make a decision. So long as defendants say that they are still reviewing the application (or even if they say nothing at all), an applicant must continue to wait indefinitely, no matter how long the delay has been. Such discretion would strip defendants' duty of any meaning: "The duty to act is no duty at all if the deadline is eternity." *Tang v. Chertoff*, 493 F. Supp. 2d 148, 149 (D. Mass. 2007).

*Saleem v. Keisler,* 520 F. Supp. 2d 1048, 1055 (W.D. Wis. 2007); *see also Sidhu v. Chertoff*, No. 1:07-CV-1188AWISMS, 2008 WL 540685, at *5–6 (E.D. Cal. Feb. 25, 2008) ("Without APA relief, [US]CIS could withhold a decision indefinitely in contravention of its statutory duty to process these applications."); *Cobell*, 240 F.3d at 1095 (an inability to challenge agency failures to act would allow agencies to "effectively prevent judicial review of their policy determinations by simply refusing to take final action"). The Court accordingly finds that Section 701(a)(2) does not apply.

2.  Scope of the Record for Plaintiffs' APA Claims

The parties further dispute the appropriate scope of the record for Plaintiffs' APA claims, and in particular, Plaintiffs' claim that the decision to implement CARRP was arbitrary and capricious. Plaintiffs state that "[w]hile APA review is generally limited to the administrative record, a court may consider extra-record evidence to determine 'whether the agency has considered all relevant factors and has explained its decision.'" Dkt. No. 665 at 48 n.20 (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)). Defendants argue that the Court should confine its review to the administrative record, i.e., those documents contained in Docket Numbers 286 and 287, "including certain lesser redacted duplicates produced in discovery." Dkt. No. 665-6 at 64–65 & n.10; *see also* Dkt. No. 665-14 at 16–17.

"In general, a court reviewing agency action under the APA must limit its review to the administrative record" because doing so "ensures that the reviewing court affords sufficient deference to the agency's action." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014); *see also Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 384 F.3d 1163, 1170 (9th Cir. 2004); *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). The APA provides that district courts must "review the whole record or those parts of it cited by a party[.]" 5 U.S.C. § 706. The whole administrative record "consists of all documents

and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citing *Exxon Corp. v. U.S. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981)). There are, however, exceptions to this general rule which allow district courts to admit extra-record evidence in limited circumstances:

> (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.

*Lands Council*, 395 F.3d at 1030 (quotation marks and citation omitted). These exceptions must be "narrowly construed and applied." *Safari Club Int'l v. Haaland*, 31 F.4th 1157, 1177 (9th Cir. 2022) (quoting *Goffney v. Becerra*, 995 F.3d 737, 747–48 (9th Cir. 2021)).

Plaintiffs argue that the consideration of extra-record evidence is permissible here under the first *Lands Council* exception—the "relevant factors" exception—which "is the most difficult to apply[.]" *Locke*, 776 F.3d at 993; *see* Dkt. No. 665 at 48 n.20; Dkt. No. 665-5 at 35–37. The Ninth Circuit has explained that "[a]lthough the relevant factors exception permits a district court to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis, the exception does not permit district courts to use extra-record evidence to judge the wisdom of the agency's action." *Locke*, 776 F.3d at 993. Rather, "[r]eviewing courts may admit evidence under this exception only to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious." *Id.*; *see also Friends of the Earth v. Hintz*, 800 F.2d 822, 829 (9th Cir. 1986); *Amalgamated Transit Union, Int'l v. United States Dep't of Lab.*, 647 F. Supp. 3d 875, 889 (E.D. Cal. 2022).

Significantly, where, as here, there are no formal contemporaneous administrative findings,

*see generally* Dkt. Nos. 286–87, consideration of extra-record evidence may be "the only way there can be effective judicial review." *Overton Park*, 401 U.S. at 420; *see also Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) ("[W]here no formal findings [are] made by administrator, a court may examine information outside of the administrative record[.]" (citing *Overton Park*, 401 U.S. at 420)); *Zirkle Fruit Co. v. United States Dep't of Lab.*, No. 1:19-CV-03180-SMJ, 2020 WL 1917343, at *4 (E.D. Wash. Jan. 27, 2020) (same). Accordingly, the Court finds that it may consider evidence beyond the administrative record in order to determine whether USCIS considered all relevant factors and adequately explained its decision to implement CARRP. However, as reflected below, even if it considered the administrative record alone, the Court would conclude that USCIS's implementation of CARRP was arbitrary and capricious.

       3.   The Naturalization Class's APA Claims

          *(a) Whether CARRP is Contrary to Law*

       Plaintiffs argue that CARRP should be held unlawful and set aside because it is not in accordance with, and is in excess of, the statutory authority under the INA for two reasons. First, it imposes extra-statutory eligibility requirements for naturalization, and second, it deprives naturalization applicants of their rights under 8 C.F.R. § 103.2(b)(16) to know about and respond to alleged NS concerns. Dkt. No. 665 at 36–43; Dkt. No. 665-5 at 21–30. In their opposition, Defendants address this argument in a footnote, asserting that "USCIS' broad authority to inquire and to develop procedures" for naturalization "refute[s]" Plaintiffs' extra-statutory eligibility requirements argument, and that 8 C.F.R. § 103.3(a)(1)(i) (requiring that USCIS "explain in writing the specific reasons for denial") does not "abrogate the administrative law principle that an agency need not state all its reasons for a decision so long as the stated reasons are lawful." Dkt. No. 665-6 at 67 n.11. For the reasons discussed below, the Court grants summary judgment to Defendants and denies summary judgment to Plaintiffs on this aspect of Plaintiffs' APA claim.

*(i)*  Extra-Statutory Eligibility Requirements

Plaintiffs maintain that "[t]he undisputed facts show that CARRP is squarely at odds with the INA." Dkt. No. 665 at 37. In their view, "'NS concern' is a USCIS-invented designation" that "has no basis in the INA or implementing regulations"; "[n]o law determines what amount of evidence is necessary to establish an NS concern." *Id.* at 18; *see also id.* at 40 ("[W]ith CARRP, USCIS created an extra-statutory impediment to the approval of an immigration benefit," violating "USCIS's compulsory duties to approve eligible naturalization . . . applications."); Dkt. No. 665-5 at 21. Plaintiffs emphasize that USCIS has admitted in deposition and in training materials that the criteria triggering the "NS concern" designation is not the same as criteria for naturalization eligibility. Dkt. No. 641 at 39 (citing, *inter alia*, Dkt. No. 645-33 at 23; Dkt. No. 472-1 at 559; Dkt. No. 666-7 at 18–19; Dkt. No. 666-8 at 3). According to Plaintiffs, this legally impermissible disparity is further highlighted by the fact that certain of CARRP's "indicators" of an NS concern have no relationship to statutory eligibility. *Id.* Plaintiffs argue that because the definition of "NS concern" and such "indicators" sweep more broadly than any statutory eligibility criteria for naturalization, CARRP "operates wholly outside th[e] statutory framework" in contravention of USCIS's mandate to grant applications that comply with the eligibility criteria for naturalization. *Id.* at 38–39 (citing 8 C.F.R. § 335.3(a) ("The [] officer shall grant the application if the applicant has complied with all requirements for naturalization[.]"); 8 C.F.R. § 209.1(e) ("If the applicant is found to be admissible for permanent residence . . . [USCIS] will approve the application and admit the applicant for lawful permanent residence.")).

Defendants respond that CARRP does not actually alter the eligibility requirements for naturalization, and that as an investigative process, it is within USCIS's statutory authority and assignment of duties. Dkt. No. 665-6 at 67 n.11; Dkt. No. 665-14 at 13–14; *see also* Dkt. No. 665-6 at 34–35; *id.* at 58 ("Congress conferred broad inquiry authority on USCIS, enabling the agency

to ask a wide variety of questions and to pursue the answers when assessing an adjustment or naturalization application."); Tr. at 23 ("CARRP . . . is simply a different investigative loop for determining whether someone . . . lacks good moral character, . . . mean[s] harm to the United States," or "violated the TRIG factors[.]").

Based on the Court's review of the record and the relevant statutory scheme, and for the reasons below, the Court concludes that Plaintiffs have not established a dispute of material fact as to whether CARRP's adjudication processing track exceeds USCIS's statutory authority for investigating naturalization eligibility.

