UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDIQAFAR WAGAFE, et al., | CASE NO. 2:17-cv-00094-LK |
| Plaintiffs, | |
| v. | ORDER GRANTING AMENDED JOINT MOTION TO DIRECT NOTICE |
| DONALD J. TRUMP, President of the United States, et al., | |
| Defendants. | |

This matter comes before the Court on the parties' Amended Joint Motion to Direct Notice of Settlement Agreement. Dkt. No. 711. For the reasons stated below, the Court grants the joint motion to direct public notice.

## I.   BACKGROUND

Plaintiffs initiated this class action in early 2017 against the United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security, as well as several government officials. Dkt. Nos. 1, 17, 47. Plaintiffs sought declaratory and injunctive relief related to USCIS's Controlled Application Review and Resolution Program ("CARRP"), a

ORDER GRANTING AMENDED JOINT MOTION TO DIRECT NOTICE - 1

national security vetting program which affects the evaluation and processing of some individuals' applications for immigration benefits. *See generally* Dkt. No. 47. In June 2017, the Court certified two nationwide classes to be represented by the five named Plaintiffs in this case: the "Naturalization Class" and the "Adjustment Class." Dkt. No. 69 at 8, 31.[1] In October 2022, the parties agreed to a continuing stay of the Adjustment Class's claims while the Naturalization Class's claims were litigated. *See* Dkt. No. 613 at 2; Dkt. No. 660 at 1.

Both parties moved for summary judgment as to the Naturalization Class's claims. Dkt. Nos. 665, 665-5, 665-6, 665-14. On January 17, 2025, the Court granted in part and denied in part the parties' motions. Dkt. No. 679. The Court found that Plaintiffs were entitled to summary judgment on their Administrative Procedure Act ("APA") claim that CARRP is arbitrary and capricious (Claim Eight, Dkt. No. 47 at 49), Dkt. No. 679 at 41–47, and granted summary judgment to Defendants on Plaintiffs' other APA claims, *id.* at 33–40, 47–52. The Court further granted summary judgment to Defendants on Plaintiffs' Fifth Amendment procedural due process claim, *id.* at 52–59, and on Plaintiffs' Fourteenth Amendment equal protection claim, *id.* at 59–64. The Court denied as moot Plaintiffs' claims based on since-repealed Executive Orders 13769 and 13780, and therefore granted summary judgment to Defendants on those claims. *Id.* at 65. Neither party moved for summary judgment on Plaintiff's Fifth Amendment substantive due process claim (Claim Five, Dkt. No. 47 at 47). Dkt. No. 679 at 18–19.

The Court ordered the parties to meet and confer in good faith and submit a joint status report setting forth either a joint proposal regarding vacatur and remand to USCIS or a proposed supplemental briefing schedule, as well as a proposal regarding disposition of the remaining claims in the case. *Id.* at 65. On November 26, 2025, after repeated extensions of the deadline, the parties

---

[1] The classes were certified under Federal Rule of Civil Procedure 23(b)(2). *Id.* at 31.

ORDER GRANTING AMENDED JOINT MOTION TO DIRECT NOTICE - 2

filed a joint status report and motion to direct notice of settlement agreement. Dkt. No. 704. The Court identified five potential issues with the submission and directed the parties to address them. Dkt. No. 706 at 1. The parties then filed the present amended joint motion to direct notice of settlement agreement. Dkt. No. 711.

## II.   DISCUSSION

Federal Rule of Civil Procedure 23 requires the Court to direct notice of a proposed settlement to the class when it is likely that the settlement can be approved under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1). Although the parties' motion to direct notice is not captioned as a motion for preliminary approval, that is what it functionally seeks. The Court therefore considers whether preliminary approval is appropriate before turning to the sufficiency of the proposed notice.

## A.      Terms of the Settlement Agreement

The settlement agreement provides that USCIS will rescind CARRP within seven months of the settlement's final approval in exchange for the Adjustment Class releasing all of its claims, the Naturalization Class releasing its Fifth and Eighth Claims (a Fifth Amendment substantive due process claim and an APA claim), and the Named Plaintiffs releasing all claims based on their actual or alleged use of CARRP. Dkt. No. 711-1 at 8–9. All parties agree to waive all rights to appeal any of the Court's prior decisions. *Id.* at 9. Should USCIS fail to rescind CARRP within seven months, the class representatives "or their Court-approved substitutes, acting on behalf of themselves and their respective classes" would be permitted to seek enforcement of the agreement—namely, "specific performance of the obligation to rescind CARRP or such other relief appropriate in the circumstances"—in this Court. *Id.* at 8, 11. Relatedly, the agreement contemplates that the Court shall "retain jurisdiction over the case for the purpose of enforcing this agreement until notification that USCIS has rescinded CARRP," and the Court's jurisdiction shall

"expire upon notification to the Court of the rescission of CARRP . . . except as to a potential motion for costs, expenses and fees." *Id.* at 8.

