UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDIQAFAR WAGAFE, et al., | CASE NO. 2:17-cv-00094-LK |
| Plaintiffs, | ORDER GRANTING MOTION |
| v. | FOR FINAL APPROVAL |
| DONALD J. TRUMP, President of the United States, et al., | |
| Defendants. | |

This matter comes before the Court on the parties' unopposed motion for final approval of the class action settlement reached in this case. Dkt. No. 718. For the reasons discussed below, the Court GRANTS the motion.

## I.    BACKGROUND

Plaintiffs initiated this class action in early 2017 against United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security, as well as several government officials. Dkt. Nos. 1, 17, 47. Plaintiffs sought declaratory and injunctive relief related to USCIS's Controlled Application Review and Resolution Program ("CARRP"), a

ORDER GRANTING MOTION FOR FINAL APPROVAL - 1

national security vetting program which affects the evaluation and processing of some individuals' applications for immigration benefits. *See generally* Dkt. No. 47. In June 2017, the Court certified two nationwide classes to be represented by the five named Plaintiffs in this case: the "Naturalization Class" and the "Adjustment Class." Dkt. No. 69 at 8, 31.[1] In October 2022, the parties agreed to a continuing stay of the Adjustment Class's claims while the Naturalization Class's claims were litigated. *See* Dkt. No. 613 at 2; Dkt. No. 660 at 1.

Both parties moved for summary judgment as to the Naturalization Class's claims. Dkt. Nos. 665, 665-5, 665-6, 665-14. On January 17, 2025, the Court granted in part and denied in part the parties' motions. Dkt. No. 679. The Court found that Plaintiffs were entitled to summary judgment on their Administrative Procedure Act ("APA") claim that CARRP is arbitrary and capricious (Claim Eight, Dkt. No. 47 at 49), Dkt. No. 679 at 41–47, and granted summary judgment to Defendants on Plaintiffs' other APA claims, *id.* at 33–40, 47–52. The Court further granted summary judgment to Defendants on Plaintiffs' Fifth Amendment procedural due process claim, *id.* at 52–59, and on Plaintiffs' Fourteenth Amendment equal protection claim, *id.* at 59–64. The Court denied as moot Plaintiffs' claims based on since-repealed Executive Orders 13769 and 13780, and therefore granted summary judgment to Defendants on those claims. *Id.* at 65. Neither party moved for summary judgment on Plaintiffs' Fifth Amendment substantive due process claim (Claim Five, Dkt. No. 47 at 47). Dkt. No. 679 at 18–19.

The Court ordered the parties to meet and confer in good faith and submit a joint status report setting forth either a joint proposal regarding vacatur and remand to USCIS or a proposed supplemental briefing schedule, as well as a proposal regarding disposition of the remaining claims in the case. *Id.* at 65. On November 26, 2025, after repeated extensions of the deadline, the parties

---

[1] The classes were certified under Federal Rule of Civil Procedure 23(b)(2). *Id.* at 31.

filed a joint status report and motion to direct notice of settlement agreement. Dkt. No. 704. The Court identified five potential issues with the submission and directed the parties to address them. Dkt. No. 706 at 1. The parties then filed an amended joint motion to direct notice of settlement agreement. Dkt. No. 711. The Court granted the amended joint notice and ordered Plaintiffs' counsel to post and distribute the agreed upon public notice to class members. Dkt. No. 713 at 11.

After the 60-day notice period, the parties filed a joint status report indicating that Plaintiffs' counsel received no written objections to the proposed settlement and requesting a fairness hearing. Dkt. No. 715. The Court conducted the fairness hearing on June 25, 2026. Dkt. No. 717. At the hearing, the parties orally moved for final approval and informed the court that they had received no objections to the proposed settlement agreement following their submission of the joint status report. Following the hearing, the parties submitted a joint written motion for final approval of the settlement agreement, along with a proposed order and a copy of the notice provided by class counsel to class members. Dkt. No. 718.

## II.   DISCUSSION

The Court previously granted preliminary approval of the amended settlement agreement. Dkt. No. 713 at 3–8. Neither class counsel nor the Court received any objections to the class action settlement. For the reasons laid out below, the Court finds that the settlement agreement is fair, reasonable, and adequate, supporting final approval.