First, with respect to Plaintiffs' claim that "being labeled an unresolved NS concern in CARRP is *highly determinative* of the adjudicative result," Dkt. No. 665-5 at 25 (emphasis added); *see also* Dkt. No. 665 at 40, 58, the Court finds that the record does not support such an assertion.[22] In particular, Plaintiffs have not produced evidence showing that the increased denials under CARRP were not based on valid statutory grounds. And while the Court is sympathetic to Plaintiffs' assertion that Defendants withheld discovery tending to show whether such CARRP-caused denials exist, *see* Dkt. No. 665-5 at 47–48, it cannot find CARRP to be unlawful based on correlation alone.

Second, with respect to the scope and statutory basis for CARRP's vetting requirements, the Court finds that although nothing in the INA explicitly permits or requires USCIS to subject naturalization applications to the adjudicatory track created by CARRP, *see* Dkt. No. 665 at 40; Dkt. No. 665-5 at 22, CARRP does not violate the INA. Congress granted USCIS broad authority to investigate applicants seeking to naturalize. *See* 8 U.S.C. § 1446(a); 8 C.F.R. §§ 335.1, 335.2(b);

---

[22] The Court notes that the Naturalization Class is not limited to those applicants who have an unresolved NS concern under CARRP; instead, the class includes all applicants whose application (1) is subject to CARRP and (2) has not been, or will not be, adjudicated within six months of having been filed. Dkt. No. 69 at 8, 31.

1    *see also* 8 U.S.C. § 1103(a)(1) (charging USCIS with administration and enforcement of laws

2    relating to naturalization); *Mestanek*, 93 F.4th at 172 ("In allocating USCIS a set of nonexhaustive

3    functions, Congress did not intend to hamstring USCIS's ability to fulfill the statutory mandate to

4    investigate cases before adjudicating them."). As Defendants contend, this includes assessing

5    whether the applicant was lawfully admitted, *see* 8 U.S.C. §§ 1427(a), 1429; 8 C.F.R.

6    § 316.2(a)(2), and whether the applicant is "of good moral character, attached to the principles of

7    the Constitution of the United States, and well disposed to the good order and happiness of the

8    United States," 8 U.S.C. §§ 1427(a), 1101(f); 8 C.F.R. §§ 316.2(a)(7); 316.10, 316.11. Dkt. No.

9    665-6 at 35; *see also Nio v. U.S. Dep't of Homeland Sec.*, 270 F. Supp. 3d 49, 63–64 (D.D.C.

10    2017).

11    During oral argument, Plaintiffs asserted that they are not "contest[ing] the government's

12    authority to investigate what it considers national security concerns or to share information

13    between agencies." Tr. at 5; *see also id.* 6 ("We don't dispute that power that the government

14    has."). They contend, however, that the government's exercise of that authority has to be based on

15    the TRIG national security ineligibilities. *Id.* at 6. Defendants argue that "Congress amended

16    several of the INA's national security removal grounds in response to 9/11, and CARRP is keyed

17    to" the inadmissibility grounds legislated under TRIG. Dkt. No. 665-6 at 57 (citing Dkt. No. 286-

18    3 at 1 n.1). They add that "potential inadmissibility on terrorism-related grounds implicates the

19    good moral character and attachment requirements for naturalization." Dkt. No. 665-14 at 13 n.9;

20    *see also* Dkt. No. 665-6 at 57–58.

21    Plaintiffs have not shown that CARRP's "indicators" are divorced from, or in excess of,

22    the grounds for ineligibility in the INA. These ineligibilities encompass broadly defined "security

23    and related grounds," 8 U.S.C. §§ 1227(a)(4), 1182(a)(3), including any noncitizen who:

24    • the Government "knows, or has reasonable ground to believe, seeks to enter the United

States to engage solely, principally, or incidentally in (i) any activity (I) to violate any law of the United States relating to espionage or sabotage or (II) to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information, (ii) any other unlawful activity, or (iii) any activity a purpose of which is the opposition to, or the control or overthrow of, the Government of the United States by force, violence, or other unlawful means, is inadmissible," *id.* § 1182(a)(3)(A);

- "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization," *id.* § 1182(B)(i)(VII);

- is "associated with a terrorist organization and intends while in the United States to engage solely, principally, or incidentally in activities that could endanger the welfare, safety, or security of the United States," *id.* § 1182(F); or

- "has engaged, is engaged, or at any time after admission engages in (i) any activity to violate any law of the United States relating to espionage or sabotage or to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information, (ii) any other criminal activity which endangers public safety or national security, or (iii) any activity a purpose of which is the opposition to, or the control or overthrow of, the Government of the United States by force, violence, or other unlawful means," *id.* § 1227(a)(4)(A).

The administrative record and the record before the Court reflect that CARRP is principally aimed at the grounds specified in Sections 212(a)(3)(A), (B), and (F) and 237(a)(4)(A) and (B) of the INA. *See, e.g.*, Dkt. No. 287-3 at 4, 9, 11, 46, 119, 192–94, 230, 260, 262, 272; Dkt. No. 287-4 at 26 n.1; Dkt. No. 287-5 at 19–20, 173–74; Dkt. No. 287-6 at 228–29; Dkt. No. 287-9 at 179, 181; Dkt. No. 287-10 at 17; Dkt. No. 287-11 at 22, 25; Dkt. No. 286-3 at 1 n.1, 4–5, 29–31; *see also* 8 U.S.C. §§ 1182(a)(3)(A)–(B), (F), 1227(a)(4)(A)–(B). Taken together with USCIS's broad

mandate to investigate naturalization applicants set forth the above-described statutory scheme,

the INA permits USCIS to investigate and process applications for naturalization as broadly as

CARRP directs. Dkt. No. 665-6 at 67 n.11; Dkt. No. 665-14 at 13–14. The information and sources

of information Plaintiffs characterize as extra-statutory, Dkt. No. 665 at 21–24 (citing, *inter alia*,

Dkt. No. 645-54 at 4–5; Dkt. No. 665-19 at 150–54, 157–58, 179; Dkt. No. 664-2 at 151–54; Dkt.

No. 645-55 at 151; Dkt. No. 472-5 at 544–45, 623–24, 670; Dkt. No. 645-53 at 6; Dkt. No. 646-

31 at 6; Dkt. No. 645-41 at 186–87; Dkt. No. 646-22 at 186–87; Dkt. No. 666-1 at 38, 45, 55; Dkt.

No. 664-10 at 45, 55; Dkt. No. 666-2 at 123–24, 135–37; Dkt. No. 664-11 at 123–24, 135–37; Dkt.

No. 472-2 at 680, 689; Dkt. No. 666-3 at 90, 93; Dkt. No. 645-46 at 18; Dkt. No. 646-27 at 18;

Dkt. No. 665-20 at 60–61; Dkt. No. 664-3 at 60–61; Dkt. No. 666-4 at 47–50; Dkt. No. 645-62 at

33–34; Dkt. No. 666-5 at 48–52; Dkt. No. 645-64 at 2; Dkt. No. 666-9 at 11–12, 65; Dkt. No. 472-

1 at 661, 775–76; Dkt. No. 645-27 at 9; Dkt. No. 645-44 at 35–36; Dkt. No. 646-25 at 35–36; Dkt.

No. 645-45 at 42; Dkt. No. 665-18 at 87, 93, 104; Dkt. No. 664-1 at 87, 93, 104; Dkt. No. 666-10

at 5), are instead reasonably tied to INA ineligibilities.[23]

Accordingly, the Court concludes that Defendants are entitled to summary judgment on

Plaintiffs' claims that CARRP exceeds USCIS's statutory authority to administer immigration

laws and investigate applicants' eligibility for naturalization, and that CARRP is otherwise not in

accordance with the INA based on alleged extra-statutory eligibility criteria.[24]

*(ii) Right to Know About and Respond to Alleged NS Concerns*

Plaintiffs' second argument is that CARRP violates 8 C.F.R. § 103.2(b)(16)(i)–(ii) because

---

[23] Plaintiffs also argue that Congress's decision not to enact proposed legislation along similar lines as CARRP supports their contrary-to-law claim. *See* Dkt. No. 665-5 at 22–23; Dkt. No. 545 at 10–65; Dkt. No. 645-30 at 32 & n.33. But a bill's failure to pass "might merely reflect disagreement . . . or an assumption that the proposal was not needed," and does not necessarily provide "support for the hypothesis that both Houses of Congress silently endorsed" a certain position. *United States v. Est. of Romani*, 523 U.S. 517, 533–34 (1998).