The settlement agreement does not "limit the discretion of Defendants to issue a national security vetting policy applicable to applications for immigration benefits submitted to USCIS," *id.* at 9, nor does it limit class members from challenging "in other litigation . . . the legality of any national security vetting policy applicable to applications for immigration benefits submitted to USCIS, irrespective of any similarity or overlap between such policy and CARRP," *id.* at 11.

**B.      Preliminary Approval of Settlement Agreement**

1.   Legal Standard

Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Class action settlements, by their very nature, present "unique due process concerns for absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Federal Rule of Civil Procedure 23(e) thus requires judicial approval of any class action settlement and tasks district courts with ensuring that any binding settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). In making this assessment, courts must consider (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; and (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (4) whether the proposal treats class members equitably relative to each other. *Id.*; *see also In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025) ("[T]he key *Hanlon*

factors are now baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2) analysis."). Courts must also scrutinize class action settlements for any signs of collusion between plaintiffs and defendants. *Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021). If a settlement agreement is unsatisfactory, courts may not "delete, modify or substitute certain provisions"; "[t]he settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026 (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 630 (9th Cir. 1982)).

2. Analysis

(a) *Adequate Representation*

At this stage, the Court is satisfied that the class representatives and counsel have adequately represented the class. After Judge Jones denied Defendants' motion to dismiss and found the class representatives and class counsel adequate, Dkt. No. 69, class counsel and class representatives engaged in extensive briefing on summary judgment and in motions to exclude expert testimony. *See* Dkt. Nos. 665, 665-5, 665-6, 665-14 (redacted summary judgment briefing); Dkt. Nos. 460, 463, 471, 475, 477 (sealed and redacted motions to exclude expert opinions). They ultimately received a partially favorable outcome on summary judgment. Dkt. No. 679 at 41–47. Moreover, counsel engaged in significant settlement discussions over a lengthy period and obtained a settlement that appears to address Plaintiffs' main concern in this litigation by rescinding the CARRP program. *See* Dkt. Nos. 684, 686, 688, 690, 692, 694, 696, 702, 704, 711. Therefore, the Court preliminarily finds that the class representatives and class counsel have adequately represented the class. *See e.g., Kidd v. Noem*, No. 2:20-CV-03512-ODW (JPRX), 2025 WL 1330082, at *5 (C.D. Cal. May 5, 2025) (adequate representation when plaintiffs defeated motion to dismiss and class representatives participated in extensive settlement discussions); *Casa Libre/Freedom H. v. Mayorkas*, No. 2:22-CV-01510-ODW (JPRX), 2024 WL 4505447, at *4

(C.D. Cal. Oct. 16, 2024) (adequate representation when class counsel "engaged the class throughout the litigation" and "delivered a favorable outcome on summary judgment in the form of declaratory relief").

### (b) Arms-Length Negotiation

To determine whether the parties have engaged in an arms-length negotiation, courts evaluate whether the proposed settlement agreement appears to be "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]" *Officers for Just. v. Civ. Serv. Comm'n. of City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). In short, courts look for "serious, informed, non-collusive negotiations[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). These concerns are most prominent when counsel is compensated as part of a settlement agreement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (signs of collusion include "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded" (citation omitted)).

Because Plaintiffs do not seek monetary relief, Dkt. No. 47 at 51–52, and the settlement agreement provides no monetary relief, *see generally* Dkt. No. 711-1, the risk of collusion is low. *See In re Bluetooth*, 654 F.3d at 947. Moreover, the Court observes no other signs of collusion: the parties entered settlement negotiations after extensive and heavily litigated fact discovery culminated in this Court's summary judgment decision, Dkt. No. 679, and those negotiations appear to have lasted nearly a year, *see* Dkt. No. 684 (March 18, 2025 joint motion stating the parties' belief that "their ongoing conversations could lead beyond completion of a joint status report to an agreed resolution of the case"); Dkt. No. 711-1 at 13 (Settlement Agreement dated March 4, 2026). Nothing in the record suggests that this agreement is the product of fraud,

overreaching, or collusion. Therefore, the Court finds that this factor supports preliminary approval.