### A.    Terms of Settlement Agreement

The settlement agreement provides that USCIS will rescind CARRP within seven months of the settlement's final approval in exchange for the Adjustment Class releasing all of its claims, the Naturalization Class releasing its Fifth and Eighth Claims (a Fifth Amendment substantive due process claim and an APA claim), and the Named Plaintiffs releasing all claims based on their actual or alleged use of CARRP. Dkt. No. 711-1 at 8–9. All parties agree to waive all rights to

ORDER GRANTING MOTION FOR FINAL APPROVAL - 3

appeal any of the Court's prior decisions. *Id.* at 9. Should USCIS fail to rescind CARRP within seven months, the class representatives "or their Court-approved substitutes, acting on behalf of themselves and their respective classes," would be permitted to seek enforcement of the agreement—namely, "specific performance of the obligation to rescind CARRP or such other relief appropriate in the circumstances"—in this Court. *Id.* at 8, 11. Relatedly, the agreement contemplates that the Court shall "retain jurisdiction over the case for the purpose of enforcing this agreement until notification that USCIS has rescinded CARRP," and the Court's jurisdiction shall "expire upon notification to the Court of the rescission of CARRP . . . except as to a potential motion for costs, expenses and fees." *Id.* at 8.

The settlement agreement does not "limit the discretion of Defendants to issue a national security vetting policy applicable to applications for immigration benefits submitted to USCIS," *id.* at 9, nor does it limit class members from challenging "in other litigation . . . the legality of any national security vetting policy applicable to applications for immigration benefits submitted to USCIS, irrespective of any similarity or overlap between such policy and CARRP," *id.* at 11.

**B.    Legal Standard**

Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Class action settlements, by their very nature, present "unique due process concerns for absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Federal Rule of Civil Procedure 23(e) thus requires judicial approval of any class action settlement and tasks district courts with ensuring that any binding settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). In making this assessment, courts must consider (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the proposal was negotiated

ORDER GRANTING MOTION FOR FINAL APPROVAL - 4

at arm's length; (3) whether the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; and (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (4) whether the proposal treats class members equitably relative to each other. *Id.*; *see also In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025) ("[T]he key *Hanlon* factors are now baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2) analysis."). Courts must also scrutinize class action settlements for any signs of collusion between plaintiffs and defendants. *Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021). If a settlement agreement is unsatisfactory, courts may not "delete, modify or substitute certain provisions"; "[t]he settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026 (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 630 (9th Cir. 1982)).

**C.      Class Certification**

Before granting final approval of a class action settlement, courts must assess whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The reasoning underlying the Court's certification of the class remains unchanged since its order granting Plaintiffs' motion to certify the class, and therefore the Court incorporates its prior analysis under Rule 23(a) and (b) as set forth therein. *See* Dkt. No. 69. Accordingly, the Court finds that Plaintiffs have met their burden of showing that the requirements of Rule 23(a) are met and that the classes are maintainable under Rule 23(b) for purposes of settlement approval. *See, e.g.*, *Juarez v. Soc. Fin., Inc.*, No. 20-CV-03386-HSG, 2023 WL 3898988, at *3 (N.D. Cal. June 8, 2023) (certifying the settlement class for final approval

when no material changes occurred between preliminary and final certification); *Lalli v. First Team Real Est.-Orange Cnty.*, No. 8:20-CV-00027-JWH-ADS, 2022 WL 8207530, at *4 (C.D. Cal. Sept. 6, 2022) (same).

**D.      Adequacy of Notice**

Although Rule 23 "does not . . . oblige the District Court to afford [Rule 23(b)(2) class members] notice of the action," *Wal-Mart Stores*, 564 U.S. at 362, due process requires notice to a Rule 23(b)(2) class that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Ashok Babu v. Wilkins*, No. 22-15275, 2023 WL 6532647, at *1 (9th Cir. Oct. 6, 2023) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980)); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 323 (3d Cir. 2019) ("[R]egardless what these rules say, the procedures for class action settlement—including the notice procedures—must also comply with due process requirements.").