[24] This encompasses claims seven and ten as they relate to the naturalization class. Dkt. No. 47 at 48–50.

1    USCIS does not disclose to naturalization applicants that it has labeled them as an NS concern or

2    provide them with a meaningful opportunity to respond. *See* Dkt. No. 665 at 42–43; Dkt. No. 665-

3    5 at 27–30. In advance of oral argument, the Court asked the parties to address whether 8 C.F.R.

4    § 103.2(b)(16) applies to the Naturalization Class's claims, considering the class composition. Dkt.

5    No. 671. That section provides as follows:

6        (16) Inspection of evidence. An applicant . . . shall be permitted to inspect the
         record of proceeding which constitutes the basis for the decision, except as provided
7        in the following paragraphs.

8            (i) Derogatory information unknown to . . . applicant. If the decision will be
             adverse to the applicant . . . and is based on derogatory information
9            considered by the Service and of which the applicant . . . is unaware, he/she
             shall be advised of this fact and offered an opportunity to rebut the
10           information and present information in his/her own behalf before the
             decision is rendered, except as provided in paragraphs (b)(16)(ii), (iii), and
11           (iv) of this section. Any explanation, rebuttal, or information presented by
             or [o]n behalf of the applicant . . . shall be included in the record of
12           proceeding.

13           (ii) Determination of statutory eligibility. A determination of statutory
             eligibility shall be based only on information contained in the record of
14           proceeding which is disclosed to the applicant . . . , except as provided in
             paragraph (b)(16)(iv) of this section. . . .

15           (iv) Classified information. An applicant . . . shall not be provided any
16           information contained in the record or outside the record which is classified
             under Executive Order No. 12356 (47 FR 14874; April 6, 1982) as requiring
17           protection from unauthorized disclosure in the interest of national security,
             unless the classifying authority has agreed in writing to such disclosure.
18           Whenever he/she believes he/she can do so consistently with safeguarding
             both the information and its source, the USCIS Director or his or her
19           designee should direct that the applicant . . . be given notice of the general
             nature of the information and an opportunity to offer opposing evidence.
20           The USCIS Director's or his or her designee's authorization to use such
             classified information shall be made a part of the record. A decision based
21           in whole or in part on such classified information shall state that the
             information is material to the decision.

22    8 C.F.R. § 103.2(b)(16)(i)–(ii), (iv).

23        At the hearing, Plaintiffs argued that Section 103.2(b)(16) applies when there will be an

24    "adverse action," and that subjecting applicants to CARRP qualifies as such an action. Tr. at 6–7,

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 39

17.    In response, Defendants argued that only subsection 103.2(b)(16)(i)—and not 103.2(b)(16)(ii)—could apply to a class member's claims, and even then, it does not apply until a naturalization applicant has been interviewed by USCIS. *Id.* at 23, 35.

Here, the Court agrees with Defendants that the Naturalization Class does not fall within the ambit of subsection 103.2(b)(16)(ii). On its face, this subsection applies where there will be a "*determination* of statutory eligibility." *See* 8 C.F.R. § 103.2(b)(16)(ii) (emphasis added). The Naturalization Class, however, is comprised of individuals who have not yet received a determination of statutory eligibility. Dkt. No. 69 at 8, 31; *see also* Dkt. No. 47 at 3, 41. And even if subsection 103.2(b)(16)(ii) could apply here, Plaintiffs have failed to show that the "determination of statutory eligibility" in CARRP cases is based on anything other than the record of proceeding.

A similar problem exists with respect to subsection 103.2(b)(16)(i), which requires that "the decision will be adverse to the applicant or petitioner and . . . based on derogatory information[.]" It is not a foregone conclusion that class members' applications will be denied, let alone based on derogatory information. Indeed, 81.69 percent of naturalization applicants subjected to CARRP between 2013 and 2019 were ultimately approved. Dkt. No. 645-5 at 51; Dkt. No. 645-13 at 5, 16, 36–37. The Court cannot surmise how many of the Naturalization Class's applications will ultimately be denied. And once a naturalization interview or denial takes place, judicial review can become available under 8 U.S.C. §§ 1421(c) and/or 1447(b). Dkt. No. 665-14 at 15 n.12. At that juncture, the APA would arguably no longer apply because the applicant would possess another adequate remedy. *See* 5 U.S.C. § 704; *cf.* Dkt. No. 661 at 9–10, 15–16.

Accordingly, the Court grants summary judgment to Defendants and denies summary judgment to Plaintiffs on this element of Plaintiffs' contrary-to-law claims.

1

       *(b) Whether CARRP is Arbitrary and Capricious*

2

       Plaintiffs further contend that CARRP violates the APA because it is arbitrary and

3

capricious. Dkt. No. 665 at 46–53; *see* 5 U. S. C. § 706(2)(A). Specifically, they aver that USCIS

4

failed to articulate any reasoned explanation for adopting CARRP and ignored crucial

5

considerations before doing so. Dkt. No. 665 at 46–53; Dkt. No. 665-5 at 33–37; *see also id.* at 35

6

("Isolated references to efficiency, consistency, or national security do not explain how CARRP

7

would facilitate such concepts, assess whether it would improve on the status quo ante, analyze

8

potential alternatives, parse relevant data, or otherwise demonstrate that CARRP was 'founded on

9

a reasoned evaluation of the relevant factors.'" (quoting *Locke*, 776 F.3d at 995)). Plaintiffs

10

emphasize that "CARRP adds lengthy and unnecessary delays to immigration benefits processing,

11

sometimes stopping the process altogether," despite that "delaying adjudication for individuals

12

already residing in the country bears 'no connection' to protecting national security and makes no

13

sense." Dkt. No. 665 at 45; *see also id.* at 48 ("Significant delay is an obvious outcome of a policy

14

that . . . subjects applications to onerous, multi-stage vetting and review processes, numerous

15

systems checks, ongoing consultation with outside agencies, and detailed documentation.").

16

       "[T]he touchstone of arbitrary and capricious review under the APA is reasoned

17

decisionmaking." *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061,

18

1080 (9th Cir. 2019) (quotation marks and citation omitted); *see also Judulang v. Holder*, 565 U.S.

19

42, 45 (2011) ("When an administrative agency sets policy, it must provide a reasoned explanation

20

for its action."). "Under this narrow standard of review, a court is not to substitute its judgment for

21

that of the agency, but instead to assess only whether the decision was based on a consideration of

22

the relevant factors and whether there has been a clear error of judgment." *Dep't of Homeland Sec.

23

v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (citations and quotation marks omitted); *see

24

also Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 643 (9th Cir. 2021) ("The Supreme

Court has recognized that 'judicial deference to the Executive Branch is especially appropriate in the immigration context.'" (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999))). Normally, an agency rule or policy will be considered arbitrary and capricious (1) if the agency has relied on factors which Congress has not intended it to consider, (2) entirely failed to consider an important aspect of the problem, (3) offered an explanation for its decision that runs counter to the evidence before the agency, or (4) is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *accord E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 981–82 (9th Cir. 2020). "The reviewing court should not attempt itself to make up for such deficiencies," *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *accord Innova Sols., Inc. v. Baran*, 983 F.3d 428, 431 (9th Cir. 2020), nor should it "consider reasons for agency action which were not before the agency," *Beno v. Shalala*, 30 F.3d 1057, 1073 (9th Cir. 1994). Although a court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," it "cannot infer an agency's reasoning from mere silence[.]" *Id.* (citations omitted). And "while formal findings are not required, the record must be sufficient to support the agency action, show that the agency has considered the relevant factors, and enable the court to review the agency's decision." *Id.* at 1074.

Defendants contend that USCIS's adoption of CARRP was not arbitrary and capricious because the series of memoranda in the administrative record adequately explain the agency's rationale. Dkt. No. 665-6 at 65–67.[25] For example, the stated purpose in USCIS's April 11, 2008 memo establishing CARRP is to "outline[] USCIS policy for identifying and processing cases with

---

[25] As Plaintiffs note, Defendants appear to cite to sources outside the record in support of their contention that CARRP represents reasoned agency decisionmaking. *See id.* at 65 (cross-referencing "pt.V.A.3," *id.* at 49–55). Nevertheless, the Court need not look beyond the administrative record to decide this aspect of Plaintiffs' APA claim.

national security (NS) concerns, and rescind[] existing policy memoranda pertaining to reporting and resolving NS concerns." Dkt. No. 286-3 at 1 (footnote omitted). Under "Policy Guidance," the memo states that "[t]his policy, in conjunction with Operational Guidance, provides direction to identify and process cases containing NS concerns in the most efficient manner. The process allows sufficient flexibility to manage the variety of cases encountered by USCIS." *Id.* at 3. Similarly, the April 24, 2008 interoffice memorandum from USCIS leadership states that:

> A central mission of [USCIS] is to protect the integrity of the U.S. immigration system and preserve the safety of our homeland. National security (NS) matters are a primary consideration in USCIS adjudications and measures must be adopted to ensure a consistent approach in resolving these concerns. In order to efficiently process cases with NS issues and mitigate potential risks to national security, USCIS is delegating decision-making authority to the field. This authority includes the responsibility for vetting and adjudication of applications and petitions involving national security concerns.