### (c) Adequacy of Relief

To determine whether the "relief provided for the class is adequate," courts consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class . . . ; (iii) the terms of any proposed award of attorney's fees, including timing of payment;" and (iv) any agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C).

The settlement agreement does not include payment of attorney's fees and does not disclose any agreements made in connection with the settlement, *see generally* Dkt. No. 711-1, so the Court focuses on "(i) the costs, risks, and delay of trial and appeal" and "(ii) the effectiveness of any proposed method of distributing relief to the class," Fed. R. Civ. P. 23(e)(2)(C); *see also* Dkt. No. 711 at 5 ("[C]ounsel for Plaintiffs have rendered all services in this matter pro bono. Insofar as Plaintiffs are entitled to an award of attorneys' fees and costs, those fees and costs will be distributed to Plaintiffs' counsel and will have no impact on class members' substantive relief.").

The costs, risks, and delay of continuing to litigate this case favor preliminary approval. As the parties describe it, "[t]he rescission of CARRP will provide meaningful relief to all class members; indeed, it will achieve a cardinal purpose of this lawsuit." Dkt. No. 711 at 4. Without a settlement, the parties will continue to expend resources litigating the remaining claims to final judgment and potentially through appeals. This could include summary judgment briefing and a trial for the Adjustment Class, as well a trial for the Naturalization Class's substantive due process claim. It may also include disputes over the appropriate relief. Both parties may appeal the eventual judgment. In contrast, settlement would reduce the costs, risks, and delay associated with continuing to litigate the case. This factor supports preliminary approval.

In general, courts need not worry about the effectiveness of distributing declaratory or injunctive relief, as opposed to monetary relief, because it applies generally to the class. *See also Kidd*, 2025 WL 1330082, at *6 ("[B]ecause the class received declaratory—not monetary—relief, the Court has no concerns with the effectiveness of distributing relief to the class."); *Toomey v. Arizona*, No. CV-19-00035-TUC-RM (MAA), 2023 WL 6377273, at *5 (D. Ariz. Sept. 29, 2023) ("The relief provided by the Consent Decree is also adequate considering the effectiveness of any proposed method of distributing relief to the class, because the Consent Decree provides injunctive relief to each class member."). Here, the Court has no concerns about the effectiveness of distributing relief given that it "will, by its nature, be distributed immediately and evenly to all class members[.]" Dkt. No. 711 at 5. Additionally, the settlement agreement explicitly contemplates a mechanism for class representatives to seek enforcement should the promised relief not be effectuated. Dkt. No. 711-1 at 8, 11.

### (d) Equitable Treatment

Lastly, the Court must ensure that "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). A court may preliminarily approve a settlement and direct notice to the class if "the proposed settlement . . . does not improperly grant preferential treatment to class representatives or segments of the class[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Here, class representatives are not given preferential treatment, nor are distinctions made for any individual segments of each class. And all members of each class are required to release all their remaining claims. Finally, the relief—recission of CARRP—applies equally to all class members. Dkt. No. 711-1 at 8. Therefore, the Court finds that the settlement agreement treats class members equitably.

**C.      Adequacy of Notice to Class**

Although Rule 23 "does not . . . oblige the District Court to afford [Rule 23(b)(2) class members] notice of the action," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011), due process requires notice to a Rule 23(b)(2) class that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Ashok Babu v. Wilkins*, No. 22-15275, 2023 WL 6532647, at *1 (9th Cir. Oct. 6, 2023) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980)); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 323 (3d Cir. 2019) ("[R]egardless what these rules say, the procedures for class action settlement—including the notice procedures—must also comply with due process requirements.").

The parties' proposed notice—the "Public Notice to Possible Class Members of Settlement"—lists the case name and number, provides a link to the operative complaint, and describes the suit as follows:

> [A] class action lawsuit challenging the Controlled Application Review and Resolution Program ("CARRP"), which United States Citizenship and Immigration Services ("USCIS") applies to process certain applications for immigration benefits. The lawsuit alleges that the application of CARRP to naturalization (citizenship) and adjustment of status (green card) applications has caused unreasonable delays and denials in violation of the U.S. Constitution, the Immigration and Nationality Act, and the Administrative Procedure Act.