As previously discussed in the Court's order granting the motion to direct notice, Dkt. No. 713 at 9–11, the parties' notice that was distributed to the class—the "Public Notice to Possible Class Members of Settlement"—listed the case name and number, provided a link to the operative complaint, and described the suit as follows:

> [A] class action lawsuit challenging the Controlled Application Review and Resolution Program ("CARRP"), which United States Citizenship and Immigration Services ("USCIS") applies to process certain applications for immigration benefits. The lawsuit alleges that the application of CARRP to naturalization (citizenship) and adjustment of status (green card) applications has caused unreasonable delays and denials in violation of the U.S. Constitution, the Immigration and Nationality Act, and the Administrative Procedure Act.

Dkt. No. 718-2 at 2. For additional information, the notice included a link to the operative complaint. *Id.* The notice also provided an overview of the Court's summary judgment ruling and described the parties' proposed settlement agreement in succinct, digestible terms that notify class

ORDER GRANTING MOTION FOR FINAL APPROVAL - 6

members of the claims that would be released. *Id.* at 2–3 ("[T]he federal government will not appeal the court's ruling that CARRP violates the Administrative Procedure Act . . . [and] . . . will also rescind the CARRP policy, meaning the government will cancel the policy"; "[i]n exchange, the . . . classes . . . will not appeal the rest of the court's rulings . . . [and] . . . will also release their remaining claims—in other words, they will agree not to pursue any more litigation on the claims that remain in the lawsuit after the court's ruling.").

The notice informed potential class members that "if [their] naturalization or adjustment of status application has been pending for six months or more," they may be members of the *Wagafe* class, and directed potential class members to convey "comments about the fairness, reasonableness, or adequacy of the attached, proposed settlement agreement" to *Wagafe* class counsel within 60 days. *Id.* at 4. It also provided that "[w]hile [class counsel] will not be able to provide you any information about your application, or advise whether you are a class member, they w[ould] submit all comments to the Court for the Court's consideration." *Id.*

The notice stated that there would be a public fairness hearing on the settlement agreement that "ha[d] not yet been scheduled" but would occur "30 days or more after May 24, 2026," and provided a link to the websites for the Northwest Immigrant Rights Project and the United States District Court for the Western District of Washington's calendar so that potential class members may find "the exact date, time, and location of the hearing[.]" *Id.* at 5. Finally, the notice warned potential class members that "the Court may approve the settlement agreement, thereby binding the parties—including all class members—to its terms and thus foreclosing all future claims covered under the agreement by class members." *Id.*

In accord with its prior analysis, Dkt. No. 713 at 9–11, the Court finds that the notice adequately apprised potential class members of the settlement, its consequences, and how to provide comments to the Court.

ORDER GRANTING MOTION FOR FINAL APPROVAL - 7

In terms of the method of notice, on March 25, 2026, class counsel posted the notice, with the proposed settlement agreement, "to the websites of the Northwest Immigrant Rights Project and the American Civil Liberties Union" and circulated it to "listservs hosted by the National Immigration Project of the National Lawyers Guild/National Immigration Project and the American Immigration Lawyer's Association." Dkt. No. 718-1 at 2. The parties represented that "the public notice procedure described in the Settlement Agreement [wa]s reasonably calculated to notify interested parties," in part because "a similar procedure" was previously used in this case and it "generated more than 100 responses from potential class members," demonstrating that it is "an effective way to communicate with potential class members." Dkt. No. 711 at 6. Additionally, the parties noted that "the procedure adequately balances the interests of facilitating communication between class members and their counsel, on one hand, and safeguarding information (*i.e.*, class membership, and therefore CARRP status) which, if disclosed to any particular individual or publicly, would present a risk to national security." *Id.* at 6–7. The parties provided interested parties a period of 60 days for objections. *Id.* at 7. Following this 60-day period, the parties informed the Court that Plaintiffs' counsel "received no written objections to the proposed settlement," though they did receive "five written inquiries in response to the agreed upon public notice," all of which "sought information related to individual applications for immigration benefits and did not contain objections to the proposed settlement." Dkt. No. 715 at 1–2.

The Court finds that the procedure for distributing notice was reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections, as evidenced by the responses to the notice. Accordingly, the proposed notice comports with due process. *See Ashok Babu v. Wilkins*, No. 22-15275, 2023 WL 6532647, at *1–2 (9th Cir. Oct. 6, 2023).