*Id.* at 8; *see id.* at 8–9 ("This new policy establishes [CARRP], which consists of a four-step process of evaluating national security concerns."). Separate guidance explains that "USCIS seeks to ensure that immigration benefits are not granted to individuals and organizations that pose a threat to national security. It is important, therefore, that officers be able to identify certain indicators of a National Security (NS) concern." *Id.* at 29.

The Court begins with the legal framework. Again, the law imposes a mandatory, nondiscretionary duty on USCIS to adjudicate naturalization applications in accordance with statutory naturalization criteria within a reasonable time. 5 U.S.C. § 555(b); 8 U.S.C. §§ 1182(a)(3)(A)–(B), (F), 1227(a)(4)(A)–(B); 1446(d); 8 C.F.R. § 316.14(b)(1); 8 C.F.R. § 335.3(a). Although the administrative record reflects what CARRP is and how it is intended to function, it reveals far less about why CARRP was created or what factors or evidence USCIS considered before deciding to select this approach for adjudicating immigration applications presenting national security concerns. Furthermore, despite the requirement that USCIS adjudicate

naturalization applications within a reasonable time, the administrative record does not demonstrate that USCIS considered the practical effects of evaluating naturalization applications using "multi-stage vetting and review processes, numerous systems checks, ongoing consultation with outside agencies, and detailed documentation." Dkt. No. 665 at 48 (citing Dkt. No. 645-49 at 2–27).

Defendants do not cite to any portion of the administrative record showing what information or types of information USCIS utilized as its basis for adopting CARRP, or whether it balanced the additional administrative burdens of processing naturalization applications in this fashion against the national security benefits. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962))). And Defendants do not dispute that as a result of the additional vetting CARRP requires, the policy often stalls the adjudication of naturalization applications, and in some cases, leaves applicants in limbo for many years. *See, e.g.*, Dkt. No. 645-33 at 61; Dkt. No. 665 at 26–27; Dkt. No. 645-50 at 2.

With respect to timeliness of adjudications, CARRP states only that "[o]fficers should make every effort to complete NS cases within a reasonable amount of time, by taking into consideration the nature of the concern and the facts contained in each individual case." Dkt. No. 286-3 at 7. But nowhere in the administrative record is there any indication of what constitutes a "reasonable amount of time," what happens when officers fail to "make every effort to complete NS cases" in a timely manner, or how officers can otherwise ensure they comply with this statutory mandate. *See generally* Dkt. Nos. 287-2–287-12. This is especially striking in light of CARRP's purpose of "efficiently process[ing] cases with NS issues and mitigat[ing] potential risks to national security." Dkt. No. 645-91 at 2; *see also* Dkt. No. 645-36 at 4 ("This policy, in conjunction

with Operational Guidance, provides direction to identify and process cases containing NS concerns in the most efficient manner."). Considering that applicants are not processed through CARRP without first presenting some indicia of a national security concern, it is a significant problem—and one USCIS apparently did not consider—that there is no mechanism to ensure that applications presenting such concerns are being processed through CARRP in a timely manner.

This is true despite USCIS's apparent anticipation of delays relating to interagency communication. The administrative record contains guidance directing officers to contact "the appropriate local JTTF [Joint Terrorism Task Force] office" for assistance in external vetting "[i]n the event there is no response to the initial contact within ten (10) business days," and "[i]f the local JTTF office is not responsive," the officer "may request vetting assistance from HQFDNS (BCAU)[.]" Dkt. No. 287-3 at 21; Dkt. No. 645-49 at 22; *see also* Dkt. No. 287-3 at 27, 78, 267; Dkt. No. 287-7 at 177–80; Dkt. No. 287-12 at 33. The guidance does not indicate how long an officer should wait for JTTF to respond before deeming it "not responsive." Another part of the administrative record instructs officers that "[i]f a response from the FDNS-NSB mailbox is not received within 4 working days, the officer should email the head of Operations Support Services (OSS) within the NSB," but "[o]nce a case has been assigned and the requesting officer has been notified, the requesting officer must allow *at least* 30 days before inquiring about the status of his/her request." Dkt. No. 287-3 at 269 (emphasis added); Dkt. No. 666-24 at 16. The guidance does not provide a ceiling on the amount of time an officer should wait on FDNS, nor does it otherwise indicate how officers should ensure that they are complying with CARRP's directive to process NS cases within a reasonable amount of time. Although the guidance adheres to regulations requiring intermittent analysis and approvals in connection with holding an application in abeyance due to ongoing investigations under 8 C.F.R. § 103.2(b)(18), *see, e.g.*, Dkt. No. 287-4 at 12–13; Dkt. No. 287-5 at 126, it contains no similar checks or controls for other applications

undergoing long delays, *see generally* Dkt. Nos. 287-2–287-12.

Worse still, USCIS expressly acknowledges in the guidance that "[a] delay in an adjudication of an adjustment or naturalization application may expose the agency to legal actions to compel the agency to complete the adjudication," Dkt. No. 287-4 at 14; Dkt. No. 645-86 at 9; *see also* Dkt. No. 287-4 at 15; Dkt. No. 645-86 at 10 ("Close monitoring and timely action in naturalization cases is essential to ensure proper handling and minimize litigation risk."), but its solution is to instruct officers to front-load the delay-laden vetting procedures to *before* the naturalization interview due to the applicant's ability to file suit if no decision is issued within 120 days of the interview. "Special [c]onsiderations" for N-400 applications include the following:

> It is important to remember that in naturalization proceedings, the interview triggers the clock for USCIS to issue a decision on the naturalization application. If USCIS does not issue a decision within 120 days of the naturalization interview, the naturalization applicant can file suit in federal court seeking to obtain a decision on naturalization. See INA§ 336(b) [8 U.S.C. § 1447(b)]. Therefore, it is important for the officer to have as much information as possible about the individual and the NS concern before the naturalization interview occurs to ensure that the naturalization interview explores all statutory and regulatory grounds of eligibility along with potential grounds of ineligibility. **The Field is strongly encouraged to identify all potential grounds of ineligibility prior to scheduling an N-400 interview**. In some instance[s], External Vetting may be necessary prior to an interview.

Dkt. No. 287-3 at 44 (emphasis added); Dkt. No. 645-49 at 45; *see also* Dkt. No. 287-7 at 139; Dkt. No. 666-14 at 75 (a "CAUTION" for N-400 applications that "[y]ou may want to consult with local counsel because once a naturalization interview takes place, USCIS is mandated by statute to complete adjudication of the N-400 within 120-days of the interview. **So be careful of starting a clock on the adjudication**[.]" (emphasis added)).

It is apparent that consistency, flexibility, efficiency, and national security comprise parts of USCIS's calculus in implementing CARRP, *see* Dkt. No. 286-3 at 3, 8, and the Court does not question the wisdom of such considerations. But APA review "involves more than a court rubberstamping action based on bare declarations from the agency amounting to 'trust us, we had

good national security reasons for what we did.'" *Kirwa v. U.S. Dep't of Def.*, 285 F. Supp. 3d 257, 270 (D.D.C. 2018). And here, CARRP's goals of efficiency and improved national security are compromised by its failure to institute any internal controls to ensure USCIS satisfies its timeliness mandate. This problem is compounded by CARRP's avoidance of *external* controls over the timeliness of this process—in the form of litigants' ability to sue under 8 U.S.C. § 1447(b)—by directing officers to "be careful of starting [the] clock on the adjudication" by conducting an interview. Dkt. No. 287-7 at 139; Dkt. No. 666-14 at 75. This does not amount to reasoned decisionmaking. Specifically, in failing to address or implement controls to ensure that USCIS complies with its timeliness mandate, USCIS entirely failed to consider an important aspect of its statutory responsibilities and its own goals of efficiency and improved national security.