Dkt. No. 711-1 at 15. For additional information, the proposed notice includes a link to the operative complaint. *Id.* at 15. The proposed notice also provides an overview of the Court's summary judgment ruling and describes the parties' proposed settlement agreement in succinct, digestible terms that notify class members of the claims that would be released. *Id.* at 15–16 ("[T]he federal government will not appeal the court's ruling that CARRP violates the Administrative Procedure Act . . . [and] . . . will also rescind the CARRP policy, meaning the government will cancel the policy"; "[i]n exchange, the . . . classes . . . will not appeal the rest of

ORDER GRANTING AMENDED JOINT MOTION TO DIRECT NOTICE - 9

the court's rulings . . . [and] . . . will also release their remaining claims—in other words, they will agree not to pursue any more litigation on the claims that remain in the lawsuit after the court's ruling.").

The proposal informs potential class members that "if [their] naturalization or adjustment of status application has been pending for six months or more," they may be members of the *Wagafe* class, and directs potential class members to convey "comments about the fairness, reasonableness, or adequacy of the attached, proposed settlement agreement" to *Wagafe* class counsel within 60 days. *Id.* at 17–18. It also provides that "[w]hile [class counsel] will not be able to provide you any information about your application, or advise whether you are a class member, they will submit all comments to the Court for the Court's consideration." *Id.* at 17.

The proposed notice states that there will be a public fairness hearing on the settlement agreement that "has not yet been scheduled" and provides a link to the websites for the Northwest Immigrant Rights Project and the United States District Court for the Western District of Washington's calendar so that potential class members may find "the exact date, time, and location of the hearing[.]" *Id.* at 18. Finally, the proposed notice warns potential class members that "the Court may approve the settlement agreement, thereby binding the parties—including all class members—to its terms and thus foreclosing all future claims covered under the agreement by class members." *Id.*

The Court finds that this proposed notice document adequately apprises potential class members of the settlement, its consequences, and how to provide comments to the court.

Class counsel plans to "post the notice, with the proposed settlement agreement, to the public websites of the Northwest Immigrant Rights Project and the American Civil Liberties Union" and to circulate it "to two national immigration listservs relied on by immigration attorneys and legal advocates across the country—specifically, listservs hosted by the National Immigration

ORDER GRANTING AMENDED JOINT MOTION TO DIRECT NOTICE - 10

Project of the National Lawyers Guild . . . and the American Immigration Lawyer[]s Association[.]" Dkt. No. 711 at 6. The parties represent that "the public notice procedure described in the Settlement Agreement is reasonably calculated to notify interested parties," in part because "a similar procedure" was previously used in this case and it "generated more than 100 responses from potential class members," demonstrating that it is "an effective way to communicate with potential class members." *Id.* Additionally, the parties note that "the procedure adequately balances the interests of facilitating communication between class members and their counsel, on one hand, and safeguarding information (*i.e.*, class membership, and therefore CARRP status) which, if disclosed to any particular individual or publicly, would present a risk to national security." *Id.* at 6–7. The parties also propose to provide interested parties a period of 60 days for objections, as opposed to their original proposal of 30 days. *Id.* at 7. The Court agrees that the proposed procedure for distributing notice is reasonably calculated to notify interested parties. Accordingly, the proposed notice comports with due process. *See Ashok Babu*, 2023 WL 6532647, at *1–2.

The parties briefing otherwise resolves the Court's concerns with the proposed settlement and notice procedures. *See* Dkt. Nos. 706, 711.

### III.  CONCLUSION

For the reasons described above, the Court GRANTS the parties' Amended Joint Motion to Direct Notice of Settlement Agreement, Dkt. No. 711, and ORDERS as follows:

1.      Within 14 days of this Order, pursuant to Paragraphs 16 and 17 of the Settlement Agreement, Dkt. No. 711-1 at 7, Plaintiffs' counsel is directed to post and distribute the agreed upon "Public Notice to Possible Class Members of Settlement" for a period of 60 days.

ORDER GRANTING AMENDED JOINT MOTION TO DIRECT NOTICE - 11

2.      Within seven days of the conclusion of the notice period, the parties must notify the Court that the notice period has concluded and propose a timeline for conveying written objections to the Court and scheduling a fairness hearing.

Dated this 23rd day of March, 2026.

Lauren King
United States District Judge

ORDER GRANTING AMENDED JOINT MOTION TO DIRECT NOTICE - 12