ORDER GRANTING MOTION FOR FINAL APPROVAL - 8

**E.    Adequate Representation**

For the same reasons previously articulated in its order granting preliminary approval of the settlement agreement, Dkt. No. 713 at 5–6, the Court is satisfied that the class representatives and counsel have adequately represented the class. After Judge Jones denied Defendants' motion to dismiss and found the class representatives and class counsel adequate, Dkt. No. 69, class counsel and class representatives engaged in extensive briefing on summary judgment and in motions to exclude expert testimony. *See* Dkt. Nos. 665, 665-5, 665-6, 665-14 (redacted summary judgment briefing); Dkt. Nos. 460, 463, 471, 475, 477 (sealed and redacted motions to exclude expert opinions). They ultimately received a partially favorable outcome on summary judgment. Dkt. No. 679 at 41–47. Moreover, counsel engaged in significant settlement discussions over a lengthy period and obtained a settlement that appears to address Plaintiffs' main concern in this litigation by rescinding the CARRP program. *See* Dkt. Nos. 684, 686, 688, 690, 692, 694, 696, 702, 704, 711. Therefore, the Court finds that the class representatives and class counsel have adequately represented the class. *See e.g., Kidd v. Noem*, No. 2:20-CV-03512-ODW (JPRX), 2025 WL 1330082, at *5 (C.D. Cal. May 5, 2025) (adequate representation when plaintiffs defeated motion to dismiss and class representatives participated in extensive settlement discussions); *Casa Libre/Freedom H. v. Mayorkas*, No. 2:22-CV-01510-ODW (JPRX), 2024 WL 4505447, at *4 (C.D. Cal. Oct. 16, 2024) (adequate representation when class counsel "engaged the class throughout the litigation" and "delivered a favorable outcome on summary judgment in the form of declaratory relief").

**F.    Arms-Length Negotiation**

To determine whether the parties have engaged in an arms-length negotiation, courts evaluate whether the proposed settlement agreement appears to be "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]" *Officers for Just. v. Civ. Serv.*

*Comm'n. of City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). In short, courts look for "serious, informed, non-collusive negotiations[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). These concerns are most prominent when counsel is compensated as part of a settlement agreement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (signs of collusion include "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded" (citation omitted)).

Because Plaintiffs do not seek monetary relief, Dkt. No. 47 at 51–52, and the settlement agreement provides no monetary relief, *see generally* Dkt. No. 711-1, the risk of collusion is low. *See In re Bluetooth*, 654 F.3d at 947. Moreover, the Court observes no other signs of collusion: the parties entered settlement negotiations after extensive and heavily litigated fact discovery culminated in this Court's summary judgment decision, Dkt. No. 679, and those negotiations appear to have lasted nearly a year, *see* Dkt. No. 684 (March 18, 2025 joint motion stating the parties' belief that "their ongoing conversations could lead beyond completion of a joint status report to an agreed resolution of the case"); Dkt. No. 711-1 at 13 (Settlement Agreement dated March 4, 2026). Nothing in the record suggests that this agreement is the product of fraud, overreaching, or collusion. Therefore, the Court finds that this factor supports final approval.

## G.    Adequacy of Relief

To determine whether the "relief provided for the class is adequate," courts consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class . . . ; (iii) the terms of any proposed award of attorney's fees, including timing of payment;" and (iv) any agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C).

ORDER GRANTING MOTION FOR FINAL APPROVAL - 10

The settlement agreement does not include payment of attorney's fees and does not disclose any agreements made in connection with the settlement, *see generally* Dkt. No. 711-1, so the Court focuses on "(i) the costs, risks, and delay of trial and appeal" and "(ii) the effectiveness of any proposed method of distributing relief to the class," Fed. R. Civ. P. 23(e)(2)(C); *see also* Dkt. No. 711 at 5 ("[C]ounsel for Plaintiffs have rendered all services in this matter pro bono. Insofar as Plaintiffs are entitled to an award of attorneys' fees and costs, those fees and costs will be distributed to Plaintiffs' counsel and will have no impact on class members' substantive relief.").