In sum, because USCIS failed to (1) explain its basis for implementing this policy, (2) indicate what data, evidence, or factors the agency considered before doing so, and (3) consider an important aspect of the problem, i.e., USCIS's statutory mandate to adjudicate naturalization applications within a reasonable time, the Court concludes that, pursuant to Section 706(2)(A), CARRP was adopted in an arbitrary and capricious manner. Accordingly, the Court grants summary judgment to Plaintiffs and denies summary judgment to Defendants on this portion of the Naturalization Class's APA claim.

### (c) Whether CARRP Unlawfully Withholds or Unreasonably Delays Agency Action

Plaintiffs next claim that CARRP results in unlawfully withheld and unreasonably delayed adjudication of naturalization applications. Dkt. No. 665 at 43–45; Dkt. No. 665-5 at 31–32; *see id.* at 32 ("Plaintiffs do not challenge the government's failure to act in any individual case; rather, Plaintiffs challenge the systemic delays resulting from the CARRP policy as whole. CARRP *policy* is reviewable as a final agency action that the Court can and should 'hold unlawful and set aside,' while compelling the agency to act on applications it has 'unlawfully withheld and unreasonably

1    delayed' due to CARRP." (quoting 5 U.S.C. §§ 706(1)–(2))).

2    As discussed above, USCIS has a mandatory, nondiscretionary duty to adjudicate

3    naturalization applications. 8 U.S.C. § 1446(d) (providing that the examiner "shall make a

4    determination as to whether the application should be granted or denied, with reasons therefor");

5    *see also* 8 C.F.R. § 316.14(b)(1) ("Subject to supervisory review, the employee of [USCIS] who

6    conducts the examination [on an application for naturalization] shall determine whether to grant

7    or deny the application[.]"); 8 C.F.R. § 335.3(a) ("USCIS shall grant the application if the

8    applicant has complied with all requirements for naturalization[.]"). It also has a mandatory,

9    nondiscretionary duty to do a background investigation and examination of the applicant. 8 U.S.C.

10   § 1446(a)–(b); 8 C.F.R. §§ 335.1, -335.2(a). Because these duties are mandatory, USCIS must

11   complete them "within a reasonable time." 5 U.S.C. § 555(b); *Hamandi v. Chertoff*, 550 F. Supp.

12   2d 46, 49 (D.D.C. 2008); *see also Oniwon v. U.S. Citizenship & Immigr. Servs.*, No. CV H-19-

13   3519, 2020 WL 1940879, at *3 (S.D. Tex. Apr. 6, 2020), *report and recommendation adopted*,

14   2020 WL 1939686 (S.D. Tex. Apr. 22, 2020).

15   Although a district court may "compel agency action unlawfully withheld or unreasonably

16   delayed" under 5 U.S.C. § 706(1), "a claim under § 706(1) can proceed only where a plaintiff

17   asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *S. Utah*

18   *Wilderness All.*, 542 U.S. at 62, 64; *see also id.* at 63 & n.1. "Absent such an assertion, a Section

19   706(1) claim may be dismissed for lack of jurisdiction." *Alvarado v. Table Mountain Rancheria*,

20   509 F.3d 1008, 1019–20 (9th Cir. 2007).

21   Here, the Court agrees with Defendants that even assuming without deciding that Plaintiffs

22   have adequately pleaded a Section 706(1) unreasonable delay claim, "[t]he discreteness limitation"

23   under Section 706(1) precludes classwide relief. Dkt. No. 665-6 at 68–70; Dkt. No. 665-14 at 15–

24   16. Even if the Court were to find that delays of more than two years are presumptively

unreasonable, *see* Dkt. No. 665 at 26 (indicating that 1,348 class members faced a delay of more than two years); *Yea Ji Sea v. U.S. Dep't of Homeland Sec.*, No. CV-18-6267-MWF (ASX), 2018 WL 6177236, at *5 (C.D. Cal. Aug. 15, 2018) (citing cases); *Daraji v. Monica*, No. CV 07-1749, 2008 WL 183643, at *5 (E.D. Pa. Jan. 18, 2008) (same); *see also Reddy v. Mueller*, 551 F. Supp. 2d 952, 954 (N.D. Cal. 2008), the Naturalization Class is much broader, consisting of individuals with applications that have "not been or will not be adjudicated by USCIS within six months of having been filed," Dkt. No. 69 at 8, and Plaintiffs have not established that all such applicants will be subject to delays of over two years. Plaintiffs do not contest that 81.69 percent of naturalization applicants subjected to CARRP between 2013 and 2019 were ultimately approved, Dkt. No. 645-5 at 51; Dkt. No. 645-13 at 5, 16, 36–37, and naturalization applications submitted and adjudicated within that time frame spent an average of roughly 1.7 years awaiting adjudication, Dkt. No. 645-13 at 19–20, 36–37. Furthermore, Plaintiffs note in their motion that the average delay for *non*-CARRP cases "pending as of September 2019 was one year (371 days)," Dkt. No. 665 at 44, and they acknowledged during oral argument that prolonged delays affecting certain class members could be lawful under the relevant abeyance regulation, 8 C.F.R. § 103.2(b)(18); *see* Tr. at 12–14. The Court cannot conclude as a matter of law that anyone subjected to CARRP whose application has not been adjudicated within six months or more has suffered an unreasonable delay. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."); *Casa Libre/Freedom House v. Mayorkas*, No. 2:22-cv-01510-ODW (JPRx), 2023 WL 3649589, at *14 (C.D. Cal. May 25, 2023) ("Unreasonable delay . . . is determined by applying the *TRAC* factors. Given that the *TRAC* factors are a complex set of factors that must be balanced in a given case, there is no way a court could issue a classwide injunction or declaration that would provide

meaningful relief for the class.").

Thus, the Court grants Defendants' motion for summary judgment and denies Plaintiffs' motion for summary judgment on this element of Plaintiffs' APA claim.

### (d) Whether CARRP Required Notice and Comment Rulemaking

Plaintiffs next claim that CARRP violates the APA because USCIS failed to engage in requisite notice and comment rulemaking. Dkt. No. 665 at 45–46; Dkt. No. 665-5 at 33. Under the APA, a rule is "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency[.]" 5 U.S.C. § 551(4). In addition, the APA mandates that, subject to limited exceptions, agencies must comply with certain procedures prior to issuing a rule, such as publishing a general notice of proposed rulemaking in the Federal Register and providing an opportunity for comment. *See id.* § 553(a)–(c); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). "[T]he notice and comment requirements . . . are designed to ensure public participation in rulemaking[.]" *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1485 (9th Cir. 1992). Importantly, though, "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" are not subject to a pre-promulgation notice-and-comment period, and neither are rules where "the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(A)–(B); *see Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003).

"While substantive or 'legislative-type' rules and interpretative rules are not distinguishable with bright-line clarity in every case," substantive rules "are those which effect a change in existing law or policy," and interpretative rules "are those which merely clarify or

1   explain existing law or regulations." *Alcaraz v. Block*, 746 F.2d 593, 613 (9th Cir. 1984) (citations

2   omitted); *see also Hemp Indus. Ass'n*, 333 F.3d at 1087. A rule will have "the 'force of law':

3   (1) when, in the absence of the rule, there would not be an adequate legislative basis for

4   enforcement action; (2) when the agency has explicitly invoked its general legislative authority;

5   or (3) when the rule effectively amends a prior legislative rule." *Hemp Indus. Ass'n*, 333 F.3d at

6   1087 (footnote and citation omitted). The Court is not required to accept the agency's

7   characterization of its rule as legislative or interpretive at face value. *Gunderson v. Hood*, 268 F.3d

8   1149, 1154 n.27 (9th Cir. 2001).[26]

9          It is undisputed that CARRP was adopted without notice and comment rulemaking. Dkt.

10  No. 645-32 at 13–14. And Defendants concede that CARRP qualifies as a "rule" as defined under

11  Section 551(4) of the APA. *See* Dkt. No. 665-6 at 66. Therefore, the dispositive question is whether

12  CARRP was exempt from the notice-and-comment requirements under Section 553(b). *See, e.g.*,

13  *W.C. v. Bowen*, 807 F.2d 1502, 1504 (9th Cir. 1987), *opinion amended on denial of reh'g*, 819

14  F.2d 237 (9th Cir. 1987). Plaintiffs argue that it was not exempt because (1) "there is no legislative

15  basis to deny or refuse to approve immigration benefits for reasons unrelated to eligibility," and

16  "CARRP authorizes—even requires—exactly that," and (2) "CARRP effectively amends the INA,

17  adding substantive eligibility criteria that do not otherwise exist." Dkt. No. 665 at 46; *see also* Dkt.