The costs, risks, and delay of continuing to litigate this case favor preliminary approval. As the parties describe it, "[t]he rescission of CARRP will provide meaningful relief to all class members; indeed, it will achieve a cardinal purpose of this lawsuit." Dkt. No. 711 at 4. Without a settlement, the parties will continue to expend resources litigating the remaining claims to final judgment and potentially through appeals. This could include summary judgment briefing and a trial for the Adjustment Class, as well a trial for the Naturalization Class's substantive due process claim. It may also include disputes over the appropriate relief. Both parties may appeal the eventual judgment. In contrast, settlement would reduce the costs, risks, and delay associated with continuing to litigate the case. This factor supports final approval.

In general, courts need not worry about the effectiveness of distributing declaratory or injunctive relief, as opposed to monetary relief, because it applies generally to the class. *See Kidd*, 2025 WL 1330082, at *6 ("[B]ecause the class received declaratory—not monetary—relief, the Court has no concerns with the effectiveness of distributing relief to the class."); *Toomey v. Arizona*, No. CV-19-00035-TUC-RM (MAA), 2023 WL 6377273, at *5 (D. Ariz. Sept. 29, 2023) ("The relief provided by the Consent Decree is also adequate considering the effectiveness of any proposed method of distributing relief to the class, because the Consent Decree provides injunctive relief to each class member."). Here, the Court has no concerns about the effectiveness of

ORDER GRANTING MOTION FOR FINAL APPROVAL - 11

distributing relief given that it "will, by its nature, be distributed immediately and evenly to all class members[.]" Dkt. No. 711 at 5. Additionally, the settlement agreement explicitly contemplates a mechanism for class representatives to seek enforcement should the promised relief not be effectuated. Dkt. No. 711-1 at 8, 11.

**H.    Equitable Treatment**

Lastly, the Court must ensure that "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.*, advisory committee's note to 2018 amendment. Here, class representatives are not given preferential treatment, nor are distinctions made for any individual segments of each class. And all members of each class are required to release all their remaining claims. Finally, the relief—rescission of CARRP—applies equally to all class members. Dkt. No. 711-1 at 8. Therefore, the Court finds that the settlement agreement treats class members equitably.

### III.  CONCLUSION

For the reasons described above, the Court GRANTS the parties' motion for final approval of class action settlement agreement, Dkt. No. 718, and ORDERS as follows:

1.    The Court finds that the Settlement Agreement is fair, reasonable, and adequate. The Court GRANTS final approval of the Settlement Agreement under Federal Rule of Civil Procedure 23.

2.    The stay of the Adjustment Class claims, *see* Dkt. Nos. 612–613, is lifted, and all claims of the Adjustment Class are DISMISSED with prejudice.

3.    Plaintiffs' Fifth and Eighth Claims for Relief with respect to the Naturalization Class are DISMISSED with prejudice.

ORDER GRANTING MOTION FOR FINAL APPROVAL - 12

4.  Pursuant to the Court's summary judgment ruling with respect to Plaintiffs' Eighth Claim for Relief—that, with respect to the Naturalization Class, CARRP was adopted in an arbitrary and capricious manner—the case is REMANDED to USCIS without vacatur.

5.  On remand, USCIS shall take remedial action by rescinding the CARRP policy, as memorialized in the policy memoranda and guidelines set forth in the Certified Administrative Record, within seven months of this Order. USCIS will notify Plaintiffs and the Court promptly after CARRP has been rescinded.

6.  The Court will retain jurisdiction over the case for the purpose of enforcing the Settlement Agreement, Dkt. No. 718, until it receives notification that USCIS has rescinded CARRP. Should USCIS not rescind CARRP within seven months of this Order, Plaintiffs may move the Court for specific performance of the obligation to rescind CARRP or such other relief appropriate in the circumstances.

7.  The Court's jurisdiction contemplated in Paragraph 6 above shall expire upon notification to the Court of the rescission of CARRP as outlined in Paragraph 5, except as to a potential motion for costs, expenses and fees.

8.  The Court will enter judgment consistent with this Order.

Dated this 2nd day of July, 2026.

Lauren King
United States District Judge

ORDER GRANTING MOTION FOR FINAL APPROVAL - 13