18  No. 665-5 at 33.

19         The Court rejects Plaintiffs' arguments for the reasons the Court laid out in Section

20  II.C.3(a) above. CARRP is a nonlegislative rule of agency procedure that "do[es] not [it]sel[f] alter

21  the rights or interests of parties[.]" *JEM Broad. Co. v. F.C.C.*, 22 F.3d 320, 326 (D.C. Cir. 1994)

---

[26] The Court notes that the analysis regarding whether CARRP is a final agency action is distinct from the test for whether it is a legislative rule. *Cal. Cmtys. Against Toxics v. Env't Prot. Agency*, 934 F.3d 627, 635 (D.C. Cir. 2019). Although a legislative rule is necessarily final, a final rule is not necessarily legislative. *Id.* The different standard for finality "permits courts to review nonlegislative rules and thus safeguards against agencies evading both judicial review and notice and comment by acting via nonlegislative rules." *Id.* at 636.

(quoting *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980)); *see also Ahmadi v. Chertoff*, No. C-07-03455-WHA, 2007 WL 3022573, at *9 (N.D. Cal. Oct. 15, 2007) (although expanded name check policy created significant delays, it did not "add a new requirement in the naturalization process"; "agencies have long been required to conduct an investigation into an applicants' background before adjudicating an application," and the expanded policy "merely enlarged the scope of that investigation"); *Wang v. U.S. Citizenship & Immigr. Servs.*, 375 F. Supp. 3d 22, 40 (D.D.C. 2019); *Makransky v. Johnson*, 176 F. Supp. 3d 217, 229 (E.D.N.Y. 2016).

Accordingly, the Court denies summary judgment to Plaintiffs and grants summary judgment to Defendants on this aspect of Plaintiffs' APA claim.

**D.      Defendants Are Entitled to Summary Judgment on the Naturalization Class's Procedural Due Process Claim**

Plaintiffs also move for summary judgment on their claim that CARRP violates the procedural due process rights of the Naturalization Class because it does not provide individuals with notice or an opportunity to respond to their applications being subjected to CARRP. Dkt. No. 665 at 53–58; Dkt. No. 665-5 at 37–40. Defendants cross-move for summary judgment on this claim. Dkt. No. 665-6 at 70–74.

The Fifth Amendment's Due Process Clause provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment"; its "fundamental requirement . . . is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). A procedural due process claim must demonstrate a substantial infringement of liberty or property in order to proceed. *Bd. of Regents of State Colls.*

*v. Roth*, 408 U.S. 564, 569–70 (1972) ("[T]he range of interests protected by procedural due process is not infinite."). No process is due otherwise. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).

Procedural due process claims "hinge[] on proof of two elements: (1) a protectible liberty or property interest in obtaining the [benefit]; and (2) a denial of adequate procedural protections." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998) (citing *Bd. of Regents*, 408 U.S. at 569–71; *Mathews*, 424 U.S. at 335). The Court first examines what property interest is at stake before turning to what process is due to protect that interest. *See Wilkinson v. Austin*, 545 U.S. 209, 224–25 (2005).

1. Constitutionally Protected Property Interest

"[T]he first question in any case in which a violation of procedural due process is alleged is whether the plaintiffs have a protected property or liberty interest and, if so, the extent or scope of that interest." *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1190–91 (9th Cir. 2015). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents*, 408 U.S. at 577. Here, Plaintiffs aver that the Naturalization Class has an "interest in the timely, lawful adjudication of their applications." Dkt. No. 665 at 55; *see also* Dkt. No. 665-5 at 40 ("Plaintiffs seek not a grant of citizenship but a constitutional process."). Defendants do not dispute that Plaintiffs have a constitutionally protected property interest in the "lawful adjudication of naturalization applications," but argue that "Plaintiffs cannot show that CARRP creates non-statutory eligibility criteria for naturalization," and that "timeliness is not part of the constitutionally protected interest[.]" *See* Dkt. No. 665-6 at

1    72–73; *see also* Dkt. No. 665-14 at 17–18.[27]

2    In its order denying Defendants' motion to dismiss, the Court observed that "[t]he Ninth

3    Circuit, and other courts, have held that naturalization applicants have a property interest in seeing

4    their applications adjudicated lawfully." Dkt. No. 69 at 16. For instance, the Ninth Circuit has held

5    that a plaintiff has a "protected interest in being able to apply for citizenship," *Brown*, 763 F.3d at

6    1147, and that where an applicant for a nondiscretionary immigration benefit meets the statutory

7    and regulatory requirements for eligibility, they have a property interest "entitled to the protections

8    of due process," *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013); *see also* 8 C.F.R.

9    § 335.3(a).

10    As for the timeliness of adjudications, though, Plaintiffs did not plead this as part of their

11    due process claim. Dkt. No. 47 at 47; *see also* Dkt. No. 69 at 17. And even if they had, "procedural

12    delays . . . do not deprive [non-citizens] of a substantive liberty or property interest unless the [non-

13    citizens] have a legitimate claim of entitlement to have their applications adjudicated within a

14    specified time[.]" *Mendez-Garcia v. Lynch*, 840 F.3d 655, 666 (9th Cir. 2016) ((cleaned up)). The

15    APA's requirement to adjudicate applications within a "reasonable time" does not provide a

16    specified timeframe, and the 120-day requirement under 8 U.S.C. § 1447(b) has not yet been

17    triggered for most class members. Furthermore, even if a right to adjudication within a "reasonable

18    time" were contained within the Naturalization Class's property interest, Plaintiffs have not

19

20    _____

    [27] Defendants also argue that Plaintiffs' due process claim must fail because they cannot show that USCIS was

21    "motivated by animus or malicious intent," that the agency "arbitrarily and intentionally obstructed" naturalization
    applications, or was "deliberately indifferent to whether . . . application[s] w[ere] processed." Dkt. No. 665-6 at 71

22    (quoting *Brown v. Holder*, 763 F.3d 1141, 1149–50 (9th Cir. 2014)); *see also Dent v. Sessions*, 900 F.3d 1075, 1083
    (9th Cir. 2018). Plaintiffs do not argue that that USCIS was motivated by animus or malicious intent, arbitrarily and

23    intentionally obstructed naturalization applications, or was deliberately indifferent to whether applications were
    processed. To the extent they do, their argument fails. Plaintiffs have not shown that all Naturalization Class members

24    whose applications are not adjudicated within six months or more have been subjected to such treatment. The Court
    further observes that Plaintiffs do not dispute that 81.69 percent of naturalization applicants subjected to CARRP

    between 2013 and 2019 were ultimately approved, Dkt. No. 645-5 at 51; Dkt. No. 645-13 at 5, 16, 36–37, and they
    have not shown that any applicant was wrongly denied naturalization.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 54

introduced evidence showing that all or even most class members—again, made up of individuals whose applications will not be decided in as little as six months or more—have been deprived of this right. *Elhady*, 993 F.3d at 221 (finding that deprivation did not rise to the level of a constitutional concern where "the record does not support plaintiffs' assertions that they were all routinely subject to" atypical delays in airport travel).

The Court accordingly does not disturb its prior conclusion that the Naturalization Class has a constitutionally protected property interest in the lawful adjudication of their applications, but that timeliness is not part of the equation. Dkt. No. 69 at 17.

### 2. *Mathews* Balancing

Because Plaintiffs have a constitutionally protected interest in the lawful adjudication of their naturalization applications, the Court must determine what process is due. *See Zerezghi v. U.S. Citizenship & Immigr. Servs.*, 955 F.3d 802, 810 (9th Cir. 2020); *Ching*, 725 F.3d at 1157. For the reasons discussed in Section II.C.3(a), the Court agrees with Defendants that "Plaintiffs fail to show the necessary elements of a violation [of their right to lawful adjudication] as to all class members." Dkt. No. 665-14 at 17.

Furthermore, as discussed below, the *Mathews* balancing factors favor Defendants. Those factors are as follows:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. In balancing the *Mathews* factors, the Court is mindful that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

1

*(a) Private Interest*

2      Plaintiffs argue that the "timely and lawful" adjudication of one's naturalization application

3   implicates significant private interests. Dkt. No. 665 at 54. Specifically, "[d]elayed and denied

4   applicants" may "lose their social security benefits," and they are unable to vote or serve on juries,

5   unable to travel abroad "without fear of being denied re-entry into the United States," unable to

6   petition for immediate relatives abroad, and ineligible for certain jobs. *Id.* at 54–55; *see also* Dkt.

7   No. 665-5 at 38. However, these are interests in timeliness, which again plays no role here, and in

8   *successful* applications—an interest Plaintiffs have repeatedly disclaimed. *See, e.g.*, Dkt. No. 634

9   at 3 (class members seek to prevent USCIS from applying CARRP to the processing and

10  adjudication of their applications, "*not* to establish their eligibility for the benefit or to have their

11  applications decided by the Court"). With respect to the latter, the interests Plaintiffs advance

12  depend on the assumption that any denials of their applications are based on undisclosed, non-

13  statutory information obtained in CARRP review, such that being notified of and permitted to

14  respond to such information would result in approval. But as explained in Section II.C.3(a)(i)–(ii)

15  above, CARRP is not in excess of USCIS's statutory authority under the INA, and Plaintiffs have

16  failed to show that the determination of statutory eligibility in CARRP cases is based on anything

17  other than the record of proceeding. Accordingly, Plaintiffs cannot show that providing individuals

18  with notice or an opportunity to respond to their applications being subjected to CARRP would

19  avoid the harms listed above. For these reasons, Plaintiffs have not shown—and cannot show—

20  that any private interest at stake here is more than "relatively modest in scope and importance."

21  *Ariz. Farmworkers Union v. Buhl*, 747 F.2d 1269, 1272 (9th Cir. 1984). Therefore, this factor

22  weighs in favor of Defendants.

23

24

*(b) Risk of Erroneous Deprivation and the Probable Value of Additional or Substitute Procedural Safeguards*

When considering the risk of erroneous deprivation, the Court considers both the substantive standard that the government uses to make its decision as well as the procedural processes in place. *See Santosky v. Kramer*, 455 U.S. 745, 761–64 (1982). Plaintiffs argue that there is "an enormous risk of erroneous deprivation of Naturalization Class members' interest in the timely, lawful adjudication of their applications" because (1) "the substantive standard for referral to CARRP that causes unreasonable delays and pretextual denials—the identification of an NS concern—is extraordinarily broad and imprecise," and (2) the "lack of notice or any meaningful opportunity to respond to the information that prompts referral to CARRP further elevates the risk of error." Dkt. No. 665 at 55–56. Defendants respond that timeliness is not part of the due process analysis, and that Plaintiffs have not shown that "unreasonable delays and pretextual denials" automatically result from referral to CARRP, which is "only a pre-decisional process involving no seizure of vested rights." Dkt. No. 665-6 at 73.

As to the latter point, there is an important distinction between pre-*adjudication* and pre-*deprivation* process. *See Zerezghi*, 955 F.3d at 809; *cf. Goldberg v. Kelly*, 397 U.S. 254, 260 (1970). "[P]rocedural due process does not require that the notice and opportunity to be heard occur before the deprivation." *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082 (9th Cir. 2010). Indeed, in support of their procedural due process claim, Plaintiffs cite only to post-adjudication cases where the harm, or alleged deprivation, has definitively occurred. *See, e.g.*, Dkt. No. 665 at 56 (citing *Zerezghi*, 955 F.3d at 804; *Al Haramain Islamic Found.*, 686 F.3d at 986; *Kaur v. Holder*, 561 F.3d 957, 962 (9th Cir. 2009)).

The Court finds that Plaintiffs have failed to establish a genuine dispute that subjecting the Naturalization Class's applications to CARRP review constitutes a high risk of an erroneous

deprivation of the *lawful adjudication* of their applications. *See* Dkt. No. 665 at 55–56; Dkt. No. 665-5 at 38–39.[28] As with the first factor under *Mathews*, Plaintiffs have failed to show that the determination of statutory eligibility in CARRP cases is based on anything other than the record of proceeding. Again, CARRP is not contrary to law, and the Court finds that having one's application subjected to CARRP does not per se preclude a lawful adjudication. For this reason, Plaintiffs cannot demonstrate that lack of notice or opportunity to respond to the information that prompts referral to CARRP elevates any risk of error.

Therefore, the Court finds that this factor weighs in favor of Defendants.

### (c) Governmental Interest

The third *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Plaintiffs argue that "[a]ny purported law enforcement interest . . . has no merit," and that the additional burdens of providing notice and an opportunity to respond to CARRP review are low. Dkt. No. 665 at 57–58; Dkt. No. 665-5 at 39. Defendants assert that "[n]otice-and-opportunity regarding CARRP prior to the completion of USCIS' adjudication is untenable" and that the Government's interests in "assessing the extent to which NS concerns affect applicants' statutory eligibility for naturalization . . . , as well as avoiding interference with other law enforcement investigations," are "of the utmost importance." Dkt. No. 665-6 at 74.

"The government interest in immigration enforcement in general is surely substantial." *Zerezghi*, 955 F.3d at 810; *accord Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022).

---

[28] Again, timeliness is not part of the property interest. Even if it were, Plaintiffs have not shown that every application that undergoes CARRP review and has not been adjudicated within six months has been unreasonably delayed or denied.

Notably, the existing regulatory scheme—which Plaintiffs do not challenge—reflects this interest. Although an applicant normally must "be permitted to inspect the record of proceeding which constitutes the basis for the decision," including derogatory information considered by USCIS, and although "[a] determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant," the applicant "shall not be provided any information contained in the record or outside the record which is classified under Executive Order No. 12356 (47 FR 14874; April 6, 1982) as requiring protection from unauthorized disclosure in the interest of national security, unless the classifying authority has agreed in writing to such disclosure[.]" 8 C.F.R. § 103.2(b)(16)(i)–(ii), (iv). Ultimately, applicants whose applications are denied are provided with a statutory basis for the denial, even though they are not provided with the basis for their referral to CARRP, and Plaintiffs have not established that any applicant was wrongly denied naturalization. Plaintiffs' conclusory assertion that the additional burdens of providing notice and an opportunity to respond to CARRP review are low is not sufficient to establish a dispute of material fact regarding this factor.

In light of the significant government interests at stake, the Court finds that this factor weighs in favor of Defendants.

### (d) Weighing the Factors

Weighing the factors above, the Court finds that USCIS's failure to provide the Naturalization Class with notice and an opportunity to respond to their applications' review under CARRP does not constitute a violation of procedural due process under the Fifth Amendment. Accordingly, the Court grants Defendants' motion for summary judgment on this claim and denies Plaintiffs' corresponding cross-motion.

### E. Defendants Are Entitled to Summary Judgment on Plaintiffs' Equal Protection Claim

Finally, Plaintiffs argue they are entitled to summary judgment on their claim that CARRP

denies equal protection to Naturalization Class members because they are singled out based on national origin or religion and suffer adverse effects as a result. Dkt. No. 665 at 58–60; Dkt. No. 665-5 at 41–46. Defendants commit the bulk of their opposition and cross-motion briefing to this claim. Dkt. No. 665-6 at 43–59; Dkt. No. 665-14 at 8–11. For the reasons set forth below, the Court finds that Defendants are entitled to summary judgment on this claim.

1.  Applicable Standard

The Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The equal protection component of the Fifth Amendment's Due Process Clause imposes a similar obligation on the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954). The Equal Protection Clause amounts to a directive that all persons who are similarly situated should be treated alike. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

As an initial matter, Defendants claim that "CARRP is entitled to the same deferential review applied in *Trump v. Hawaii*[, 585 U.S. 667 (2018)]": it need only be "facially legitimate and bona fide." Dkt. No. 665-6 at 56–57. Plaintiffs counter that "[w]here, as here, a plaintiff challenges a facially neutral law or policy on equal-protection grounds, the court must decide whether the evidence, including circumstantial evidence, shows that intent to discriminate was 'a motivating factor' behind the law or policy." Dkt No. 665-5 at 41 (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)); *see also id.* at 41, 45–46 (arguing that because discriminatory intent was a motivating factor behind CARRP, the program is subject to strict scrutiny review).

Assuming without deciding that the deferential standard articulated in *Trump v. Hawaii* does not apply, Plaintiffs still fail to "raise a plausible inference that an 'invidious discriminatory

purpose was a motivating factor' in the relevant decision." *Regents of the Univ. of Cal.*, 591 U.S. at 34 (quoting *Arlington Heights*, 429 U.S. at 266); *accord City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003). Possible evidence that a discriminatory purpose was a motivating factor "includes disparate impact on a particular group, '[d]epartures from the normal procedural sequence,' and 'contemporary statements by members of the decisionmaking body.'" *Regents of the Univ. of Cal.*, 591 U.S. at 34 (quoting *Arlington Heights*, 429 U.S. at 266–68). A discriminatory purpose "implies more than intent as volition or intent as awareness of consequences"; it implies that the decisionmaker "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (cleaned up).

Plaintiffs characterize CARRP as "facially neutral," but contend that "[t]he undisputed facts establish that discrimination based on national origin, religion, or both were motivating factors in CARRP's design and implementation." Dkt. No. 665-5 at 41. Between fiscal year 2013 and 2019, USCIS received more than 10.6 million applications for adjustment of status and naturalization. Dkt. No. 645-5 at 3, 33–34, 131–32. USCIS identified 0.3 percent of those applications as potential national security concerns requiring further CARRP processing. *Id.* at 33–34. Those referrals reflect a 1.46 percent CARRP referral rate for naturalization applications from applicants from majority Muslim countries, and a 0.12 percent CARRP referral rate for naturalization applications from applicants from other countries. *Id.* at 133; Dkt. No. 645-14 at 26. Plaintiffs thus assert that "USCIS refers class members from Muslim-majority countries to CARRP at ten to twelve times the rate of applicants from other countries." Dkt. No. 665-5 at 42; *see also* Dkt. No. 665 at 58–59; Dkt. No. 645-14 at 25–26, 56–57. Plaintiffs argue that this disparate impact on class members from Muslim-majority countries is "enough alone to establish that discriminatory intent was a motivating factor in CARRP's design and implementation." Dkt.

No. 665-5 at 42 (citing *Comm. Concerning Cmty. Improvement v. City of Modesto* ("*CCCI*"), 583 F.3d 690, 703 (9th Cir. 2009)); *Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 489 (1997)). Defendants respond that to the extent CARRP's referral rate is higher for applicants from majority-Muslim countries, that variance can be "explained by the higher level of terrorist events in the applicants' countries of origin." Dkt. No. 665-6 at 45–46; *see* Dkt. No. 645-5 at 73. Further, Defendants maintain "[t]here is no statistically significant difference in approval rates for CARRP-referred . . . naturalization applications when comparing applicants from majority Muslim and non-majority Muslim countries." Dkt. No. 665-6 at 47 (citing Dkt. No. 645-5 at 98–99).

Even assuming that "applicants from Muslim-majority countries" constitute a suspect class, the Court is unable to conclude that a genuine issue for trial exists as to whether this group is being singled out *because of* either their religion or nationality.[29] First, being a national of a Muslim-majority country does not necessarily mean that an applicant is in fact Muslim or is being targeted on that basis. *See* Dkt. No. 645-5 at 22 ("The data supplied does not identify the religion of any applicant[.]"). Significantly, Plaintiffs do not dispute Defendants' assertion that applicants from Muslim-majority countries are approved at approximately the same rate, within approximately the same time, as other applicants. Dkt. No. 665-5 at 43; *see also* Dkt. No. 645-5 at 29–30. And because Plaintiffs have not established that "CARRP is harmful to *everyone* subjected to it," Dkt. No. 665-5 at 43, mere disproportionate placement in CARRP is insufficient to demonstrate a discriminatory purpose (i.e., causation), rather than mere correlation. Second, it is undisputed that for over 90 percent of CARRP referrals, the first or only information source for referring the application to CARRP is a third agency that provides information to USCIS, rather than USCIS information, undermining the contention that USCIS's discriminatory animus fuels

---

[29] In their amended complaint, Plaintiffs allege that Defendants harm them "on the basis of their country of origin" and "on the basis of religion." Dkt. No. 47 at 48.

CARRP referrals of applicants from Muslim-majority countries. *Id.*; Dkt. No. 665-6 at 48–49; Dkt. No. 645-5 at 30.

Plaintiffs next argue that (1) USCIS's prior use of a list of 34 "Special Interest Countries" in referring applications to CARRP review is evidence that the program "was designed to have a discriminatory impact" based on national origin; (2) CARRP's "emerg[ence] from the same historical milieu as other post-9/11 programs, like NSEERS [the National Security Entry-Exit Registration System]," indicates discriminatory intent; and (3) CARRP's promotion of impermissible religious scrutiny of applicants' religious practices "is further evidence that the intent of CARRP was to apply different rules and standards to Muslim applicants." Dkt. No. 665-5 at 43–45; *see also* Dkt. No. 665 at 59–60. None of these factors, even taken together with the disparate impact analysis above, permit Plaintiffs' equal protection claim to survive summary judgment. First, the record does not delineate which Muslim-majority countries are specifically being impacted by CARRP relative to others.[30] Plaintiffs do not account for other factors that could explain inclusion on the list (such as the level of terrorism in the countries), nor do they explain why—if the Muslim religion or national origin were the reason for inclusion—certain Muslim-majority countries were excluded from the list. Second, simply labeling CARRP as "post-9/11" does not provide a historical background sufficient to support an equal protection claim on summary judgment absent additional evidence to that effect. The record evidence indicates that USCIS adopted and implemented CARRP in 2008 following a multi-year effort to incorporate interagency information sharing practices into USCIS's vetting procedures following September

---

[30] At oral argument, the Court requested that the parties file a joint submission addressing "whether the record includes a listing of which Muslim-majority countries are allegedly disproportionally represented among CARRP referrals[.]" Dkt. No. 673. In their response, the parties clarified that "Mr. Kruskol's expert reports do not specifically address country-specific rates of referral to CARRP," and that, "[t]o the extent the Court [sought] country-specific referral rates for each Muslim-majority country in the world, this information does not exist in the record." Dkt. No. 674 at 1–2.

11, 2001, but the Court cannot infer a genuine dispute as to anti-Muslim animus solely from this historical context. Dkt. No. 517 at 3, 5–11; *see generally* Dkt. No. 286-3 at 1–7. And third, while the record evidence shows that adjudicators inquire about activities connected with religion—without specifying any religion in particular—*see, e.g.*, Dkt. No. 472-2 at 680, 689; Dkt. No. 645-11 at 30, that does not create a genuine dispute that CARRP targets Muslim applicants *because* they are Muslim.

In sum, the Court finds that Plaintiffs have failed to raise a genuine issue that Defendants implemented CARRP "at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279 (cleaned up); *see also Celotex*, 477 U.S. at 322. In light of the statutory authority USCIS possesses to investigate naturalization applicants and the national security rationale underlying CARRP, the Court finds that the policy is rationally related to the legitimate government interest of investigating and adjudicating naturalization applications. *See Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1261 (9th Cir. 2016) (citation omitted); *see also, e.g.*, Dkt. No. 665-14 at 10–11.

Accordingly, the Court grants summary judgment in favor of Defendants on this claim and denies summary judgment to Plaintiffs.

## III.   CONCLUSION

For the reasons discussed herein, the Court GRANTS IN PART AND DENIES IN PART the parties' cross-motions for summary judgment, Dkt. Nos. 665, 665-6:

- Plaintiffs' motion for summary judgment is granted in part and denied in part on the Naturalization Class's claims that CARRP is arbitrary and capricious, contrary to law, unreasonably withholds or delays agency action, and required USCIS to engage in notice and comment rulemaking (claims 7, 8, 9, and 10). Defendants' cross-motion is granted in part and denied in part as to these claims.

- Plaintiffs' motion for summary judgment is denied as to the Naturalization Class's claims that CARRP violates the procedural due process element and the equal protection component of the Fifth Amendment (claims 4 and 6), and Defendants' cross-motion is granted as to these claims.

- Plaintiffs' claims based on since-repealed Executive Orders 13769 and 13780 (Claims 1, 2, and 3) are moot. Accordingly, as to those claims, Defendants' cross-motion is granted.

The Court further ORDERS the parties to meet and confer in good faith and, within 30 days of the date of this Order, submit to the Court a joint status report setting forth (1) either a joint proposal regarding vacatur and remand to USCIS following the Court's finding that CARRP is arbitrary and capricious or a proposed supplemental briefing schedule regarding this subject matter; and (2) a proposal regarding disposition of the remaining claims in this case.

Dated this 17th day of January, 2025.

Lauren King
United States District Judge